# ORIGINAL

1  THOMAS L. SANSONETTI
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3  ROBERT D. MULLANEY
   Environmental Enforcement Section
4  Environment & Natural Resources Division
   301 Howard Street, Suite 1050
5  San Francisco, CA 94105
   Tel: (415) 744-6491
6  Fax: (415) 744-6476

7  FREDERICK A. BLACK
   United States Attorney
8  MIKEL W. SCHWAB
   Assistant U.S. Attorney
9  Suite 500, Sirena Plaza
   108 Hernan Cortez
10 Hagatna, Guam 96910
   Tel: (671) 472-7332
11 Fax: (671) 472-7215

12
   Attorneys for the United States of America
13

14              UNITED STATES DISTRICT COURT

15                 TERRITORY OF GUAM

16 UNITED STATES OF AMERICA,          )    CIVIL CASE NO. 02-00035
17                                     )
18              Plaintiff,             )    **STIPULATED ORDER**
        v.                             )    **FOR PRELIMINARY RELIEF**
19 GUAM WATERWORKS AUTHORITY           )
20 and the GOVERNMENT OF GUAM,         )
                                       )
21                                     )
              Defendants.              )
22 _____      )

23

24

25

26

27

28

FILED
DISTRICT COURT OF GUAM

JUN 05 2003

MARY L. M. MORAN
CLERK OF COURT

1  WHEREAS, the United States of America filed a civil action seeking injunctive relief and

2  the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the

3  Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42

4  U.S.C. §§ 300f - 300j-26 (the "SDWA");

5  WHEREAS, GWA is a public corporation that has the authority to produce, treat,

6  transmit, store, distribute, and sell water on Guam, as well as the authority to collect, treat, and

7  sell or dispose of wastewater on Guam;

8  WHEREAS, GWA owns and operates five sewage treatment plants on Guam that are

9  subject to the conditions and limitations contained in National Pollutant Discharge Elimination

10  System ("NPDES") Permit Nos. GU0020087, GU0020222, GU0020095, GU0020141, and

11  GU0020273 issued by the U.S. Environmental Protection Agency ("EPA") pursuant to the

12  CWA;

13  WHEREAS, GWA owns and operates wastewater collection and conveyance systems,

14  including approximately 75 sewage pump stations, that transport raw sewage to its sewage

15  treatment plants;

16  WHEREAS, the NPDES permits require GWA at all times to properly operate and

17  maintain all facilities and systems of treatment and control (and related appurtenances) that are

18  installed or used to achieve compliance with the conditions of the permits;

19  WHEREAS, the Government of Guam is identified as a defendant as required by CWA

20  Section 309(e), 33 U.S.C. § 1319(e);

21  WHEREAS, GWA owns and operates three public water systems that supply drinking

22  water for the majority of the population of Guam: the Northern, Central, and Southern Systems;

23  WHEREAS, GWA's public water systems are required to comply with the National

24  Primary Drinking Water Regulations under the SDWA, including the Maximum Contaminant

25  Levels for microbiological contaminants and the treatment technique for turbidity;

26  WHEREAS, the United States sought in its Complaint both a preliminary and permanent

27

28  2

1  injunction as well as the appointment of a receiver to address issues of compliance in GWA's

2  Publicly Owned Treatment Works ("POTW") and three public water systems;

3  WHEREAS, the parties agree that entry of this Stipulated Order for Preliminary Relief is

4  the most appropriate way to require the immediate implementation of short-term projects and

5  initial planning measures by GWA and the Government of Guam (jointly "Defendants") to begin

6  to address issues of compliance at GWA's POTW and three public water systems;

7  WHEREAS, the Guam Public Utilities Commission issued an Order on April 10, 2003

8  (see Attachment A to this Stipulated Order), renewing its commitment to provide GWA in a

9  timely manner with adequate rate relief to enable GWA to comply with an EPA-approved

10  strategic plan in a prudent and reasonable manner;

11  WHEREAS, the parties contemplate entering into a further stipulation to address

12  additional compliance issues after Defendants' completion of the initial planning measures set

13  out in this Stipulated Order for Preliminary Relief;

14  THEREFORE, before taking testimony or adjudicating any issue of fact or law, and

15  without any finding or admission of liability against or by GWA or the Government of Guam;

16  **IT IS ORDERED, ADJUDGED, AND DECREED as follows:**

17  **I.   Submittals by Defendants**

18  1.   Compliance Monitor:  Within ten days after the date of entry of this Stipulated

19  Order for Preliminary Relief by the Court (hereinafter the "Entry Date"), GWA shall appoint one

20  individual whose primary responsibility will be to coordinate and report on all compliance

21  activities and deliverables required by this Stipulated Order for Preliminary Relief.  Within 20

22  days after the Entry Date, GWA shall provide notice to EPA listing the individual's name,

23  address, telephone and fax numbers, and e-mail address.  If GWA appoints a new person as

24  compliance monitor, GWA shall provide contact information about the new compliance monitor

25  to EPA within 10 working days after the appointment.

26  2.   EPA Approval of Plans and Other Submittals:  After review of any plan, program,

27

28  3

1   report or other item required to be submitted for approval under this Stipulated Order for

2   Preliminary Relief, EPA shall submit to Defendants in writing either an approval or detailed

3   comments explaining why EPA does not approve the plan, program, report or other submittal.

4   Defendants shall have 30 days from receipt of EPA's comments to submit a revised plan,

5   program, report or other submittal that fully addresses and responds to EPA's comments unless a

6   longer time period is agreed upon by all parties. Defendants shall use their best efforts to

7   incorporate EPA's comments to the extent practicable. Representatives of the parties shall make

8   themselves available during the comment period to informally discuss questions and comments

9   on any documents. Defendants' failure to respond to EPA's comments shall constitute a

10   violation of this Stipulated Order for Preliminary Relief. The procedures of this Paragraph shall

11   also apply to any revised plan, program, report, or other submittal.

12   **II.   Management and Organizational Structure of GWA**

13       3.   General Manager: Within ten days after the Entry Date, the Consolidated

14   Commission on Utilities ("CCU") shall advertise to hire a full-time General Manager at GWA.

15   At a minimum, the General Manager shall have the following qualifications: (1) a Masters

16   degree in Management, Engineering, Finance, or Public Administration, or, in the alternative, a

17   Bachelor's degree and registration as a Professional Engineer pursuant to the National Council of

18   Engineering Examiners standards in either the Civil, Mechanical, or Electrical Branch; (2) at

19   least ten years of combined senior management experience at drinking water and wastewater

20   utilities, with experience in both areas; (3) proven management and communication skills;

21   (4) demonstrated ability to lead, motivate, and develop staff; (5) experience with planning,

22   design, and construction of major wastewater or drinking water infrastructure projects; and

23   (6) knowledge and experience with: a) drinking water or wastewater engineering, b) user fee

24   system development, c) bond funding, d) staff training and development, and e) federal drinking

25   water and wastewater requirements. The CCU shall use its best efforts to hire a qualified

26   General Manager within 90 days after the Entry Date.

27

28                         4

1     4.    Chief Engineer: Within 40 days after the Entry Date, the CCU shall advertise to

2 hire a full-time Chief Engineer at GWA. At a minimum, the Chief Engineer shall have the

3 following qualifications: (1) registered professional civil, mechanical or electrical engineer;

4 (2) ten or more years of professional engineering experience; and (3) fully competent and

5 proficient in planning, design, construction, and operation of wastewater treatment facilities,

6 drinking water disinfection systems, wells, and drinking water distribution and transmission

7 systems. If possible, the applicant shall also have experience in wastewater collection systems

8 and surface water treatment systems. The CCU shall use its best efforts to hire a qualified Chief

9 Engineer within 120 days after the Entry Date.

10     5.    Chief Financial Officer: Within 60 days after the Entry Date, the CCU shall

11 advertise to hire a full-time Chief Financial Officer at GWA that has the appropriate

12 qualifications (e.g., Certified Public Accountant or Certified Management Accountant) and

13 experience. The CCU shall use its best efforts to hire a qualified Chief Financial Officer within

14 150 days after the Entry Date. The Chief Financial Officer may perform duties for the Guam

15 Power Authority pursuant to the Chief Financial Officer's employment agreement with the CCU.

16     6.    General Manager's Authority: In order to allow GWA to operate as an

17 independent agency, the Chief Financial Officer shall be under the direct supervision of GWA's

18 General Manager. Within 30 days after the Entry Date, Defendants shall provide a report to EPA

19 on any legal and administrative barriers preventing GWA's General Manager from directly

20 supervising GWA's Chief Financial Officer, and recommend a course of action, including

21 proposed legislation or administrative measures, to deal with this issue. Within 30 days after

22 receipt of EPA's comments on the report, Defendants shall respond to EPA's comments in

23 accordance with Paragraph 2 and shall take action to address this issue, including submitting

24 proposed legislation to the Guam Legislature and/or implementing required administrative

25 measures. The CCU reserves the right to review all decisions made by the General Manager with

26 respect to the Chief Financial Officer.

27

28                        5

7. <u>Conflict of Interest Provision</u>: GWA may enter into a service contract with a third party (such as an engineering or consulting firm or a contract employment firm) to permanently or temporarily fill GWA's staff vacancies. In order to avoid potential conflicts of interest that may arise in that situation, GWA shall not engage in any business other than staffing services with that third party (and any related corporate or business entities) for the duration of the service contract. After the Entry Date, all contracts used to fill new positions on a permanent or temporary basis at GWA shall be limited to either of the following: (1) a contract between GWA and the individual hired; or (2) a contract between GWA and a third party that agrees to provide no other service to GWA except for staffing services for the duration of the service contract.

8. <u>Certification of Operators in Direct Responsible Charge ("DRC Operators")</u>: Within 180 days after the Entry Date, GWA shall ensure that DRC Operator positions are staffed by operators who have obtained certification at the level required for that position by the Guam Environmental Protection Agency's ("Guam EPA") "Water and Wastewater Systems Classification" memorandum dated October 17, 2002. If current DRC Operators at GWA are not certified at the required level, GWA shall, within ten working days after the Entry Date, notify those employees that they have 180 days after the Entry Date to obtain the required certification. If an employee does not obtain the required certification within 180 days after the Entry Date, GWA shall transfer the employee and fill the position with a properly certified DRC Operator.

9. <u>GWA Reorganization</u>: GWA shall complete a full reorganization according to the following schedule. Within 90 days after the Entry Date, GWA shall submit to EPA and Guam EPA a draft reorganization plan that proposes a new structure for GWA to ensure that GWA is most capable of completing its mission. For each work unit, the draft plan shall provide at a minimum: a description of work functions, the numbers of employees, and a summary of certifications and qualifications needed for each category of employee. Within 30 days after receipt of EPA's comments on the draft plan, GWA shall respond to EPA's comments in accordance with Paragraph 2 and provide a final reorganization plan to EPA and Guam EPA.

6

Within 90 days after GWA has prepared a final reorganization plan, GWA shall submit to EPA and Guam EPA a draft report containing position descriptions and minimum job qualifications that meet industry standards and Guam laws for each position in the new organization. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide a final report to EPA and Guam EPA.

Within 90 days after GWA has provided a final reorganization plan, GWA shall also submit to EPA and Guam EPA a draft Staffing Plan Report that includes the following information: (1) an evaluation of current staff resources at GWA and a discussion of where new hires or retraining will be needed to staff the new organization; (2) a timetable for implementation of staffing measures; and (3) procedures for the transferring of staff and staff reductions (and recommended legislation to enable such changes) as necessary. The draft Staffing Plan Report shall require: (1) all positions in the reorganization of GWA shall be filled with an employee qualified at the minimum level required for that position within 180 days after the final Staffing Plan Report has been issued; and (2) when GWA hires a new employee to fill a position, that employee must be properly qualified for the position at the time of hire. EPA will review the draft Staffing Plan Report and may require changes, additions, deletions or modifications it deems necessary to ensure proper operation and maintenance of GWA's POTW and public water systems. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Staffing Plan Report to EPA and Guam EPA. GWA shall implement the Staffing Plan Report's measures in accordance with the timetable in the final Staffing Plan Report. If current employees are not certified at the required level, GWA shall notify such employees within ten working days after the final Staffing Plan Report has been issued.

III. **Operations at GWA**

10. <u>Drinking Water and Wastewater Master Plan</u>: Within 30 days after the Entry

7

Date, GWA shall prepare a draft scope of work and a draft Request for Proposals ("RFP") for the preparation of a Drinking Water and Wastewater Master Plan ("Master Plan") and submit them to EPA for approval. GWA shall provide a copy of the documents concurrently to Guam EPA. EPA will review the draft scope of work and RFP and may require any changes, additions, deletions or modifications it deems necessary. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall submit a final scope of work and RFP to EPA and Guam EPA. GWA shall advertise the RFP for the preparation of the Master Plan nationally.

Within 60 days after submitting the final RFP to EPA and Guam EPA, GWA shall provide a list of at least five qualified offerors, including the qualifications of each offeror, to EPA and Guam EPA. EPA will provide written notice of the names of any offeror(s) that it disapproves and an authorization to proceed with any of the other offerors. GWA may select any offeror from that list that is not disapproved and may award the contract to that offeror. GWA shall select and retain one of the qualified offerors within 45 days after obtaining EPA's authorization to proceed, shall notify EPA and Guam EPA of the name of the contractor, and shall begin to prepare the Master Plan (the "Commencement Date").

GWA shall develop a Master Plan that includes:

(1)     A comprehensive analysis, using as a guideline the "10 States Standards" as they apply to wastewater, of wastewater treatment, collection, and conveyance systems, improvement alternatives, and needs for the next twenty years. The Master Plan shall include an infiltration and inflow assessment of GWA's wastewater collection systems sufficient to identify and prioritize problem areas. The Master Plan shall also include an assessment of the following: septic system hookup needs and alternatives, decentralized treatment systems, consolidation with the U.S. military's wastewater systems, biosolids management and re-use, and an analysis of costs and other impacts.

8

(2)     A comprehensive analysis, using as a guideline the Hawaii Water Standards of 2002, of public water system improvement alternatives and needs for the next twenty years that addresses disinfection, system pressure, surface water and groundwater resources, treatment needs (including any drinking water well needing treatment due to a determination that the well uses a groundwater source under the direct influence of surface water), transmission and distribution system improvements, potential consolidation with the U.S. military's systems, and water re-use.

(3)     A comprehensive analysis of the costs and benefits of water conservation on Guam.

(4)     An evaluation of necessary process control system improvements, including a Supervisory Control and Data Acquisition ("SCADA") system, information management systems, telemetry, and other applicable types of automation.

(5)     A financial plan that details how revenue will be generated. The financial plan shall include a user fee system, including fees for services such as sewer connection fees. The user fees shall be based on actual water usage, estimated wastewater generation, and actual costs of services provided. GWA shall coordinate with the Public Utilities Commission ("PUC") to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

(6)     A detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and three public water systems, including: (a) an estimated annual budget for each of the next five years for all costs of operating, maintaining, and repairing the POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph

9

32 below; and (b) a detailed descriptive plan for raising sufficient revenue to meet the projected costs as outlined in the annual budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. Revenues shall be sufficient to cover all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and SDWA, costs related to the infrastructure improvements recommended in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all required Financial Reserves listed in Paragraph 32 below.

The following five tasks shall be completed as part of the Master Plan. Within the designated time for completing each task, GWA shall submit a written draft to EPA for review and approval. GWA shall provide a copy of each draft concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final written product to EPA and Guam EPA. The schedule for these tasks is the following:

(1)     Within 180 days after the Commencement Date, GWA shall complete a leak detection study for all three public water systems.

(2)     Within 240 days after the Commencement Date, GWA shall complete an estimated water budget that quantifies and describes how and where water is produced and utilized on Guam.

(3)     Within 270 days after the Commencement Date, GWA shall locate, map, and develop Geographical Information System ("GIS") layers for all of the following: treatment facilities, wells, water lines greater than or equal to six inches in diameter, collection system, pump stations, septic tanks, and GWA's and Guam EPA's water quality monitoring stations.

10

(4)     Within one year after the Commencement Date, GWA shall perform a hydraulic analysis of the three public water systems and develop a hydraulic model of the systems.

(5)     Within 540 days after the Commencement Date, GWA shall locate, map, and develop GIS layers for all of the following (not included in subparagraph (3) above): all other water lines, wastewater laterals, and all septic tanks over the Northern Guam Sole Source Aquifer.

The Master Plan shall be completed according to the following schedule:

(1)     Within 540 days after the Commencement Date, GWA shall complete a draft Master Plan and shall provide a copy of it to EPA and Guam EPA. Upon completion, GWA shall issue a press release and publish notice in a local newspaper, indicating that the draft Master Plan is available for public review at convenient locations (such as public libraries on Guam and GWA's website) and announcing the date and location of any public meeting to discuss the Plan. The draft Master Plan shall be made available for public comment for at least 45 days. During the public comment period, GWA shall hold at least one public meeting. GWA shall issue the public notice at least 30 days before the date of the public meeting.

(2)     Within 630 days after the Commencement Date, GWA shall complete a final Master Plan and shall address all significant comments raised during the public comment period in its final Master Plan. GWA shall provide the final Master Plan to EPA and Guam EPA and shall perform the required tasks in accordance with the schedule set out in the final Master Plan.

11.     Interim Disinfection Program: GWA shall develop an interim disinfection program for its three public water systems to ensure that the water being provided to the public is adequately disinfected by chlorination. In order to ensure optimal chlorination and disinfection,

11

the interim disinfection program shall require that:  (1) the optimal levels of chlorine residual, as measured in parts per million ("ppm") or milligrams per liter, is met at all times at all chlorination points, taking into consideration the contact time (in minutes) of the chlorine with the water in the distribution system prior to reaching the first consumer ("CT value"); and (2) a minimum level of chlorine residual of at least 0.2 ppm is maintained at all points in the drinking water distribution system at all times.

The interim disinfection program shall include a detailed description of the existing chlorination practices including, but not limited to:  (1) the locations of all existing chlorination points for each public water system, including chlorination points at the Ugum surface water treatment plant, chlorination points at the wellheads for the groundwater systems, and other distribution system chlorination points; (2) the locations of any proposed immediate additional wellhead and/or distribution system chlorination points; (3) the estimated contact time between the chlorine and water in the distribution system before the water reaches the first consumer (i.e., the closest connection in the distribution system) for each chlorination point; (4) actual chlorine dosing levels (in ppm) at each chlorination point; and (5) actual CT value for each chlorination point (where CT is defined as chlorine residual level in ppm multiplied by the contact time in minutes prior to the first consumer).  Based on the information included in subparagraphs (1) through (5), the interim disinfection program shall include recommendations regarding the following: (6) the optimal possible chlorine dosing levels (in ppm) to apply at each individual chlorination point (taking into account the contact time available before the first consumer); and (7) the optimal CT value for all chlorination points.  The interim disinfection program shall propose short-term changes to GWA's chlorination practices to improve disinfection that can be accomplished within one year after the Entry Date.

Within 90 days after the Entry Date, GWA shall submit the interim disinfection program to EPA for approval.  GWA shall provide a copy of the document concurrently to Guam EPA.  Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

12

1 accordance with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall
2 implement the program. GWA shall update the interim disinfection program annually and as
3 needed to reflect the development of other compliance activities and deliverables required by this
4 Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and
5 approval, and shall provide a copy to Guam EPA.

6       12.    Interim Chlorine Residual Level Monitoring Program: GWA shall develop an
7 interim chlorine residual level monitoring program for its three public water systems to ensure
8 that: (1) optimal chlorine levels are maintained at all chlorination points, taking into account
9 contact time prior to the first consumer after the chlorination points; and (2) a minimum chlorine
10 level is maintained throughout the distribution system. The monitoring program shall contain a
11 detailed description of the following: (1) the locations and frequency of all chlorine residual
12 monitoring necessary in order to ensure that the optimal applied chlorine dose (as specified in
13 subparagraph (6) of the interim disinfection program in Paragraph 11) and optimal CT's (as
14 specified in subparagraph (7) of the interim disinfection program in Paragraph 11) are maintained
15 at all chlorination points at all times; and (2) the locations and frequency of chlorine residual
16 monitoring necessary to ensure that a minimum level of chlorine residual of at least 0.2 ppm is
17 maintained throughout the distribution system at all times. The proposed monitoring shall
18 consist of either continuous, online, automated chlorine residual monitoring or grab samples to
19 be collected and analyzed in the field. The proposed monitoring program shall ensure that those
20 wells that are at the highest risk of fecal bacteriological contamination (i.e., those wells with a
21 historical record of fecal coliform or *E. coli* bacteriological contamination at the well) have the
22 highest level of monitoring. Monitoring for such wells shall consist of continuous, online
23 chlorine residual monitoring with either automatic flow shutoff or an alarm system. The
24 automatic flow shutoff or alarm shall be triggered by detections of chlorine levels lower than the
25 optimal applied chlorine dose (as specified in subparagraph (6) of the interim disinfection
26 program in Paragraph 11).

27

28     13

1   Within 90 days after the Entry Date, GWA shall submit the monitoring program to EPA

2   for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within

3   30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

4   with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement

5   the program. GWA shall update the interim chlorine residual level monitoring program annually

6   and as needed to reflect the development of other compliance activities and deliverables required

7   by this Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review

8   and approval, and shall provide a copy to Guam EPA.

9   13.   Leak Detection and Response Program: GWA shall develop a program for

10   identifying and responding to leaks in the three public water systems. Within 180 days after the

11   Entry Date, GWA shall submit the proposed program to EPA for approval. GWA shall provide a

12   copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's

13   comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

14   provide the final program to EPA and Guam EPA, and shall implement the program.

15   14.   Water Meter Improvement Program: GWA shall develop a water meter

16   improvement program to ensure that, within 3 years after the Entry Date, each connection to the

17   three public water systems has an accurate and accessible water meter that is read monthly and

18   used for billing. Within 90 days after the Entry Date, GWA shall submit the program to EPA for

19   approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

20   days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

21   with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement

22   the program.

23   15.   Parts Inventory for POTW and Public Water Systems: Within 180 days after the

24   Entry Date, GWA shall develop and maintain a 60-day operation and maintenance parts

25   inventory for its POTW and public water systems that includes any spare parts that may

26   reasonably be needed, and shall provide EPA and Guam EPA with a written list of the parts

27

28                                           14

inventory. The inventory need not include any parts for which GWA has a written guarantee of their availability within four days of a request. GWA shall provide a written report to EPA and Guam EPA within 180 days after the Entry Date on the adequacy of its parts inventory, including written guarantees of availability. On or before January 28 and July 28 of each year, GWA shall provide a semiannual written report to EPA and Guam EPA regarding the adequacy of its parts inventory.

16. Routine Maintenance and Repairs for POTW and Public Water Systems: Within 180 days after the Entry Date, GWA shall: (1) provide EPA and Guam EPA with a written report describing the minimum tools and equipment needed for each facility and maintenance area in its POTW or three public water systems to handle any routine maintenance or repair work; and (2) ensure that each facility and maintenance area in its POTW or three public water systems has the necessary tools and equipment. At a minimum, GWA shall ensure that the following systems are included in the report and have the necessary tools and equipment: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems.

17. Standby Generators: GWA shall ensure that working, appropriately sized, standby generators are available for all wastewater pump stations, treatment plants, and wells that are critical to the three public water systems. Within 90 days after the Entry Date, GWA shall submit a list to EPA for approval, indicating the size of the standby generator for each pump station, treatment plant or well and the schedule of compliance. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final list to EPA and Guam EPA. Within 2 years after the Entry Date, GWA shall supply standby generators for all critical wells, wastewater pump stations, and treatment plants.

18. Underground Storage Tanks: GWA shall prepare an inventory of its underground

15

storage tanks, indicating which tanks are no longer in use. For any tank that is no longer in use, GWA shall perform the following temporary closure tasks: (1) empty all materials from the tank to within one inch of the tank bottom; (2) leave vent lines open; and (3) secure all lines, pumps, manways, and ancillary equipment with a lock. Within 90 days after the Entry Date, GWA shall provide the inventory to EPA for review and approval, stating the date that GWA has completed the temporary closure tasks for any tanks no longer in use. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final inventory to EPA and Guam EPA, and shall perform any additional required tasks in accordance with the schedule set out in the final inventory.

19. <u>Emergency Response Plan</u>: GWA shall develop an emergency response plan that provides operating procedures for all employees during and following any disasters, including, but not limited to, typhoons and earthquakes. Within 540 days after the Entry Date, GWA shall submit the plan to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final plan to EPA and Guam EPA, and shall implement the plan.

20. <u>Preventive Maintenance Program</u>: GWA shall develop a preventive maintenance program for the POTW and public water systems that details required maintenance, schedules, standard procedures, tracking, and reporting. At a minimum, GWA shall develop preventive maintenance programs for the following systems: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems. Within one year after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2,

16

1  shall provide the final program to EPA and Guam EPA, and shall implement the program. GWA

2  shall update the program annually and as needed to reflect the development of other compliance

3  activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide

4  its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

5      21.   <u>Operations and Maintenance Manuals</u>: GWA shall develop a set of

6  comprehensive Operations and Maintenance Manuals for its POTW and public water systems.

7  At a minimum, GWA shall develop Operations and Maintenance Manuals for the following

8  systems: sewage treatment plants, wastewater collection systems, wastewater conveyance

9  systems (including the sewage pump stations), water treatment plant, water distribution systems,

10  drinking water wells, and chlorination systems. Within 180 days after the Entry Date, GWA

11  shall submit to EPA a schedule for completing the manuals and submitting them to EPA for

12  approval. GWA shall provide a copy of the document concurrently to Guam EPA. All manuals

13  shall be completed and submitted to EPA and Guam EPA within 2 years after the Entry Date.

14  The manuals shall include: (1) information on all relevant process design assumptions such as

15  design flows, pump capacities, detention times, surface loadings, oxygen transfer requirements,

16  disinfection requirements, water transmission requirements, simplified schematic diagrams of

17  pipelines and control systems, and detailed diagrams for more complicated components; (2) unit

18  process information, including control measures and monitoring procedures needed to achieve

19  maximum efficiency and reliability and a clear explanation of process functions of various

20  components with simplified language and references to appropriate technical manuals; (3) start-

21  up and shutdown procedures; (4) maintenance schedules; (5) laboratory test procedures,

22  including the necessary quality assurance and reporting requirements; (6) safety procedures;

23  (7) organizational structure, job descriptions, and duties; (8) administrative procedures for

24  purchase order preparation approvals and budget preparation; and (9) an operating plan for

25  emergencies. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

26  comments in accordance with Paragraph 2, shall provide a copy of the final manuals to EPA and

27

28                              17

Guam EPA, shall distribute the manuals to the appropriate employees, and shall require use of the manuals as part of its standard operating procedures for its POTW and public water systems. GWA shall update the manuals as needed to reflect the development of other compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

22.     GWA's Authority:  In order to function properly and efficiently as an independent agency, GWA needs to have the ability to independently:  administer financial accounts, make personnel changes, and procure equipment and services (including both engineering services and the direct procurement of services or supplies from off-island companies).  Within 30 days after the Entry Date, Defendants shall provide a report to EPA on any legal and administrative actions necessary to allow GWA to operate independently, and shall recommend a course of action, including proposed legislation or administrative measures, to deal with these issues.  GWA shall provide a copy of the document concurrently to Guam EPA.  Within 30 days after receipt of EPA's comments on the report, Defendants shall respond to EPA's comments in accordance with Paragraph 2 and shall take action to address these issues, including submitting proposed legislation to the Guam Legislature and/or implementing required administrative measures.

23.     Standard Operating Procedures:  GWA shall develop:  (1) a set of standard operating procedures for the following processes:  architectural and engineering services procurement, construction services procurement, and tools and equipment inventory and controls; and (2) procedures for complying with federal and local laws and monitoring compliance.  The standard operating procedures shall require GWA to comply with applicable Guam procurement statutes and other applicable local laws.  Within 180 days after the Entry Date, GWA shall submit the draft procedures to EPA for review and approval.  GWA shall provide a copy of the document concurrently to Guam EPA.  Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final procedures to EPA and Guam EPA, and shall implement the procedures.

18

24. <u>Vulnerability Assessment</u>: Within 180 days after the Entry Date, GWA shall submit a completed vulnerability assessment along with a certification of its completion, as required by Section 1433(a) of the SDWA, to the EPA Administrator in Washington, D.C. GWA shall follow the mailing protocol described in EPA's "Instructions to Assist Community Water Systems in complying with the Public Health Security and Bioterrorism Preparedness and Response Act of 2002," which is located on the EPA website as follows: http://www.epa.gov/safewater/security/util-inst.pdf.

The completed vulnerability assessment should not be sent to EPA Region 9 in San Francisco. Concurrently with the submission of the vulnerability assessment to the EPA Administrator, GWA shall notify EPA pursuant to Paragraph 50 that the requirements of SDWA Section 1433(a) have been met and that GWA is in compliance with Section 1433(a). Within 180 days after the submission of the vulnerability assessment, GWA shall complete an emergency response plan and certify to the EPA Administrator that it has completed the plan in accordance with the requirements of SDWA Section 1433(b) and (c). Within 10 working days after completing the plan, GWA shall also notify EPA pursuant to Paragraph 50 that it has completed the emergency response plan.

25. <u>Trade Organizations</u>: Within 90 days after the Entry Date, GWA shall join the American Waterworks Association and the Water Environment Federation.

**IV. Financial Administration at GWA**

26. <u>Financial Standard Operating Procedures</u>: GWA shall develop a set of standard operating procedures for the following processes: fiscal management and controls, budgeting, accounting, and financial planning. Within one year after the Entry Date, GWA shall submit a copy of the procedures to EPA for review and approval. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final procedures to EPA, and shall implement the procedures.

27. <u>Annual Budget</u>: GWA shall submit each approved annual budget to EPA. The

19

1  annual budget shall ensure adequate financing of the operation and maintenance of GWA's

2  POTW and three public water systems. The budget shall include, but not be limited to, the

3  following: (1) a budget detailing the total projected costs for the coming year of operating,

4  maintaining, and repairing the POTW and the three public water systems, including staffing,

5  energy, materials and supplies, repairs, replacements, maintaining Financial Reserves required in

6  Paragraph 32 below, and all other expenses; (2) a detailed schedule of user fees, taxes,

7  assessments or other sources of revenue sufficient to meet the projected costs as set forth in the

8  budget for the coming year, including increases or adjustments required to meet that budget; and

9  (3) a financial management plan insuring that all user fees, taxes, assessments or other sources of

10  revenue collected for the POTW and three public water systems are in fact applied to their

11  operation, maintenance, repair, and replacement.

12       28.    Interim Financial Plan: Within 120 days after the Entry Date, GWA shall develop

13  and submit to EPA and the PUC an interim financial plan that details how revenue will be

14  generated for the interim period before the final financial plan in the Master Plan is complete,

15  approved, and implemented. Revenues shall be sufficient to cover the cost of compliance

16  activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any

17  other anticipated expenses during the period before the final financial plan is approved, including

18  all existing debt and expected debt service, and the buildup of the Financial Reserves required in

19  Paragraph 32 below. The interim financial plan shall include a restructured user fee system.

20  GWA shall coordinate with the PUC to ensure that: (1) GWA complies with the public

21  notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and

22  (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

23       29.    Approval of Interim Financial Plan: Within 90 days after GWA submits an

24  interim financial plan, the PUC shall consider and approve an interim financial plan that

25  generates enough revenue to cover the cost of compliance activities and deliverables required by

26  this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the

27

28                        20

period before the final financial plan is approved, including all existing debt and expected debt service, and the buildup of the Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA the interim financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

30. Approval of Final Financial Plan: Within 90 days after GWA submits a final financial plan in the Master Plan, the PUC shall consider and approve a final financial plan that generates enough revenue to cover the cost of all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and the SDWA, costs related to the infrastructure improvements identified in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA a copy of the final financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

31. Five-Year Plan: On an annual basis, GWA shall submit to EPA a detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and the three public water systems. Each five-year plan shall include: (1) estimated annual budgets for each of the next five years for all costs of operating, maintaining, and repairing GWA's POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph 32 below; and (2) a detailed descriptive plan for raising sufficient revenue to meet the projected cost as outlined in the budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. GWA shall submit its first five-year plan to EPA within 2 years after the Entry Date. EPA will review each five-year plan and may request additions, deletions, changes or modifications as it deems necessary to insure adequate funding of the operation, maintenance, and repair of GWA's POTW and three public water systems for the five-year period. Within 30 days after receipt of EPA's comments, GWA shall

21

1 respond to EPA's comments in accordance with Paragraph 2 into a final five-year plan, shall

2 provide the final plan to EPA, and shall implement the measures of the plan.

3        32.    Financial Reserves:  Within 180 days after the Entry Date, GWA shall begin

4 developing the following Financial Reserves:

5        (1) Debt Service Reserve - This reserve shall be established and maintained in

6        accordance with bond covenants and debt service covenants.  Within 30 days after issuing

7        a bond or securing a loan, GWA shall submit to EPA information regarding the amount

8        of this reserve.

9        (2) Emergency Operations, Maintenance, Renovation, and Replacement Reserve - This

10        reserve shall be equal to three months of budgeted expenses for operations, maintenance,

11        renovation, and replacement of GWA's POTW and three public water systems.  Within

12        90 days after the Entry Date, GWA shall submit to EPA for approval the proposed

13        amount of this reserve.  GWA shall make monthly deposits to the reserve to ensure that

14        the balance matches current needs.  The reserve shall be used only to cover operations

15        and maintenance expenses not in the original budget.  This reserve can be replaced by the

16        availability of an equivalent emergency line of credit.

17        The above reserves shall be fully developed within 2 years after the Entry Date and shall

18 be used only for the stated purposes, and only in the event that no other revenue is available to

19 meet the commitments.  If GWA draws down on any reserve at any time, it shall rebuild that

20 reserve to the required level within 180 days.  On or before January 28 of each year, GWA shall

21 submit an annual report to EPA regarding the development and maintenance of the Financial

22 Reserves required by this Paragraph.

23        33.    Late Payments:  GWA shall develop a program that:

24        (1) clearly defines how late payments will be addressed and when service will be

25        discontinued.  GWA shall consider measures such as discontinuing service for any

26        customer that is more than 60 days behind in payments.

27

28                          22

1    (2) provides for a procedure to collect delinquent rates or charges, and to enforce liens, if

2    any, for non-payment of rates or charges, in a practical and timely manner.

3    Within 90 days after the Entry Date, GWA shall submit the program to EPA for approval.

4    Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

5    accordance with Paragraph 2, shall provide the final program to EPA, and shall implement the

6    program.

7        34.    Sewer Hook-up Revolving Fund: GWA shall develop a program instituting a

8    sewer hook-up revolving fund for residents currently required to connect to the wastewater

9    collection system.  The program shall be designed to allow residents to spread hook-up costs

10   (including utility fees) over two or more years at low or no interest.  GWA shall use, at a

11   minimum, funds provided by the Guam EPA Water Planning Committee.  Within 540 days after

12   the Entry Date, GWA shall submit the program to EPA for approval.  Within 30 days after

13   receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

14   Paragraph 2, shall provide the final program to EPA, and shall implement the program.

15   **V.    Construction and Rehabilitation Projects at GWA**

16       35.    Agana Ocean Outfall: GWA shall develop: (1) a schedule for submitting pre-

17   final (90 percent) and final (100 percent) ocean outfall extension designs and detailed

18   construction schedules for the Agana Sewage Treatment Plant ("STP"); and (2) a scope of work

19   and schedule for initiating and completing a baseline monitoring survey in the area of the

20   proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

21   and to establish a basis for the Agana NPDES monitoring program.  The schedule shall require

22   GWA to complete the baseline monitoring survey within 180 days after the Entry Date, and to

23   complete construction of the outfall within 3 years after the Entry Date.  The baseline monitoring

24   survey shall include water quality data, quantitative information on the benthic fauna, and

25   sediment quality data in the area of the proposed discharge.  This baseline monitoring survey

26   shall be performed similarly to the initial baseline monitoring survey for the proposed ocean

27

28                                            23

outfall extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedules set out in the final scope of work.

36.    Northern District Ocean Outfall: GWA shall develop: (1) a schedule for submitting pre-final (90 percent) and final (100 percent) ocean outfall extension designs and detailed construction schedules for the Northern District STP; and (2) a scope of work and schedule for initiating and completing a baseline monitoring survey in the area of the proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application and to establish a basis for the Northern District NPDES monitoring program. The schedule shall require GWA to complete the baseline monitoring survey within 180 days after the Entry Date, and to complete construction of the outfall within 3 years after the Entry Date. The baseline monitoring survey shall include water quality data, quantitative information on the benthic fauna, and sediment quality data in the area of the proposed discharge. This baseline monitoring survey shall be performed similarly to the initial baseline monitoring survey for the proposed ocean outfall extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedules set out in the final scope of work.

37.    Assessment of Chaot Wastewater Pump Station and Sewer Collection and Conveyance System: GWA shall retain a qualified engineering firm to perform an engineering assessment of the Chaot/Marine Drive sewer collection and conveyance system (the "Chaot

24

1   engineering assessment"). The scope of the Chaot engineering assessment shall include an area

2   sufficiently upstream of the old Chaot sewer pump station to fully assess the capacity and piping

3   of the system to prevent raw sewage overflows at the Chaot sewer pump station and downstream

4   along Routes 4 and 1 to the Agana Main sewer pump station. It shall also include an operational

5   re-evaluation of the new Chaot sewer pump station. The Chaot engineering assessment shall

6   identify any capacity, design, inflow/infiltration, and operational deficiencies, and include the

7   development of a corrective action plan and schedule for implementation. The corrective action

8   plan and schedule shall include, but not be limited to, prioritization of projects, as may be

9   necessary, and time frames for developing a scope of work, completing the design, and

10   commencing and completing construction of all deficiencies identified in the corrective action

11   plan. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval

12   the Chaot engineering assessment. GWA shall provide a copy of the document concurrently to

13   Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

14   comments in accordance with Paragraph 2, shall provide the final Chaot engineering assessment

15   (including the final corrective action plan) to EPA and Guam EPA, and shall perform the

16   required tasks in accordance with the schedule set out in the final corrective action plan. Within

17   180 days after the final engineering assessment is completed, GWA shall submit to EPA for

18   review and approval the Chaot engineering design. GWA shall provide a copy of the document

19   concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall

20   respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Chaot

21   engineering design to EPA and Guam EPA. Construction shall be completed within 540 days

22   after the Chaot engineering design is approved by EPA.

23        38.   Water Transmission Line Construction Plan: GWA shall develop a Water

24   Transmission Line Construction ("WTLC") Plan to ensure its ability to adequately treat its well

25   sources (including disinfection). The WTLC Plan shall include an assessment of the existing

26   well configuration, including a discussion of CT values currently required and currently achieved

27

28                               25

1    under the existing configuration in accordance with the requirements of Paragraph 11 (Interim

2    Disinfection Program). Based on the assessment of the current well configuration, GWA shall

3    make recommendations regarding the need for dedicated transmission lines in its three public

4    water systems, as well as recommendations concerning future treatment, including

5    chlorination/disinfection configurations, for the three public water systems. The WTLC Plan

6    shall prioritize the construction of transmission lines and any necessary chlorination/disinfection

7    configurations to ensure adequate treatment based on the following information about the

8    different parts of the public water systems: (1) the current level of disinfection achieved (the CT

9    values), and (2) the history of bacteriological contamination of the sources, such as the wellfield

10    history. The WTLC Plan shall include a schedule for developing and finalizing a scope of work

11    and design, and commencing and completing construction and upgrades to the water

12    transmission lines and chlorination systems. Within 180 days after the Entry Date, GWA shall

13    submit to EPA for review and approval the WTLC Plan. GWA shall provide a copy of the

14    document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA

15    shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final WTLC

16    Plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the

17    schedule set out in the final WTLC Plan.

18         39.    Northern District STP Renovation: GWA shall develop an interim corrective

19    action plan and schedule to restore minimum primary treatment operational capacity to the

20    Northern District STP. The interim corrective action plan shall include, but not be limited to, the

21    following: primary clarifiers, preaeration and aerated grit removal systems, and installation of

22    primary sludge pumps. The interim corrective action plan shall also address re-implementation

23    of the biological and receiving water monitoring program required by the Northern District

24    STP's NPDES permit. The schedule shall include time frames for commencing and completing

25    the improvements outlined in the interim corrective action plan within 540 days after the Entry

26    Date. In addition, GWA shall provide a schedule for commencing and completing a design

27

28                           26

within 540 days after the Entry Date to fully renovate the Northern District STP to bring the STP into compliance with its NPDES permit requirements based on the findings of the Comprehensive Performance Evaluation ("CPE") of the Northern District STP prepared for GWA by Duenas & Associates, Inc. and Boyle Engineering Corporation in October 2002. GWA shall perform any additional engineering evaluations, as necessary, to complement the findings of the CPE and address any other deficiencies identified since the completion of the CPE. Within 90 days after the Entry Date, GWA shall submit to EPA for review and approval the interim corrective action plan and schedules required by this Paragraph. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the amended interim corrective action plan and schedules to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedules set out in the amended interim corrective action plan.

40. <u>Agana Main Sewage Pump Station Diverter Box</u>: GWA shall develop a schedule for the complete repair of the Agana Main Sewage Pump Station ("SPS") Diverter Box to stop overflows of raw sewage from the diverter box. The schedule shall include time frames for developing and completing a scope of work, design, and construction. The schedule shall require construction to be completed within 180 days after the Entry Date. Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the required tasks in accordance with the final schedule.

41. <u>Ugum Surface Water Treatment Plant</u>: GWA shall develop a scope of work and schedule for the rehabilitation, renovation and/or design and construction of new (alternative) treatment facilities of the Ugum Surface Water Treatment Plant to bring the plant into

27

1  compliance with SDWA requirements and performance standards. The scope of work shall

2  detail all rehabilitation, renovation, and/or recommended design and construction of new

3  (alternative) treatment work to be performed based on the findings of the CPE of the Ugum

4  Surface Water Treatment Plant prepared for GWA by Belanger and Associates and International

5  Studies & Training Institute, Inc., in May 2001. The scope of work may include other

6  documentation or studies needed to determine the extent of the rehabilitation and renovation

7  needs of the existing plant, and/or may include alternative water treatment feasibility or

8  preliminary engineering studies deemed by GWA to be necessary to determine if other

9  alternative treatment design and construction projects may be preferable and/or feasible to bring

10 the plant into full compliance with all SDWA requirements. The schedule shall include, but not

11 be limited to, time frames for developing and completing all activities contained in the scope of

12 work, any additional studies needed to determine the preferred course of action

13 (rehabilitation/renovation or alternative treatment design and construction), design, and

14 construction. The schedule shall require construction to be completed within 3 years after the

15 Entry Date. Within 90 days after the Entry Date, GWA shall submit to EPA for review and

16 approval the scope of work and schedule required by this Paragraph. GWA shall provide a copy

17 of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

18 GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final

19 scope of work and schedule to EPA and Guam EPA, and shall perform the required tasks in

20 accordance with the schedule set out in the final scope of work.

21     42.    Agana STP Renovation: GWA shall develop an interim corrective action plan

22 and schedule to restore minimum primary treatment operational capacity to the Agana STP. The

23 interim corrective action plan shall include, but not be limited to, the following: primary

24 clarifiers, sludge dewatering centrifuge, and installation of flow measurement. The interim

25 corrective action plan shall also address re-implementation of the biological and receiving water

26 monitoring program required by the Agana STP's NPDES permit. The schedule shall include

27

28                                             28

1    time frames for commencing and completing the improvements outlined in the interim corrective

2    action plan within 2 years after the Entry Date. In addition, GWA shall provide a schedule for

3    commencing and completing a design within 2 years after the Entry Date to fully renovate the

4    Agana STP to bring the STP into compliance with its NPDES permit requirements based on the

5    findings of the CPE of the Agana STP prepared for GWA by Duenas & Associates, Inc. and

6    Boyle Engineering Corporation in October 2002. GWA shall perform any additional engineering

7    evaluations, as necessary, to complement the findings of the CPE and address any other

8    deficiencies identified since the completion of the CPE. Within 90 days after the Entry Date,

9    GWA shall submit to EPA for review and approval the interim corrective action plan and

10   schedule required by this Paragraph. GWA shall provide a copy of the documents concurrently

11   to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

12   comments in accordance with Paragraph 2, shall provide the amended interim corrective action

13   plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the

14   schedule set out in the amended interim corrective action plan.

15           43.    Agat, Baza Gardens, and Umatac-Merizo STPs Renovations and/or Expansions:

16   GWA shall develop a schedule for the performance of CPEs of the Agat, Baza Gardens, and

17   Umatac-Merizo STPs to identify performance-limiting factors and recommended improvements

18   needed to bring each of these STPs into compliance with their respective NPDES permit

19   requirements. The CPEs shall be performed by a qualified engineering firm experienced in

20   performing a CPE for wastewater treatment facilities. Each CPE shall be performed in

21   accordance with EPA guidelines for performing a CPE as described in the following

22   publications: *Handbook: Optimizing Water Treatment Plant Performance Using the Composite*

23   *Correction Program (CCP)* (EPA/625/6-91/027, August 1998); and *Handbook: Improving*

24   *POTW Performance Using the Composite Correction Program Approach* (EPA-625/6-84-008,

25   October 1984), or a later publication if available. The schedule shall include time frames for the

26   following: developing and completing a scope of work, initiating and completing the CPEs, and

27

28                                              29

1    submitting draft and final CPEs for the three STPs within one year after the Entry Date. Within

2    90 days after the Entry Date, GWA shall submit to EPA for review and approval the schedule

3    required by this Paragraph. GWA shall provide a copy of the document concurrently to Guam

4    EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments

5    in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and

6    shall perform the required tasks in accordance with the final schedule.

7         44.    Santa Rita Spring Booster Pump Station Rehabilitation: GWA shall develop a

8    schedule for commencing and completing the design and construction work for the Santa Rita

9    Spring Booster Pump Station rehabilitation. Construction shall be completed within one year

10   after the Entry Date. The design and rehabilitation shall be in accordance with the approved

11   GWA scope of work dated June 21, 2002. Within 60 days after the Entry Date, GWA shall

12   submit to EPA for review and approval the schedule required by this Paragraph. GWA shall

13   provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of

14   EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

15   provide the final schedule to EPA and Guam EPA, and shall perform the required tasks in

16   accordance with the final schedule.

17        45.    Rehabilitation/Replacement of Drinking Water Wells: GWA shall develop a

18   Drinking Water Wells Rehabilitation/Replacement ("DWWR") Plan for all of its drinking water

19   wells. The DWWR Plan shall include: (1) a detailed assessment of all of GWA's wells to

20   determine which wells require either rehabilitation or replacement; (2) criteria for prioritizing the

21   rehabilitation or replacement of wells, which will identify the most critical wells, taking into

22   consideration factors such as well capacity, operating records, any historical record of

23   bacteriological contamination at a well, and the presence or imminent threat of bacteriological

24   contamination and other contamination; and (3) time frames for developing and finalizing a

25   scope of work and design, as well as for commencing and completing rehabilitation or

26   replacement of the wells. GWA shall schedule all required work in two phases. The first phase

27

28                                              30

1  of work shall focus on the most critical wells identified in the DWWR Plan and shall require
2  rehabilitation and/or replacement of those critical wells within 2 years after the Entry Date. The
3  second phase of work shall include all other wells identified in the DWWR Plan and shall require
4  rehabilitation and/or replacement of those wells within five years after the Entry Date. Within
5  120 days after the Entry Date, GWA shall submit the DWWR Plan to EPA for review and
6  approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30
7  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
8  with Paragraph 2, shall provide the final DWWR Plan to EPA and Guam EPA, and shall perform
9  the required tasks in accordance with the schedule set out in the final DWWR Plan.

10 **VI.  Training at GWA**

11      46.  <u>Operator Training</u>: GWA shall develop an operator training program that
12 provides all POTW and public water system operators with information about the proper
13 operation and maintenance of the treatment, disinfection, and conveyance systems. Within 180
14 days after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall
15 provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of
16 EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall
17 provide the final program to EPA and Guam EPA, and shall implement the operator training
18 program.

19      47.  <u>Other Training</u>: GWA shall develop an ongoing training program for appropriate
20 staff in at least the following areas: utility management, financial administration, and planning.
21 GWA shall also offer the CCU training on risk mitigation and other appropriate and available
22 Board Trainings. Within one year after the Entry Date, GWA shall submit the program to EPA
23 for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30
24 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
25 with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement
26 the training program.

27

28                                                    31

## VII. Reporting Requirements and Notice Provisions

48. <u>Notice of Noncompliance or Delay</u>: If GWA becomes aware that it will not meet, or it is not likely to meet, any completion date for any compliance activity or deliverable required by this Stipulated Order for Preliminary Relief, or that it is not in compliance with a requirement of this Stipulated Order for Preliminary Relief, GWA shall submit written notification to the United States and EPA within one week of when GWA's General Manager becomes aware of such expected delay or noncompliance. The notice shall contain the following information: a description of the noncompliance or the expected delay, the reason for the noncompliance or the expected delay, an estimate of how much additional time is needed to complete the affected compliance activity or deliverable or to come into compliance, and a statement describing all steps taken to minimize the noncompliance or delay.

49. <u>Compliance Progress Reports</u>: GWA shall submit quarterly compliance progress reports to EPA and Guam EPA and make them available to the general public. The first quarterly progress report shall include a compliance schedule for all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief. Quarterly compliance progress reports shall include, but not be limited to, the following: GWA's progress toward completing compliance activities and deliverables required by this Stipulated Order for Preliminary Relief; reporting of compliance and/or noncompliance with schedules established for specific compliance activities and deliverables; explanations of noncompliance and actions taken or to be taken to address noncompliance; and a brief discussion of the status of efforts toward meeting future compliance schedule activities and deliverables required by this Stipulated Order for Preliminary Relief. When the long-term financial plan is approved by the PUC, GWA shall include an updated compliance schedule in the next quarterly compliance progress report that includes all anticipated construction activities and related construction schedules. The quarterly compliance progress report shall be due on or before January 28, April 28, July 28, and October 28, and shall cover activities in the preceding calendar quarter. The first quarterly compliance

32

progress report shall be due on the 28th calendar day following the first full quarter after the Entry Date.

      50.    Except as specified otherwise, when written notification to or communication with GWA, the Government of Guam, EPA, or the United States is required by the terms of this Stipulated Order for Preliminary Relief, it shall be sent via express mail or similar service with a return receipt requested, or, in the alternative, by both fax and e-mail, and addressed as follows:

GWA:
> General Manager
> Guam Waterworks Authority
> P.O. Box 3010
> Hagatna, Guam 96932
> Phone: (671) 479-7676
> Fax: (671) 479-7879
> e-mail: gwagm@ite.net

Government of Guam:

> Attorney General of Guam
> Guam Judicial Center, Suite 2-200E
> 120 West O'Brien Drive
> Hagatna, Guam 96910
> Fax: (671) 472-2493
> e-mail: law@mail.justice.gov.gu

EPA:
> Manager, Pacific Islands Office (CMD-6)
> U.S. Environmental Protection Agency, Region 9
> 75 Hawthorne Street
> San Francisco, CA 94105
> Fax: (415) 947-3560
> e-mail: machol.ben@epa.gov

United States:

> United States Attorney
> District of Guam
> Sirena Plaza
> 108 Hernan Cortez Ave., Suite 500
> Hagatna, Guam 96910
> Fax: (671) 472-7215
> e-mail: mikel.schwab@usdoj.gov

> Section Chief
> Environmental Enforcement Section
> D.J. Ref 90-5-1-1-06658 (Mullaney)
> U.S. Department of Justice

33

301 Howard Street, Suite 1050
San Francisco, CA 94105
Fax: (415) 744-6476
e-mail: robert.mullaney@usdoj.gov

51.     All notices and submissions to EPA shall be signed and affirmed by a responsible official of GWA or the Government of Guam using the following certification statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

## VIII.   EPA Access

52.     Any authorized representative of EPA, upon presentation of proper identification, shall have a right of entry to GWA's POTW and three public water systems at any reasonable time for the purpose of monitoring compliance with the provisions of this Stipulated Order for Preliminary Relief, including, but not limited to, inspecting equipment, inspecting and copying all records maintained by GWA, and testing and observing all discharges and drinking water. EPA's rights of inspection and entry under this Paragraph are in addition to, and in no way limit, EPA's rights of inspection and entry under the CWA, SDWA, or any other law.

## IX.    Stipulated Penalties

53.     Stipulated Penalties:

34

a.   Defendants shall pay stipulated penalties for failure to meet deadlines specified in this Stipulated Order for Preliminary Relief as specified below:

    i.   For failure to meet the deadlines specified in Paragraphs 1, 13, 18, 19, 24, 25, 26, 33, 34, 42, 43, 44, 45, and 47:

    -   $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

    ii.   For failure to meet the deadlines specified in Paragraphs 3, 4, 5, 6, 7, 14, 16, 17, 22, 23, 32, 38, 39, 40, and 46:

    -   $500 per day per violation for the first 30 days, $1,000 per day per violation for the following 30 days, and $2,000 per day per violation for each day thereafter.

    iii.   For failure to meet the deadlines specified in Paragraphs 8, 9, 10, 11, 12, 15, 20, 21, 27, 28, 29, 30, 31, 35, 36, 37, and 41:

    -   $1,000 per day per day per violation for the first 30 days, $2,000 per day per violation for the following 30 days, and $5,000 per day per violation for each day thereafter.

b.   Defendants shall pay stipulated penalties for failure to meet any other requirements of this Stipulated Order for Preliminary Relief as follows:

    -   $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

54.   Stipulated penalties shall begin to accrue on the day after performance is due and shall continue to accrue through the final date of completion even if no notice of the violation is sent to Defendants. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Stipulated Order for Preliminary Relief.

35

55.     Any stipulated penalty accruing pursuant to this Stipulated Order for Preliminary Relief shall be payable upon demand and due not later than 30 days after Defendants' receipt of EPA's written demand. Defendants shall pay the amount owed to the United States pursuant to this Stipulated Order for Preliminary Relief by certified or cashier's check in the amount due payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United States Attorney's file number 2002V00100, and delivered to the office of the United States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza, 108 Hernan Cortez, Hagatna, Guam 96910.

56.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

57.     If Defendants fail to pay stipulated penalties owed pursuant to this Stipulated Order for Preliminary Relief within 30 days of receipt of EPA's written demand, Defendants shall pay interest on the late payment for each day after the initial thirty day due date. The rate of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.

58.     Stipulated penalties are not the Plaintiff's exclusive remedy for violations of this Stipulated Order for Preliminary Relief. The United States expressly reserves the right to seek any other relief it deems appropriate, including, but not limited to, action for statutory penalties, contempt, or injunctive relief against Defendants.

## X.     **Force Majeure**

59.     Defendants shall perform all requirements of this Stipulated Order for Preliminary Relief in accordance with the time schedules set forth except to the extent, and for the period of time, that such performance is prevented or delayed by events which constitute a force majeure.

60.     For the purposes of this Stipulated Order for Preliminary Relief, a force majeure is defined as any event arising from causes beyond the control of Defendants and that cannot be overcome by diligent and timely efforts of Defendants, including their contractors. Economic hardship, lack of a political consensus, normal inclement weather, and increased costs of

36

1  performance shall not be considered events beyond the reasonable control of Defendants for
2  purposes of determining whether an event is force majeure. The requirement that Defendants
3  exercise diligent and timely efforts to fulfill their obligations includes using best efforts to
4  anticipate any force majeure event and best efforts to address the effects of any potential force
5  majeure event (1) as it is occurring and (2) following the potential force majeure events, such that
6  delay is minimized to the greatest extent possible.

7      61.     In the event of a force majeure, the time of performance of the activity delayed by
8  the force majeure shall be extended by EPA for the time period of the delay attributable to the
9  force majeure. An extension of one compliance date based on a particular incident does not
10 necessarily result in an extension of a subsequent compliance date or dates. Defendants must
11 make an individual showing of proof regarding each delayed incremental step or other
12 requirement for which an extension is sought. Defendants shall adopt all reasonable measures to
13 avoid or minimize any delay caused by a force majeure.

14      62.     When an event occurs or has occurred that may delay or prevent the performance
15 of any obligation under this Stipulated Order for Preliminary Relief, Defendants shall notify by
16 telephone the Manager, Pacific Islands Office, Region 9, (415) 972-3774, or the Guam Program
17 Manager, Pacific Islands Office, Region 9, (415) 972-3770, within 72 hours of Defendants'
18 knowledge of such event. If Defendants are unable to contact EPA Region 9, Defendants shall
19 notify by telephone the U.S. Attorney's Office for the District of Guam at 472-7332, extension
20 119 or 121. Telephone notification shall be followed by written notification made within seven
21 days of Defendants' knowledge of the event. The written notification shall fully describe: the
22 event that may delay or prevent performance; reasons for the delay; the reason the delay is
23 beyond the reasonable control of Defendants if they believe the event constitutes a force majeure;
24 the anticipated duration of the delay; actions taken or to be taken to prevent or minimize the
25 delay; a schedule for implementation of any measures to be taken to mitigate the effect of the
26 delay; and the time needed to implement any dependent activities. For purposes of this Section,

27
28                                              37

Defendants shall be deemed to have knowledge of anything they or their contractors knew or should have known.

63.     Failure of Defendants to comply with the force majeure notice requirements provided in Paragraph 62 for any delay in performance will be deemed an automatic forfeiture of their right to assert that the delay was caused by a force majeure.

64.     After receiving written notification from Defendants of a force majeure, EPA shall determine whether Defendants' request for delay is justified and EPA shall notify Defendants of its determination in writing.  EPA's failure to respond within 30 days to a request for delay by Defendants shall be deemed a denial of that request.  If Defendants disagree with EPA's determination, Defendants may initiate dispute resolution procedures pursuant to Section XI (Dispute Resolution).

65.     Defendants shall bear the burden of proving that any delay or violation of any requirement of this Stipulated Order for Preliminary Relief was caused by circumstances beyond their control, or any entity under their control, including consultants and contractors, and that Defendants could not have reasonably foreseen and prevented such violation.  Defendants shall also bear the burden of proving the duration and extent of any delay or violation attributable to such circumstances.

## XI.     **Dispute Resolution**

66.     The Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to the Stipulated Order for Preliminary Relief.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations by Defendants under this Stipulated Order for Preliminary Relief that have not been disputed in accordance with this Section.

67.     If Defendants dispute any determination made by EPA under this Stipulated Order for Preliminary Relief, Defendants shall send a written notice to EPA and DOJ outlining the nature of the dispute, submitting all supporting information and document relating to the dispute,

38

1 describing its proposed resolution, and requesting informal negotiations to resolve the dispute.
2 Such period of informal negotiations shall not extend beyond 15 days from the date when notice
3 was received by EPA and DOJ unless the parties agree otherwise in writing.

4       68.     If the informal negotiations are unsuccessful, the disputed determination by EPA
5 shall control, unless Defendants file a motion with this Court for dispute resolution. Any such
6 motion must be filed within 30 days after termination of informal negotiations and must be
7 concurrently sent to EPA and DOJ. The United States shall then have 30 days to respond to
8 Defendants' motion. In any such dispute resolution proceeding, Defendants bear the burden of
9 proving that EPA was arbitrary and capricious.

10 **XII.**   **Applicability**

11       69.     The provisions of this Stipulated Order for Preliminary Relief shall apply to and
12 be binding upon GWA, its officers, agents, employees, trustees, successors, and assigns, the
13 Government of Guam, its elected officials, officers, agents, employees, trustees, successors, and
14 assigns, and the United States, on behalf of EPA.

15 **XIII.**   **General**

16       70.     This Stipulated Order for Preliminary Relief is enforceable in all of its terms by
17 the Court.

18       71.     This Stipulated Order for Preliminary Relief is not and shall not be construed as
19 either an NPDES permit or a modification of any existing NPDES permit. By entering into this
20 Stipulated Order for Preliminary Relief, the United States does not warrant in any manner that
21 Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief
22 will result in compliance with the provisions of the CWA, the SDWA, and regulations
23 promulgated pursuant to those statutes. Defendants' complete compliance with the terms of this
24 Stipulated Order for Preliminary Relief does not affect or resolve the United States' claims for
25 civil penalties or permanent injunctive relief.

26       72.     This Stipulated Order for Preliminary Relief shall not affect GWA's obligation to

27

28                                         39

1  comply with its NPDES permits and with all applicable federal laws, regulations, and permits.

2  73.  This Stipulated Order for Preliminary Relief does not limit or affect the rights of

3  the United States or Defendants against any third parties, nor does it limit the rights of third

4  parties who are not parties to this Stipulated Order for Preliminary Relief.  In addition, this

5  Stipulated Order for Preliminary Relief is not to be construed as creating rights or obligations in

6  third parties.

7  74.  Each undersigned representative of Defendants and the Assistant United States

8  Attorney certifies that he is fully authorized to enter into the terms and conditions of this

9  Stipulated Order for Preliminary Relief, to execute the document, and to legally bind the party he

10  represents to this document.

11  **XIV.  Modification**

12  75.  There shall be no material modifications of this Stipulated Order for Preliminary

13  Relief without the written approval of the parties to this Stipulated Order for Preliminary Relief

14  and the approval of the Court.  All non-material modifications, which may include extensions of

15  the time frames and schedules for performance of the terms and conditions of this Stipulated

16  Order for Preliminary Relief, may be made by agreement of the parties and shall be effective

17  upon filing by the United States of such modifications with the Court.

18

19  **ORDER**

20

21

22  **IT IS SO ORDERED** this 4th day of _____June_____, 2003.

23

24

25

Notice is hereby given that this document was
entered on the docket on JUN - 5 2003.
No separate notice of entry on the docket will
be issued by this Court.
        Mary L. M. Moran
28  Clerk, District Court of Guam

By: _____ JUN - 5 2003
    Deputy Clerk        Date

_____
JOHN S. UNPINGCO
United States District Judge

40

RECEIVED

MAY 2 1 2003

DISTRICT COURT OF GUAM
HAGATNA, GUAM

**For the United States of America, Plaintiff:**

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

FREDERICK A. BLACK
United States Attorney
Districts of Guam and NMI
(671) 472-7332

Dated: 5/20/23

MIKEL W. SCHWAB
Assistant U.S. Attorney

OF COUNSEL:

KAREN PETERSON
Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

**For Guam Waterworks Authority and the Government of Guam, Defendants:**

Dated: 5/20/03

DOUGLAS B. MOYLAN
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagatna, Guam 96910
(671) 475-3324

Dated: 5/20/03

JON A. VISOSKY
Dooley Lannen Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
(671) 646-1222

41

RECEIVED
APR 11 2003
Public Utilities Commission
of Guam

## BEFORE THE GUAM PUBLIC UTILITIES COMMISSION

**GUAM WATERWORKS AUTHORITY**
**REGULATORY MATTERS**                    *[Miscellaneous Dockets]*

### ORDER

By this Order, duly considered at the Commission's April 10, 2003 meeting and by the affirmative vote of at least four Commissioners, the Commission takes action on a number of regulatory matters concerning Guam Waterworks Authority *[GWA]*. This Order addresses the following regulatory subjects:

### 1.  GWA Staffing Study [Docket 01-07].

On April 2, 2003 the Commission conducted a public hearing to consider Georgetown's staffing study of GWA. The study is mandated by P.L. 26-23 and by the Commission's September 13, 2001 Order. GWA filed no comments regarding the study. After discussion and on motion duly made, seconded and carried, the Commission orders that the study be approved. ALJ is authorized and directed to cause the publication of the study results in accordance with P.L. 26-23. For the record, the Commission notes advice from the Consolidated Commission on Utilities [CCU] that it intends to pursue legislation, which will relieve GPA and GWA from the staffing study requirements of P.L. 26-23.

### 2.  GWA/Navy Settlement [Docket 00-01].

CCU has informed the Commission that it is in the final stages of negotiations with Navy regarding the settlement of litigation for amounts owed by GWA to Navy for water services. Under the proposed settlement, GWA would pay Navy $9 million over 105 months with interest. CCU has proposed and requested that the surcharge, which was established by Commission order dated September 13, 2001; then placed under a one year moratorium by P.L. 26-81; and which is subject to automatic reactivation on May 6, 2003, be amended to permit its use to fund the Navy settlement in addition to regulatory fees and amounts owed to GPA. The Commission has informed CCU that at its request, the Commission would, on its own initiative, commence proceedings to consider this concept during the June 2003 regulatory session. In the event such a request is filed *[which may request consideration of other collateral rate issues]*, ALJ is authorized and directed to oversee prehearing activities, which will lead to June hearing.

ATCH A

### 3.  USA v. GWA [District Court Civil Case 02-035] [Docket 02-02]

Federal EPA and GWA are currently negotiating the terms of a stipulated order *[Stipulated Order]*, by which GWA, under EPA oversight, will undertake a broad initiative to restore it facilities and to provide safe, reliable, lawful service to the island. A copy of the proposed 37-page draft Stipulated Order was provided to the Commission for comment. Commission comments were submitted to the party litigants by Chairman Brooks' March 27, 2003 letter. EPA has since conferred with the Commission regarding the important role the Commission will serve under the Stipulated Order.

An issue raised by the Stipulated Order is the extent to which the Commission should be involved, under 12 GCA 12004 *[contract review authority]*, in reviewing and issuing prior approval of substantial GWA procurements, which are required by the Stipulated Order. After considering Georgetown's position on this issue *[GCG letter dated April 4, 2003]* and after discussion with its ALJ, on motion duly made, seconded and carried, the Commission finds that the essential purpose of section 12004 *[Commission review of reasonableness and prudence of proposed procurement]* is satisfactorily addressed by the history of the EPA litigation, the depth and scope of the Stipulated Order, and by the fact that EPA will serve a significant oversight role in the crafting and implementation of the various procurements. Accordingly, the Commission finds and orders that procurements required by the Stipulated Order shall not require Commission review and approval under its contract review protocol. The Commission wants to make a clear distinction, under the Stipulated Order between these procurements and the interim and final financial plans, which shall undergo a thorough Commission review and approval process.  This Commission decision is part of a broader initiative to reduce regulatory expense and to redefine the necessary scope of its regulatory authority, given the presence of the publicly elected CCU.

For the record, the Commission renews its commitment, as made in its March 14, 2002 Order, that it will provide GWA in a timely manner with adequate rate relief to enable it to comply with an EPA approved strategic plan to restore the utility and bring it into compliance with Federal law.

### 4.  GWA Water Service Charge.

By CCU email inquiry dated March 3, 2003, the Commission was made aware of controversy relating to GWA's practice of assessing a basic service fee for water service, without regard to whether water service is available to a customer.  By his March 13, 2003 letter, ALJ posed to GWA and Georgetown questions

regarding this practice and required responses by April 8. ALJ is authorized and empowered after reviewing these responses to determine whether this issue should be included as a matter for Commission consideration during the anticipated June rate hearing.

### 5. GWA Regulatory Compliance.

GWA is not in compliance with its obligations under the Commission's contract review protocol *[Commission Order dated February 20, 2000].*
Under separate order and as part of a reduction in regulatory work and expense, the Commission has announced a protocol under which it will attempt to rely on GWA reports in lieu of Georgetown studies regarding GWA accounts receivable, payables, financial condition and significant management initiatives. The

Commission has emphasized to CCU the importance of GWA providing this information in a complete and timely manner so that the Commission can discharge its surveillance duty under law.

GWA has also been reminded of the Commission's December 17, 1999 Administrative Order, which provides that a utility will not be awarded regulatory relief unless its regulatory account with the Commission is current. *[Pursuant to the terms of the surcharge established by Commission Order dated September 13, 2001 in Docket 00-01, Commission fees are to be paid from the surcharge proceeds. Accordingly, availability of funds is not an issue regarding the timely payment of regulatory fees.]*

GWA is cautioned that it must bring itself into full regulatory compliance in advance of the June regulatory session.

In light of the Stipulated Order discussed in paragraph 3 above, Commission order regarding GWA compliance with the terms and recommendations of the Commission's revenue cycle audit *[see Commission Consolidated Order dated December 11, 2001]* is abated until further notice. GWA is nevertheless encouraged to consider the audit recommendations as part of its reorganization activities.

Dated this 10th day of April 2003.

_____                    _____
**Terrence Brooks**                                   **Joseph McDonald**


_____                    _____
**Filomena Cantoria**                                 **Edward Crisostomo**