# ORIGINAL

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
JUN 06 2003
MARY L. M. MORAN
CLERK OF COURT

## UNITED STATES DISTRICT COURT
## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>GUAM WATERWORKS AUTHORITY<br>and the GOVERNMENT OF GUAM,<br><br>        Defendants. | CIVIL NO. 02-00035<br><br>**UNITED STATES'<br>OPPOSITION TO MOTION<br>TO INTERVENE**<br><br>Hearing Date: June 20, 2003<br>Time: 10:00 a.m. |

1    The United States filed a complaint in this action on December 20, 2002, seeking

2    injunctive relief and the assessment of civil penalties against the Guam Waterworks

3    Authority ("GWA") under the Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"),

4    and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA"). The

5    complaint included allegations against GWA pursuant to the emergency provisions of

6    both the CWA and SDWA -- Section 504 of the CWA, 33 U.S.C. § 1364, and Section

7    1431(a) of the SDWA, 42 U.S.C. § 300i(a) -- to address the imminent and substantial

8    endangerment to the health and welfare of persons presented by: (1) the numerous and

9    repeated discharges of untreated and inadequately treated wastewater from GWA's

10   treatment works, resulting in elevated levels of fecal coliform bacteria in both surface

11   waters and drinking water wells on Guam; and (2) serious deficiencies in GWA's public

12   water systems, causing contaminated water to be served to the public. The United States

13   also sought both civil penalties and injunctive relief under CWA Section 309(b) and (d),

14   33 U.S.C. § 1319(b) and (d), for violations of the CWA and the terms and conditions of

15   applicable National Pollutant Discharge Elimination System ("NPDES") permits, and

16   under SDWA Section 1414(b), 42 U.S.C. § 300g-3(b), for violations of the SDWA and

17   the National Primary Drinking Water Regulations. The United States joined the

18   Government of Guam ("GovGuam") as a statutory defendant in this action pursuant to

19   CWA Section 309(e), 33 U.S.C. § 1319(e).

20       In order to allow a period of time for negotiations with the defendants, the United

21   States agreed to delay service of the complaint for a 60-day period. The parties also

22   agreed to extend the time for answering the complaint to allow additional time for

23   negotiations.

24       After months of negotiations, the parties were able to reach an agreement on the

25   terms of a Stipulated Order for Preliminary Relief, which the United States filed with the

26   Court on May 21, 2003. The 41-page Stipulated Order contains a comprehensive set of

27

28                                        - 2 -

1  interim measures to address GWA's violations of the CWA and SDWA. Among other
2  things, the Stipulated Order includes a set of schedules requiring GWA to implement a
3  broad range of measures addressing GWA's management and organizational structures,
4  operations and maintenance, financial administration, as well as short-term construction
5  and rehabilitation projects.

6      On May 22, 2003, applicant Terri Davis filed a Notice of Motion and Motion to
7  Intervene in this action pursuant to Fed. R.Civ.P. 24(a). The motion was originally set for
8  hearing on June 13. However, after conferring with counsel for the parties in this case, the
9  motion was rescheduled for June 20. The applicant also filed a declaration with the Court
10 on June 3, 2003, stating that she did not oppose the Court's execution of the Stipulated
11 Order and requesting the Court to consider entering the Stipulated Order "so that the
12 myriad of interconnected steps required to revamp Guam's water system can begin as soon
13 as possible." Applicant's Declaration at p. 3. The Court signed the Stipulated Order and it
14 was entered on June 5, 2003.

15     The United States agrees that Section 505 of the CWA, 33 U.S.C. § 1365, allows a
16 citizen as a matter of right to intervene in a pending federal enforcement action against a
17 defendant. However, the United States opposes applicant's motion to intervene because
18 applicant's proposed complaint fails to assert valid substantive claims upon which the
19 applicant would be entitled to relief. Therefore, the United States respectfully requests
20 that the Court deny the motion to intervene and grant the applicant leave to amend her
21 proposed complaint to assert valid claims. The United States also requests the Court to
22 limit any future intervention to cognizable claims under the CWA and SDWA and to
23 subject any intervention to conditions to ensure the efficient conduct of these proceedings.[1]
24 It is imperative that intervention, if granted to any person, not be allowed to delay GWA's

25

26     [1] In a separate Stipulation, the United States, GWA, and GovGuam will propose a stay of
       litigation in this case to allow GWA to begin to implement the extensive injunctive measures set
27     out in the Stipulated Order that was entered by the Court on June 5, 2003.

28                                        - 3 -

1 implementation of the critical interim measures set out in the Stipulated Order.

2 **I.     The Motion to Intervene and Proposed Complaint**

3      In her motion to intervene, applicant Terri Davis asserts that she has a right to
4 intervention under Fed.R.Civ.P. 24(a)(1) because Section 505 of the Clean Water Act
5 confers an unconditional right to intervene. Alternatively, the applicant contends that she
6 has the right to intervene under Fed.R.Civ.P. 24(a)(2) because she claims an interest
7 relating to the subject of the case and she is so situated that the disposition of the matter
8 may as a practical matter impair or impede her ability to protect that interest, and her
9 interest is not adequately represented by the existing parties. As the court stated in United
10 States v. Akzo Coatings of America, Inc., 719 F. Supp. 571, 577 (E.D. Mich. 1989):
11 "[t]he real issue, however, is not under which doctrine the [applicant] is entitled to
12 intervene, but rather . . . whether the [applicant's] complaint asserts valid substantive
13 claims upon which the [applicant] would be entitled to relief."

14      The applicant's proposed complaint asserts the following six Claims for Relief:
15 (1) discharge without a permit; (2) improper operation and maintenance; (3) fraud and
16 misrepresentation (based on the fact that GWA did not report some overflows from a
17 specific pump station); (4) Government of Guam's liability based on 33 U.S.C. § 1319(e);
18 (5) imminent and substantial endangerment under 33 U.S.C. § 1364; and (6) imminent and
19 substantial endangerment under 42 U.S.C. § 300i. The complaint seeks the following
20 relief: (1) preliminary and permanent injunction; (2) appointment of a receiver; (3) an
21 order that GovGuam is liable to the extent its laws prevent GWA from complying; (4)
22 $600,000 for compensatory damages for loss of value of property; (5) or, alternatively, the
23 transfer of land equivalent in value for taking the property; (6) removal of the nuisance by
24 closing a nearby pump station; (7) punitive damages; and (8) attorney's fees. We will
25 address the viability of these claims and prayer for relief in Section IV below.

26

27

28                                    - 4 -

1   **II.    The District Court Lacks Subject Matter Jurisdiction over the Applicant's
           CWA Claims against Defendants unless the Applicant Can Establish the Basis
2          for a Claim for the Violation of an "Effluent Standard or Limitation."**

3          Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, governs citizen

4   suits under the CWA, providing in pertinent part:

5          a) Authorization; jurisdiction

6          Except as provided in subsection (b) of this section and Section 1319(g)(6) of this

7          title, any citizen may commence a civil action on his own behalf--

8          (1) against any person (including (i) the United States, and (ii) any other

9          governmental instrumentality or agency to the extent permitted by the eleventh

10         amendment to the Constitution) who is alleged to be in violation of (A) *an effluent*

11         *standard or limitation* under this chapter.

12         (b) Notice

13         No action may be commenced--

14         (1) under subsection (a)(1) of this section--

15                                         ....

16         (B) if the Administrator or State has commenced and is diligently prosecuting a

17         civil or criminal action in a court of the United States, or a State to require

18         compliance with the standard, limitation, or order, *but in any such action in a court*

19         *of the United States any citizen may intervene as a matter of right.*

20  (Emphasis added.)

21         Section 505(f) defines "effluent standard or limitation" to mean: "(1) . . . an

22  unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or

23  other limitation under Section 1311 or 1312 of this title; . . . (6) a permit or condition

24  thereof issued under Section 1342 of this title, which is in effect under this chapter." 33

25  U.S.C. § 1365(f). "Citizen" is defined to mean a person or persons having an interest

26  which is or may be adversely affected. 33 U.S.C. § 1365(g).

27

28                                         - 5 -

1  If a citizen can establish the basis for a claim for the violation of an "effluent

2  standard or limitation" as defined in CWA Section 505(f), the district court will have

3  subject matter jurisdiction over the applicant's CWA claim against a defendant. 33 U.S.C.

4  § 1365(a)(1); see Dubois v. Thomas, 820 F.2d 943, 946 (8th Cir. 1987) (court lacked

5  subject matter jurisdiction because plaintiff could not establish Administrator's failure to

6  perform a nondiscretionary act or duty under 33 U.S.C. § 1365(a)(2)). Similarly, when a

7  citizen alleges a violation of an "effluent standard or limitation," a citizen may intervene in

8  a federal enforcement action as a matter of right. United States v. Metropolitan St. Louis

9  Sewer District, 883 F.2d 54, 56 (8th Cir. 1989); U.S. EPA v. City of Green Forest, 921 F.2d

10  1394, 1402 (8th Cir. 1991); see also Northwest Environmental Advocates v. City of

11  Portland, 56 F.3d 979, 986 (9th Cir. 1995) (CWA Section 505 authorizes citizens to

12  enforce all NPDES permit conditions). However, as discussed below, when an applicant

13  does not allege a violation of an effluent standard or limitation, he or she has no claim and

14  no right to intervene.

15  **III.    Intervention under Rule 24 Requires the Applicant to State a Valid Claim for Relief.**

16  Fed.R.Civ.P. 24(c) requires an intervenor to state the grounds for the motion and to

17  attach a copy of the pleading setting forth the claim or defense for which intervention is

18  sought. In amending Fed.R.Civ.P. 24, the Advisory Committee on Rules stated that

19  intervention of right under the Rule "may be subject to appropriate conditions or

20  restrictions responsive among other things to the requirement of efficient conduct of the

21  proceedings." Fed.R.Civ.P. 24 advisory committee notes (1966). As the court noted in

22  Rhode Island Fed'n of Teachers, AFL-CIO v. Norberg, 630 F.2d 850, 854-55 (1st Cir.

23  1980):

24  Whether of right or permissive, intervention under Rule 24 is conditioned by the

25  Rule 24(c) requirement that the intervenor state a well-pleaded claim or defense to

26  the action . . . . Although the requirement that the intervenors' legal theory have

27

28  - 6 -

1   some merit in the case in which they seek to intervene places a burden on the
2   intervenors, the burden is justified by the possibility that the intervention will
3   obstruct or delay vindication of the rights of the original parties.

4  Because intervention is conditioned by Rule 24(c)'s requirement that the intervenor assert
5  a valid substantive claim for relief, the court must analyze each count of the proposed
6  complaint to determine if it states a valid claim for relief. Akzo Coatings of America, Inc.,
7  719 F. Supp. at 577. Although Rule 24 traditionally receives liberal construction in favor
8  of applicants for intervention, courts should be guided primarily by practical and equitable
9  considerations. See Arakaki v. Cayetano, 2003 WL 21058258 at *3, *9 (9th Cir.)
10 (denying motion to intervene under Rule 24(a)(2) because State adequately represented
11 applicant's interest). With these concepts in mind, the United States reviews each claim in
12 Section IV.

13

14 **IV. The Proposed Complaint Fails to State a Valid Claim for Relief.**

15     The First Claim for Relief relates to wastewater discharges without a permit, and
16 incorporates allegations from the United States' complaint. However, the First Claim also
17 includes specific allegations that discharges from GWA's Tai Mangilao pump station (the
18 "Tai pump station") routinely overflows across applicant's property, endangering her
19 health and reducing the value of her property. Applicant alleges that the overflow of
20 sewage constitutes a "taking" of her property and seeks $600,000 in compensation for the
21 conversion of her property. Similarly, the Second Claim alleges that GWA failed to
22 properly operate and maintain the Tai pump station, endangering her health and severely
23 impacting the current market value of her property.

24     Both the First and Second Claims could be restated to properly allege CWA
25 violations for discharge without a permit and failure to properly operate and maintain the
26 pump station. However, as currently drafted, the allegations in the proposed complaint do
27

28                                                      - 7 -

1  not state a valid claim under the CWA. Section 309 of the CWA provides only for
2  injunctive relief, criminal penalties, and civil penalties to be paid to the U.S. Treasury. 33
3  U.S.C. § 1319(b), (c), and (d). CWA Section 505 does not authorize private plaintiffs to
4  recover damages for violations of the Clean Water Act. Evansville v. Kentucky Liquid
5  Recycling, Inc., 604 F.2d 1008, 1014 (7th Cir. 1979); Philadelphia v. Stepan Chemical Co.,
6  544 F. Supp. 1135, 1145-46 (E.D. Pa. 1982). Accordingly, the motion to intervene should
7  be denied as to the First and Second Claims with leave to amend.

8        The Third Claim alleges fraud and misrepresentation by GWA based on its failure
9  to report nine spills at the Tai pump station. Applicant also alleges that the failure to
10 report violates the CWA. This Claim could be restated as a failure to report in violation of
11 GWA's NPDES permit. As currently drafted, the Claim adds allegations of fraud and
12 misrepresentation, which are state law claims not covered by the CWA. The United States
13 requests the Court to deny the motion to intervene as to the Third Claim with leave to
14 amend to plead only permit violations.

15       The Fourth Claim alleges GovGuam's liability under CWA Section 309(e). 33
16 U.S.C. § 1319(e). The Territory of Guam is defined as a "State" and GWA is defined as a
17 "municipality" under the CWA. 33 U.S.C. § 1362(3) and (4). The plain language of
18 Section 309(e) precludes an action by the applicant: "[w]henever a municipality is a party
19 to a civil action *by the United States under this section*, the State in which such
20 municipality is located shall be joined as a party." 33 U.S.C. § 1319(e) (emphasis added).
21 Applicant's action is neither a civil action by the United States nor brought under Section
22 309. Because Section 309(e) does not grant any implied right of action to citizens and is
23 not an "effluent standard or limitation" under CWA Section 505(f), the motion to
24 intervene should be denied as to the Fourth Claim.

25       The Fifth Claim alleges an imminent and substantial endangerment under CWA
26 Section 504 and the Sixth Claim alleges an imminent and substantial endangerment under

27

28                                              - 8 -

1  SDWA Section 1431.[2] The Fifth and Sixth Claims do not state viable claims under CWA
2  Section 505 or 42 U.S.C. § 300j-8. As the court stated in United States v. Hooker
3  Chemicals & Plastics Corp., 749 F.2d 968, 978 (2nd Cir. 1984), intervention is limited to
4  government-initiated actions that could have been brought by the individual but for the
5  government action. However, only EPA's Administrator is authorized to bring an action
6  under the emergency powers provisions of CWA Section 504 and SDWA Section 1431.
7  Because a citizen cannot commence an action under either of these emergency powers
8  sections, a citizen does not have a statutory right to intervene in a government-initiated
9  action under those provisions. Id. at 978-79; see also Committee for Consideration of
10 Jones Falls Sewage System v. Train, 387 F. Supp. 526, 529 (D.Md. 1975) (EPA
11 Administrator's exercise of emergency powers under CWA Section 504 is discretionary
12 and cannot be the basis for a citizen suit action under CWA Section 505). Therefore, the
13 motion to intervene should be denied as to the Fifth and Sixth Claims.

14      For the reasons stated above, the applicant's prayer for relief is also defective.
15 Among other things, it impermissibly relies on CWA Section 504 and SDWA Section
16 1431 as the basis for applicant's injunctive relief claim and purports to hold GovGuam
17 liable under CWA Section 309(e). In addition, applicant requests relief that is not
18 available under the CWA such as compensatory damages, transfer of property, and
19 punitive damages. The Court should therefore strike the prayer for relief.

20

21 **V.   Intervention by a Citizen Should Not be Permitted to Interfere with Federal**
       **Enforcement.**
22

23      Congress created a private right of action in CWA Section 505 that is intended to
24 supplement federal enforcement by allowing citizens to bring actions directly against

25

26      [2] Applicant does not rely on 42 U.S.C. § 300j-8, the citizen suit provision of the SDWA,
27 in her proposed complaint.

28                                        - 9 -

1  violators. However, the Clean Water Act is "not intended to enable citizens to
2  commandeer the federal enforcement machinery." Dubois, 820 F.2d at 949; see also
3  Gwaltney v. Chesapeake Bay Found., 484 U.S. 49, 50 (1987) (bar on citizen suits when
4  governmental enforcement action is underway suggests that the citizen suit is intended to
5  supplement rather than supplant governmental action).    The commencement of a civil
6  action against GWA and GovGuam was a discretionary act by the EPA Administrator
7  under CWA Section 309(b). 33 U.S.C. § 1319(b) ("The Administrator is authorized to
8  commence a civil action . . . ."). Ultimately, the settlement of an action is also within
9  EPA's discretion.  Therefore, even if citizens are permitted to intervene under CWA
10 Section 505, they still would not be "able to compel a consent decree on their own terms."
11 City of Green Forest, 921 F.2d at 1402; See United States  v. Ketchikan Pulp Co., 430 F.
12 Supp. 83, 85 ("once intervenors have been given the opportunity to object to the decree
13 they have had an appropriate day in court and a judgment on consent may be entered");
14 United States  v. District of Columbia, 933 F. Supp. 42, 47 (D.D.C. 1996) (noting that
15 intervenor's right to have objections heard does not give intervenor right to block any
16 settlement to which it objects).  Otherwise, citizen intervention could "wreak havoc upon
17 governmental enforcement actions," Ketchikan Pulp Co., 430 F. Supp. at 85, by requesting
18 inconsistent relief or a different schedule for relief.

19      The United States, GWA, and GovGuam spent several months crafting the
20 Stipulated Order to address the considerable structural, managerial, operational, and
21 financial problems faced by GWA.  The Stipulated Order contains a complex set of
22 schedules to implement programs to start GWA on the path of rehabilitating its system.
23 The Stipulated Order was entered by the Court on June 5, 2003.  If the Court decides to
24 permit intervention by the applicant or another citizen, the United States requests the Court
25 to condition such intervention to protect the parties from undue interference.  At this point,
26 the United States believes that financial and human resources at GWA need to be directed
27
28                                      - 10 -

1  at implementing the measures set out in the Stipulated Order. Accordingly, the United
2  States proposes that any intervenor be required to abide by the scheduling order proposed
3  by the parties, including any stay of this current litigation to permit GWA to implement the
4  measures in the Stipulated Order.

5

6  **VI.  Conclusion**

7  For the reasons stated above, the United States requests the Court to deny the
8  motion to intervene, limit any future intervention to cognizable federal claims under the
9  CWA and SDWA, and subject any such intervention to conditions to ensure the efficient
10 conduct of these proceedings.

11

12                                        Respectfully submitted,

13

14                                        LEONARDO M. RAPADAS
                                          United States Attorney
15

16 Dated: **6-6-03**

17                                        MIKEL W. SCHWAB
                                          Assistant U.S. Attorney
18
                                          Attorneys for Plaintiff
19                                        UNITED STATES OF AMERICA

20

21                              CERTIFICATION

22  I, FRANCES B. LEON GUERRERO, secretary working in the United States

    Attorney's Office, hereby certify that copies of the United States' Opposition to Motion to
23
    Intervene were served by personal service and facsimile to the attorney of record at the
24
    following address:
25

26  Dated: June 6, 2003.

                                          FRANCES B. LEON GUERRERO
27                                        Legal Assistant

28