ORIGINAL

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
SEP 26 2003
MARY L. M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL NO. 02-00035 |
| ) | |
| Plaintiff, ) | **UNITED STATES' REQUEST** |
| v. ) | **FOR STATUS CONFERENCE** |
| GUAM WATERWORKS AUTHORITY ) | |
| and the GOVERNMENT OF GUAM, ) | |
| ) | |
| Defendants. ) | |

## I. The Complaint and the Stipulated Order

The United States filed a complaint in this action on December 20, 2002, seeking injunctive relief and the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA"). The complaint included allegations against GWA pursuant to the emergency provisions of both the CWA and SDWA -- section 504 of the CWA, 33 U.S.C. § 1364, and section 1431(a) of the SDWA, 42 U.S.C. § 300i(a) -- to address the imminent and substantial endangerment to the health and welfare of persons presented by: (1) the numerous and repeated discharges of untreated and inadequately treated wastewater from GWA's treatment works, resulting in elevated levels of fecal coliform bacteria in both surface waters and drinking water wells on Guam; and (2) serious deficiencies in GWA's public water systems, causing contaminated water to be served to the public. The United States also sought both civil penalties and injunctive relief under CWA section 309(b) and (d), 33 U.S.C. § 1319(b) and (d), for violations of the CWA and the terms and conditions of applicable National Pollutant Discharge Elimination System ("NPDES") permits, and under SDWA section 1414(b), 42 U.S.C. § 300g-3(b), for violations of the SDWA and the National Primary Drinking Water Regulations. The United States joined the Government of Guam as a statutory defendant in this action pursuant to CWA section 309(e), 33 U.S.C. § 1319(e).

After months of negotiations, the parties were able to reach an agreement on the terms of a Stipulated Order for Preliminary Relief, which the United States filed with the Court on May 21, 2003. The 41-page Stipulated Order contains a comprehensive set of interim measures to address GWA's violations of the CWA and SDWA. Among other things, the Stipulated Order includes a set of schedules requiring GWA to implement a broad range of measures addressing GWA's management and organizational structures, operations and maintenance, financial administration, as well as short-term construction and rehabilitation projects. The Stipulated Order was entered by the Court on June 5, 2003.

## II. Bill No. 97 (COR)

The United States is informed that Bill No. 97 (COR), "An Act to Extend the Moratorium on the Guam Waterworks Authority Rate Surcharge of 11.5%," will be considered by the Guam Legislature on September 29, 2003. Bill No. 97 would prohibit GWA from raising its rates or imposing a surcharge "if such increase or surcharge is intended, in whole or in part, to pay for past due obligations by GWA to any vendor, including power consumption or the purchase of water from water providers." We have attached a copy of this Bill for the Court's information as Attachment A.

The United States, GWA, and the Government of Guam spent several months crafting the Stipulated Order to address the considerable structural, managerial, operational, and financial problems faced by GWA. Regarding GWA's financial management, the Stipulated Order obligates the Government of Guam and GWA to submit, by October 3, 2003, an Interim Financial Plan that details how GWA will generate revenue. The Plan, which must include any necessary rate adjustment, shall ensure revenues are "sufficient to cover the cost of compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses . . . *including all existing debt and expected debt service* . . . ." Stipulated Order at ¶ 28 (emphasis added).

The Stipulated Order contains a complex set of schedules to implement programs to start GWA on the path of rehabilitating its system. In order to finance the rehabilitation of its system, GWA needs to be able to issue bonds to pay for critical construction projects. If Bill No. 97 becomes law, however, GWA's ability to pay for its existing debt could be jeopardized. If GWA defaults on its obligations to pay its vendors, it is unlikely that GWA would be able to secure the bond financing necessary to meet its obligations under the Stipulated Order. Without bond financing, GWA would need to raise rates dramatically to directly fund the capital improvements needed to address the drinking water and wastewater emergency currently facing the people of Guam.

- 3 -

The United States' concern about passage of Bill No. 97 is based on recent experience with GWA and the Guam Legislature. The U.S. Environmental Protection Agency ("EPA") entered into an Administrative Order on Consent ("AOC") in August 2001 with GWA and the Government of Guam that covered all of GWA's sewage treatment plants. The AOC contained a Finding of Violation that documented GWA's history of NPDES violations and unauthorized discharges and spills. It also required GWA to submit a financial plan and a compliance schedule for its sewage treatment plants and wastewater collection and conveyance systems to bring them into compliance with the NPDES permits and the CWA.

In February 2002, GWA submitted to EPA a financial plan and compliance schedule, explaining how GWA would secure funds for the projects and stating when the projects would occur. One month later, Guam's Governor signed Bill 282, authorizing a short-term debt of $21 million for GWA to implement the projects. The short-term debt was predicated on GWA's ability to raise users' rates to support the issuance of a bond. In May 2002, however, the Guam Legislature, overriding the Governor's veto, passed a law prohibiting GWA from raising user rates for one year. As a result of this legislative moratorium on rate increases, GWA did not have the financial resources to comply with the AOC, and GWA's violations of the CWA continued unabated until this lawsuit was filed.

As the Ninth Circuit concluded, a valid state law cannot stand in the way of a federal court's remedial scheme if an action is essential to enforce the scheme. Hook v. Ariz. Dept. of Corrections, 107 F.3d 1397, 1402 (9th Cir. 1997). A legislative moratorium on GWA's rate increases or surcharges would seriously undermine GWA's ability to comply with its obligations under the Stipulated Order. In order to assess this issue, we respectfully request the Court to: (1) set a status conference in this case, and (2) direct Defendants GWA and the Government of Guam to submit a report to the Court explaining the impact of Bill No. 97 and its effect on

- 4 -

1 | Defendants' ability to comply with the Stipulated Order for Preliminary Relief in this case.
2
3 |         Respectfully submitted,
4
5 |         LEONARDO M. RAPADAS
        United States Attorney
6 |         Districts of Guam and the NMI
7 | Dated: 9/26/03
8 |         MIKEL W. SCHWAB
        Assistant U.S. Attorney
9
        THOMAS L. SANSONETTI
10 |         Assistant Attorney General
        Environment & Natural Resources Division
11
        ROBERT D. MULLANEY
12 |         Environmental Enforcement Section
        Environment & Natural Resources Division
13 |         United States Department of Justice
14 |         Attorneys for Plaintiff
        UNITED STATES OF AMERICA

- 5 -

# TWENTY-SEVENTH GUAM LEGISLATURE
## 2003 (FIRST) Regular Session

**Bill No. 97 (COR)**

Introduced by:  Mark Forbes
_____

**AN ACT TO EXTEND THE MORATORIUM ON THE GUAM WATERWORKS AUTHORITY RATE SURCHARGE OF 11.5%.**

**BE IT ENACTED BY THE PEOPLE OF GUAM:**

**Section 1. Intent.** On May 10, 2002, Public Law 26-81 was enacted, placing a one-year moratorium on the implementation of an 11.5% surcharge on water bills by the Guam Waterworks Authority. This moratorium was enacted for two reasons. The first was that economic conditions made the payment of the surcharge a hardship for many of our people. The second was that the surcharge was intended to pay for overdue power bills on the part of GWA, and not for any improvements to the water or wastewater systems of Guam. The Legislature found that the application of a surcharge upon the ratepayers of Guam, solely for the purpose of paying GWA due obligations to the GPA, was in effect making the ratepayers pay for GWA's poor management decisions.

Recently, GWA announced that it would proceed with the implementation of the 11.5% surcharge, and further, would apply the surcharge yet again towards unpaid bills on the part of GWA. The Legislature finds that conditions are unchanged from a year ago, when P.L. 26-81 became law, and the moratorium against this type of surcharge must be extended.

**Section 2.** Section 2 of Public Law 26-81 is amended to read:

"**Section 2. Abolishment of GWA's Surcharge.** GWA's eleven and one half percent (11.5%) surcharge, approved by the Public Utilities Commission ("PUC") in the PUC's decision and order dated September 13, 2001 in Docket Number 00-01, is hereby abolished for ~~the~~ a ~~period of the moratorium mandated by section 3 of this Act~~ **of three (3) years**."

Section 3. Section 3 of Public Law 26-81 is amended to read:

"Section 3. Moratorium on All Rate Increases or New Surcharges by GWA. There shall be a ~~one (1) year~~ **two (2) year** moratorium on any rate increase, or new or increased surcharge billed by GWA for services it provides to its customers**, if such increase or surcharge is intended, in whole or in part, to pay for past due obligations by GWA to any vendor, including power consumption or the purchase of water from water providers**." GWA shall not bill its customers for any increase in rates or new or increased surcharge for ~~one (1) year~~ **two (2) years, if such increase or surcharge is intended, in whole or in part, to pay for past due obligations by GWA to any vendor, including power consumption or the purchase of water from water providers**."

Attachment A

## CERTIFICATION

I, Marie Chenery, Paralegal working in the United States Attorney's Office, hereby certify that copies of the United States' Request for Status Conference were served by facsimile and personal service to the attorneys of record at the following addresses:

    Anthony R. Camacho
    Staff Attorney
    CCU/GPA/GWA
    1911 Route 16
    Harmon, GU 96913
    Facsimile No. (671) 647-9224

    Douglas B. Moylan
    Attorney General of Guam
    Guam Judicial Center, Suite 2-200E
    120 West O'Brien Drive
    Hagåtña, GU 96910
    Facsimile No. (671) 472-2493

Dated: September 26, 2003

*Marie Chenery*
MARIE CHENERY
Paralegal