FILED
DISTRICT COURT OF GUAM

SEP 30 2003

MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Case No. 02-00035 |
| Plaintiff, | |
| vs. | |
| GUAM WATERWORKS AUTHORITY and GOVERNMENT OF GUAM, | MINUTES |
| Defendants. | |

(  ) SCHEDULING CONFERENCE          (  ) PRELIMINARY PRETRIAL CONFERENCE

(  ) FINAL PRETRIAL CONFERENCE      ( ✓ ) STATUS CONFERENCE
(September 30, 2003 9:50 am - 10:40 am)

**Notes**: AUSA Mikel Schwab and SAUSA Edward Lynch appeared for the United States, while Robert D. Mullaney participated telephonically. Attorney Anthony Camacho appeared on behalf of Guam Waterworks Authority and the Consolidated Commission on Utilities ("CCU"). Assistant Attorney General Eric Heisel appeared on behalf of the Government of Guam.

Attorney Camacho apprised the Court and counsel of the September 29, 2003 public hearing held before the Guam Legislature on Bill 97. Attorney Camacho provided the parties with copies of the testimonies of the CCU and the Public Utilities Commission in opposition to the passage of Bill 97. See attached Exhibits A[1] & B.

---

[1] Exhibit A contains handwritten notations by Attorney Camacho on the first page.

1    The Court and the parties discussed the potential effects of Bill 97 and the options

2  available to the Court should Bill 97 eventually become law.  The Court then ordered the

3  parties to submit memoranda or briefs discussing their respective positions on the matter.

4  Attorneys Schwab and Camacho shall submit their status reports by Friday, October 3, 2003.

5  Attorneys Lynch and Heisel shall submit their status reports no later than Thursday, October 9,

6  2003.  Thereafter, the Court shall take all appropriate and necessary measures to enforce the

7  agreement entered into by the parties.

8    DATED this 30th day of September, 2003.

9

10

11    JUDITH P. HATTORI
     Law Clerk

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Honorable members of the Legislature,

Buenas yan Hafa Adai.

We come before you this morning wishing we could support the intent of Bill 97. We understand the concerns and frustrations with Guam Water Works Authority's (GWA) inability to provide our ratepayers with the service they deserve that lies at the heart of the intent of Bill 97. Unfortunately, the ability of GWA to correct past mismanagement, become financially solvent and begin the reconstruction of the system that should have been on-going cannot successfully occur if Bill 97 becomes law.

While the CCU would love nothing better than to lower rates or keep them where they are, cost cutting alone will not create enough of the funds needed to fix GWA. Achieving financial solvency to fix GWA requires both major cost cuts and reasonable rate hikes.

*30 million*

Since GWA became autonomous in 1998, GWA has lost well over twenty million dollars. In FY 2003, GWA is still expected to lose money. The aging system falters daily, a fact that doesn't change just because there is new management and renewed focus. It's not enough that payroll has been reduced from 330 employees one year ago to 260 today. It is not enough that a payroll of $16 million three years ago is now down to $12 million.

The millions in payroll and other cost cuts we have undertaken will allow GWA to break even in FY 2004, so that we stop losing money. Most importantly, these cuts will allow the revenues raised from the proposed rate increases to create the new cash flow necessary to begin to finance the reconstruction of the system so badly needed.

As you all know, GWA is now under federal court order to comply with federal laws that will require major investment in the repairs needed to achieve compliance. Preliminary estimates suggest as much as $220 million may be needed to insure GWA meets all future clean water and safe drinking water requirement and, most importantly, provide reliable service to ratepayers.

Unfortunately, it took a EPA federal court order to force GWA to begin solving problems that we should have been solving in the first place. The Court supervised compliance with the EPA lawsuit actually helps protect ratepayers because if GWA does not meet the court order, the Court will simply put GWA in receivership and bring in a third party to do the job we should be doing already. For now, the Court has agreed to allow GWA to be managed under local policy created by this body that empowers an elected CCU to operate GWA.

This past Friday, however, the U.S. Attorney advised the Court of the potential of Bill 97 to place in GWA in non-compliance with two different court orders involving federal

*EXHIBIT A*

EPA and the U.S. Navy. A copy of that federal government filing is attached. In the filing, the U.S Attorney specifically cites a Stipulated Order requirement for GWA to have revenues "sufficient to cover the cost of compliance... as well as any other anticipated expenses...including all existing debt and expected debt service...". Bill 97 would prevent GWA from meeting this EPA court order requirement.

GWA is also required by court order and a 2001 Public Utilities Commission (PUC) order to address its debt to the Navy and the Guam Power Authority (GPA). The CCU is not happy that we inherited a water utility with large debts to the U.S. Navy and GPA. However, we have a legal obligation to pay these debts that does not go away just because we wished we could just blame it on past management but not be required to pay for it. Furthermore, if GWA is prohibited from using surcharge revenues to pay GPA and the Navy, GWA will be forced to reduce its budget for capital projects. This will further delay the ability of GWA to improve service.

The PUC has also expressed great concern with Bill 97 as it affects their ability to independently set appropriate rates (also enclosed). When GPA first went to raise money and take over the island power system in the eighties, Congress specifically noted that it was reluctant to approve the takeover without the establishment of an independent rate making authority. The Congress stated "...GPA's financial viability has been tenuous, primarily caused by the Guam Legislature's interference in rate setting."[1] GPA's bond covenants also require an independent PUC to set rates.

Currently, GWA does not have a bond rating. In order for GWA to obtain an investment quality rating, GWA will need to demonstrate an ability to repay large principal and interest obligations. One element that rating agencies will be looking for is a history of independent rate actions by the PUC. If the Guam Legislature takes this action to abolish a duly executed rate, it will discourage rating agencies and lenders from financing GWA.

The CCU also is actively pursuing bids to see if private contractors can better run the system, help provide financing and delay or reduce the size of future rate increases. There is a real opportunity to see if private contractors can save money for ratepayers. Private contractors, however, will not pursue opportunities with GWA if GWA rates cannot be independently sustained.

Bill 97 also could cause an unfortunate shift of obligations from GWA's ratepayers to GPA's ratepayers. If GPA is not able to recover its costs of operation as a result of non-payment of amounts owed by GWA, the PUC will undoubtedly require the surcharge be collected from GPA customers. There is historical precedent for this in that the PUC established a Water Well Tariff (Tariff E) to be assessed to the Guam Waterworks Authority (then PUAG) for the costs of purchasing, housing, and maintaining generators at GWA water wells. When GWA proved unable to secure and maintain the pumps. the legislature required GPA to purchase, install and maintain generators and housings at the

---

[1] United States House of Representatives Conference Report 98-1159 at p. 253

pump stations.[2] The PUC established a water well surcharge which remains on GPA customer billings to this day.

While Bill 97 causes these problems, the CCU supports the intention of the Bill to insure new rates fund new improvements. When the CCU recently authorized GWA to petition the Public Utilities Commission for rate relief, a condition was attached to the funds. The CCU required that all funds from future rate increases be segregated and used only to pay for capital improvement projects and related financing costs. Thus, there is already a public commitment for future rate increases to be used solely for investments into the system.

The CCU continues to look for every way possible to reduce costs, manage more effectively, and turn GWA around. We seek your continued input and support in finding the best solutions for GWA customers. If there are better ways to solve a problem the CCU remains open to your guidance and viewpoint. We know full well that all of you want the same results for GWA ratepayers that the CCU wants. While Bill 97 may not move us forward the way we would like, its intentions are well understood by the CCU. We remain committed to working with policymakers in transforming GWA and GPA into reliable utilities that provide excellent service at the lowest costs possible to ratepayers. It will take continued hard work and the solutions may not come easily or cheaply but they will come. Too many people now are rightfully demanding GWA succeed to allow GWA to fail again.

---

[2] Public Law No. 21-133

## BEFORE THE GUAM PUBLIC UTILITIES COMMISSION

## Resolution

**WHEREAS**, in 1989, the Guam Public Utilities Commission [PUC], was reestablished under Guam law as a rate making authority, independent of the Executive Branch, to satisfy a Federal condition for merging Guam and Navy's power and transmission assets and for the military becoming a Guam Power Authority [GPA] customer. The United States Congress determined that it was reluctant to authorize this merger without the establishment of an independent rate making authority because "… GPA's financial viability has been tenuous, primarily caused by the Guam Legislature's interference in rate setting". *[U.S. House of Representatives Conference Report 98-1159 at p. 253]*.

**WHEREAS**, GPA lenders have required as a bond covenant that the Governor and the Guam Legislature pledge that PUC's independent rate making authority will not be impaired. Lenders have historically required assurance that GPA would be awarded rates, which were adequate to enable it to comply with its bond covenants.

**WHEREAS**, on May 12, 2003, a Consent Decree was entered by Federal District Judge Unpingco in *USA v. Government of Guam, et. al. [Civil Case 99-102]*, which binds the Government of Guam, the Consolidated Commission on Utilities and the Guam Waterworks Authority [GWA] to pay the $9 million dollar judgment, with interest, to U.S. Navy pursuant to the payment schedule established in the Consent Decree. By Order dated June 23, 2003, PUC extended the term of the revenue stream of a surcharge established in 2001, to enable GWA to comply with the terms of the Consent Decree[1]. By its execution of the Consent Decree, the Government of Guam agreed to comply with its terms.

**WHEREAS**, on June 5, 2003 Federal District Judge Unpingco, entered a Stipulated Order for Preliminary Relief in *United States of America v. Guam Waterworks Authority and the Government of Guam [Civil Case 02-35]*, which establishes a timetable and process under which GWA must restore its water and wastewater systems into compliance with Federal law. By its execution of the Stipulated Order, the Government of Guam agreed to comply with its terms. The Stipulated Order mandates that PUC provide GWA with adequate rates to

---

[1] By Order dated September 13, 2001, PUC established a surcharge to enable GWA to retire its obligation to GPA for power services. This surcharge was abated for one year by P.L. 26-81 and was automatically reactivated in May 2003. By its June 23, 2003 Order, PUC extended the term of the surcharge to enable GWA to also use it to pay its obligations to Navy pursuant to the Consent Decree.

*EXHIBIT B*

5. The enactment of Bill 97 would have a chilling effect on GWA's ability to access from the financial market place the $200 million dollars, which will be necessary to restore its water and wastewater systems pursuant to the requirements of the Stipulated Order and of Federal law. A chilling effect is anticipated given lenders' discomfort with political interference in the ratemaking process.

**NOW, THEREFORE**, in due consideration of the above findings, for good cause shown, and on motion duly made, seconded and carried by the affirmative vote of the undersigned Commissioners at a duly noticed and convened meeting held on September 24, 2003, the Guam Public Utilities Commission **ORDERS THAT**:

1. This resolution be and is hereby adopted.

2. PUC's administrator shall cause copies of this resolution to be promptly delivered to Guam Waterworks Authority, to the Consolidated Commission on Utilities, to Guam Power Authority, to the Attorney General of Guam, to the Governor of Guam, to the U.S. Environmental Protection Agency and to the 27th Guam Legislature.

Dated this 24th day of September 2003.

Signature blocks