# ORIGINAL

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

AUG - 9 2004

MARY L. M. MORAN
CLERK OF COURT

## UNITED STATES DISTRICT COURT
## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 02-00035 |
| Plaintiff, | STIPULATION AND ORDER |
| v. | AMENDING STIPULATED |
| GUAM WATERWORKS AUTHORITY and the GOVERNMENT OF GUAM, | ORDER FOR PRELIMINARY RELIEF |
| Defendants. | |

1    WHEREAS, the United States of America filed a civil action seeking injunctive relief and
2    the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the
3    Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42
4    U.S.C. §§ 300f - 300j-26 (the "SDWA");

5    WHEREAS, the Government of Guam is identified in the Complaint as a defendant as
6    required by CWA Section 309(e), 33 U.S.C. § 1319(e);

7    WHEREAS, the parties agreed that entry of a Stipulated Order for Preliminary Relief
8    ("Stipulated Order"), which was approved and filed by the Court on June 5, 2003, was the most
9    appropriate way to require the immediate implementation of short-term projects and initial
10   planning measures by GWA and the Government of Guam (jointly "Defendants") to begin to
11   address issues of compliance at GWA's Publicly Owned Treatment Works and three public water
12   systems;

13   WHEREAS, the Stipulated Order provides that: (1) there shall be no material
14   modifications of the Stipulated Order without the written approval of the parties to the Stipulated
15   Order and the approval of the Court; and (2) all non-material modifications, which may include
16   extensions of the time frames and schedules for performance of the terms and conditions of the
17   Stipulated Order, may be made by agreement of the parties and shall be effective upon filing by
18   the United States of such modifications with the Court;

19   WHEREAS, GWA has requested certain modification to the provisions of the Stipulated
20   Order and the parties have agreed to make those modifications along with the correction of some
21   typographical errors in the Stipulated Order;

22   NOW, THEREFORE, in light of the foregoing recitals, the parties, through their
23   respective undersigned counsel, stipulate to the following changes in the Stipulated Order and
24   jointly request the Court to enter the following Order:

### ORDER

26   1. The following changes shall be made to the Stipulated Order:

28   - 2 -

| | | |
|---|---|---|
| 1 | a. | Substitute a new page 5 to modify the due date in Paragraph 6 for Defendants' |
| 2 | | response to EPA's comments, a non-material change to the Stipulated Order; |
| 3 | b. | Substitute new pages 7 and 8 to change the title of the Master Plan for Paragraph |
| 4 | | 10, a non-material change to the Stipulated Order, to modify the due date in |
| 5 | | Paragraph 10 for Defendants' response to EPA's comments on the Request for |
| 6 | | Proposal, a non-material change to the Stipulated Order, and to modify the due |
| 7 | | date in Paragraph 10 for Defendants' selection and retention of one of the |
| 8 | | qualified offerors to prepare the Master Plan, a non-material change to the |
| 9 | | Stipulated Order; |
| 10 | c. | Substitute a new page 10 to correct a typographical error in subparagraph (3); |
| 11 | d. | Substitute a new page 23 to insert clarifying language and modify the due date in |
| 12 | | Paragraph 35 for Defendants' completion of the baseline monitoring survey(s), a |
| 13 | | non-material change to the Stipulated Order; |
| 14 | e. | Substitute a new page 24 to insert clarifying language and modify the due date in |
| 15 | | Paragraph 36 for Defendants' completion of the baseline monitoring survey(s), a |
| 16 | | non-material change to the Stipulated Order; |
| 17 | f. | Substitute a new page 27 to insert clarifying language and modify the due date in |
| 18 | | Paragraph 40 for Defendants' completion of construction, a non-material change |
| 19 | | to the Stipulated Order; |
| 20 | g. | Substitute new pages 29 and 30 to modify the date in Paragraph 43 for the |
| 21 | | completion of the final Comprehensive Performance Evaluations for the Sewage |
| 22 | | Treatment Plants at Agat, Baza Gardens, and Umatec-Merizo, a non-material |
| 23 | | change to the Stipulated Order; |
| 24 | h. | Substitute new pages 30 and 30-A to provide a revised scope of work for the |
| 25 | | rehabilitation project in Paragraph 44, a material change to the Stipulated Order, |
| 26 | | and to modify the due date in Paragraph 44 for Defendants' completion of |
| 27 | | |
| 28 | | - 3 - |

construction, a non-material change to the Stipulated Order;

i.    Substitute a new page 33 to correct typographical errors in Paragraph 50; and

j.    Substitute a new page 36 to correct a typographical error in Paragraph 56.

2. A complete copy of the Stipulated Order with the substituted pages is attached as Exhibit 1 to this Stipulation and Order.

IT IS SO ORDERED this _9th_ day of _August_, 2004.

JOAQUIN V.E. MANIBUSAN, JR.
Magistrate Judge
District Court of Guam

**RECEIVED**

AUG - 6 2004

DISTRICT COURT OF GUAM
HAGATNA, GUAM

Notice is hereby given that this document was entered on the docket on _AUG 1 0 2004_.
No separate notice of entry on the docket will be issued by this Court.
        Mary L. M. Moran
    Clerk, District Court of Guam
By: _____ | _AUG 1 0 2004_
    Deputy Clerk      Date

- 4 -

1   IT IS SO STIPULATED.

2   For the United States of America, Plaintiff:

3                         THOMAS L. SANSONETTI
                        Assistant Attorney General

4                         Environment & Natural Resources Division
                        ROBERT D. MULLANEY

5                         Environmental Enforcement Section
                        Environment & Natural Resources Division

6                         United States Department of Justice

7                         LEONARDO M. RAPADAS
                        United States Attorney

8                         Districts of Guam and NMI
                        (671) 472-7332

9

10   Dated: _8·5·4_

11                         MIKEL W. SCHWAB
                        Assistant U.S. Attorney

12   OF COUNSEL:

13   KAREN PETERSON, Assistant Regional Counsel
     U.S. Environmental Protection Agency

14   75 Hawthorne Street
     San Francisco, CA 94105

15

16   IT IS SO STIPULATED.

17   **For Guam Waterworks Authority and the Government of Guam, Defendants:**

18

19   Dated: 8/3/04

20                         JOSEPH A. GUTHRIE
                        Deputy Attorney General

21                         Office of the Attorney General
                        Guam Judicial Center, Suite 2-200E

22                         120 West O'Brien Drive
                        Hagatna, Guam 96910

23                         (671) 475-3324

24   Dated: 7/15/04

25                         ANTHONY R. CAMACHO
                        Guam Waterworks Authority

26                         P.O. Box 3010
                        Hagatna, Guam 96932

27                         Phone: (671) 647-9203

28                                     - 5 -

# CERTIFICATE OF SERVICE

I, FRANCES B. LEON GUERRERO, Legal Assistant, working in the U.S. Attorney's Office, in the District of Guam, hereby certify that copies of the Stipulation and Order Amending the Stipulated Order for Preliminary Relief were served by personal service, in Civil Case No. 02-00035, <u>United States of America v. Guam Waterworks Authority and the Government of Guam</u>, to the following attorneys of record:

Joseph A. Guthrie
Deputy Attorney General
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagatna, Guam 96910

Anthony R. Camacho
Attorney
Guam Waterworks Authority
P.O. Box 3010
Hagatna, Guam 96932

Dated: August 6, 2004

FRANCES B. LEON-GUERRERO
Legal Assistant

COPY

1   THOMAS L. SANSONETTI
    Assistant Attorney General
2   Environment & Natural Resources Division
    United States Department of Justice
3   ROBERT D. MULLANEY
    Environmental Enforcement Section
4   Environment & Natural Resources Division
    301 Howard Street, Suite 1050
5   San Francisco, CA 94105
    Tel: (415) 744-6491
6   Fax: (415) 744-6476

7   FREDERICK A. BLACK
    United States Attorney
8   MIKEL W. SCHWAB
    Assistant U.S. Attorney
9   Suite 500, Sirena Plaza
    108 Hernan Cortez
10  Hagatna, Guam 96910
    Tel: (671) 472-7332
11  Fax: (671) 472-7215

12
    Attorneys for the United States of America
13

14              UNITED STATES DISTRICT COURT

15                 TERRITORY OF GUAM

16  UNITED STATES OF AMERICA,            )     CIVIL CASE NO. 02-00035

17                                       )

18                  Plaintiff,           )     **STIPULATED ORDER**
            v.                           )     **FOR PRELIMINARY RELIEF**
19  GUAM WATERWORKS AUTHORITY            )

20  and the GOVERNMENT OF GUAM,          )

21                                       )
                    Defendants.          )
22  _____)

23

24

25

26

27

28

FILED
DISTRICT COURT OF GUAM

JUN 05 2003

MARY L. M. MORAN
CLERK OF COURT

WHEREAS, the United States of America filed a civil action seeking injunctive relief and the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA");

WHEREAS, GWA is a public corporation that has the authority to produce, treat, transmit, store, distribute, and sell water on Guam, as well as the authority to collect, treat, and sell or dispose of wastewater on Guam;

WHEREAS, GWA owns and operates five sewage treatment plants on Guam that are subject to the conditions and limitations contained in National Pollutant Discharge Elimination System ("NPDES") Permit Nos. GU0020087, GU0020222, GU0020095, GU0020141, and GU0020273 issued by the U.S. Environmental Protection Agency ("EPA") pursuant to the CWA;

WHEREAS, GWA owns and operates wastewater collection and conveyance systems, including approximately 75 sewage pump stations, that transport raw sewage to its sewage treatment plants;

WHEREAS, the NPDES permits require GWA at all times to properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used to achieve compliance with the conditions of the permits;

WHEREAS, the Government of Guam is identified as a defendant as required by CWA Section 309(e), 33 U.S.C. § 1319(e);

WHEREAS, GWA owns and operates three public water systems that supply drinking water for the majority of the population of Guam: the Northern, Central, and Southern Systems;

WHEREAS, GWA's public water systems are required to comply with the National Primary Drinking Water Regulations under the SDWA, including the Maximum Contaminant Levels for microbiological contaminants and the treatment technique for turbidity;

WHEREAS, the United States sought in its Complaint both a preliminary and permanent

2

1  injunction as well as the appointment of a receiver to address issues of compliance in GWA's

2  Publicly Owned Treatment Works ("POTW") and three public water systems;

3  WHEREAS, the parties agree that entry of this Stipulated Order for Preliminary Relief is

4  the most appropriate way to require the immediate implementation of short-term projects and

5  initial planning measures by GWA and the Government of Guam (jointly "Defendants") to begin

6  to address issues of compliance at GWA's POTW and three public water systems;

7  WHEREAS, the Guam Public Utilities Commission issued an Order on April 10, 2003

8  (see Attachment A to this Stipulated Order), renewing its commitment to provide GWA in a

9  timely manner with adequate rate relief to enable GWA to comply with an EPA-approved

10  strategic plan in a prudent and reasonable manner;

11  WHEREAS, the parties contemplate entering into a further stipulation to address

12  additional compliance issues after Defendants' completion of the initial planning measures set

13  out in this Stipulated Order for Preliminary Relief;

14  THEREFORE, before taking testimony or adjudicating any issue of fact or law, and

15  without any finding or admission of liability against or by GWA or the Government of Guam;

16  **IT IS ORDERED, ADJUDGED, AND DECREED as follows:**

17  **I.  Submittals by Defendants**

18  1.  Compliance Monitor: Within ten days after the date of entry of this Stipulated

19  Order for Preliminary Relief by the Court (hereinafter the "Entry Date"), GWA shall appoint one

20  individual whose primary responsibility will be to coordinate and report on all compliance

21  activities and deliverables required by this Stipulated Order for Preliminary Relief. Within 20

22  days after the Entry Date, GWA shall provide notice to EPA listing the individual's name,

23  address, telephone and fax numbers, and e-mail address. If GWA appoints a new person as

24  compliance monitor, GWA shall provide contact information about the new compliance monitor

25  to EPA within 10 working days after the appointment.

26  2.  EPA Approval of Plans and Other Submittals: After review of any plan, program,

27

28  3

1 report or other item required to be submitted for approval under this Stipulated Order for
2 Preliminary Relief, EPA shall submit to Defendants in writing either an approval or detailed
3 comments explaining why EPA does not approve the plan, program, report or other submittal.
4 Defendants shall have 30 days from receipt of EPA's comments to submit a revised plan,
5 program, report or other submittal that fully addresses and responds to EPA's comments unless a
6 longer time period is agreed upon by all parties. Defendants shall use their best efforts to
7 incorporate EPA's comments to the extent practicable. Representatives of the parties shall make
8 themselves available during the comment period to informally discuss questions and comments
9 on any documents. Defendants' failure to respond to EPA's comments shall constitute a
10 violation of this Stipulated Order for Preliminary Relief. The procedures of this Paragraph shall
11 also apply to any revised plan, program, report, or other submittal.

12 **II. Management and Organizational Structure of GWA**

13 3. General Manager: Within ten days after the Entry Date, the Consolidated
14 Commission on Utilities ("CCU") shall advertise to hire a full-time General Manager at GWA.
15 At a minimum, the General Manager shall have the following qualifications: (1) a Masters
16 degree in Management, Engineering, Finance, or Public Administration, or, in the alternative, a
17 Bachelor's degree and registration as a Professional Engineer pursuant to the National Council of
18 Engineering Examiners standards in either the Civil, Mechanical, or Electrical Branch; (2) at
19 least ten years of combined senior management experience at drinking water and wastewater
20 utilities, with experience in both areas; (3) proven management and communication skills;
21 (4) demonstrated ability to lead, motivate, and develop staff; (5) experience with planning,
22 design, and construction of major wastewater or drinking water infrastructure projects; and
23 (6) knowledge and experience with: a) drinking water or wastewater engineering, b) user fee
24 system development, c) bond funding, d) staff training and development, and e) federal drinking
25 water and wastewater requirements. The CCU shall use its best efforts to hire a qualified
26 General Manager within 90 days after the Entry Date.

27

28

4

1    4.    Chief Engineer:  Within 40 days after the Entry Date, the CCU shall advertise to

2  hire a full-time Chief Engineer at GWA. At a minimum, the Chief Engineer shall have the

3  following qualifications:  (1) registered professional civil, mechanical or electrical engineer;

4  (2) ten or more years of professional engineering experience; and (3) fully competent and

5  proficient in planning, design, construction, and operation of wastewater treatment facilities,

6  drinking water disinfection systems, wells, and drinking water distribution and transmission

7  systems.  If possible, the applicant shall also have experience in wastewater collection systems

8  and surface water treatment systems.  The CCU shall use its best efforts to hire a qualified Chief

9  Engineer within 120 days after the Entry Date.

10    5.    Chief Financial Officer:  Within 60 days after the Entry Date, the CCU shall

11  advertise to hire a full-time Chief Financial Officer at GWA that has the appropriate

12  qualifications (e.g., Certified Public Accountant or Certified Management Accountant) and

13  experience. The CCU shall use its best efforts to hire a qualified Chief Financial Officer within

14  150 days after the Entry Date.  The Chief Financial Officer may perform duties for the Guam

15  Power Authority pursuant to the Chief Financial Officer's employment agreement with the CCU.

16    6.    General Manager's Authority:  In order to allow GWA to operate as an

17  independent agency, the Chief Financial Officer shall be under the direct supervision of GWA's

18  General Manager. Within 30 days after the Entry Date, Defendants shall provide a report to EPA

19  on any legal and administrative barriers preventing GWA's General Manager from directly

20  supervising GWA's Chief Financial Officer, and recommend a course of action, including

21  proposed legislation or administrative measures, to deal with this issue.  By November 9, 2003,

22  Defendants shall respond to EPA's comments in accordance with Paragraph 2 and shall take

23  action to address this issue, including submitting proposed legislation to the Guam Legislature

24  and/or implementing required administrative measures. The CCU reserves the right to review all

25  decisions made by the General Manager with respect to the Chief Financial Officer.

26

27

28  REVISED 7-26-04                    5

7. Conflict of Interest Provision: GWA may enter into a service contract with a third party (such as an engineering or consulting firm or a contract employment firm) to permanently or temporarily fill GWA's staff vacancies. In order to avoid potential conflicts of interest that may arise in that situation, GWA shall not engage in any business other than staffing services with that third party (and any related corporate or business entities) for the duration of the service contract. After the Entry Date, all contracts used to fill new positions on a permanent or temporary basis at GWA shall be limited to either of the following: (1) a contract between GWA and the individual hired; or (2) a contract between GWA and a third party that agrees to provide no other service to GWA except for staffing services for the duration of the service contract.

8. Certification of Operators in Direct Responsible Charge ("DRC Operators"): Within 180 days after the Entry Date, GWA shall ensure that DRC Operator positions are staffed by operators who have obtained certification at the level required for that position by the Guam Environmental Protection Agency's ("Guam EPA") "Water and Wastewater Systems Classification" memorandum dated October 17, 2002. If current DRC Operators at GWA are not certified at the required level, GWA shall, within ten working days after the Entry Date, notify those employees that they have 180 days after the Entry Date to obtain the required certification. If an employee does not obtain the required certification within 180 days after the Entry Date, GWA shall transfer the employee and fill the position with a properly certified DRC Operator.

9. GWA Reorganization: GWA shall complete a full reorganization according to the following schedule. Within 90 days after the Entry Date, GWA shall submit to EPA and Guam EPA a draft reorganization plan that proposes a new structure for GWA to ensure that GWA is most capable of completing its mission. For each work unit, the draft plan shall provide at a minimum: a description of work functions, the numbers of employees, and a summary of certifications and qualifications needed for each category of employee. Within 30 days after receipt of EPA's comments on the draft plan, GWA shall respond to EPA's comments in accordance with Paragraph 2 and provide a final reorganization plan to EPA and Guam EPA.

6

1  Within 90 days after GWA has prepared a final reorganization plan, GWA shall submit to EPA

2  and Guam EPA a draft report containing position descriptions and minimum job qualifications

3  that meet industry standards and Guam laws for each position in the new organization. Within

4  30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's

5  comments in accordance with Paragraph 2 and shall provide a final report to EPA and Guam

6  EPA.

7  Within 90 days after GWA has provided a final reorganization plan, GWA shall also

8  submit to EPA and Guam EPA a draft Staffing Plan Report that includes the following

9  information: (1) an evaluation of current staff resources at GWA and a discussion of where new

10  hires or retraining will be needed to staff the new organization; (2) a timetable for

11  implementation of staffing measures; and (3) procedures for the transferring of staff and staff

12  reductions (and recommended legislation to enable such changes) as necessary. The draft

13  Staffing Plan Report shall require: (1) all positions in the reorganization of GWA shall be filled

14  with an employee qualified at the minimum level required for that position within 180 days after

15  the final Staffing Plan Report has been issued; and (2) when GWA hires a new employee to fill a

16  position, that employee must be properly qualified for the position at the time of hire. EPA will

17  review the draft Staffing Plan Report and may require changes, additions, deletions or

18  modifications it deems necessary to ensure proper operation and maintenance of GWA's POTW

19  and public water systems. Within 30 days after receipt of EPA's comments on the draft report,

20  GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the

21  final Staffing Plan Report to EPA and Guam EPA. GWA shall implement the Staffing Plan

22  Report's measures in accordance with the timetable in the final Staffing Plan Report. If current

23  employees are not certified at the required level, GWA shall notify such employees within ten

24  working days after the final Staffing Plan Report has been issued.

25  **III.   Operations at GWA**

26  10.   Water Resources Master Plan: Within 30 days after the Entry Date, GWA shall

28  REVISED 7-26-04                    7

1   prepare a draft scope of work and a draft Request for Proposals ("RFP") for the preparation of a

2   Water Resources Master Plan ("Master Plan") and submit them to EPA for approval. GWA shall

3   provide a copy of the documents concurrently to Guam EPA. EPA will review the draft scope of

4   work and RFP and may require any changes, additions, deletions or modifications it deems

5   necessary. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

6   comments in accordance with Paragraph 2 and shall submit a final scope of work and RFP to

7   EPA and Guam EPA. GWA shall advertise the RFP for the preparation of the Master Plan

8   nationally.

9         Within 90 days after submitting the final RFP to EPA and Guam EPA, GWA shall

10   provide a list of at least five qualified offerors, including the qualifications of each offeror, to

11   EPA and Guam EPA. EPA will provide written notice of the names of any offeror(s) that it

12   disapproves and an authorization to proceed with any of the other offerors. GWA may select any

13   offeror from that list that is not disapproved and may award the contract to that offeror. GWA

14   shall select and retain one of the qualified offerors within 105 days after obtaining EPA's

15   authorization to proceed, shall notify EPA and Guam EPA of the name of the contractor, and

16   shall begin to prepare the Master Plan (the "Commencement Date").

17         GWA shall develop a Master Plan that includes:

18       (1)    A comprehensive analysis, using as a guideline the "10 States Standards" as they

19                apply to wastewater, of wastewater treatment, collection, and conveyance systems,

20                improvement alternatives, and needs for the next twenty years. The Master Plan

21                shall include an infiltration and inflow assessment of GWA's wastewater

22                collection systems sufficient to identify and prioritize problem areas. The Master

23                Plan shall also include an assessment of the following: septic system hookup

24                needs and alternatives, decentralized treatment systems, consolidation with the

25                U.S. military's wastewater systems, biosolids management and re-use, and an

26                analysis of costs and other impacts.

27

28   REVISED 7-26-04            8

(2) A comprehensive analysis, using as a guideline the Hawaii Water Standards of 2002, of public water system improvement alternatives and needs for the next twenty years that addresses disinfection, system pressure, surface water and groundwater resources, treatment needs (including any drinking water well needing treatment due to a determination that the well uses a groundwater source under the direct influence of surface water), transmission and distribution system improvements, potential consolidation with the U.S. military's systems, and water re-use.

(3) A comprehensive analysis of the costs and benefits of water conservation on Guam.

(4) An evaluation of necessary process control system improvements, including a Supervisory Control and Data Acquisition ("SCADA") system, information management systems, telemetry, and other applicable types of automation.

(5) A financial plan that details how revenue will be generated. The financial plan shall include a user fee system, including fees for services such as sewer connection fees. The user fees shall be based on actual water usage, estimated wastewater generation, and actual costs of services provided. GWA shall coordinate with the Public Utilities Commission ("PUC") to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

(6) A detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and three public water systems, including: (a) an estimated annual budget for each of the next five years for all costs of operating, maintaining, and repairing the POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph

9

1   32 below; and (b) a detailed descriptive plan for raising sufficient revenue to meet
2   the projected costs as outlined in the annual budgets, including adjustments or
3   increases in user fees, taxes, assessments or other sources of revenue. Revenues
4   shall be sufficient to cover all compliance activities and deliverables required by
5   this Stipulated Order for Preliminary Relief, as well as any other anticipated
6   expenses, including any measures necessary to ensure compliance with the CWA
7   and SDWA, costs related to the infrastructure improvements recommended in the
8   Master Plan, all related operations and maintenance costs, and corresponding
9   utility expenses, including maintenance of all required Financial Reserves listed in
10  Paragraph 32 below.

11      The following five tasks shall be completed as part of the Master Plan. Within the
12  designated time for completing each task, GWA shall submit a written draft to EPA for review
13  and approval. GWA shall provide a copy of each draft concurrently to Guam EPA. Within 30
14  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
15  with Paragraph 2 and shall provide the final written product to EPA and Guam EPA. The
16  schedule for these tasks is the following:

17      (1)     Within 180 days after the Commencement Date, GWA shall complete a leak
18              detection study for all three public water systems.

19      (2)     Within 240 days after the Commencement Date, GWA shall complete an
20              estimated water budget that quantifies and describes how and where water is
21              produced and utilized on Guam.

22      (3)     Within 270 days after the Commencement Date, GWA shall locate, map, and
23              develop Geographical Information System ("GIS") layers for all of the following:
24              treatment facilities, wells, water lines greater than or equal to six inches in
25              diameter, collection system, pump stations, and GWA's and Guam EPA's water
26              quality monitoring stations.

27

28  REVISED 7-26-04                              10

(4)   Within one year after the Commencement Date, GWA shall perform a hydraulic analysis of the three public water systems and develop a hydraulic model of the systems.

(5)   Within 540 days after the Commencement Date, GWA shall locate, map, and develop GIS layers for all of the following (not included in subparagraph (3) above): all other water lines, wastewater laterals, and all septic tanks over the Northern Guam Sole Source Aquifer.

The Master Plan shall be completed according to the following schedule:

(1)   Within 540 days after the Commencement Date, GWA shall complete a draft Master Plan and shall provide a copy of it to EPA and Guam EPA. Upon completion, GWA shall issue a press release and publish notice in a local newspaper, indicating that the draft Master Plan is available for public review at convenient locations (such as public libraries on Guam and GWA's website) and announcing the date and location of any public meeting to discuss the Plan. The draft Master Plan shall be made available for public comment for at least 45 days. During the public comment period, GWA shall hold at least one public meeting. GWA shall issue the public notice at least 30 days before the date of the public meeting.

(2)   Within 630 days after the Commencement Date, GWA shall complete a final Master Plan and shall address all significant comments raised during the public comment period in its final Master Plan. GWA shall provide the final Master Plan to EPA and Guam EPA and shall perform the required tasks in accordance with the schedule set out in the final Master Plan.

11.   Interim Disinfection Program: GWA shall develop an interim disinfection program for its three public water systems to ensure that the water being provided to the public is adequately disinfected by chlorination. In order to ensure optimal chlorination and disinfection,

11

the interim disinfection program shall require that: (1) the optimal levels of chlorine residual, as measured in parts per million ("ppm") or milligrams per liter, is met at all times at all chlorination points, taking into consideration the contact time (in minutes) of the chlorine with the water in the distribution system prior to reaching the first consumer ("CT value"); and (2) a minimum level of chlorine residual of at least 0.2 ppm is maintained at all points in the drinking water distribution system at all times.

The interim disinfection program shall include a detailed description of the existing chlorination practices including, but not limited to: (1) the locations of all existing chlorination points for each public water system, including chlorination points at the Ugum surface water treatment plant, chlorination points at the wellheads for the groundwater systems, and other distribution system chlorination points; (2) the locations of any proposed immediate additional wellhead and/or distribution system chlorination points; (3) the estimated contact time between the chlorine and water in the distribution system before the water reaches the first consumer (i.e., the closest connection in the distribution system) for each chlorination point; (4) actual chlorine dosing levels (in ppm) at each chlorination point; and (5) actual CT value for each chlorination point (where CT is defined as chlorine residual level in ppm multiplied by the contact time in minutes prior to the first consumer). Based on the information included in subparagraphs (1) through (5), the interim disinfection program shall include recommendations regarding the following: (6) the optimal possible chlorine dosing levels (in ppm) to apply at each individual chlorination point (taking into account the contact time available before the first consumer); and (7) the optimal CT value for all chlorination points. The interim disinfection program shall propose short-term changes to GWA's chlorination practices to improve disinfection that can be accomplished within one year after the Entry Date.

Within 90 days after the Entry Date, GWA shall submit the interim disinfection program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

12

1   accordance with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall

2   implement the program. GWA shall update the interim disinfection program annually and as

3   needed to reflect the development of other compliance activities and deliverables required by this

4   Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and

5   approval, and shall provide a copy to Guam EPA.

6          12.   Interim Chlorine Residual Level Monitoring Program: GWA shall develop an

7   interim chlorine residual level monitoring program for its three public water systems to ensure

8   that: (1) optimal chlorine levels are maintained at all chlorination points, taking into account

9   contact time prior to the first consumer after the chlorination points; and (2) a minimum chlorine

10   level is maintained throughout the distribution system. The monitoring program shall contain a

11   detailed description of the following: (1) the locations and frequency of all chlorine residual

12   monitoring necessary in order to ensure that the optimal applied chlorine dose (as specified in

13   subparagraph (6) of the interim disinfection program in Paragraph 11) and optimal CT's (as

14   specified in subparagraph (7) of the interim disinfection program in Paragraph 11) are maintained

15   at all chlorination points at all times; and (2) the locations and frequency of chlorine residual

16   monitoring necessary to ensure that a minimum level of chlorine residual of at least 0.2 ppm is

17   maintained throughout the distribution system at all times. The proposed monitoring shall

18   consist of either continuous, online, automated chlorine residual monitoring or grab samples to

19   be collected and analyzed in the field. The proposed monitoring program shall ensure that those

20   wells that are at the highest risk of fecal bacteriological contamination (i.e., those wells with a

21   historical record of fecal coliform or *E. coli* bacteriological contamination at the well) have the

22   highest level of monitoring. Monitoring for such wells shall consist of continuous, online

23   chlorine residual monitoring with either automatic flow shutoff or an alarm system. The

24   automatic flow shutoff or alarm shall be triggered by detections of chlorine levels lower than the

25   optimal applied chlorine dose (as specified in subparagraph (6) of the interim disinfection

26   program in Paragraph 11).

27

28                       13

1  Within 90 days after the Entry Date, GWA shall submit the monitoring program to EPA
2  for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within
3  30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
4  with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement
5  the program. GWA shall update the interim chlorine residual level monitoring program annually
6  and as needed to reflect the development of other compliance activities and deliverables required
7  by this Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review
8  and approval, and shall provide a copy to Guam EPA.

9      13.     Leak Detection and Response Program: GWA shall develop a program for
10  identifying and responding to leaks in the three public water systems. Within 180 days after the
11  Entry Date, GWA shall submit the proposed program to EPA for approval. GWA shall provide a
12  copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's
13  comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall
14  provide the final program to EPA and Guam EPA, and shall implement the program.

15      14.     Water Meter Improvement Program: GWA shall develop a water meter
16  improvement program to ensure that, within 3 years after the Entry Date, each connection to the
17  three public water systems has an accurate and accessible water meter that is read monthly and
18  used for billing. Within 90 days after the Entry Date, GWA shall submit the program to EPA for
19  approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30
20  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
21  with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement
22  the program.

23      15.     Parts Inventory for POTW and Public Water Systems: Within 180 days after the
24  Entry Date, GWA shall develop and maintain a 60-day operation and maintenance parts
25  inventory for its POTW and public water systems that includes any spare parts that may
26  reasonably be needed, and shall provide EPA and Guam EPA with a written list of the parts

27

28  14

inventory. The inventory need not include any parts for which GWA has a written guarantee of their availability within four days of a request. GWA shall provide a written report to EPA and Guam EPA within 180 days after the Entry Date on the adequacy of its parts inventory, including written guarantees of availability. On or before January 28 and July 28 of each year, GWA shall provide a semiannual written report to EPA and Guam EPA regarding the adequacy of its parts inventory.

16.     Routine Maintenance and Repairs for POTW and Public Water Systems: Within 180 days after the Entry Date, GWA shall: (1) provide EPA and Guam EPA with a written report describing the minimum tools and equipment needed for each facility and maintenance area in its POTW or three public water systems to handle any routine maintenance or repair work; and (2) ensure that each facility and maintenance area in its POTW or three public water systems has the necessary tools and equipment. At a minimum, GWA shall ensure that the following systems are included in the report and have the necessary tools and equipment: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems.

17.     Standby Generators: GWA shall ensure that working, appropriately sized, standby generators are available for all wastewater pump stations, treatment plants, and wells that are critical to the three public water systems. Within 90 days after the Entry Date, GWA shall submit a list to EPA for approval, indicating the size of the standby generator for each pump station, treatment plant or well and the schedule of compliance. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final list to EPA and Guam EPA. Within 2 years after the Entry Date, GWA shall supply standby generators for all critical wells, wastewater pump stations, and treatment plants.

18.     Underground Storage Tanks: GWA shall prepare an inventory of its underground

15

storage tanks, indicating which tanks are no longer in use. For any tank that is no longer in use, GWA shall perform the following temporary closure tasks: (1) empty all materials from the tank to within one inch of the tank bottom; (2) leave vent lines open; and (3) secure all lines, pumps, manways, and ancillary equipment with a lock. Within 90 days after the Entry Date, GWA shall provide the inventory to EPA for review and approval, stating the date that GWA has completed the temporary closure tasks for any tanks no longer in use. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final inventory to EPA and Guam EPA, and shall perform any additional required tasks in accordance with the schedule set out in the final inventory.

19.   Emergency Response Plan: GWA shall develop an emergency response plan that provides operating procedures for all employees during and following any disasters, including, but not limited to, typhoons and earthquakes. Within 540 days after the Entry Date, GWA shall submit the plan to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final plan to EPA and Guam EPA, and shall implement the plan.

20.   Preventive Maintenance Program: GWA shall develop a preventive maintenance program for the POTW and public water systems that details required maintenance, schedules, standard procedures, tracking, and reporting. At a minimum, GWA shall develop preventive maintenance programs for the following systems: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems. Within one year after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2,

16

1 shall provide the final program to EPA and Guam EPA, and shall implement the program. GWA

2 shall update the program annually and as needed to reflect the development of other compliance

3 activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide

4 its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

5      21.   Operations and Maintenance Manuals: GWA shall develop a set of

6 comprehensive Operations and Maintenance Manuals for its POTW and public water systems.

7 At a minimum, GWA shall develop Operations and Maintenance Manuals for the following

8 systems: sewage treatment plants, wastewater collection systems, wastewater conveyance

9 systems (including the sewage pump stations), water treatment plant, water distribution systems,

10 drinking water wells, and chlorination systems. Within 180 days after the Entry Date, GWA

11 shall submit to EPA a schedule for completing the manuals and submitting them to EPA for

12 approval. GWA shall provide a copy of the document concurrently to Guam EPA. All manuals

13 shall be completed and submitted to EPA and Guam EPA within 2 years after the Entry Date.

14 The manuals shall include: (1) information on all relevant process design assumptions such as

15 design flows, pump capacities, detention times, surface loadings, oxygen transfer requirements,

16 disinfection requirements, water transmission requirements, simplified schematic diagrams of

17 pipelines and control systems, and detailed diagrams for more complicated components; (2) unit

18 process information, including control measures and monitoring procedures needed to achieve

19 maximum efficiency and reliability and a clear explanation of process functions of various

20 components with simplified language and references to appropriate technical manuals; (3) start-

21 up and shutdown procedures; (4) maintenance schedules; (5) laboratory test procedures,

22 including the necessary quality assurance and reporting requirements; (6) safety procedures;

23 (7) organizational structure, job descriptions, and duties; (8) administrative procedures for

24 purchase order preparation approvals and budget preparation; and (9) an operating plan for

25 emergencies. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

26 comments in accordance with Paragraph 2, shall provide a copy of the final manuals to EPA and

27

28                                    17

1  Guam EPA, shall distribute the manuals to the appropriate employees, and shall require use of
2  the manuals as part of its standard operating procedures for its POTW and public water systems.
3  GWA shall update the manuals as needed to reflect the development of other compliance
4  activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide
5  its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

6       22.   GWA's Authority: In order to function properly and efficiently as an independent
7  agency, GWA needs to have the ability to independently: administer financial accounts, make
8  personnel changes, and procure equipment and services (including both engineering services and
9  the direct procurement of services or supplies from off-island companies). Within 30 days after
10  the Entry Date, Defendants shall provide a report to EPA on any legal and administrative actions
11  necessary to allow GWA to operate independently, and shall recommend a course of action,
12  including proposed legislation or administrative measures, to deal with these issues. GWA shall
13  provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of
   EPA's comments on the report, Defendants shall respond to EPA's comments in accordance with
15  Paragraph 2 and shall take action to address these issues, including submitting proposed
16  legislation to the Guam Legislature and/or implementing required administrative measures.

17       23.   Standard Operating Procedures: GWA shall develop: (1) a set of standard
18  operating procedures for the following processes: architectural and engineering services
19  procurement, construction services procurement, and tools and equipment inventory and
20  controls; and (2) procedures for complying with federal and local laws and monitoring
21  compliance. The standard operating procedures shall require GWA to comply with applicable
22  Guam procurement statutes and other applicable local laws. Within 180 days after the Entry
23  Date, GWA shall submit the draft procedures to EPA for review and approval. GWA shall
24  provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of
25  EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall
26  provide the final procedures to EPA and Guam EPA, and shall implement the procedures.

27

28                  18

1    24.    Vulnerability Assessment: Within 180 days after the Entry Date, GWA shall

2  submit a completed vulnerability assessment along with a certification of its completion, as

3  required by Section 1433(a) of the SDWA, to the EPA Administrator in Washington, D.C.

4  GWA shall follow the mailing protocol described in EPA's "Instructions to Assist Community

5  Water Systems in complying with the Public Health Security and Bioterrorism Preparedness and

6  Response Act of 2002," which is located on the EPA website as follows:

7  http://www.epa.gov/safewater/security/util-inst.pdf.

8        The completed vulnerability assessment should not be sent to EPA Region 9 in San

9  Francisco.   Concurrently with the submission of the vulnerability assessment to the EPA

10  Administrator, GWA shall notify EPA pursuant to Paragraph 50 that the requirements of SDWA

11  Section 1433(a) have been met and that GWA is in compliance with Section 1433(a).  Within

12  180 days after the submission of the vulnerability assessment, GWA shall complete an

13  emergency response plan and certify to the EPA Administrator that it has completed the plan in

14  accordance with the requirements of SDWA Section 1433(b) and (c).  Within 10 working days

15  after completing the plan, GWA shall also notify EPA pursuant to Paragraph 50 that it has

16  completed the emergency response plan.

17    25.    Trade Organizations: Within 90 days after the Entry Date, GWA shall join the

18  American Waterworks Association and the Water Environment Federation.

19  **IV.    Financial Administration at GWA**

20    26.    Financial Standard Operating Procedures: GWA shall develop a set of standard

21  operating procedures for the following processes:  fiscal management and controls, budgeting,

22  accounting, and financial planning.   Within one year after the Entry Date, GWA shall submit a

23  copy of the procedures to EPA for review and approval.  Within 30 days after receipt of EPA's

24  comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

25  provide the final procedures to EPA, and shall implement the procedures.

26    27.    Annual Budget: GWA shall submit each approved annual budget to EPA. The

27

28                                          19

annual budget shall ensure adequate financing of the operation and maintenance of GWA's POTW and three public water systems. The budget shall include, but not be limited to, the following: (1) a budget detailing the total projected costs for the coming year of operating, maintaining, and repairing the POTW and the three public water systems, including staffing, energy, materials and supplies, repairs, replacements, maintaining Financial Reserves required in Paragraph 32 below, and all other expenses; (2) a detailed schedule of user fees, taxes, assessments or other sources of revenue sufficient to meet the projected costs as set forth in the budget for the coming year, including increases or adjustments required to meet that budget; and (3) a financial management plan insuring that all user fees, taxes, assessments or other sources of revenue collected for the POTW and three public water systems are in fact applied to their operation, maintenance, repair, and replacement.

28. Interim Financial Plan: Within 120 days after the Entry Date, GWA shall develop and submit to EPA and the PUC an interim financial plan that details how revenue will be generated for the interim period before the final financial plan in the Master Plan is complete, approved, and implemented. Revenues shall be sufficient to cover the cost of compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the period before the final financial plan is approved, including all existing debt and expected debt service, and the buildup of the Financial Reserves required in Paragraph 32 below. The interim financial plan shall include a restructured user fee system. GWA shall coordinate with the PUC to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

29. Approval of Interim Financial Plan: Within 90 days after GWA submits an interim financial plan, the PUC shall consider and approve an interim financial plan that generates enough revenue to cover the cost of compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the

20

period before the final financial plan is approved, including all existing debt and expected debt service, and the buildup of the Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA the interim financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

30. Approval of Final Financial Plan: Within 90 days after GWA submits a final financial plan in the Master Plan, the PUC shall consider and approve a final financial plan that generates enough revenue to cover the cost of all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and the SDWA, costs related to the infrastructure improvements identified in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA a copy of the final financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

31. Five-Year Plan: On an annual basis, GWA shall submit to EPA a detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and the three public water systems. Each five-year plan shall include: (1) estimated annual budgets for each of the next five years for all costs of operating, maintaining, and repairing GWA's POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph 32 below; and (2) a detailed descriptive plan for raising sufficient revenue to meet the projected cost as outlined in the budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. GWA shall submit its first five-year plan to EPA within 2 years after the Entry Date. EPA will review each five-year plan and may request additions, deletions, changes or modifications as it deems necessary to insure adequate funding of the operation, maintenance, and repair of GWA's POTW and three public water systems for the five-year period. Within 30 days after receipt of EPA's comments, GWA shall

21

respond to EPA's comments in accordance with Paragraph 2 into a final five-year plan, shall provide the final plan to EPA, and shall implement the measures of the plan.

32. <u>Financial Reserves</u>: Within 180 days after the Entry Date, GWA shall begin developing the following Financial Reserves:

(1) <u>Debt Service Reserve</u> - This reserve shall be established and maintained in accordance with bond covenants and debt service covenants. Within 30 days after issuing a bond or securing a loan, GWA shall submit to EPA information regarding the amount of this reserve.

(2) <u>Emergency Operations, Maintenance, Renovation, and Replacement Reserve</u> - This reserve shall be equal to three months of budgeted expenses for operations, maintenance, renovation, and replacement of GWA's POTW and three public water systems. Within 90 days after the Entry Date, GWA shall submit to EPA for approval the proposed amount of this reserve. GWA shall make monthly deposits to the reserve to ensure that the balance matches current needs. The reserve shall be used only to cover operations and maintenance expenses not in the original budget. This reserve can be replaced by the availability of an equivalent emergency line of credit.

The above reserves shall be fully developed within 2 years after the Entry Date and shall be used only for the stated purposes, and only in the event that no other revenue is available to meet the commitments. If GWA draws down on any reserve at any time, it shall rebuild that reserve to the required level within 180 days. On or before January 28 of each year, GWA shall submit an annual report to EPA regarding the development and maintenance of the Financial Reserves required by this Paragraph.

33. <u>Late Payments</u>: GWA shall develop a program that:

(1) clearly defines how late payments will be addressed and when service will be discontinued. GWA shall consider measures such as discontinuing service for any customer that is more than 60 days behind in payments.

22

1    (2) provides for a procedure to collect delinquent rates or charges, and to enforce liens, if

2          any, for non-payment of rates or charges, in a practical and timely manner.

3    Within 90 days after the Entry Date, GWA shall submit the program to EPA for approval.

4    Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

5    accordance with Paragraph 2, shall provide the final program to EPA, and shall implement the

6    program.

7          34.    Sewer Hook-up Revolving Fund:  GWA shall develop a program instituting a

8    sewer hook-up revolving fund for residents currently required to connect to the wastewater

9    collection system.   The program shall be designed to allow residents to spread hook-up costs

10   (including utility fees) over two or more years at low or no interest.  GWA shall use, at a

11   minimum, funds provided by the Guam EPA Water Planning Committee.  Within 540 days after

12   the Entry Date, GWA shall submit the program to EPA for approval.  Within 30 days after

13   receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

14   Paragraph 2, shall provide the final program to EPA, and shall implement the program.

15   **V.    Construction and Rehabilitation Projects at GWA**

16         35.    Agana Ocean Outfall:  GWA shall develop:  (1) a schedule for submitting pre-

17   final (90 percent) and final (100 percent) ocean outfall extension designs and detailed

18   construction schedules for the Agana Sewage Treatment Plant ("STP"); and (2) a scope of work

19   and schedule for initiating and completing a baseline monitoring survey or surveys in the area of

20   the proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

21   and to establish a basis for the Agana NPDES monitoring program.  The schedule shall require

22   GWA to complete construction of the outfall within 3 years after the Entry Date.  The baseline

23   monitoring survey or surveys shall:  (1) include water quality data, quantitative information on

24   the benthic fauna, and sediment quality data in the area of the proposed discharge; and (2) be

25   performed similarly to the initial baseline monitoring survey for the proposed ocean outfall

26

27

28   REVISED 7-26-04                              23

1    extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and

2    approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy

3    of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

4    GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final

5    scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in

6    accordance with the schedules set out in the final scope of work.

7        36.    Northern District Ocean Outfall: GWA shall develop: (1) a schedule for

8    submitting pre-final (90 percent) and final (100 percent) ocean outfall extension designs and

9    detailed construction schedules for the Northern District STP; and (2) a scope of work and

10   schedule for initiating and completing a baseline monitoring survey or surveys in the area of the

11   proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

12   and to establish a basis for the Northern District NPDES monitoring program. The schedule

13   shall require GWA to complete construction of the outfall within 3 years after the Entry Date.

14   The baseline monitoring survey or surveys shall: (1) include water quality data, quantitative

15   information on the benthic fauna, and sediment quality data in the area of the proposed discharge;

16   and (2) shall be performed similarly to the initial baseline monitoring survey for the proposed

17   ocean outfall extension. Within 60 days after the Entry Date, GWA shall submit to EPA for

18   review and approval the scope of work and schedules required by this Paragraph. GWA shall

19   provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of

20   EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

21   provide the final scope of work and schedules to EPA and Guam EPA, and shall perform the

22   required tasks in accordance with the schedules set out in the final scope of work.

23        37.    Assessment of Chaot Wastewater Pump Station and Sewer Collection and

24   Conveyance System: GWA shall retain a qualified engineering firm to perform an engineering

25   assessment of the Chaot/Marine Drive sewer collection and conveyance system (the "Chaot

26

27

28   REVISED 7-26-04          24

engineering assessment"). The scope of the Chaot engineering assessment shall include an area sufficiently upstream of the old Chaot sewer pump station to fully assess the capacity and piping of the system to prevent raw sewage overflows at the Chaot sewer pump station and downstream along Routes 4 and 1 to the Agana Main sewer pump station. It shall also include an operational re-evaluation of the new Chaot sewer pump station. The Chaot engineering assessment shall identify any capacity, design, inflow/infiltration, and operational deficiencies, and include the development of a corrective action plan and schedule for implementation. The corrective action plan and schedule shall include, but not be limited to, prioritization of projects, as may be necessary, and time frames for developing a scope of work, completing the design, and commencing and completing construction of all deficiencies identified in the corrective action plan. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval the Chaot engineering assessment. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final Chaot engineering assessment (including the final corrective action plan) to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set out in the final corrective action plan. Within 180 days after the final engineering assessment is completed, GWA shall submit to EPA for review and approval the Chaot engineering design. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Chaot engineering design to EPA and Guam EPA. Construction shall be completed within 540 days after the Chaot engineering design is approved by EPA.

38. Water Transmission Line Construction Plan: GWA shall develop a Water Transmission Line Construction ("WTLC") Plan to ensure its ability to adequately treat its well sources (including disinfection). The WTLC Plan shall include an assessment of the existing well configuration, including a discussion of CT values currently required and currently achieved

25

1  under the existing configuration in accordance with the requirements of Paragraph 11 (Interim
2  Disinfection Program). Based on the assessment of the current well configuration, GWA shall
3  make recommendations regarding the need for dedicated transmission lines in its three public
4  water systems, as well as recommendations concerning future treatment, including
5  chlorination/disinfection configurations, for the three public water systems. The WTLC Plan
6  shall prioritize the construction of transmission lines and any necessary chlorination/disinfection
7  configurations to ensure adequate treatment based on the following information about the
8  different parts of the public water systems: (1) the current level of disinfection achieved (the CT
9  values), and (2) the history of bacteriological contamination of the sources, such as the wellfield
10 history. The WTLC Plan shall include a schedule for developing and finalizing a scope of work
11 and design, and commencing and completing construction and upgrades to the water
12 transmission lines and chlorination systems. Within 180 days after the Entry Date, GWA shall
13 submit to EPA for review and approval the WTLC Plan. GWA shall provide a copy of the
14 document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA
15 shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final WTLC
16 Plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the
17 schedule set out in the final WTLC Plan.

18     39.    Northern District STP Renovation:  GWA shall develop an interim corrective
19 action plan and schedule to restore minimum primary treatment operational capacity to the
20 Northern District STP. The interim corrective action plan shall include, but not be limited to, the
21 following: primary clarifiers, preaeration and aerated grit removal systems, and installation of
22 primary sludge pumps. The interim corrective action plan shall also address re-implementation
23 of the biological and receiving water monitoring program required by the Northern District
24 STP's NPDES permit. The schedule shall include time frames for commencing and completing
25 the improvements outlined in the interim corrective action plan within 540 days after the Entry
26 Date. In addition, GWA shall provide a schedule for commencing and completing a design

28                                        26

1 within 540 days after the Entry Date to fully renovate the Northern District STP to bring the STP
2 into compliance with its NPDES permit requirements based on the findings of the
3 Comprehensive Performance Evaluation ("CPE") of the Northern District STP prepared for
4 GWA by Duenas & Associates, Inc. and Boyle Engineering Corporation in October 2002. GWA
5 shall perform any additional engineering evaluations, as necessary, to complement the findings of
6 the CPE and address any other deficiencies identified since the completion of the CPE. Within
7 90 days after the Entry Date, GWA shall submit to EPA for review and approval the interim
8 corrective action plan and schedules required by this Paragraph. GWA shall provide a copy of
9 the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,
10 GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the
11 amended interim corrective action plan and schedules to EPA and Guam EPA, and shall perform
12 the required tasks in accordance with the schedules set out in the amended interim corrective
13 action plan.

14 40. Agana Main Sewage Pump Station: GWA shall develop a schedule to stop
15 overflows of raw sewage from the Agana Main Sewage Pump Station. The schedule shall
16 include time frames for developing and completing a scope of work, design, and construction.
17 The schedule shall require construction to be completed within 300 days after the Entry Date.
18 Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the
19 schedule required by this Paragraph. GWA shall provide a copy of the document concurrently to
20 Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's
21 comments in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam
22 EPA, and shall perform the required tasks in accordance with the final schedule.

23 41. Ugum Surface Water Treatment Plant: GWA shall develop a scope of work and
24 schedule for the rehabilitation, renovation and/or design and construction of new (alternative)
25 treatment facilities of the Ugum Surface Water Treatment Plant to bring the plant into

28 REVISED 7-26-04 27

compliance with SDWA requirements and performance standards. The scope of work shall detail all rehabilitation, renovation, and/or recommended design and construction of new (alternative) treatment work to be performed based on the findings of the CPE of the Ugum Surface Water Treatment Plant prepared for GWA by Belanger and Associates and International Studies & Training Institute, Inc., in May 2001. The scope of work may include other documentation or studies needed to determine the extent of the rehabilitation and renovation needs of the existing plant, and/or may include alternative water treatment feasibility or preliminary engineering studies deemed by GWA to be necessary to determine if other alternative treatment design and construction projects may be preferable and/or feasible to bring the plant into full compliance with all SDWA requirements. The schedule shall include, but not be limited to, time frames for developing and completing all activities contained in the scope of work, any additional studies needed to determine the preferred course of action (rehabilitation/renovation or alternative treatment design and construction), design, and construction. The schedule shall require construction to be completed within 3 years after the Entry Date. Within 90 days after the Entry Date, GWA shall submit to EPA for review and approval the scope of work and schedule required by this Paragraph. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final scope of work and schedule to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set out in the final scope of work.

42.     Agana STP Renovation: GWA shall develop an interim corrective action plan and schedule to restore minimum primary treatment operational capacity to the Agana STP. The interim corrective action plan shall include, but not be limited to, the following: primary clarifiers, sludge dewatering centrifuge, and installation of flow measurement. The interim corrective action plan shall also address re-implementation of the biological and receiving water monitoring program required by the Agana STP's NPDES permit. The schedule shall include

28

1    time frames for commencing and completing the improvements outlined in the interim corrective
2    action plan within 2 years after the Entry Date. In addition, GWA shall provide a schedule for
3    commencing and completing a design within 2 years after the Entry Date to fully renovate the
4    Agana STP to bring the STP into compliance with its NPDES permit requirements based on the
5    findings of the CPE of the Agana STP prepared for GWA by Duenas & Associates, Inc. and
6    Boyle Engineering Corporation in October 2002. GWA shall perform any additional engineering
7    evaluations, as necessary, to complement the findings of the CPE and address any other
8    deficiencies identified since the completion of the CPE. Within 90 days after the Entry Date,
9    GWA shall submit to EPA for review and approval the interim corrective action plan and
10   schedule required by this Paragraph. GWA shall provide a copy of the documents concurrently
11   to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's
12   comments in accordance with Paragraph 2, shall provide the amended interim corrective action
13   plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the
14   schedule set out in the amended interim corrective action plan.

15   43.    Agat, Baza Gardens, and Umatac-Merizo STPs Renovations and/or Expansions:
16   GWA shall develop a schedule for the performance of CPEs of the Agat, Baza Gardens, and
17   Umatac-Merizo STPs to identify performance-limiting factors and recommended improvements
18   needed to bring each of these STPs into compliance with their respective NPDES permit
19   requirements. The CPEs shall be performed by a qualified engineering firm experienced in
20   performing a CPE for wastewater treatment facilities. Each CPE shall be performed in
21   accordance with EPA guidelines for performing a CPE as described in the following
22   publications: *Handbook: Optimizing Water Treatment Plant Performance Using the Composite*
23   *Correction Program (CCP)* (EPA/625/6-91/027, August 1998); and *Handbook: Improving*
24   *POTW Performance Using the Composite Correction Program Approach* (EPA-625/6-84-008,
25   October 1984), or a later publication if available. The schedule shall include time frames for the
26   following: (1) developing and completing a scope of work, initiating and completing the CPEs,
27

28   REVISED 7-26-04                              29

1 and submitting draft CPEs for the three STPs within one year after the Entry Date; and

2 (2) completion of the final CPEs for the three STPs by September 5, 2004. Within 90 days after

3 the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this

4 Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

5 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

6 with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the

7 required tasks in accordance with the final schedule.

8      44.    <u>Santa Rita Spring Booster Pump Station Rehabilitation</u>: GWA shall develop:

9 (1) a schedule for commencing and completing the design and construction work for the Santa

10 Rita Spring Booster Pump Station ("BPS") rehabilitation; and (2) a revised scope of work for the

11 Santa Rita Spring BPS rehabilitation. The schedule shall require GWA to complete construction

12 within 3 years after the Entry Date. The scope of work shall include the performance of a

13 hydraulic analysis, by the selected engineering design firm, of the Santa Rita Spring flow volume

14 to ensure that all critical components such as pumps, motors, piping, etc. are sized appropriately.

15 Within 210 days after the Entry Date, GWA shall submit to EPA for review and approval the

16 schedule and scope of work required by this Paragraph. GWA shall provide a copy of the

17 documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA

18 shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final

19 schedule and scope of work to EPA and Guam EPA, and shall perform the required tasks in

20 accordance with the schedule set out in the final scope of work.

21      45.    <u>Rehabilitation/Replacement of Drinking Water Wells</u>: GWA shall develop a

22 Drinking Water Wells Rehabilitation/Replacement ("DWWR") Plan for all of its drinking water

23 wells. The DWWR Plan shall include: (1) a detailed assessment of all of GWA's wells to

24 determine which wells require either rehabilitation or replacement; (2) criteria for prioritizing the

25 rehabilitation or replacement of wells, which will identify the most critical wells, taking into

26 consideration factors such as well capacity, operating records, any historical record of

27

28 REVISED 7-26-04       30

1  bacteriological contamination at a well, and the presence or imminent threat of bacteriological

2  contamination and other contamination; and (3) time frames for developing and finalizing a

3  scope of work and design, as well as for commencing and completing rehabilitation or

4  replacement of the wells. GWA shall schedule all required work in two phases. The first phase

5

6

7  [Rest of page deliberately left blank]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  REVISED 7-26-04                                30-A

1  of work shall focus on the most critical wells identified in the DWWR Plan and shall require
2  rehabilitation and/or replacement of those critical wells within 2 years after the Entry Date. The
3  second phase of work shall include all other wells identified in the DWWR Plan and shall require
4  rehabilitation and/or replacement of those wells within five years after the Entry Date. Within
5  120 days after the Entry Date, GWA shall submit the DWWR Plan to EPA for review and
6  approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30
7  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
8  with Paragraph 2, shall provide the final DWWR Plan to EPA and Guam EPA, and shall perform
9  the required tasks in accordance with the schedule set out in the final DWWR Plan.

10  **VI.** **Training at GWA**

11  46.  Operator Training: GWA shall develop an operator training program that
12  provides all POTW and public water system operators with information about the proper
13  operation and maintenance of the treatment, disinfection, and conveyance systems. Within 180
14  days after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall
15  provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of
16  EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall
17  provide the final program to EPA and Guam EPA, and shall implement the operator training
18  program.

19  47.  Other Training: GWA shall develop an ongoing training program for appropriate
20  staff in at least the following areas: utility management, financial administration, and planning.
21  GWA shall also offer the CCU training on risk mitigation and other appropriate and available
22  Board Trainings. Within one year after the Entry Date, GWA shall submit the program to EPA
23  for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30
24  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
25  with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement
26  the training program.

27

28  31

## VII. Reporting Requirements and Notice Provisions

48. Notice of Noncompliance or Delay: If GWA becomes aware that it will not meet, or it is not likely to meet, any completion date for any compliance activity or deliverable required by this Stipulated Order for Preliminary Relief, or that it is not in compliance with a requirement of this Stipulated Order for Preliminary Relief, GWA shall submit written notification to the United States and EPA within one week of when GWA's General Manager becomes aware of such expected delay or noncompliance. The notice shall contain the following information: a description of the noncompliance or the expected delay, the reason for the noncompliance or the expected delay, an estimate of how much additional time is needed to complete the affected compliance activity or deliverable or to come into compliance, and a statement describing all steps taken to minimize the noncompliance or delay.

49. Compliance Progress Reports: GWA shall submit quarterly compliance progress reports to EPA and Guam EPA and make them available to the general public. The first quarterly progress report shall include a compliance schedule for all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief. Quarterly compliance progress reports shall include, but not be limited to, the following: GWA's progress toward completing compliance activities and deliverables required by this Stipulated Order for Preliminary Relief; reporting of compliance and/or noncompliance with schedules established for specific compliance activities and deliverables; explanations of noncompliance and actions taken or to be taken to address noncompliance; and a brief discussion of the status of efforts toward meeting future compliance schedule activities and deliverables required by this Stipulated Order for Preliminary Relief. When the long-term financial plan is approved by the PUC, GWA shall include an updated compliance schedule in the next quarterly compliance progress report that includes all anticipated construction activities and related construction schedules. The quarterly compliance progress report shall be due on or before January 28, April 28, July 28, and October 28, and shall cover activities in the preceding calendar quarter. The first quarterly compliance

32

1 | progress report shall be due on the 28th calendar day following the first full quarter after the

2 | Entry Date.

3 | 50. Except as specified otherwise, when written notification to or communication

4 | with GWA, the Government of Guam, EPA, or the United States is required by the terms of this

5 | Stipulated Order for Preliminary Relief, it shall be sent via express mail or similar service with a

6 | return receipt requested, or, in the alternative, by both fax and e-mail, and addressed as follows:

GWA:
> General Manager
> Guam Waterworks Authority
> P.O. Box 3010
> Hagatna, Guam 96932
> Phone: (671) 647-2600
> Fax: (671) 646-2335
> e-mail: gmgwa@ite.net

Government of Guam:

> Attorney General of Guam
> Guam Judicial Center, Suite 2-200E
> 120 West O'Brien Drive
> Hagatna, Guam 96910
> Fax: (671) 472-2493
> e-mail: law@mail.justice.gov.gu

EPA:
> Manager, Pacific Islands Office (CMD-6)
> U.S. Environmental Protection Agency, Region 9
> 75 Hawthorne Street
> San Francisco, CA 94105
> Fax: (415) 947-3560
> e-mail: machol.ben@epa.gov

United States:

> United States Attorney
> District of Guam
> Sirena Plaza
> 108 Hernan Cortez Ave., Suite 500
> Hagatna, Guam 96910
> Fax: (671) 472-7215
> e-mail: mikel.schwab@usdoj.gov

> Section Chief
> Environmental Enforcement Section
> D.J. Ref 90-5-1-1-07942 (Mullaney)
> U.S. Department of Justice

REVISED 7-26-04    33

301 Howard Street, Suite 1050
San Francisco, CA 94105
Fax: (415) 744-6476
e-mail: robert.mullaney@usdoj.gov

51.     All notices and submissions to EPA shall be signed and affirmed by a responsible official of GWA or the Government of Guam using the following certification statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

## VIII.  EPA Access

52.     Any authorized representative of EPA, upon presentation of proper identification, shall have a right of entry to GWA's POTW and three public water systems at any reasonable time for the purpose of monitoring compliance with the provisions of this Stipulated Order for Preliminary Relief, including, but not limited to, inspecting equipment, inspecting and copying all records maintained by GWA, and testing and observing all discharges and drinking water. EPA's rights of inspection and entry under this Paragraph are in addition to, and in no way limit, EPA's rights of inspection and entry under the CWA, SDWA, or any other law.

## IX.  Stipulated Penalties

53.     Stipulated Penalties:

34

a. Defendants shall pay stipulated penalties for failure to meet deadlines specified in this Stipulated Order for Preliminary Relief as specified below:

    i. For failure to meet the deadlines specified in Paragraphs 1, 13, 18, 19, 24, 25, 26, 33, 34, 42, 43, 44, 45, and 47:

    - $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

    ii. For failure to meet the deadlines specified in Paragraphs 3, 4, 5, 6, 7, 14, 16, 17, 22, 23, 32, 38, 39, 40, and 46:

    - $500 per day per violation for the first 30 days, $1,000 per day per violation for the following 30 days, and $2,000 per day per violation for each day thereafter.

    iii. For failure to meet the deadlines specified in Paragraphs 8, 9, 10, 11, 12, 15, 20, 21, 27, 28, 29, 30, 31, 35, 36, 37, and 41:

    - $1,000 per day per day per violation for the first 30 days, $2,000 per day per violation for the following 30 days, and $5,000 per day per violation for each day thereafter.

b. Defendants shall pay stipulated penalties for failure to meet any other requirements of this Stipulated Order for Preliminary Relief as follows:

    - $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

54. Stipulated penalties shall begin to accrue on the day after performance is due and shall continue to accrue through the final date of completion even if no notice of the violation is sent to Defendants. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Stipulated Order for Preliminary Relief.

35

1    55.    Any stipulated penalty accruing pursuant to this Stipulated Order for Preliminary

2  Relief shall be payable upon demand and due not later than 30 days after Defendants' receipt of

3  EPA's written demand. Defendants shall pay the amount owed to the United States pursuant to

4  this Stipulated Order for Preliminary Relief by certified or cashier's check in the amount due

5  payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United

6  States Attorney's Office file number 2002V00100, and delivered to the office of the United

7  States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza,

8  108 Hernan Cortez, Hagatna, Guam 96910.

9    56.    The United States may, in the unreviewable exercise of its discretion, reduce or

10  waive stipulated penalties otherwise due it under this Stipulated Order for Preliminary Relief.

11    57.    If Defendants fail to pay stipulated penalties owed pursuant to this Stipulated

12  Order for Preliminary Relief within 30 days of receipt of EPA's written demand, Defendants

13  shall pay interest on the late payment for each day  after the initial thirty day due date. The rate

14  of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.

15    58.    Stipulated penalties are not the Plaintiff's exclusive remedy for violations of this

16  Stipulated Order for Preliminary Relief. The United States expressly reserves the right to seek

17  any other relief it deems appropriate, including, but not limited to, action for statutory penalties,

18  contempt, or injunctive relief against Defendants.

19  **X.    Force Majeure**

20    59.    Defendants shall perform all requirements of this Stipulated Order for Preliminary

21  Relief in accordance with the time schedules set forth except to the extent, and for the period of

22  time, that such performance is prevented or delayed by events which constitute a force majeure.

23    60.    For the purposes of this Stipulated Order for Preliminary Relief, a force majeure is

24  defined as any event arising from causes beyond the control of Defendants and that cannot be

25  overcome by diligent and timely efforts of Defendants, including their contractors. Economic

26  hardship, lack of a political consensus, normal inclement weather, and increased costs of

27

28  REVISED 7-26-04                                     36

1  performance shall not be considered events beyond the reasonable control of Defendants for
2  purposes of determining whether an event is force majeure. The requirement that Defendants
3  exercise diligent and timely efforts to fulfill their obligations includes using best efforts to
4  anticipate any force majeure event and best efforts to address the effects of any potential force
5  majeure event (1) as it is occurring and (2) following the potential force majeure events, such that
6  delay is minimized to the greatest extent possible.

7      61.    In the event of a force majeure, the time of performance of the activity delayed by
8  the force majeure shall be extended by EPA for the time period of the delay attributable to the
9  force majeure. An extension of one compliance date based on a particular incident does not
10  necessarily result in an extension of a subsequent compliance date or dates. Defendants must
11  make an individual showing of proof regarding each delayed incremental step or other
12  requirement for which an extension is sought. Defendants shall adopt all reasonable measures to
13  avoid or minimize any delay caused by a force majeure.

14      62.    When an event occurs or has occurred that may delay or prevent the performance
15  of any obligation under this Stipulated Order for Preliminary Relief, Defendants shall notify by
16  telephone the Manager, Pacific Islands Office, Region 9, (415) 972-3774, or the Guam Program
17  Manager, Pacific Islands Office, Region 9, (415) 972-3770, within 72 hours of Defendants'
18  knowledge of such event. If Defendants are unable to contact EPA Region 9, Defendants shall
19  notify by telephone the U.S. Attorney's Office for the District of Guam at 472-7332, extension
20  119 or 121. Telephone notification shall be followed by written notification made within seven
21  days of Defendants' knowledge of the event. The written notification shall fully describe: the
22  event that may delay or prevent performance; reasons for the delay; the reason the delay is
23  beyond the reasonable control of Defendants if they believe the event constitutes a force majeure;
24  the anticipated duration of the delay; actions taken or to be taken to prevent or minimize the
25  delay; a schedule for implementation of any measures to be taken to mitigate the effect of the
26  delay; and the time needed to implement any dependent activities. For purposes of this Section,

27

28                                      37

Defendants shall be deemed to have knowledge of anything they or their contractors knew or should have known.

63. Failure of Defendants to comply with the force majeure notice requirements provided in Paragraph 62 for any delay in performance will be deemed an automatic forfeiture of their right to assert that the delay was caused by a force majeure.

64. After receiving written notification from Defendants of a force majeure, EPA shall determine whether Defendants' request for delay is justified and EPA shall notify Defendants of its determination in writing. EPA's failure to respond within 30 days to a request for delay by Defendants shall be deemed a denial of that request. If Defendants disagree with EPA's determination, Defendants may initiate dispute resolution procedures pursuant to Section XI (Dispute Resolution).

65. Defendants shall bear the burden of proving that any delay or violation of any requirement of this Stipulated Order for Preliminary Relief was caused by circumstances beyond their control, or any entity under their control, including consultants and contractors, and that Defendants could not have reasonably foreseen and prevented such violation. Defendants shall also bear the burden of proving the duration and extent of any delay or violation attributable to such circumstances.

## XI. Dispute Resolution

66. The Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to the Stipulated Order for Preliminary Relief. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations by Defendants under this Stipulated Order for Preliminary Relief that have not been disputed in accordance with this Section.

67. If Defendants dispute any determination made by EPA under this Stipulated Order for Preliminary Relief, Defendants shall send a written notice to EPA and DOJ outlining the nature of the dispute, submitting all supporting information and document relating to the dispute,

38

describing its proposed resolution, and requesting informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond 15 days from the date when notice was received by EPA and DOJ unless the parties agree otherwise in writing.

68.     If the informal negotiations are unsuccessful, the disputed determination by EPA shall control, unless Defendants file a motion with this Court for dispute resolution. Any such motion must be filed within 30 days after termination of informal negotiations and must be concurrently sent to EPA and DOJ. The United States shall then have 30 days to respond to Defendants' motion. In any such dispute resolution proceeding, Defendants bear the burden of proving that EPA was arbitrary and capricious.

## XII.    Applicability

69.     The provisions of this Stipulated Order for Preliminary Relief shall apply to and be binding upon GWA, its officers, agents, employees, trustees, successors, and assigns, the Government of Guam, its elected officials, officers, agents, employees, trustees, successors, and assigns, and the United States, on behalf of EPA.

## XIII.   General

70.     This Stipulated Order for Preliminary Relief is enforceable in all of its terms by the Court.

71.     This Stipulated Order for Preliminary Relief is not and shall not be construed as either an NPDES permit or a modification of any existing NPDES permit. By entering into this Stipulated Order for Preliminary Relief, the United States does not warrant in any manner that Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief will result in compliance with the provisions of the CWA, the SDWA, and regulations promulgated pursuant to those statutes. Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief does not affect or resolve the United States' claims for civil penalties or permanent injunctive relief.

72.     This Stipulated Order for Preliminary Relief shall not affect GWA's obligation to

39

1 comply with its NPDES permits and with all applicable federal laws, regulations, and permits.

2       73.     This Stipulated Order for Preliminary Relief does not limit or affect the rights of

3 the United States or Defendants against any third parties, nor does it limit the rights of third

4 parties who are not parties to this Stipulated Order for Preliminary Relief. In addition, this

5 Stipulated Order for Preliminary Relief is not to be construed as creating rights or obligations in

6 third parties.

7       74.     Each undersigned representative of Defendants and the Assistant United States

8 Attorney certifies that he is fully authorized to enter into the terms and conditions of this

9 Stipulated Order for Preliminary Relief, to execute the document, and to legally bind the party he

10 represents to this document.

11 **XIV.   Modification**

12       75.     There shall be no material modifications of this Stipulated Order for Preliminary

13 Relief without the written approval of the parties to this Stipulated Order for Preliminary Relief

14 and the approval of the Court. All non-material modifications, which may include extensions of

15 the time frames and schedules for performance of the terms and conditions of this Stipulated

16 Order for Preliminary Relief, may be made by agreement of the parties and shall be effective

17 upon filing by the United States of such modifications with the Court.

18

19                            **ORDER**

20

21

22 **IT IS SO ORDERED** this 4ᵗʰ day of _____ June _____, 2003.

23

24 Notice is hereby given that this document was
entered on the docket on JUN - 5 2003

25 No separate notice of entry on the docket will
be issued by this Court.         /s/ John S. Unpingco.

26     Mary L. M. Moran         JOHN S. UNPINGCO
    Clerk, District Court of Guam     United States District Judge

27 By: _____   JUN -5 2003

28   Deputy Clerk      Date        40

1 | For the United States of America, Plaintiff:

2 |                              THOMAS L. SANSONETTI
                                Assistant Attorney General
3 |                              Environment & Natural Resources Division
                                ROBERT D. MULLANEY
4 |                              Environmental Enforcement Section
                                Environment & Natural Resources Division
5 |                              United States Department of Justice

6 |                              FREDERICK A. BLACK
                                United States Attorney
7 |                              Districts of Guam and NMI
                                (671) 472-7332
8 |

9 | Dated: 5/20/23

10 |                             MIKEL W. SCHWAB
                                Assistant U.S. Attorney
11 |

12 | OF COUNSEL:

13 | KAREN PETERSON
     Assistant Regional Counsel
4 | U.S. Environmental Protection Agency
     75 Hawthorne Street
15 | San Francisco, CA 94105

16 |

17 | For Guam Waterworks Authority and the Government of Guam, Defendants:

18 |

19 | Dated:  5/20/03

20 |                             DOUGLAS B. MOYLAN
                                Attorney General of Guam
21 |                             Guam Judicial Center, Suite 2-200E
                                120 West O'Brien Drive
22 |                             Hagatna, Guam 96910
                                (671) 475-3324

23 | Dated: 5/20/03

24 |                             JON A. VISOSKY
                                Dooley Lannen Roberts & Fowler LLP
25 |                             Suite 201, Orlean Pacific Plaza
                                865 South Marine Drive
26 |                             Tamuning, Guam 96913
                                (671) 646-1222

27 |

28 |                                      41

RECEIVED
APR 11 2003
Public Utilities Commission
of Guam

## BEFORE THE GUAM PUBLIC UTILITIES COMMISSION

**GUAM WATERWORKS AUTHORITY**
**REGULATORY MATTERS**                          *[Miscellaneous Dockets]*

### ORDER

By this Order, duly considered at the Commission's April 10, 2003 meeting and by the affirmative vote of at least four Commissioners, the Commission takes action on a number of regulatory matters concerning Guam Waterworks Authority *[GWA]*. This Order addresses the following regulatory subjects:

### 1. GWA Staffing Study [Docket 01-07].

On April 2, 2003 the Commission conducted a public hearing to consider Georgetown's staffing study of GWA. The study is mandated by P.L. 26-23 and by the Commission's September 13, 2001 Order. GWA filed no comments regarding the study. After discussion and on motion duly made, seconded and carried, the Commission orders that the study be approved. ALJ is authorized and directed to cause the publication of the study results in accordance with P.L. 26-23. For the record, the Commission notes advice from the Consolidated Commission on Utilities [CCU] that it intends to pursue legislation, which will relieve GPA and GWA from the staffing study requirements of P.L. 26-23.

### 2. GWA/Navy Settlement [Docket 00-01].

CCU has informed the Commission that it is in the final stages of negotiations with Navy regarding the settlement of litigation for amounts owed by GWA to Navy for water services. Under the proposed settlement, GWA would pay Navy $9 million over 105 months with interest. CCU has proposed and requested that the surcharge, which was established by Commission order dated September 13, 2001; then placed under a one year moratorium by P.L. 26-81; and which is subject to automatic reactivation on May 6, 2003, be amended to permit its use to fund the Navy settlement in addition to regulatory fees and amounts owed to GPA. The Commission has informed CCU that at its request, the Commission would, on its own initiative, commence proceedings to consider this concept during the June 2003 regulatory session. In the event such a request is filed *[which may request consideration of other collateral rate issues]*, ALJ is authorized and directed to oversee prehearing activities, which will lead to June hearing.

ATCH A

### 3.   USA v. GWA [District Court Civil Case 02-035] [Docket 02-02]

Federal EPA and GWA are currently negotiating the terms of a stipulated order *[Stipulated Order]*, by which GWA, under EPA oversight, will undertake a broad initiative to restore it facilities and to provide safe, reliable, lawful service to the island. A copy of the proposed 37-page draft Stipulated Order was provided to the Commission for comment. Commission comments were submitted to the party litigants by Chairman Brooks' March 27, 2003 letter. EPA has since conferred with the Commission regarding the important role the Commission will serve under the Stipulated Order.

An issue raised by the Stipulated Order is the extent to which the Commission should be involved, under 12 GCA 12004 *[contract review authority]*, in reviewing and issuing prior approval of substantial GWA procurements, which are required by the Stipulated Order. After considering Georgetown's position on this issue *[GCG letter dated April 4, 2003]* and after discussion with its ALJ, on motion duly made, seconded and carried, the Commission finds that the essential purpose of section 12004 *[Commission review of reasonableness and prudence of proposed procurement]* is satisfactorily addressed by the history of the EPA litigation, the depth and scope of the Stipulated Order, and by the fact that EPA will serve a significant oversight role in the crafting and implementation of the various procurements. Accordingly, the Commission finds and orders that procurements required by the Stipulated Order shall not require Commission review and approval under its contract review protocol. The Commission wants to make a clear distinction, under the Stipulated Order between these procurements and the interim and final financial plans, which shall undergo a thorough Commission review and approval process.  This Commission decision is part of a broader initiative to reduce regulatory expense and to redefine the necessary scope of its regulatory authority, given the presence of the publicly elected CCU.

For the record, the Commission renews its commitment, as made in its March 14, 2002 Order, that it will provide GWA in a timely manner with adequate rate relief to enable it to comply with an EPA approved strategic plan to restore the utility and bring it into compliance with Federal law.

### 4.   GWA Water Service Charge.

By CCU email inquiry dated March 3, 2003, the Commission was made aware of controversy relating to GWA's practice of assessing a basic service fee for water service, without regard to whether water service is available to a customer.  By his March 13, 2003 letter, ALJ posed to GWA and Georgetown questions

regarding this practice and required responses by April 8. ALJ is authorized and empowered after reviewing these responses to determine whether this issue should be included as a matter for Commission consideration during the anticipated June rate hearing.

### 5. GWA Regulatory Compliance.

GWA is not in compliance with its obligations under the Commission's contract review protocol [Commission Order dated February 20, 2000].
Under separate order and as part of a reduction in regulatory work and expense, the Commission has announced a protocol under which it will attempt to rely on GWA reports in lieu of Georgetown studies regarding GWA accounts receivable, payables, financial condition and significant management initiatives. The

Commission has emphasized to CCU the importance of GWA providing this information in a complete and timely manner so that the Commission can discharge its surveillance duty under law.

GWA has also been reminded of the Commission's December 17, 1999 Administrative Order, which provides that a utility will not be awarded regulatory relief unless its regulatory account with the Commission is current. [Pursuant to the terms of the surcharge established by Commission Order dated September 13, 2001 in Docket 00-01, Commission fees are to be paid from the surcharge proceeds. Accordingly, availability of funds is not an issue regarding the timely payment of regulatory fees.]

GWA is cautioned that it must bring itself into full regulatory compliance in advance of the June regulatory session.

In light of the Stipulated Order discussed in paragraph 3 above, Commission order regarding GWA compliance with the terms and recommendations of the Commission's revenue cycle audit [see Commission Consolidated Order dated December 11, 2001] is abated until further notice. GWA is nevertheless encouraged to consider the audit recommendations as part of its reorganization activities.

Dated this 10th day of April 2003.

_____
Terrence Brooks

_____
Joseph McDonald

_____
Filomena Cantoria

_____
Edward Crisostomo