# ORIGINAL

1  SUE ELLEN WOOLDRIDGE
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3  ROBERT D. MULLANEY
   Environmental Enforcement Section
4  Environment & Natural Resources Division
   301 Howard Street, Suite 1050
5  San Francisco, CA 94105
   Tel: (415) 744-6491
6  Fax: (415) 744-6476
   LEONARDO M. RAPADAS
7  United States Attorney
   MIKEL W. SCHWAB
8  Assistant U.S. Attorney
   Suite 500, Sirena Plaza
9  108 Hernan Cortez
   Hagatna, Guam 96910
10 Tel: (671) 472-7332
   Fax: (671) 472-7215
11

12 Attorneys for the United States of America

13                 UNITED STATES DISTRICT COURT

14                    TERRITORY OF GUAM

15

16 UNITED STATES OF AMERICA,            )   CIVIL NO. 02-00035
                                        )
17              Plaintiff,              )   STIPULATION ~~AND ORDER~~
                                        )
18       v.                             )   AMENDING STIPULATED
                                        )
19 GUAM WATERWORKS AUTHORITY            )   ORDER FOR PRELIMINARY
   and the GOVERNMENT OF GUAM,          )   RELIEF
20                                      )
                                        )
21              Defendants.             )
                                        )
22 _____ )

23

24

25

26

27

28

FILED
DISTRICT COURT OF GUAM

OCT 1 9 2006

MARY L.M. MORAN
CLERK OF COURT

1         WHEREAS, the United States of America filed a civil action seeking injunctive relief and

2 the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the

3 Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42

4 U.S.C. §§ 300f - 300j-26 (the "SDWA");

5         WHEREAS, the Government of Guam is identified in the Complaint as a defendant as

6 required by CWA Section 309(e), 33 U.S.C. § 1319(e);

7         WHEREAS, the parties agreed that entry of a Stipulated Order for Preliminary Relief

8 ("Stipulated Order"), which was approved and filed by the Court on June 5, 2003, was the most

9 appropriate way to require the immediate implementation of short-term projects and initial

10 planning measures by GWA and the Government of Guam (jointly "Defendants") to begin to

11 address issues of compliance at GWA's Publicly Owned Treatment Works and three public water

12 systems;

13         WHEREAS, the Stipulated Order provides that: (1) there shall be no material

14 modifications of the Stipulated Order without the written approval of the parties to the Stipulated

15 Order and the approval of the Court; and (2) all non-material modifications, which may include

16 extensions of the time frames and schedules for performance of the terms and conditions of the

17 Stipulated Order, may be made by agreement of the parties and shall be effective upon filing by

18 the United States of such modifications with the Court;

19         WHEREAS, GWA has requested certain modification to the provisions of the Stipulated

20 Order and the parties have agreed to make those modifications, add some additional

21 requirements, and correct a typographical error in the Stipulated Order;

22         NOW, THEREFORE, in light of the foregoing recitals, the parties, through their

23 respective undersigned counsel, stipulate to the following changes in the Stipulated Order and

24 jointly request the Court to enter the following Order:

25

26

27

28                                       - 2 -

1  **ORDER**

2  1. The following changes shall be made to the Stipulated Order:

3     a.  Substitute a new page 5 to add provisions to Paragraph 5 that: (1) specify the

4         oversight role of the Chief Financial Officer; and (2) require the CCU to hire an

5         Assistant Chief Financial Officer, a material change to the Stipulated Order;

6     b.  Substitute new pages 6, 6A, and 6B to add requirements in Paragraph 8 that GWA

7         obtain additional engineering support and hire a senior wastewater operator or a

8         GIS/Land Information System Manager, a material change to the Stipulated

9         Order;

10    c.  Substitute a new page 11 to modify the due dates in Paragraph 10 for completion

11        of a draft and final Master Plan, a non-material change to the Stipulated Order;

12    d.  Substitute new pages 13 and 13A to add requirements to Paragraph 12 that GWA

13        ensure that it has an adequate supply of chlorine and that it upgrade its

14        chlorination system, a material change to the Stipulated Order;

15    e.  Substitute a new page 14 to modify the due date in Paragraph 14 for the water

16        meter program, a non-material change to the Stipulated Order;

17    f.  Substitute a new page 15 to modify the due date in Paragraph 17 for standby

18        generators, a non-material change to the Stipulated Order;

19    g.  Substitute a new page 21 to modify the due date in Paragraph 30 for approval of a

20        final financial plan, a non-material change to the Stipulated Order;

21    h.  Substitute a new page 22 to specify the expense base used to calculate the amount

22        of the reserve in Paragraph 32, a material change to the Stipulated Order;

23    i.  Substitute a new page 23 to modify the due date in Paragraph 35 for construction

24        of the Agana Ocean outfall, a non-material change to the Stipulated Order;

25

26

27

28                                   - 3 -

j. Substitute a new page 24 to modify the due date in Paragraph 36 for construction of the Northern District Ocean outfall, a non-material change to the Stipulated Order;

k. Substitute new pages 25, 26, and 26A to add requirements to Paragraph 38 that GWA complete construction of a new water transmission line and complete a condition assessment of its water reservoirs, a material change to the Stipulated Order;

l. Substitute a new page 27 to provide a revised scope of work in Paragraph 39 for the corrective actions to restore operational capacity for a sewage treatment plant, a material change to the Stipulated Order;

m. Substitute new pages 28 and 29 to modify the due date in Paragraph 41 for completion of construction, a non-material change to the Stipulated Order, and to provide a revised scope of work in Paragraph 42 for the corrective actions to restore operational capacity for a sewage treatment plant, a material change to the Stipulated Order;

n. Substitute a new page 30 to modify the due date in Paragraph 44 for completion of construction, a non-material change to the Stipulated Order; and

o. Substitute a new page 35 to correct a typographical error in Paragraph 53.

2. A complete copy of the Stipulated Order with the substituted pages is attached as Exhibit 1 to this Stipulation and Order.



IT IS SO ORDERED this _____ day of _____, 2006.

_____
United States District Judge

RECEIVED
OCT 1 9 2006
DISTRICT COURT OF GUAM
HAGATNA, GUAM

- 4 -

**IT IS SO STIPULATED.**

For the United States of America, Plaintiff:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI
(671) 472-7332

Dated: _10 · 19 · 06_

MIKEL W. SCHWAB
Assistant U.S. Attorney

OF COUNSEL:
JULIA JACKSON, Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

IT IS SO STIPULATED.

For Guam Waterworks Authority and the Government of Guam, Defendants:

Dated: _____

Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagatna, Guam 96910
(671) 475-3324

Dated: _10/12/2006_

SAMUEL J. TAYLOR
GWA Legal Counsel
Guam Waterworks Authority
578 North Marine Corps Drive
Tamuning, GU 96913
Phone: (671) 647-7681

- 5 -

CERTIFICATION

I, FRANCES B. LEON GUERRERO, secretary working in the United States Attorney's Office, hereby certify that copies of the Stipulation and Order Amending the Stipulated Order for Preliminary Relief were served by personal service and facsimile to the attorneys of record at the following addresses:

Dated: October 12, 2006

*Frances B Leon Guerrero*

FRANCES B. LEON GUERRERO
Civil secretary



COPY

1  THOMAS L. SANSONETTI
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3  ROBERT D. MULLANEY
   Environmental Enforcement Section
4  Environment & Natural Resources Division
   301 Howard Street, Suite 1050
5  San Francisco, CA 94105
   Tel: (415) 744-6491
6  Fax: (415) 744-6476

7  FREDERICK A. BLACK
   United States Attorney
8  MIKEL W. SCHWAB
   Assistant U.S. Attorney
9  Suite 500, Sirena Plaza
   108 Hernan Cortez
10 Hagatna, Guam 96910
   Tel: (671) 472-7332
11 Fax: (671) 472-7215

12
   Attorneys for the United States of America
13

14              UNITED STATES DISTRICT COURT

15                  TERRITORY OF GUAM

16 UNITED STATES OF AMERICA,          )   CIVIL CASE NO. 02-00035
                                      )
17                                    )
          Plaintiff,                  )   **STIPULATED ORDER**
18                                    )   **FOR PRELIMINARY RELIEF**
       v.                             )
19                                    )
   GUAM WATERWORKS AUTHORITY          )
20 and the GOVERNMENT OF GUAM,        )
                                      )
21                                    )
          Defendants.                 )
22 _____  )

23

24

25

26

27

28

FILED
DISTRICT COURT OF GUAM

JUN 05 2003

MARY L. M. MORAN
CLERK OF COURT

1    WHEREAS, the United States of America filed a civil action seeking injunctive relief and

2  the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the

3  Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42

4  U.S.C. §§ 300f - 300j-26 (the "SDWA");

5    WHEREAS, GWA is a public corporation that has the authority to produce, treat,

6  transmit, store, distribute, and sell water on Guam, as well as the authority to collect, treat, and

7  sell or dispose of wastewater on Guam;

8    WHEREAS, GWA owns and operates five sewage treatment plants on Guam that are

9  subject to the conditions and limitations contained in National Pollutant Discharge Elimination

10  System ("NPDES") Permit Nos. GU0020087, GU0020222, GU0020095, GU0020141, and

11  GU0020273 issued by the U.S. Environmental Protection Agency ("EPA") pursuant to the

12  CWA;

13    WHEREAS, GWA owns and operates wastewater collection and conveyance systems,

14  including approximately 75 sewage pump stations, that transport raw sewage to its sewage

15  treatment plants;

16    WHEREAS, the NPDES permits require GWA at all times to properly operate and

17  maintain all facilities and systems of treatment and control (and related appurtenances) that are

18  installed or used to achieve compliance with the conditions of the permits;

19    WHEREAS, the Government of Guam is identified as a defendant as required by CWA

20  Section 309(e), 33 U.S.C. § 1319(e);

21    WHEREAS, GWA owns and operates three public water systems that supply drinking

22  water for the majority of the population of Guam: the Northern, Central, and Southern Systems;

23    WHEREAS, GWA's public water systems are required to comply with the National

24  Primary Drinking Water Regulations under the SDWA, including the Maximum Contaminant

25  Levels for microbiological contaminants and the treatment technique for turbidity;

26    WHEREAS, the United States sought in its Complaint both a preliminary and permanent

27

28    2

injunction as well as the appointment of a receiver to address issues of compliance in GWA's Publicly Owned Treatment Works ("POTW") and three public water systems;

WHEREAS, the parties agree that entry of this Stipulated Order for Preliminary Relief is the most appropriate way to require the immediate implementation of short-term projects and initial planning measures by GWA and the Government of Guam (jointly "Defendants") to begin to address issues of compliance at GWA's POTW and three public water systems;

WHEREAS, the Guam Public Utilities Commission issued an Order on April 10, 2003 (see Attachment A to this Stipulated Order), renewing its commitment to provide GWA in a timely manner with adequate rate relief to enable GWA to comply with an EPA-approved strategic plan in a prudent and reasonable manner;

WHEREAS, the parties contemplate entering into a further stipulation to address additional compliance issues after Defendants' completion of the initial planning measures set out in this Stipulated Order for Preliminary Relief;

THEREFORE, before taking testimony or adjudicating any issue of fact or law, and without any finding or admission of liability against or by GWA or the Government of Guam;

**IT IS ORDERED, ADJUDGED, AND DECREED as follows:**

I.    **Submittals by Defendants**

1.    Compliance Monitor: Within ten days after the date of entry of this Stipulated Order for Preliminary Relief by the Court (hereinafter the "Entry Date"), GWA shall appoint one individual whose primary responsibility will be to coordinate and report on all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief. Within 20 days after the Entry Date, GWA shall provide notice to EPA listing the individual's name, address, telephone and fax numbers, and e-mail address. If GWA appoints a new person as compliance monitor, GWA shall provide contact information about the new compliance monitor to EPA within 10 working days after the appointment.

2.    EPA Approval of Plans and Other Submittals: After review of any plan, program,

3

1  report or other item required to be submitted for approval under this Stipulated Order for
2  Preliminary Relief, EPA shall submit to Defendants in writing either an approval or detailed
3  comments explaining why EPA does not approve the plan, program, report or other submittal.
4  Defendants shall have 30 days from receipt of EPA's comments to submit a revised plan,
5  program, report or other submittal that fully addresses and responds to EPA's comments unless a
6  longer time period is agreed upon by all parties. Defendants shall use their best efforts to
7  incorporate EPA's comments to the extent practicable. Representatives of the parties shall make
8  themselves available during the comment period to informally discuss questions and comments
9  on any documents. Defendants' failure to respond to EPA's comments shall constitute a
10 violation of this Stipulated Order for Preliminary Relief. The procedures of this Paragraph shall
11 also apply to any revised plan, program, report, or other submittal.

12 **II.    Management and Organizational Structure of GWA**

13      3.      General Manager: Within ten days after the Entry Date, the Consolidated
14 Commission on Utilities ("CCU") shall advertise to hire a full-time General Manager at GWA.
15 At a minimum, the General Manager shall have the following qualifications: (1) a Masters
16 degree in Management, Engineering, Finance, or Public Administration, or, in the alternative, a
17 Bachelor's degree and registration as a Professional Engineer pursuant to the National Council of
18 Engineering Examiners standards in either the Civil, Mechanical, or Electrical Branch; (2) at
19 least ten years of combined senior management experience at drinking water and wastewater
20 utilities, with experience in both areas; (3) proven management and communication skills;
21 (4) demonstrated ability to lead, motivate, and develop staff; (5) experience with planning,
22 design, and construction of major wastewater or drinking water infrastructure projects; and
23 (6) knowledge and experience with: a) drinking water or wastewater engineering, b) user fee
24 system development, c) bond funding, d) staff training and development, and e) federal drinking
25 water and wastewater requirements. The CCU shall use its best efforts to hire a qualified
26 General Manager within 90 days after the Entry Date.

27

28                                           4

1    4.    Chief Engineer:  Within 40 days after the Entry Date, the CCU shall advertise to
2  hire a full-time Chief Engineer at GWA.  At a minimum, the Chief Engineer shall have the
3  following qualifications:  (1) registered professional civil, mechanical or electrical engineer;
4  (2) ten or more years of professional engineering experience; and (3) fully competent and
5  proficient in planning, design, construction, and operation of wastewater treatment facilities,
6  drinking water disinfection systems, wells, and drinking water distribution and transmission
7  systems.  If possible, the applicant shall also have experience in wastewater collection systems
8  and surface water treatment systems.  The CCU shall use its best efforts to hire a qualified Chief
9  Engineer within 120 days after the Entry Date.

10    5.    Financial Officers:

11    A. Chief Financial Officer:  Within 60 days after the Entry Date, the CCU shall advertise
12        to hire a full-time Chief Financial Officer at GWA that has the appropriate qualifications
13        (e.g., Certified Public Accountant or Certified Management Accountant) and experience.
14        The Chief Financial Officer shall oversee GWA's Finance, Treasury, Accounting, and
15        Purchasing programs, and shall oversee GWA's compliance with federal and local
16        requirements.  The CCU shall use its best efforts to hire a qualified Chief Financial
17        Officer within 150 days after the Entry Date.  The Chief Financial Officer may perform
18        duties for the Guam Power Authority pursuant to the Chief Financial Officer's
19        employment agreement with the CCU.

20    B. Assistant Chief Financial Officer:  By November 30, 2006, the CCU shall hire an
21        Assistant Chief Financial Officer ("ACFO") for GWA.  The ACFO must have a
22        Bachelor's degree in finance, economics, or accounting, and adequate senior
23        level/supervisory experience.  By November 30, 2006, GWA shall submit a report to
24        EPA and Guam EPA with documentation on the professional qualifications and
25        experience of the person hired as ACFO.

26    6.    General Manager's Authority:  In order to allow GWA to operate as an
27
28    REVISED 10-3-06                          5

1  independent agency, the Chief Financial Officer shall be under the direct supervision of GWA's
2  General Manager. Within 30 days after the Entry Date, Defendants shall provide a report to EPA
3  on any legal and administrative barriers preventing GWA's General Manager from directly
4  supervising GWA's Chief Financial Officer, and recommend a course of action, including
5  proposed legislation or administrative measures, to deal with this issue. By November 9, 2003,
6  Defendants shall respond to EPA's comments in accordance with Paragraph 2 and shall take
7  action to address this issue, including submitting proposed legislation to the Guam Legislature
8  and/or implementing required administrative measures. The CCU reserves the right to review all
9  decisions made by the General Manager with respect to the Chief Financial Officer.

10  7.  Conflict of Interest Provision: GWA may enter into a service contract with a third
11  party (such as an engineering or consulting firm or a contract employment firm) to permanently
12  or temporarily fill GWA's staff vacancies. In order to avoid potential conflicts of interest that
13  may arise in that situation, GWA shall not engage in any business other than staffing services
14  with that third party (and any related corporate or business entities) for the duration of the service
15  contract. After the Entry Date, all contracts used to fill new positions on a permanent or
16  temporary basis at GWA shall be limited to either of the following: (1) a contract between GWA
17  and the individual hired; or (2) a contract between GWA and a third party that agrees to provide
18  no other service to GWA except for staffing services for the duration of the service contract.

19  8.  GWA Personnel

20  A. Certification of Operators in Direct Responsible Charge ("DRC Operators"): Within
21  180 days after the Entry Date, GWA shall ensure that DRC Operator positions are staffed
22  by operators who have obtained certification at the level required for that position by the
23  Guam Environmental Protection Agency's ("Guam EPA") "Water and Wastewater
24  Systems Classification" memorandum dated October 17, 2002. If current DRC Operators
25  at GWA are not certified at the required level, GWA shall, within ten working days after
26  the Entry Date, notify those employees that they have 180 days after the Entry Date to
27
28  REVISED 10-3-06                    6

1  obtain the required certification. If an employee does not obtain the required certification
2  within 180 days after the Entry Date, GWA shall transfer the employee and fill the
3  position with a properly certified DRC Operator.

4  B. Engineering Support: By January 31, 2007, GWA shall either: (1) hire senior level
5  engineers for water and wastewater in accordance with this Paragraph, or (2) enter into an
6  engineering services contract to provide the equivalent engineering support. GWA shall
7  hire or enter into an engineering services contract for at least three full time senior
8  engineers with the following credentials: (1) a Bachelor of Science degree in civil,
9  mechanical or electrical engineering; (2) registration as a professional engineer (P.E.)
10  pursuant to the National Council of Engineering Examiners in any state with the ability to
11  obtain a P.E. in Guam within one year; (3) a minimum of four years of engineering
12  experience; and (4) a minimum of four years of experience in water or wastewater
13  facilities design, construction, and operation and maintenance. For the senior engineer
14  positions, an advanced engineering degree may be deemed as the equivalent of one year
15  of professional experience. Any engineering support services contract entered into by
16  GWA to fulfil this requirement shall include the same number of engineers with the same
17  engineering qualifications and professional experience as above. GWA shall require the
18  contract engineers to be located at GWA for the duration of the contract services. GWA
19  shall provide to EPA and Guam EPA a copy of each engineer's professional
20  qualifications and experience within ten (10) days of hiring. If GWA elects to enter into
21  an engineering support services contract, GWA shall provide a copy of the contract,
22  scope of work, and the engineers' professional qualifications and experience for EPA's
23  review prior to finalization of the contract. GWA shall provide a copy of the documents
24  concurrently to Guam EPA.

25  C. Senior Wastewater Operator or GIS/Land Information System Manager: GWA shall
26  increase wastewater operational and technical support through the hiring of either a
27
28  REVISED 10-3-06                          6A

1  Senior Wastewater Operator or a GIS/Land Information System Manager by January 1,
2  2007. The Senior Wastewater Operator shall have, at a minimum, a Level IV Wastewater
3  Treatment Operators certification with two years of Level IV direct responsible charge
4  experience or a Level III Wastewater Treatment Operators certification with five years of
5  Level III direct responsible charge experience. The GIS/Land Information System
6  Manager shall have, at a minimum, two years of GIS/Land Information System
7  management experience and a BS in Computer Science, GIS, Engineering, or a related
8  field. GWA shall provide EPA and Guam EPA a copy of the Senior Wastewater
9  Operator's or GIS/Land Information System Manager's qualifications and experience
10  with ten (10) days of hiring.

11  9.  GWA Reorganization: GWA shall complete a full reorganization according to the
12  following schedule. Within 90 days after the Entry Date, GWA shall submit to EPA and Guam
13  EPA a draft reorganization plan that proposes a new structure for GWA to ensure that GWA is
14  most capable of completing its mission. For each work unit, the draft plan shall provide at a
15  minimum: a description of work functions, the numbers of employees, and a summary of
16  certifications and qualifications needed for each category of employee. Within 30 days after
17  receipt of EPA's comments on the draft plan, GWA shall respond to EPA's comments in
18  accordance with Paragraph 2 and provide a final reorganization plan to EPA and Guam EPA.

19

20

21  [Rest of page deliberately left blank.]

22

23

24

25

26

27

28  REVISED 10-3-06                    6B

Within 90 days after GWA has prepared a final reorganization plan, GWA shall submit to EPA and Guam EPA a draft report containing position descriptions and minimum job qualifications that meet industry standards and Guam laws for each position in the new organization. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide a final report to EPA and Guam EPA.

Within 90 days after GWA has provided a final reorganization plan, GWA shall also submit to EPA and Guam EPA a draft Staffing Plan Report that includes the following information: (1) an evaluation of current staff resources at GWA and a discussion of where new hires or retraining will be needed to staff the new organization; (2) a timetable for implementation of staffing measures; and (3) procedures for the transferring of staff and staff reductions (and recommended legislation to enable such changes) as necessary. The draft Staffing Plan Report shall require: (1) all positions in the reorganization of GWA shall be filled with an employee qualified at the minimum level required for that position within 180 days after the final Staffing Plan Report has been issued; and (2) when GWA hires a new employee to fill a position, that employee must be properly qualified for the position at the time of hire. EPA will review the draft Staffing Plan Report and may require changes, additions, deletions or modifications it deems necessary to ensure proper operation and maintenance of GWA's POTW and public water systems. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Staffing Plan Report to EPA and Guam EPA. GWA shall implement the Staffing Plan Report's measures in accordance with the timetable in the final Staffing Plan Report. If current employees are not certified at the required level, GWA shall notify such employees within ten working days after the final Staffing Plan Report has been issued.

III.    **Operations at GWA**

10.    Water Resources Master Plan: Within 30 days after the Entry Date, GWA shall

REVISED 7-26-04                                7

1 prepare a draft scope of work and a draft Request for Proposals ("RFP") for the preparation of a

2 Water Resources Master Plan ("Master Plan") and submit them to EPA for approval. GWA shall

3 provide a copy of the documents concurrently to Guam EPA. EPA will review the draft scope of

4 work and RFP and may require any changes, additions, deletions or modifications it deems

5 necessary. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

6 comments in accordance with Paragraph 2 and shall submit a final scope of work and RFP to

7 EPA and Guam EPA. GWA shall advertise the RFP for the preparation of the Master Plan

8 nationally.

9 Within 90 days after submitting the final RFP to EPA and Guam EPA, GWA shall

10 provide a list of at least five qualified offerors, including the qualifications of each offeror, to

11 EPA and Guam EPA. EPA will provide written notice of the names of any offeror(s) that it

12 disapproves and an authorization to proceed with any of the other offerors. GWA may select any

13 offeror from that list that is not disapproved and may award the contract to that offeror. GWA

14 shall select and retain one of the qualified offerors within 105 days after obtaining EPA's

15 authorization to proceed, shall notify EPA and Guam EPA of the name of the contractor, and

16 shall begin to prepare the Master Plan (the "Commencement Date").

17 GWA shall develop a Master Plan that includes:

18 (1) A comprehensive analysis, using as a guideline the "10 States Standards" as they

19 apply to wastewater, of wastewater treatment, collection, and conveyance systems,

20 improvement alternatives, and needs for the next twenty years. The Master Plan

21 shall include an infiltration and inflow assessment of GWA's wastewater

22 collection systems sufficient to identify and prioritize problem areas. The Master

23 Plan shall also include an assessment of the following: septic system hookup

24 needs and alternatives, decentralized treatment systems, consolidation with the

25 U.S. military's wastewater systems, biosolids management and re-use, and an

26 analysis of costs and other impacts.

27

28 REVISED 7-26-04                    8

(2)    A comprehensive analysis, using as a guideline the Hawaii Water Standards of 2002, of public water system improvement alternatives and needs for the next twenty years that addresses disinfection, system pressure, surface water and groundwater resources, treatment needs (including any drinking water well needing treatment due to a determination that the well uses a groundwater source under the direct influence of surface water), transmission and distribution system improvements, potential consolidation with the U.S. military's systems, and water re-use.

(3)    A comprehensive analysis of the costs and benefits of water conservation on Guam.

(4)    An evaluation of necessary process control system improvements, including a Supervisory Control and Data Acquisition ("SCADA") system, information management systems, telemetry, and other applicable types of automation.

(5)    A financial plan that details how revenue will be generated. The financial plan shall include a user fee system, including fees for services such as sewer connection fees. The user fees shall be based on actual water usage, estimated wastewater generation, and actual costs of services provided. GWA shall coordinate with the Public Utilities Commission ("PUC") to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

(6)    A detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and three public water systems, including: (a) an estimated annual budget for each of the next five years for all costs of operating, maintaining, and repairing the POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph

9

32 below; and (b) a detailed descriptive plan for raising sufficient revenue to meet the projected costs as outlined in the annual budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. Revenues shall be sufficient to cover all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and SDWA, costs related to the infrastructure improvements recommended in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all required Financial Reserves listed in Paragraph 32 below.

The following five tasks shall be completed as part of the Master Plan. Within the designated time for completing each task, GWA shall submit a written draft to EPA for review and approval. GWA shall provide a copy of each draft concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final written product to EPA and Guam EPA. The schedule for these tasks is the following:

(1) Within 180 days after the Commencement Date, GWA shall complete a leak detection study for all three public water systems.

(2) Within 240 days after the Commencement Date, GWA shall complete an estimated water budget that quantifies and describes how and where water is produced and utilized on Guam.

(3) Within 270 days after the Commencement Date, GWA shall locate, map, and develop Geographical Information System ("GIS") layers for all of the following: treatment facilities, wells, water lines greater than or equal to six inches in diameter, collection system, pump stations, and GWA's and Guam EPA's water quality monitoring stations.

REVISED 7-26-04                    10

1    (4)    Within one year after the Commencement Date, GWA shall perform a hydraulic
2           analysis of the three public water systems and develop a hydraulic model of the
3           systems.
4    (5)    Within 540 days after the Commencement Date, GWA shall locate, map, and
5           develop GIS layers for all of the following (not included in subparagraph (3)
6           above): all other water lines, wastewater laterals, and all septic tanks over the
7           Northern Guam Sole Source Aquifer.
8    The Master Plan shall be completed according to the following schedule:
9    (1)    By October 31, 2006, GWA shall complete a draft Master Plan and shall provide a
10          copy of it to EPA and Guam EPA. Upon completion, GWA shall issue a press
11          release and publish notice in a local newspaper, indicating that the draft Master
12          Plan is available for public review at convenient locations (such as public libraries
13          on Guam and GWA's website) and announcing the date and location of any public
14          meeting to discuss the Plan. The draft Master Plan shall be made available for
15          public comment for at least 45 days. During the public comment period, GWA
16          shall hold at least one public meeting. GWA shall issue the public notice at least
17          30 days before the date of the public meeting.
18   (2)    By January 31, 2007, GWA shall complete a final Master Plan and shall address
19          all significant comments raised during the public comment period in its final
20          Master Plan. GWA shall provide the final Master Plan to EPA and Guam EPA
21          and shall perform the required tasks in accordance with the schedule set out in the
22          final Master Plan.
23   11.    Interim Disinfection Program: GWA shall develop an interim disinfection
24   program for its three public water systems to ensure that the water being provided to the public is
25   adequately disinfected by chlorination. In order to ensure optimal chlorination and disinfection,
26
27
28   REVISED 10-3-06                          11

the interim disinfection program shall require that: (1) the optimal levels of chlorine residual, as measured in parts per million ("ppm") or milligrams per liter, is met at all times at all chlorination points, taking into consideration the contact time (in minutes) of the chlorine with the water in the distribution system prior to reaching the first consumer ("CT value"); and (2) a minimum level of chlorine residual of at least 0.2 ppm is maintained at all points in the drinking water distribution system at all times.

The interim disinfection program shall include a detailed description of the existing chlorination practices including, but not limited to: (1) the locations of all existing chlorination points for each public water system, including chlorination points at the Ugum surface water treatment plant, chlorination points at the wellheads for the groundwater systems, and other distribution system chlorination points; (2) the locations of any proposed immediate additional wellhead and/or distribution system chlorination points; (3) the estimated contact time between the chlorine and water in the distribution system before the water reaches the first consumer (i.e., the closest connection in the distribution system) for each chlorination point; (4) actual chlorine dosing levels (in ppm) at each chlorination point; and (5) actual CT value for each chlorination point (where CT is defined as chlorine residual level in ppm multiplied by the contact time in minutes prior to the first consumer). Based on the information included in subparagraphs (1) through (5), the interim disinfection program shall include recommendations regarding the following: (6) the optimal possible chlorine dosing levels (in ppm) to apply at each individual chlorination point (taking into account the contact time available before the first consumer); and (7) the optimal CT value for all chlorination points. The interim disinfection program shall propose short-term changes to GWA's chlorination practices to improve disinfection that can be accomplished within one year after the Entry Date.

Within 90 days after the Entry Date, GWA shall submit the interim disinfection program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

12

1    accordance with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall

2    implement the program. GWA shall update the interim disinfection program annually and as

3    needed to reflect the development of other compliance activities and deliverables required by this

4    Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and

5    approval, and shall provide a copy to Guam EPA.

6        12.    Public Water Systems' Chlorine Program

7        A. Interim Chlorine Residual Level Monitoring Program: GWA shall develop an interim

8        chlorine residual level monitoring program for its three public water systems to ensure

9        that: (1) optimal chlorine levels are maintained at all chlorination points, taking into

10       account contact time prior to the first consumer after the chlorination points; and (2) a

11       minimum chlorine level is maintained throughout the distribution system. The

12       monitoring program shall contain a detailed description of the following: (1) the

13       locations and frequency of all chlorine residual monitoring necessary in order to ensure

14       that the optimal applied chlorine dose (as specified in subparagraph (6) of the interim

15       disinfection program in Paragraph 11) and optimal CT's (as specified in subparagraph (7)

16       of the interim disinfection program in Paragraph 11) are maintained at all chlorination

17       points at all times; and (2) the locations and frequency of chlorine residual monitoring

18       necessary to ensure that a minimum level of chlorine residual of at least 0.2 ppm is

19       maintained throughout the distribution system at all times. The proposed monitoring

20       shall consist of either continuous, online, automated chlorine residual monitoring or grab

21       samples to be collected and analyzed in the field. The proposed monitoring program shall

22       ensure that those wells that are at the highest risk of fecal bacteriological contamination

23       (i.e., those wells with a historical record of fecal coliform or *E. coli* bacteriological

24       contamination at the well) have the highest level of monitoring. Monitoring for such

25       wells shall consist of continuous, online chlorine residual monitoring with either

26       automatic flow shutoff or an alarm system. The automatic flow shutoff or alarm shall be

27

28    REVISED 10-3-06                          13

1 triggered by detections of chlorine levels lower than the optimal applied chlorine dose (as

2 specified in subparagraph (6) of the interim disinfection program in Paragraph 11).

3 Within 90 days after the Entry Date, GWA shall submit the monitoring program to EPA

4 for approval. GWA shall provide a copy of the document concurrently to Guam EPA.

5 Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

6 comments in accordance with Paragraph 2, shall provide the final program to EPA and

7 Guam EPA, and shall implement the program. GWA shall update the interim chlorine

8 residual level monitoring program annually and as needed to reflect the development of

9 other compliance activities and deliverables required by this Stipulated Order for

10 Preliminary Relief, shall provide its updates to EPA for its review and approval, and shall

11 provide a copy to Guam EPA.

12 B. Chlorine Supply: By January 31, 2007, GWA shall ensure that an adequate supply of

13 chlorine is available on island. To satisfy this requirement, a supply of at least 200

14 chlorine cylinders for backup reserve shall be located on island and available to GWA

15 upon demand. GWA may satisfy this requirement through either contract agreement(s)

16 and/or the acquisition of the chlorine cylinders. By January 31, 2007, GWA shall provide

17 to EPA and Guam EPA a copy of the contract agreement(s) and/or documentation of the

18 acquisition of chlorine cylinders.

19 C. Upgrade of Groundwater Chlorination System Project: By October 30, 2006, GWA

20 shall submit a revised workplan and schedule for finalizing the design and construction

21 work of the Upgrade of Groundwater Chlorination System Project. (U.S. EPA Grant

22 XP-97931501-2.) The schedule shall include key milestones for reviews, contractor

23 selection, design, bid phase, and construction phase. GWA shall complete the Upgrade

24 of Groundwater Chlorination System Project by April 1, 2007. GWA shall submit the

25 90% design to EPA for review and comments. GWA shall provide a copy of the

26 documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

27

28 REVISED 10-3-06                    13A

1   GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide
2   the final schedule and scope of work to EPA and Guam EPA, and shall perform the
3   required tasks in accordance with the schedule set out in the final scope of work.

4   13.   Leak Detection and Response Program:  GWA shall develop a program for
5   identifying and responding to leaks in the three public water systems.  Within 180 days after the
6   Entry Date, GWA shall submit the proposed program to EPA for approval.  GWA shall provide a
7   copy of the document concurrently to Guam EPA.  Within 30 days after receipt of EPA's
8   comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall
9   provide the final program to EPA and Guam EPA, and shall implement the program.

10   14.   Water Meter Improvement Program:  GWA shall develop a water meter
11   improvement program to ensure that, by November 30, 2007, each connection to the three public
12   water systems has an accurate and accessible water meter that is read monthly and used for
13   billing.  Within 90 days after the Entry Date, GWA shall submit the program to EPA for
14   approval.  GWA shall provide a copy of the document concurrently to Guam EPA.  Within 30
15   days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance
16   with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement
17   the program.

18   15.   Parts Inventory for POTW and Public Water Systems:  Within 180 days after the
19   Entry Date, GWA shall develop and maintain a 60-day operation and maintenance parts
20   inventory for its POTW and public water systems that includes any spare parts that may
21   reasonably be needed, and shall provide EPA and Guam EPA with a written list of the parts

22
23
24   [Rest of page deliberately left blank.]
25
26
27
28   REVISED 10-3-06                                14

inventory. The inventory need not include any parts for which GWA has a written guarantee of their availability within four days of a request. GWA shall provide a written report to EPA and Guam EPA within 180 days after the Entry Date on the adequacy of its parts inventory, including written guarantees of availability. On or before January 28 and July 28 of each year, GWA shall provide a semiannual written report to EPA and Guam EPA regarding the adequacy of its parts inventory.

16.    Routine Maintenance and Repairs for POTW and Public Water Systems: Within 180 days after the Entry Date, GWA shall: (1) provide EPA and Guam EPA with a written report describing the minimum tools and equipment needed for each facility and maintenance area in its POTW or three public water systems to handle any routine maintenance or repair work; and (2) ensure that each facility and maintenance area in its POTW or three public water systems has the necessary tools and equipment. At a minimum, GWA shall ensure that the following systems are included in the report and have the necessary tools and equipment: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems.

17.    Standby Generators: GWA shall ensure that working, appropriately sized, standby generators are available for all wastewater pump stations, treatment plants, and wells that are critical to the three public water systems. Within 90 days after the Entry Date, GWA shall submit a list to EPA for approval, indicating the size of the standby generator for each pump station, treatment plant or well and the schedule of compliance. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final list to EPA and Guam EPA. By November 30, 2006, GWA shall supply standby generators for all critical wells, wastewater pump stations, and treatment plants.

18.    Underground Storage Tanks: GWA shall prepare an inventory of its underground

REVISED 10-3-06                          15

storage tanks, indicating which tanks are no longer in use. For any tank that is no longer in use, GWA shall perform the following temporary closure tasks: (1) empty all materials from the tank to within one inch of the tank bottom; (2) leave vent lines open; and (3) secure all lines, pumps, manways, and ancillary equipment with a lock. Within 90 days after the Entry Date, GWA shall provide the inventory to EPA for review and approval, stating the date that GWA has completed the temporary closure tasks for any tanks no longer in use. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final inventory to EPA and Guam EPA, and shall perform any additional required tasks in accordance with the schedule set out in the final inventory.

19. <u>Emergency Response Plan</u>: GWA shall develop an emergency response plan that provides operating procedures for all employees during and following any disasters, including, but not limited to, typhoons and earthquakes. Within 540 days after the Entry Date, GWA shall submit the plan to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final plan to EPA and Guam EPA, and shall implement the plan.

20. <u>Preventive Maintenance Program</u>: GWA shall develop a preventive maintenance program for the POTW and public water systems that details required maintenance, schedules, standard procedures, tracking, and reporting. At a minimum, GWA shall develop preventive maintenance programs for the following systems: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems. Within one year after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2,

16

1  shall provide the final program to EPA and Guam EPA, and shall implement the program. GWA

2  shall update the program annually and as needed to reflect the development of other compliance

3  activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide

4  its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

5      21.   Operations and Maintenance Manuals: GWA shall develop a set of

6  comprehensive Operations and Maintenance Manuals for its POTW and public water systems.

7  At a minimum, GWA shall develop Operations and Maintenance Manuals for the following

8  systems: sewage treatment plants, wastewater collection systems, wastewater conveyance

9  systems (including the sewage pump stations), water treatment plant, water distribution systems,

10  drinking water wells, and chlorination systems. Within 180 days after the Entry Date, GWA

11  shall submit to EPA a schedule for completing the manuals and submitting them to EPA for

12  approval. GWA shall provide a copy of the document concurrently to Guam EPA. All manuals

13  shall be completed and submitted to EPA and Guam EPA within 2 years after the Entry Date.

14  The manuals shall include: (1) information on all relevant process design assumptions such as

15  design flows, pump capacities, detention times, surface loadings, oxygen transfer requirements,

16  disinfection requirements, water transmission requirements, simplified schematic diagrams of

17  pipelines and control systems, and detailed diagrams for more complicated components; (2) unit

18  process information, including control measures and monitoring procedures needed to achieve

19  maximum efficiency and reliability and a clear explanation of process functions of various

20  components with simplified language and references to appropriate technical manuals; (3) start-

21  up and shutdown procedures; (4) maintenance schedules; (5) laboratory test procedures,

22  including the necessary quality assurance and reporting requirements; (6) safety procedures;

23  (7) organizational structure, job descriptions, and duties; (8) administrative procedures for

24  purchase order preparation approvals and budget preparation; and (9) an operating plan for

25  emergencies. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

26  comments in accordance with Paragraph 2, shall provide a copy of the final manuals to EPA and

27

28                                     17

Guam EPA, shall distribute the manuals to the appropriate employees, and shall require use of the manuals as part of its standard operating procedures for its POTW and public water systems. GWA shall update the manuals as needed to reflect the development of other compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

22. GWA's Authority: In order to function properly and efficiently as an independent agency, GWA needs to have the ability to independently: administer financial accounts, make personnel changes, and procure equipment and services (including both engineering services and the direct procurement of services or supplies from off-island companies). Within 30 days after the Entry Date, Defendants shall provide a report to EPA on any legal and administrative actions necessary to allow GWA to operate independently, and shall recommend a course of action, including proposed legislation or administrative measures, to deal with these issues. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments on the report, Defendants shall respond to EPA's comments in accordance with Paragraph 2 and shall take action to address these issues, including submitting proposed legislation to the Guam Legislature and/or implementing required administrative measures.

23. Standard Operating Procedures: GWA shall develop: (1) a set of standard operating procedures for the following processes: architectural and engineering services procurement, construction services procurement, and tools and equipment inventory and controls; and (2) procedures for complying with federal and local laws and monitoring compliance. The standard operating procedures shall require GWA to comply with applicable Guam procurement statutes and other applicable local laws. Within 180 days after the Entry Date, GWA shall submit the draft procedures to EPA for review and approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final procedures to EPA and Guam EPA, and shall implement the procedures.

18

24.    Vulnerability Assessment: Within 180 days after the Entry Date, GWA shall submit a completed vulnerability assessment along with a certification of its completion, as required by Section 1433(a) of the SDWA, to the EPA Administrator in Washington, D.C. GWA shall follow the mailing protocol described in EPA's "Instructions to Assist Community Water Systems in complying with the Public Health Security and Bioterrorism Preparedness and Response Act of 2002," which is located on the EPA website as follows: http://www.epa.gov/safewater/security/util-inst.pdf.

The completed vulnerability assessment should not be sent to EPA Region 9 in San Francisco. Concurrently with the submission of the vulnerability assessment to the EPA Administrator, GWA shall notify EPA pursuant to Paragraph 50 that the requirements of SDWA Section 1433(a) have been met and that GWA is in compliance with Section 1433(a). Within 180 days after the submission of the vulnerability assessment, GWA shall complete an emergency response plan and certify to the EPA Administrator that it has completed the plan in accordance with the requirements of SDWA Section 1433(b) and (c). Within 10 working days after completing the plan, GWA shall also notify EPA pursuant to Paragraph 50 that it has completed the emergency response plan.

25.    Trade Organizations: Within 90 days after the Entry Date, GWA shall join the American Waterworks Association and the Water Environment Federation.

## IV.    Financial Administration at GWA

26.    Financial Standard Operating Procedures: GWA shall develop a set of standard operating procedures for the following processes: fiscal management and controls, budgeting, accounting, and financial planning. Within one year after the Entry Date, GWA shall submit a copy of the procedures to EPA for review and approval. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final procedures to EPA, and shall implement the procedures.

27.    Annual Budget: GWA shall submit each approved annual budget to EPA. The

19

annual budget shall ensure adequate financing of the operation and maintenance of GWA's POTW and three public water systems. The budget shall include, but not be limited to, the following: (1) a budget detailing the total projected costs for the coming year of operating, maintaining, and repairing the POTW and the three public water systems, including staffing, energy, materials and supplies, repairs, replacements, maintaining Financial Reserves required in Paragraph 32 below, and all other expenses; (2) a detailed schedule of user fees, taxes, assessments or other sources of revenue sufficient to meet the projected costs as set forth in the budget for the coming year, including increases or adjustments required to meet that budget; and (3) a financial management plan insuring that all user fees, taxes, assessments or other sources of revenue collected for the POTW and three public water systems are in fact applied to their operation, maintenance, repair, and replacement.

28.    Interim Financial Plan: Within 120 days after the Entry Date, GWA shall develop and submit to EPA and the PUC an interim financial plan that details how revenue will be generated for the interim period before the final financial plan in the Master Plan is complete, approved, and implemented. Revenues shall be sufficient to cover the cost of compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the period before the final financial plan is approved, including all existing debt and expected debt service, and the buildup of the Financial Reserves required in Paragraph 32 below. The interim financial plan shall include a restructured user fee system. GWA shall coordinate with the PUC to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

29.    Approval of Interim Financial Plan: Within 90 days after GWA submits an interim financial plan, the PUC shall consider and approve an interim financial plan that generates enough revenue to cover the cost of compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the

20

1  period before the final financial plan is approved, including all existing debt and expected debt
2  service, and the buildup of the Financial Reserves required in Paragraph 32 below. GWA shall
3  submit to EPA the interim financial plan approved by the PUC within ten working days after
4  approval, and shall implement the plan upon approval by the PUC.

5      30.    Approval of Final Financial Plan: Within 120 days after GWA submits a final
6  financial plan in the Master Plan, the PUC shall consider and approve a final financial plan that
7  generates enough revenue to cover the cost of all compliance activities and deliverables required
8  by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses,
9  including any measures necessary to ensure compliance with the CWA and the SDWA, costs
10  related to the infrastructure improvements identified in the Master Plan, all related operations and
11  maintenance costs, and corresponding utility expenses, including maintenance of all Financial
12  Reserves required in Paragraph 32 below. GWA shall submit to EPA a copy of the final
13  financial plan approved by the PUC within ten working days after approval, and shall implement
14  the plan upon approval by the PUC.

15      31.    Five-Year Plan: On an annual basis, GWA shall submit to EPA a detailed five-
16  year plan for financing the continued operation, maintenance, and repair of the POTW and the
17  three public water systems. Each five-year plan shall include: (1) estimated annual budgets for
18  each of the next five years for all costs of operating, maintaining, and repairing GWA's POTW
19  and three public water systems, including the establishment and maintenance of the Financial
20  Reserves listed in Paragraph 32 below; and (2) a detailed descriptive plan for raising sufficient
21  revenue to meet the projected cost as outlined in the budgets, including adjustments or increases
22  in user fees, taxes, assessments or other sources of revenue. GWA shall submit its first five-year
23  plan to EPA within 2 years after the Entry Date. EPA will review each five-year plan and may
24  request additions, deletions, changes or modifications as it deems necessary to insure adequate
25  funding of the operation, maintenance, and repair of GWA's POTW and three public water
26  systems for the five-year period. Within 30 days after receipt of EPA's comments, GWA shall
27
28  REVISED 10-3-06                               21

1 | respond to EPA's comments in accordance with Paragraph 2 into a final five-year plan, shall
2 | provide the final plan to EPA, and shall implement the measures of the plan.

3 |     32.     Financial Reserves:  Within 180 days after the Entry Date, GWA shall begin
4 | developing the following Financial Reserves:

5 |         (1) Debt Service Reserve - This reserve shall be established and maintained in
6 |         accordance with bond covenants and debt service covenants.  Within 30 days after issuing
7 |         a bond or securing a loan, GWA shall submit to EPA information regarding the amount
8 |         of this reserve.

9 |         (2) Emergency Operations, Maintenance, Renovation, and Replacement Reserve - This
10 |        reserve shall be equal to three months of budgeted expenses for operations, maintenance,
11 |        renovation, and replacement of GWA's POTW and three public water systems.  Within
12 |        90 days after the Entry Date, GWA shall submit to EPA for approval the proposed
13 |        amount of this reserve.  GWA shall make monthly deposits to the reserve to ensure that
14 |        the balance matches current needs based on the amounts budgeted for each succeeding
15 |        fiscal year.  The expense base used to calculate this reserve shall include operating and
16 |        maintenance expenses, including the depreciation expense, plus any capital projects or
17 |        purchases funded with GWA revenues.  The reserve shall be used only to cover
18 |        operations and maintenance expenses not in the original budget.  This reserve can be
19 |        replaced by the availability of an equivalent emergency line of credit.

20 |     The above reserves shall be fully developed within 2 years after the Entry Date and shall
21 | be used only for the stated purposes, and only in the event that no other revenue is available to
22 | meet the commitments.  If GWA draws down on any reserve at any time, it shall rebuild that
23 | reserve to the required level within 180 days.  On or before January 28 of each year, GWA shall
24 | submit an annual report to EPA regarding the development and maintenance of the Financial
25 | Reserves required by this Paragraph.

26 |     33.     Late Payments:  GWA shall develop a program that:

27 |

28 | REVISED 10-3-06                          22

1     (1) clearly defines how late payments will be addressed and when service will be

2     discontinued. GWA shall consider measures such as discontinuing service for any

3     customer that is more than 60 days behind in payments.

4     (2) provides for a procedure to collect delinquent rates or charges, and to enforce liens, if

5     any, for non-payment of rates or charges, in a practical and timely manner.

6   Within 90 days after the Entry Date, GWA shall submit the program to EPA for approval.

7   Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

8   accordance with Paragraph 2, shall provide the final program to EPA, and shall implement the

9   program.

10     34.     Sewer Hook-up Revolving Fund: GWA shall develop a program instituting a

11  sewer hook-up revolving fund for residents currently required to connect to the wastewater

12  collection system.  The program shall be designed to allow residents to spread hook-up costs

13  (including utility fees) over two or more years at low or no interest. GWA shall use, at a

14  minimum, funds provided by the Guam EPA Water Planning Committee. Within 540 days after

15  the Entry Date, GWA shall submit the program to EPA for approval. Within 30 days after

16  receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

17  Paragraph 2, shall provide the final program to EPA, and shall implement the program.

18  **V.     Construction and Rehabilitation Projects at GWA**

19     35.     Agana Ocean Outfall: GWA shall develop: (1) a schedule for submitting pre-

20  final (90 percent) and final (100 percent) ocean outfall extension designs and detailed

21  construction schedules for the Agana Sewage Treatment Plant ("STP"); and (2) a scope of work

22  and schedule for initiating and completing a baseline monitoring survey or surveys in the area of

23  the proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

24  and to establish a basis for the Agana NPDES monitoring program.  The schedule shall require

25  GWA to complete construction of the outfall by January 1, 2008. The baseline monitoring

26  survey or surveys shall:  (1) include water quality data, quantitative information on the benthic

27

28  REVISED 10-3-06                              23

1  fauna, and sediment quality data in the area of the proposed discharge; and (2) be performed

2  similarly to the initial baseline monitoring survey for the proposed ocean outfall

3  extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and

4  approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy

5  of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

6  GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final

7  scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in

8  accordance with the schedules set out in the final scope of work.

9      36.    Northern District Ocean Outfall: GWA shall develop: (1) a schedule for

10  submitting pre-final (90 percent) and final (100 percent) ocean outfall extension designs and

11  detailed construction schedules for the Northern District STP; and (2) a scope of work and

12  schedule for initiating and completing a baseline monitoring survey or surveys in the area of the

13  proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

14  and to establish a basis for the Northern District NPDES monitoring program. The schedule

15  shall require GWA to complete construction of the outfall by January 1, 2009. The baseline

16  monitoring survey or surveys shall: (1) include water quality data, quantitative information on

17  the benthic fauna, and sediment quality data in the area of the proposed discharge; and (2) shall

18  be performed similarly to the initial baseline monitoring survey for the proposed ocean outfall

19  extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and

20  approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy

21  of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

22  GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final

23  scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in

24  accordance with the schedules set out in the final scope of work.

25      37.    Assessment of Chaot Wastewater Pump Station and Sewer Collection and

26  Conveyance System: GWA shall retain a qualified engineering firm to perform an engineering

27

28  REVISED 10-3-06                              24

1    assessment of the Chaot/Marine Drive sewer collection and conveyance system (the "Chaot

2    engineering assessment"). The scope of the Chaot engineering assessment shall include an area

3    sufficiently upstream of the old Chaot sewer pump station to fully assess the capacity and piping

4    of the system to prevent raw sewage overflows at the Chaot sewer pump station and downstream

5    along Routes 4 and 1 to the Agana Main sewer pump station. It shall also include an operational

6    re-evaluation of the new Chaot sewer pump station. The Chaot engineering assessment shall

7    identify any capacity, design, inflow/infiltration, and operational deficiencies, and include the

8    development of a corrective action plan and schedule for implementation. The corrective action

9    plan and schedule shall include, but not be limited to, prioritization of projects, as may be

10   necessary, and time frames for developing a scope of work, completing the design, and

11   commencing and completing construction of all deficiencies identified in the corrective action

12   plan. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval

13   the Chaot engineering assessment. GWA shall provide a copy of the document concurrently to

14   Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

15   comments in accordance with Paragraph 2, shall provide the final Chaot engineering assessment

16   (including the final corrective action plan) to EPA and Guam EPA, and shall perform the

17   required tasks in accordance with the schedule set out in the final corrective action plan. Within

18   180 days after the final engineering assessment is completed, GWA shall submit to EPA for

19   review and approval the Chaot engineering design. GWA shall provide a copy of the document

20   concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall

21   respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Chaot

22   engineering design to EPA and Guam EPA. Construction shall be completed within 540 days

23   after the Chaot engineering design is approved by EPA.

24        38.    Water Transmission Lines and Reservoirs

25        A. Water Transmission Line Construction Plan: GWA shall develop a Water

26        Transmission Line Construction ("WTLC") Plan to ensure its ability to adequately treat

27

28   REVISED 10-3-06                25

its well sources (including disinfection). The WTLC Plan shall include an assessment of the existing well configuration, including a discussion of CT values currently required and currently achieved under the existing configuration in accordance with the requirements of Paragraph 11 (Interim Disinfection Program). Based on the assessment of the current well configuration, GWA shall make recommendations regarding the need for dedicated transmission lines in its three public water systems, as well as recommendations concerning future treatment, including chlorination/disinfection configurations, for the three public water systems. The WTLC Plan shall prioritize the construction of transmission lines and any necessary chlorination/disinfection configurations to ensure adequate treatment based on the following information about the different parts of the public water systems: (1) the current level of disinfection achieved (the CT values), and (2) the history of bacteriological contamination of the sources, such as the wellfield history. The WTLC Plan shall include a schedule for developing and finalizing a scope of work and design, and commencing and completing construction and upgrades to the water transmission lines and chlorination systems. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval the WTLC Plan. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final WTLC Plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set out in the final WTLC Plan.

B. Sinajana Water Transmission Line Project: By September 30, 2006, GWA shall submit a revised workplan and schedule for finalizing the design and construction work of the Sinajana Water Transmission Line Project. (U.S. EPA Grant FS-97911902-2.) The schedule shall include key milestones for reviews, contractor selection, design, bid phase, and construction phase. GWA shall complete the Sinajana Water Transmission

REVISED 10-3-06                    26

1  Line Project by June 30, 2008. GWA shall submit the 90% design per the described

2  project scope of work dated June 2, 2005 (Phases I, II and III) to EPA for review and

3  comments. GWA shall provide a copy of the documents concurrently to Guam EPA.

4  Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

5  comments in accordance with Paragraph 2, shall provide the final schedule and scope of

6  work to EPA and Guam EPA, and shall perform the required tasks in accordance with the

7  schedule set out in the final scope of work.

8  C. <u>Water Reservoirs Condition Assessment</u>: By October 31, 2006, GWA shall submit a

9  workplan and a schedule to complete a condition assessment to determine the structural

10  stability and soundness of all steel tank water reservoirs. The condition assessment shall

11  include an internal and external structural inspection of each reservoir, and shall include

12  recommendations regarding the necessary course of action to monitor, rehabilitate, or

13  replace each reservoir. The condition assessment shall be performed by a qualified

14  structural engineer in accordance with industry standards established by the American

15  Water Works Association and the Steel Tank Institute. GWA shall provide to EPA and

16  Guam EPA a copy of the workplan and schedule for review and comments. Within 30

17  days after receipt of EPA's comments, GWA shall respond to EPA's comments in

18  accordance with Paragraph 2. After EPA approves a workplan and schedule, GWA shall

19  perform the required tasks in accordance with the schedule set out in the final workplan.

20

21

22

23  [Rest of page deliberately left blank]

24

25

26

27

28  REVISED 10-3-06                              26A

39.     Northern District STP Renovation: GWA shall implement corrective actions to restore primary treatment operational capacity to the Northern District STP. The corrective actions shall include, but not be limited to, the following: primary clarifiers, preaeration and aerated grit removal systems, and installation of primary sludge pumps and solids handling (as necessary). GWA shall complete the corrective actions to restore primary treatment operational capacity by March 2, 2007. After completion of the corrective actions to restore primary treatment, GWA shall conduct an operational performance evaluation by May 4, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. By May 4, 2007, GWA shall submit to EPA and Guam EPA for review and comments the operational performance evaluation with a determination of the need for advanced primary treatment. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2. If advanced primary treatment is needed, the submitted operational performance evaluation shall include a schedule for the design and installation of the advanced primary treatment system. GWA shall perform the required tasks in accordance with the schedule set out in the operational performance evaluation.

40.     Agana Main Sewage Pump Station: GWA shall develop a schedule to stop overflows of raw sewage from the Agana Main Sewage Pump Station. The schedule shall include time frames for developing and completing a scope of work, design, and construction. The schedule shall require construction to be completed within 300 days after the Entry Date. Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the required tasks in accordance with the final schedule.

41.     Ugum Surface Water Treatment Plant: GWA shall develop a scope of work and schedule for the rehabilitation, renovation and/or design and construction of new (alternative)

1 treatment facilities of the Ugum Surface Water Treatment Plant to bring the plant into
2 compliance with SDWA requirements and performance standards. The scope of work shall
3 detail all rehabilitation, renovation, and/or recommended design and construction of new
4 (alternative) treatment work to be performed based on the findings of the CPE of the Ugum
5 Surface Water Treatment Plant prepared for GWA by Belanger and Associates and International
6 Studies & Training Institute, Inc., in May 2001. The scope of work may include other
7 documentation or studies needed to determine the extent of the rehabilitation and renovation
8 needs of the existing plant, and/or may include alternative water treatment feasibility or
9 preliminary engineering studies deemed by GWA to be necessary to determine if other
10 alternative treatment design and construction projects may be preferable and/or feasible to bring
11 the plant into full compliance with all SDWA requirements. The schedule shall include, but not
12 be limited to, time frames for developing and completing all activities contained in the scope of
13 work, any additional studies needed to determine the preferred course of action
14 (rehabilitation/renovation or alternative treatment design and construction), design, and
15 construction. The schedule shall require construction to be completed by January 5, 2008.
16 Within 90 days after the Entry Date, GWA shall submit to EPA for review and approval the
17 scope of work and schedule required by this Paragraph. GWA shall provide a copy of the
18 documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA
19 shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final scope
20 of work and schedule to EPA and Guam EPA, and shall perform the required tasks in accordance
21 with the schedule set out in the final scope of work.

22     42.    Agana STP Renovation: GWA shall implement corrective actions to restore
23 primary treatment operational capacity to the Agana STP and shall renovate the grit
24 removal/screening system and wet well at the Agana Main Sewer Pump Station ("SPS"). GWA
25 shall complete the corrective actions to restore the primary treatment operational capacity of the
26 Agana STP by March 2, 2007, and shall complete renovations at the Agana Main SPS by June 1,
27

28  REVISED 10-3-06                    28

1    2007. After completion of the corrective actions to restore full primary treatment, GWA shall

2    conduct an operational performance evaluation by April 30, 2007, to determine whether

3    advanced primary treatment is needed to comply with NPDES permit effluent limitations. GWA

4    shall submit to EPA and Guam EPA for review and comments the operational performance

5    evaluation with a determination of the need for advanced primary treatment. Within 30 days

6    after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

7    Paragraph 2. If advanced primary treatment is needed, the submitted operational performance

8    evaluation shall include a schedule for the design and installation of the advanced primary

9    treatment system. GWA shall perform the required tasks in accordance with the schedule set out

10    in the operational performance evaluation.

11        43.    *Agat, Baza Gardens, and Umatac-Merizo STPs Renovations and/or Expansions*:

12    GWA shall develop a schedule for the performance of CPEs of the Agat, Baza Gardens, and

13    Umatac-Merizo STPs to identify performance-limiting factors and recommended improvements

14    needed to bring each of these STPs into compliance with their respective NPDES permit

15    requirements. The CPEs shall be performed by a qualified engineering firm experienced in

16    performing a CPE for wastewater treatment facilities. Each CPE shall be performed in

17    accordance with EPA guidelines for performing a CPE as described in the following

18    publications: *Handbook: Optimizing Water Treatment Plant Performance Using the Composite*

19    *Correction Program (CCP)* (EPA/625/6-91/027, August 1998); and *Handbook: Improving*

20    *POTW Performance Using the Composite Correction Program Approach* (EPA-625/6-84-008,

21    October 1984), or a later publication if available. The schedule shall include time frames for the

22    following: (1) developing and completing a scope of work, initiating and completing the CPEs,

23    and submitting draft CPEs for the three STPs within one year after the Entry Date; and

24    (2) completion of the final CPEs for the three STPs by September 5, 2004. Within 90 days after

25    the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this

26    Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

27

28    REVISED 10-3-06           29

days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the required tasks in accordance with the final schedule.

44.     Santa Rita Spring Booster Pump Station Rehabilitation: GWA shall develop: (1) a schedule for commencing and completing the design and construction work for the Santa Rita Spring Booster Pump Station ("BPS") rehabilitation; and (2) a revised scope of work for the Santa Rita Spring BPS rehabilitation. The schedule shall require GWA to complete construction by July 1, 2007. The scope of work shall include the performance of a hydraulic analysis, by the selected engineering design firm, of the Santa Rita Spring flow volume to ensure that all critical components such as pumps, motors, piping, etc. are sized appropriately. Within 210 days after the Entry Date, GWA shall submit to EPA for review and approval the schedule and scope of work required by this Paragraph. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final schedule and scope of work to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set out in the final scope of work.

45.     Rehabilitation/Replacement of Drinking Water Wells: GWA shall develop a Drinking Water Wells Rehabilitation/Replacement ("DWWR") Plan for all of its drinking water wells. The DWWR Plan shall include: (1) a detailed assessment of all of GWA's wells to determine which wells require either rehabilitation or replacement; (2) criteria for prioritizing the rehabilitation or replacement of wells, which will identify the most critical wells, taking into consideration factors such as well capacity, operating records, any historical record of bacteriological contamination at a well, and the presence or imminent threat of bacteriological contamination and other contamination; and (3) time frames for developing and finalizing a scope of work and design, as well as for commencing and completing rehabilitation or replacement of the wells. GWA shall schedule all required work in two phases. The first phase

REVISED 10-3-06                              30

1  of work shall focus on the most critical wells identified in the DWWR Plan and shall require

2  rehabilitation and/or replacement of those critical wells within 2 years after the Entry Date. The

3  second phase of work shall include all other wells identified in the DWWR Plan and shall require

4  rehabilitation and/or replacement of those wells within five years after the Entry Date. Within

5  120 days after the Entry Date, GWA shall submit the DWWR Plan to EPA for review and

6  approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

7  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

8  with Paragraph 2, shall provide the final DWWR Plan to EPA and Guam EPA, and shall perform

9  the required tasks in accordance with the schedule set out in the final DWWR Plan.

10  **VI.    Training at GWA**

11       46.    Operator Training: GWA shall develop an operator training program that

12  provides all POTW and public water system operators with information about the proper

13  operation and maintenance of the treatment, disinfection, and conveyance systems. Within 180

14  days after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall

15  provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of

16  EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

17  provide the final program to EPA and Guam EPA, and shall implement the operator training

18  program.

19       47.    Other Training: GWA shall develop an ongoing training program for appropriate

20  staff in at least the following areas: utility management, financial administration, and planning.

21  GWA shall also offer the CCU training on risk mitigation and other appropriate and available

22  Board Trainings. Within one year after the Entry Date, GWA shall submit the program to EPA

23  for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

24  days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

25  with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement

26  the training program.

27

28                                          31

## VII.  Reporting Requirements and Notice Provisions

48.   Notice of Noncompliance or Delay:  If GWA becomes aware that it will not meet, or it is not likely to meet, any completion date for any compliance activity or deliverable required by this Stipulated Order for Preliminary Relief, or that it is not in compliance with a requirement of this Stipulated Order for Preliminary Relief, GWA shall submit written notification to the United States and EPA within one week of when GWA's General Manager becomes aware of such expected delay or noncompliance.  The notice shall contain the following information:  a description of the noncompliance or the expected delay, the reason for the noncompliance or the expected delay, an estimate of how much additional time is needed to complete the affected compliance activity or deliverable or to come into compliance, and a statement describing all steps taken to minimize the noncompliance or delay.

49.   Compliance Progress Reports:  GWA shall submit quarterly compliance progress reports to EPA and Guam EPA and make them available to the general public.  The first quarterly progress report shall include a compliance schedule for all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief.  Quarterly compliance progress reports shall include, but not be limited to, the following:  GWA's progress toward completing compliance activities and deliverables required by this Stipulated Order for Preliminary Relief; reporting of compliance and/or noncompliance with schedules established for specific compliance activities and deliverables; explanations of noncompliance and actions taken or to be taken to address noncompliance; and a brief discussion of the status of efforts toward meeting future compliance schedule activities and deliverables required by this Stipulated Order for Preliminary Relief.  When the long-term financial plan is approved by the PUC, GWA shall include an updated compliance schedule in the next quarterly compliance progress report that includes all anticipated construction activities and related construction schedules.  The quarterly compliance progress report shall be due on or before January 28, April 28, July 28, and October 28, and shall cover activities in the preceding calendar quarter.  The first quarterly compliance

32

1 progress report shall be due on the 28th calendar day following the first full quarter after the

2 Entry Date.

3    50.    Except as specified otherwise, when written notification to or communication

4 with GWA, the Government of Guam, EPA, or the United States is required by the terms of this

5 Stipulated Order for Preliminary Relief, it shall be sent via express mail or similar service with a

6 return receipt requested, or, in the alternative, by both fax and e-mail, and addressed as follows:

GWA:
    General Manager
    Guam Waterworks Authority
    P.O. Box 3010
    Hagatna, Guam 96932
    Phone: (671) 647-2600
    Fax: (671) 646-2335
    e-mail: gmgwa@ite.net

Government of Guam:

    Attorney General of Guam
    Guam Judicial Center, Suite 2-200E
    120 West O'Brien Drive
    Hagatna, Guam 96910
    Fax: (671) 472-2493
    e-mail: law@mail.justice.gov.gu

EPA:
    Manager, Pacific Islands Office (CMD-6)
    U.S. Environmental Protection Agency, Region 9
    75 Hawthorne Street
    San Francisco, CA 94105
    Fax: (415) 947-3560
    e-mail: machol.ben@epa.gov

United States:

    United States Attorney
    District of Guam
    Sirena Plaza
    108 Hernan Cortez Ave., Suite 500
    Hagatna, Guam 96910
    Fax: (671) 472-7215
    e-mail: mikel.schwab@usdoj.gov

    Section Chief
    Environmental Enforcement Section
    D.J. Ref 90-5-1-1-07942 (Mullaney)
    U.S. Department of Justice

REVISED 7-26-04                    33

301 Howard Street, Suite 1050
San Francisco, CA 94105
Fax: (415) 744-6476
e-mail: robert.mullaney@usdoj.gov

51.    All notices and submissions to EPA shall be signed and affirmed by a responsible official of GWA or the Government of Guam using the following certification statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

## VIII.   EPA Access

52.    Any authorized representative of EPA, upon presentation of proper identification, shall have a right of entry to GWA's POTW and three public water systems at any reasonable time for the purpose of monitoring compliance with the provisions of this Stipulated Order for Preliminary Relief, including, but not limited to, inspecting equipment, inspecting and copying all records maintained by GWA, and testing and observing all discharges and drinking water. EPA's rights of inspection and entry under this Paragraph are in addition to, and in no way limit, EPA's rights of inspection and entry under the CWA, SDWA, or any other law.

## IX.   Stipulated Penalties

53.    Stipulated Penalties:

34

1           a.     Defendants shall pay stipulated penalties for failure to meet deadlines

2      specified in this Stipulated Order for Preliminary Relief as specified below:

3           i.     For failure to meet the deadlines specified in Paragraphs 1, 13, 18, 19, 24,

4               25, 26, 33, 34, 42, 43, 44, 45, and 47:

5           -     $250 per day per violation for the first 30 days, $500 per day per violation

6               for the following 30 days, and $1,000 per day per violation for each day

7               thereafter.

8           ii.    For failure to meet the deadlines specified in Paragraphs 3, 4, 5, 6, 7, 14,

9               16, 17, 22, 23, 32, 38, 39, 40, and 46:

10         -     $500 per day per violation for the first 30 days, $1,000 per day per

11              violation for the following 30 days, and $2,000 per day per violation for

12              each day thereafter.

13         iii.   For failure to meet the deadlines specified in Paragraphs 8, 9, 10, 11, 12,

14              15, 20, 21, 27, 28, 29, 30, 31, 35, 36, 37, and 41:

15         -     $1,000 per day per violation for the first 30 days, $2,000 per day per

16              violation for the following 30 days, and $5,000 per day per violation for

17              each day thereafter.

18           b.    Defendants shall pay stipulated penalties for failure to meet any other

19      requirements of this Stipulated Order for Preliminary Relief as follows:

20         -     $250 per day per violation for the first 30 days, $500 per day per violation

21              for the following 30 days, and $1,000 per day per violation for each day

22              thereafter.

23    54.     Stipulated penalties shall begin to accrue on the day after performance is due and

24   shall continue to accrue through the final date of completion even if no notice of the violation is

25   sent to Defendants. Nothing herein shall prevent the simultaneous accrual of separate penalties

26   for separate violations of this Stipulated Order for Preliminary Relief.

27

28   REVISED 10-3-06              35

1  55.  Any stipulated penalty accruing pursuant to this Stipulated Order for Preliminary

2  Relief shall be payable upon demand and due not later than 30 days after Defendants' receipt of

3  EPA's written demand.  Defendants shall pay the amount owed to the United States pursuant to

4  this Stipulated Order for Preliminary Relief by certified or cashier's check in the amount due

5  payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United

6  States Attorney's Office file number 2002V00100, and delivered to the office of the United

7  States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza,

8  108 Hernan Cortez, Hagatna, Guam 96910.

9  56.  The United States may, in the unreviewable exercise of its discretion, reduce or

10  waive stipulated penalties otherwise due it under this Stipulated Order for Preliminary Relief.

11  57.  If Defendants fail to pay stipulated penalties owed pursuant to this Stipulated

12  Order for Preliminary Relief within 30 days of receipt of EPA's written demand, Defendants

13  shall pay interest on the late payment for each day after the initial thirty day due date.  The rate

14  of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.

15  58.  Stipulated penalties are not the Plaintiff's exclusive remedy for violations of this

16  Stipulated Order for Preliminary Relief.  The United States expressly reserves the right to seek

17  any other relief it deems appropriate, including, but not limited to, action for statutory penalties,

18  contempt, or injunctive relief against Defendants.

19  **X.  Force Majeure**

20  59.  Defendants shall perform all requirements of this Stipulated Order for Preliminary

21  Relief in accordance with the time schedules set forth except to the extent, and for the period of

22  time, that such performance is prevented or delayed by events which constitute a force majeure.

23  60.  For the purposes of this Stipulated Order for Preliminary Relief, a force majeure is

24  defined as any event arising from causes beyond the control of Defendants and that cannot be

25  overcome by diligent and timely efforts of Defendants, including their contractors.  Economic

26  hardship, lack of a political consensus, normal inclement weather, and increased costs of

27

28  REVISED 7-26-04                              36

performance shall not be considered events beyond the reasonable control of Defendants for purposes of determining whether an event is force majeure. The requirement that Defendants exercise diligent and timely efforts to fulfill their obligations includes using best efforts to anticipate any force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure events, such that delay is minimized to the greatest extent possible.

61. In the event of a force majeure, the time of performance of the activity delayed by the force majeure shall be extended by EPA for the time period of the delay attributable to the force majeure. An extension of one compliance date based on a particular incident does not necessarily result in an extension of a subsequent compliance date or dates. Defendants must make an individual showing of proof regarding each delayed incremental step or other requirement for which an extension is sought. Defendants shall adopt all reasonable measures to avoid or minimize any delay caused by a force majeure.

62. When an event occurs or has occurred that may delay or prevent the performance of any obligation under this Stipulated Order for Preliminary Relief, Defendants shall notify by telephone the Manager, Pacific Islands Office, Region 9, (415) 972-3774, or the Guam Program Manager, Pacific Islands Office, Region 9, (415) 972-3770, within 72 hours of Defendants' knowledge of such event. If Defendants are unable to contact EPA Region 9, Defendants shall notify by telephone the U.S. Attorney's Office for the District of Guam at 472-7332, extension 119 or 121. Telephone notification shall be followed by written notification made within seven days of Defendants' knowledge of the event. The written notification shall fully describe: the event that may delay or prevent performance; reasons for the delay; the reason the delay is beyond the reasonable control of Defendants if they believe the event constitutes a force majeure; the anticipated duration of the delay; actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to mitigate the effect of the delay; and the time needed to implement any dependent activities. For purposes of this Section,

37

1    Defendants shall be deemed to have knowledge of anything they or their contractors knew or
2    should have known.

3         63.    Failure of Defendants to comply with the force majeure notice requirements
4    provided in Paragraph 62 for any delay in performance will be deemed an automatic forfeiture of
5    their right to assert that the delay was caused by a force majeure.

6         64.    After receiving written notification from Defendants of a force majeure, EPA
7    shall determine whether Defendants' request for delay is justified and EPA shall notify
8    Defendants of its determination in writing. EPA's failure to respond within 30 days to a request
9    for delay by Defendants shall be deemed a denial of that request. If Defendants disagree with
10   EPA's determination, Defendants may initiate dispute resolution procedures pursuant to Section
11   XI (Dispute Resolution).

12        65.    Defendants shall bear the burden of proving that any delay or violation of any
13   requirement of this Stipulated Order for Preliminary Relief was caused by circumstances beyond
14   their control, or any entity under their control, including consultants and contractors, and that
15   Defendants could not have reasonably foreseen and prevented such violation. Defendants shall
16   also bear the burden of proving the duration and extent of any delay or violation attributable to
17   such circumstances.

18   **XI.   Dispute Resolution**

19        66.    The Dispute Resolution procedures of this Section shall be the exclusive
20   mechanism to resolve disputes arising under or with respect to the Stipulated Order for
21   Preliminary Relief. However, the procedures set forth in this Section shall not apply to actions
22   by the United States to enforce obligations by Defendants under this Stipulated Order for
23   Preliminary Relief that have not been disputed in accordance with this Section.

24        67.    If Defendants dispute any determination made by EPA under this Stipulated Order
25   for Preliminary Relief, Defendants shall send a written notice to EPA and DOJ outlining the
26   nature of the dispute, submitting all supporting information and document relating to the dispute,

27
28                                      38

describing its proposed resolution, and requesting informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond 15 days from the date when notice was received by EPA and DOJ unless the parties agree otherwise in writing.

68.     If the informal negotiations are unsuccessful, the disputed determination by EPA shall control, unless Defendants file a motion with this Court for dispute resolution. Any such motion must be filed within 30 days after termination of informal negotiations and must be concurrently sent to EPA and DOJ. The United States shall then have 30 days to respond to Defendants' motion. In any such dispute resolution proceeding, Defendants bear the burden of proving that EPA was arbitrary and capricious.

## XII.   Applicability

69.     The provisions of this Stipulated Order for Preliminary Relief shall apply to and be binding upon GWA, its officers, agents, employees, trustees, successors, and assigns, the Government of Guam, its elected officials, officers, agents, employees, trustees, successors, and assigns, and the United States, on behalf of EPA.

## XIII.  General

70.     This Stipulated Order for Preliminary Relief is enforceable in all of its terms by the Court.

71.     This Stipulated Order for Preliminary Relief is not and shall not be construed as either an NPDES permit or a modification of any existing NPDES permit. By entering into this Stipulated Order for Preliminary Relief, the United States does not warrant in any manner that Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief will result in compliance with the provisions of the CWA, the SDWA, and regulations promulgated pursuant to those statutes. Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief does not affect or resolve the United States' claims for civil penalties or permanent injunctive relief.

72.     This Stipulated Order for Preliminary Relief shall not affect GWA's obligation to

39

1    comply with its NPDES permits and with all applicable federal laws, regulations, and permits.

2        73.    This Stipulated Order for Preliminary Relief does not limit or affect the rights of

3 the United States or Defendants against any third parties, nor does it limit the rights of third

4 parties who are not parties to this Stipulated Order for Preliminary Relief. In addition, this

5 Stipulated Order for Preliminary Relief is not to be construed as creating rights or obligations in

6 third parties.

7        74.    Each undersigned representative of Defendants and the Assistant United States

8 Attorney certifies that he is fully authorized to enter into the terms and conditions of this

9 Stipulated Order for Preliminary Relief, to execute the document, and to legally bind the party he

10 represents to this document.

11 **XIV. Modification**

12       75.    There shall be no material modifications of this Stipulated Order for Preliminary

13 Relief without the written approval of the parties to this Stipulated Order for Preliminary Relief

14 and the approval of the Court. All non-material modifications, which may include extensions of

15 the time frames and schedules for performance of the terms and conditions of this Stipulated

16 Order for Preliminary Relief, may be made by agreement of the parties and shall be effective

17 upon filing by the United States of such modifications with the Court.

18

19                         **ORDER**

20

21

22 IT IS SO ORDERED this 4ᵗʰ day of _____June_____, 2003.

23

24 Notice is hereby given that this document was
entered on the docket on JUN -5 2003

25 No separate notice of entry on the docket will
be issued by this Court.             /s/ John S. Unpingco.

26       Mary L. M. Moran           JOHN S. UNPINGCO
     Clerk, District Court of Guam     United States District Judge

27 By: _____    JUN -5 2003

28    Deputy Clerk        Date            40

For the United States of America, Plaintiff:

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

FREDERICK A. BLACK
United States Attorney
Districts of Guam and NMI
(671) 472-7332

Dated: 5/20/03

_____
MIKEL W. SCHWAB
Assistant U.S. Attorney

OF COUNSEL:

KAREN PETERSON
Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105


For Guam Waterworks Authority and the Government of Guam, Defendants:

Dated: 5/20/03

_____
DOUGLAS B. MOYLAN
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagatna, Guam 96910
(671) 475-3324

Dated: 5/20/03

_____
JON A. VISOSKY
Dooley Lannen Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
(671) 646-1222

41

BEFORE THE GUAM PUBLIC UTILITIES COMMISSION

RECEIVED
APR 11 2003
Public Utilities Commission
of Guam

GUAM WATERWORKS AUTHORITY
REGULATORY MATTERS                    *[Miscellaneous Dockets]*

### ORDER

By this Order, duly considered at the Commission's April 10, 2003 meeting and by the affirmative vote of at least four Commissioners, the Commission takes action on a number of regulatory matters concerning Guam Waterworks Authority *[GWA]*. This Order addresses the following regulatory subjects:

### 1. GWA Staffing Study [Docket 01-07].

On April 2, 2003 the Commission conducted a public hearing to consider Georgetown's staffing study of GWA. The study is mandated by P.L. 26-23 and by the Commission's September 13, 2001 Order. GWA filed no comments regarding the study. After discussion and on motion duly made, seconded and carried, the Commission orders that the study be approved. ALJ is authorized and directed to cause the publication of the study results in accordance with P.L. 26-23. For the record, the Commission notes advice from the Consolidated Commission on Utilities [CCU] that it intends to pursue legislation, which will relieve GPA and GWA from the staffing study requirements of P.L. 26-23.

### 2. GWA/Navy Settlement [Docket 00-01].

CCU has informed the Commission that it is in the final stages of negotiations with Navy regarding the settlement of litigation for amounts owed by GWA to Navy for water services. Under the proposed settlement, GWA would pay Navy $9 million over 105 months with interest. CCU has proposed and requested that the surcharge, which was established by Commission order dated September 13, 2001; then placed under a one year moratorium by P.L. 26-81; and which is subject to automatic reactivation on May 6, 2003, be amended to permit its use to fund the Navy settlement in addition to regulatory fees and amounts owed to GPA. The Commission has informed CCU that at its request, the Commission would, on its own initiative, commence proceedings to consider this concept during the June 2003 regulatory session. In the event such a request is filed *[which may request consideration of other collateral rate issues]*, ALJ is authorized and directed to oversee prehearing activities, which will lead to June hearing.

### 3. USA v. GWA [District Court Civil Case 02-035] [Docket 02-02]

Federal EPA and GWA are currently negotiating the terms of a stipulated order [*Stipulated Order*], by which GWA, under EPA oversight, will undertake a broad initiative to restore it facilities and to provide safe, reliable, lawful service to the island. A copy of the proposed 37-page draft Stipulated Order was provided to the Commission for comment. Commission comments were submitted to the party litigants by Chairman Brooks' March 27, 2003 letter. EPA has since conferred with the Commission regarding the important role the Commission will serve under the Stipulated Order.

An issue raised by the Stipulated Order is the extent to which the Commission should be involved, under 12 GCA 12004 [*contract review authority*], in reviewing and issuing prior approval of substantial GWA procurements, which are required by the Stipulated Order. After considering Georgetown's position on this issue [*GCG letter dated April 4, 2003*] and after discussion with its ALJ, on motion duly made, seconded and carried, the Commission finds that the essential purpose of section 12004 [*Commission review of reasonableness and prudence of proposed procurement*] is satisfactorily addressed by the history of the EPA litigation, the depth and scope of the Stipulated Order, and by the fact that EPA will serve a significant oversight role in the crafting and implementation of the various procurements. Accordingly, the Commission finds and orders that procurements required by the Stipulated Order shall not require Commission review and approval under its contract review protocol. The Commission wants to make a clear distinction, under the Stipulated Order between these procurements and the interim and final financial plans, which shall undergo a thorough Commission review and approval process. This Commission decision is part of a broader initiative to reduce regulatory expense and to redefine the necessary scope of its regulatory authority, given the presence of the publicly elected CCU.

For the record, the Commission renews its commitment, as made in its March 14, 2002 Order, that it will provide GWA in a timely manner with adequate rate relief to enable it to comply with an EPA approved strategic plan to restore the utility and bring it into compliance with Federal law.

### 4. GWA Water Service Charge.

By CCU email inquiry dated March 3, 2003, the Commission was made aware of controversy relating to GWA's practice of assessing a basic service fee for water service, without regard to whether water service is available to a customer. By his March 13, 2003 letter, ALJ posed to GWA and Georgetown questions

regarding this practice and required responses by April 8. ALJ is authorized and empowered after reviewing these responses to determine whether this issue should be included as a matter for Commission consideration during the anticipated June rate hearing.

   5.  **GWA Regulatory Compliance.**

GWA is not in compliance with its obligations under the Commission's contract review protocol [*Commission Order dated February 20, 2000*].
Under separate order and as part of a reduction in regulatory work and expense, the Commission has announced a protocol under which it will attempt to rely on GWA reports in lieu of Georgetown studies regarding GWA accounts receivable, payables, financial condition and significant management initiatives. The

Commission has emphasized to CCU the importance of GWA providing this information in a complete and timely manner so that the Commission can discharge its surveillance duty under law.

GWA has also been reminded of the Commission's December 17, 1999 Administrative Order, which provides that a utility will not be awarded regulatory relief unless its regulatory account with the Commission is current. [*Pursuant to the terms of the surcharge established by Commission Order dated September 13, 2001 in Docket 00-01, Commission fees are to be paid from the surcharge proceeds. Accordingly, availability of funds is not an issue regarding the timely payment of regulatory fees.*]

 GWA is cautioned that it must bring itself into full regulatory compliance in advance of the June regulatory session.

In light of the Stipulated Order discussed in paragraph 3 above, Commission order regarding GWA compliance with the terms and recommendations of the Commission's revenue cycle audit [*see Commission Consolidated Order dated December 11, 2001*] is abated until further notice. GWA is nevertheless encouraged to consider the audit recommendations as part of its reorganization activities.

Dated this 10th day of April 2003.

_____                    _____
Terrence Brooks                                                Joseph McDonald


_____                    _____
Filomena Cantoria                                             Edward Crisostomo

_____