Samuel J. Taylor
Staff Attorney
Guam Waterworks Authority
578 North Marine Corps Drive
Tamuning, GU 96913



**FILED**
DISTRICT COURT OF GUAM

OCT 2 9 2007 nbo

JEANNE G. QUINATA
Clerk of Court

Telephone: (671) 647-7681
Facsimile: (671) 646-2335

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | | |
|---|---|---|
| United States of America, | ) | CIVIL CASE NO. 02 00035 (D. Guam) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF POINTS AND** |
| vs. | ) | **AUTHORITIES IN SUPPORT OF THE** |
| | ) | **GUAM WATERWORKS** |
| | ) | **AUTHORITY'S MOTION FOR** |
| | ) | **DISPUTE RESOLUTION** |
| | ) | |
| | ) | |
| The Guam Waterworks Authority and | ) | |
| The Government of Guam | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. BACKGROUND

Approximately four years ago the United States of America filed a civil action against the Guam Waterworks Authority ("GWA") and the Government of Guam seeking injunctive relief, the appointment of a receiver for the Guam Waterworks Authority as well as the assessment of civil penalties for GWA' violations of the Clean Water Act, 33 U.S.C. §§ 1251 – 1387 (the "CWA"), and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA"). On June 5, 2003, the United States, the Government of Guam and the Guam Waterworks Authority entered into a Preliminary Order for Stipulated Relief wherein the parties agreed that the entry of the Stipulated Order was the most appropriate way to have GWA implement short-term projects

# ORIGINAL

so that it could begin to address issues of compliance at GWA's sewage treatment facilities and its public drinking water system. The Stipulated Order was amended in October of 2006 ("Stipulated Order" or "SO"). Exhibit A. Under Paragraphs 53 – 58 of the Amended SO, the USEPA is able to issue fines for failure of either GWA or the Government of Guam to meet deadlines specified in the Order. Id.

On September 5, 2007, the Guam Waterworks Authority ("GWA") received a Penalty Demand Letter from Alexis Strauss, the Director of the Region IX United States Environmental Protection Agency's Water Division, dated September 4, 2007, regarding 3 alleged violations of Paragraphs 39 and 42 of the Amended SO.[1] Exhibit B. The fines were for:

1. Allegedly failing to "conduct an operational performance evaluation" to both the Hågatña and Northern District Sewage Treatment Plants "to determine whether advanced primary treatment is needed at the plants to comply with NPDES permit effluent limitations;" and

2. For allegedly failing to conduct repairs to the Hågatña Sewage Pump Station within the deadlines specified in the Stipulated Order.

In accordance with the dispute resolution procedures set forth under Paragraphs 66 through 68 of the SO, the Guam Waterworks Authority submitted a formal protest to the USEPA and the Department of Justice regarding the imposition of fines under Paragraphs 39 and 42 on the grounds that the USEPA had not properly followed procedures of the order and that the fine was arbitrary in that it contravened the intention of the SO which is compliance with the SDWA and the CWA. Exhibit C. Following a conference call that produced no results, the U.S. Department of Justice sent a letter to GWA notifying GWA that the informal negotiation process under the Stipulated Order had been terminated and that GWA had thirty (30) days within which to file a Motion for Dispute Resolution. Exhibit D. GWA has since paid the $40,000 fine. Exhibit E.

---

[1] The fines totaled $298,000 using calculations made under Paragraph 53 of the SO, although the USEPA reduced the fine to $40,000 via its authority to reduce the fines in Paragraph 56 of the SO.

## II. REASONS WHY GWA SHOULD NOT HAVE BEEN FINED.

The fines levied in the USEPA's September 5, 2007 Penalty Demand Letter were improper and should be set aside by this Court for the reasons set forth below.

### 1. The USEPA Failed To Approve or Disapprove GWA's Formal Submittals As Required Under Paragraphs 2, 39 And 42 Of The Stipulated Order.

#### A. *Operational Performance Evaluations*.

In its Penalty Demand Letter, the United States Environmental Protection Agency fined GWA for its alleged failure to conduct operational performance evaluations required under Paragraphs 39 and 42 for both the Hågåtña and Northern District Sewage Treatment Plants.

GWA did in fact submit a detailed performance evaluation report for the Hågåtña Sewage Treatment Plant to the USEPA on April 30th of 2007 which clearly outlined GWA's approach as to how it would insure full compliance with its NPDES permits and why advanced primary treatment was not necessary. Exhibit C (at Exhibit D). The report was submitted within the time frame specified in paragraph 42 and clearly stated that:

> "GWA must conduct a performance evaluation to determine whether or not advanced primary treatment is needed to comply with NPDES permit effluent limitations. This is to be completed by April 30, 2007 and a report submitted to EPA. This document and its attachments are submitted pursuant to this requirement."

Exhibit C (GWA's Protest Letter at Exhibit D).

Despite the clear language indicating that the submittal was in satisfaction of Paragraph 42, the USEPA has stated that "GWA has still not conducted the operational performance evaluation required by Paragraph 42." Exhibit D at p. 3. The USEPA's position on this matter is utterly misplaced because the USEPA is **required** under Paragraphs 2 and 42 of the Stipulated Order to provide GWA with some feedback on its formal submittals and failing to respond in a manner required under the SO to GWA's submittals is in fact a violation of this Court's Order. Specifically Paragraph 2 of the Stipulated Order states in relevant part:

> "EPA Approval of Plans and Other Submittals: After review of any plan, program, report or other item required to be submitted for approval under this Stipulated Order for Preliminary Relief, EPA shall submit to Defendants in writing either an approval or detailed comments explaining why EPA does not approve the plan, program, report or other submittal. Defendants shall have 30 days from receipt of EPA's comments to submit a revised plan, program, report or other submittal that fully addresses and responds to EPA's comments unless a longer time period is agreed upon by all parties."

In addition, Paragraph 42 of the SO states in relevant part that:

> "GWA shall submit to EPA and Guam EPA for review and comments the operational performance evaluation with a determination of the need for advanced primary treatment. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2. If advanced primary treatment is needed, the submitted operational performance evaluation shall include a schedule for the design and installation of the advanced primary treatment system."

Id. Thus, under the SO the USEPA is **required** to provide some formal written feedback on GWA's submittals, and at a minimum must tell GWA whether its submittals were approved or disapproved and if it disapproved state specifically why it was disapproved. Id. In this case GWA did not receive either a formal rejection or approval, and in fact GWA did not know its submittal was deficient in any manner whatsoever until it received notice of the USEPA's fine in September of 2007.

Most importantly, neither paragraph 39 nor 42 defines what constitutes an "operational performance evaluation" nor is there any indication whatsoever as to what an operational performance evaluation report must consist of. Exhibit A. Moreover, the term "operational performance evaluation" is not defined anywhere in the Stipulated Order. This means that GWA can rely on testing data from the plants and the operational expertise of its operators and engineers when drafting the performance evaluation report. The fact that the USEPA does not approve the contents of GWA's submittals does not excuse the USEPA from notifying GWA of why the USEPA believes that GWA's reports are deficient.

On May 4, 2007, GWA also submitted a timely performance evaluation report for the Northern District Treatment Plant as required under Paragraph 39. Exhibit C (at Exhibit 1). This report, just like the Paragraph 42 performance evaluation report, contained a clear statement that the submittal was being made in satisfaction of the Paragraph 39 requirement that GWA needs to conduct a performance evaluation on the plant and submit a report. Id. Just like the Hågatña report, the USEPA was also required to notify GWA of how the May 4, 2007 submittal was deficient or whether or not the report was approved – again no response from the USEPA.

The test results as evidenced in the Discharge Monitoring Report ("DMR") reports at the time GWA submitted their reports in April and May of 2007 show that both the Northern and Hågatña Treatment plants were either in compliance with their NPDES permits or very close to meeting NPDES permit levels which is the underlying purpose of putting paragraphs 39 and 42 in SO in the first place.[2] It was also the professional opinion of GWA operators and engineers that Hågatña would meet its permits levels following a short adjustment period to the plant following its major renovation (which is normal), and that with a few more minor repairs to the sludge pumps and other operational adjustments the Northern Plant would also come into compliance with its NPDES permit. What the data has shown is that GWA was correct in its assessment of both of the plants. For example, in September when the fine was issued the Hågatña Sewage Treatment Plant had been in continuous compliance with its NPDES permits since May of 2007 and that advance primary treatment was not in fact necessary. The DMR reports have also shown that it highly probably that the Northern would also be in compliance if the stated repairs (which are not required under Paragraph 39) are made. Thus, GWA believes that the more expensive advanced primary treatment which is a detriment to its customer's pocketbooks is simply not necessary.[3] Exhibit C (exhibit G). Moreover, determining whether

---

[2] The Northern District Treatment Plant has never been in compliance with its NPDES permits and Hågatña has been out of compliance with its permits for over a decade.

[3] GWA submitted a report to the USEPA on March 2, 2007 which indicated that all the repairs to the Northern District Treatment Plant under Paragraph 39 of the SO had been completed.

or not advanced primary treatment was necessary is exactly the stated purpose of the operational evaluation reports.

## B. *Formal Submittal For Hågatña Sewage Pump Station.*

The September 5, 2007 Penalty Demand Letter from the USEPA indicated that a fine was being levied for GWA's failure to miss the June 1, 2007 deadline to complete the repairs to the Hågatña Sewage Pump Station ("HSPS"). This project was unilaterally defined and initiated by GWA and did not arise from any need identified by the USEPA. Thus, the project did not need to be added to the SO because the project simply does not impact plant NPDES compliance and is really an efficiency upgrade and operator safety issue.[4] However, GWA reluctantly agreed to add it at USEPA insistence because there were other items which GWA desired to have modified which were contingent upon adding this particular project to the SO.

The original intent of GWA and the USEPA was that GWA would complete the work to the HSPS while the treatment plant was being bypassed. Fortunately or unfortunately, GWA completed its major renovation to the Hågatña Sewage Treatment Plant ahead of schedule and at that time GWA had not yet secured the funding to complete the repairs to the HSPS. Thus, GWA faced a dilemma – either put the newly renovated plant on line and treat whatever sewage it could while figuring out how to bypass the pump station, or ask for an extension to the plant bypass which simply involves letting raw untreated sewage flow into the ocean until such time as the pump station was repaired. GWA chose to treat the sewage and as such submitted a request to the USEPA for guidance on exactly how GWA should approach the problem. Exhibit C (at Exhibit E). The formal request has never been responded to despite that under Paragraph 2 the USEPA is required to respond to not only submittals specifically identified in the SO itself, but to any ". . . plan, program, report or other item required to be submitted for approval under this Stipulated Order . . ." Just like with the performance report issue, GWA was fined by the

---

[4] The USEPA's assertion that the GWA needed to conduct repairs on the Hågatña Sewer Pump Station in order to bring the Hågatña Sewage Treatment Plant into compliance are simply not true. *See* USEPA Press Release at Exhibit C (Exhibit C of the GWA Protest Letter).

USEPA without being afforded an opportunity to ascertain what how its plans were deficient in direct violation of the Stipulated Order requirements that GWA be given such an opportunity.

## 2. The USEPA Is Ignoring The Underlying Purpose Of The Stipulated Order Which Is To Ensure Compliance With Permit Guidelines And Protect Public Health.

In the USEPA Penalty Demand Letter as well as its formal response to GWA's protest, The USEPA makes it abundantly clear that compliance with the Safe Drinking Water Act and Clean Water Act is not necessarily their goal, rather it is blind adherence to the terms in the Order that apparently motivates them. For example the USEPA has fined GWA for non-compliance with the Stipulated Order when GWA was in fact in compliance with the laws and regulations underpinning the stipulated order violation itself (i.e., Hågatña in compliance with NPDES permits but receiving a fine anyway).

GWA points out that its reports submitted to the USEPA indicate instances where GWA is exceeding the requirements of the Stipulated Order. For example, GWA is almost finished with establishing a laboratory at the Hågatña Sewage Treatment Plant to do operational testing and monitoring for all of its wastewater plants in addition to routine compliance monitoring.

According to GWA engineers, the modifications to the Hågatña Pump Station have almost nothing to do with NPDES permit compliance (as evidenced by the lack of inclusion in the original Stipulated Order), rather as indicated above the renovations are necessary to protect GWA operators as the pump station is unsafe to operate – i.e., an OSHA issue not NPDES issue as suggested by the USEPA. Yet, the USEPA sought the inclusion of such items which are not related to the overall purpose of the original lawsuit – compliance with the Safe Drinking Water Act and Clean Water Act. Moreover, there are numerous other items in the SO which also do not directly relate to actual compliance issues such as the water meter improvement project under Paragraph 14 which does not impact water quality concerns under the Safe Drinking Water Act. In fact, because of the timelines involved, GWA chose NPDES permit compliance over the SO in order to enhance the health and safety of the populace of Guam by operating the sewage treatment plant as opposed to continuing to force raw untreated sewage into the Hågatña Bay

7

while it was conducting the repairs on the pump station. Thus, GWA is utterly surprised at the USEPA's fine in this case as GWA's decision is more consistent with environmental protection than the USEPA's fine which is based solely upon a blind obedience towards SO deadlines without regard to the health consequences to the public.

Ironically, the effort to ensure compliance beyond the requirement of the SO was indicated by GWA to continue through February 2008, the only date noted in the penalty demand letter. Id. Thus, it seems that compliance with the SO (i.e., GWA submitting a report which indicates that advanced primary treatment isn't really necessary) isn't the issue that was fined, rather the fine was levied on a timeframe that GWA is supplying to the USEPA which relates to a plan by GWA to exceed SO requirements. Even worse is that GWA submitted a formal request to USEPA which set out several optional approaches to complete the SPS repairs and provided timelines with varying degrees of risk of bypassing the treatment plant (note that bypassing the treatment plant is the fail-safe to avoid upstream sewage spills which are also subject to fines). However, again the USEPA failed to respond to GWA's submittal in a manner required under Paragraph 2 of the SO and GWA still does not know the USEPA's position on this very important matter.

Ironically, the long lead bypass pumps necessary for the HSPS repairs cost about the same amount as the fine that has been imposed which means that the payment of the fine may result in GWA being forced to bypass the treatment plant in order to complete the lift station repairs instead of bypassing the pump station as GWA was requesting which will result in a greater public health risk.

### 3. **Many Of The USEPA Assumptions Were Erroneous.**

In its press release regarding the imposition of fines, it became apparent to GWA that certain statements made by the USEPA were simply inaccurate and that the USEPA relied on these inaccuracies when imposing the fine.

First, the USEPA press release stated that GWA was being fined for its "failure to improve the wastewater facilities" and "to ensure compliance with federal permit limits from these two facilities." Exhibit C (see Exhibit C of GWA's Protest Letter). GWA and its ratepayers have already spent a considerable sum to improve the wastewater treatment facilities referenced in the release. In fact at the time the fines were rendered, the USEPA had been notified of the completion of all renovations at the Hågatña Sewage Treatment Plant and also the completion of all repairs required specifically referenced under Paragraph 39 of the Stipulated Order. Id. Moreover, GWA had notified the USEPA at the time the press release and fine that GWA was in compliance with NPDES permit limits for at least one plant and the other plant was either in compliance or so close to compliance that it was a de minimus violation.

Second, the USEPA press release incorrectly stated that "GWA needs to comply with the order to determine the proper level of wastewater treatment it needs to meet its federal permits." Id. GWA has proven that both the Hågatña Sewage Treatment Plant and Northern District Sewage Treatment Plant are capable of operating within their permit levels under the plans which GWA submitted as GWA indicated that they would. In sum, as stated in our April 30, 2007 and May 4, 2007 reports, GWA does not believe that additional testing is necessary or prudent at this juncture in order to determine whether the treatment plants meet their federal permits when the testing data obviously shows that the plants are meeting permit requirements or will meet them after GWA follows its plan to conduct repairs. In fact, GWA's assertion that it does not need to conduct any further performance evaluation is true since Hågatña is currently in compliance with the NPDES permits thereby rendering moot any further examination of whether advanced primary treatment is necessary. Also, the same can be said of Northern where in GWA's professional opinion, the plant will be in compliance with its permits once the additional repairs that GWA has identified and which are not part of the SO are put into place.

### III. **CONCLUSION.**

GWA would like to note for the record that its Stipulated Order has nothing to do with the Ordot dump. The Consolidated Commission on Utilities, as well GWA's management, has literally converted GWA into a phoenix which has arisen from the ashes of very bad management. Under the prior appointed board, GWA lost approximately $80 million dollars in 6 years. Since the CCU takeover, GWA has went from losing money to making money, it has had the USEPA proclaim that Guam's water is the safest in decades, GWA has borrowed more than $100 million which is going directly into repairs to the system – e.g., GWA has renovated or is in the process of renovating its sewage treatment system and its water treatment plant in Ugum (which is currently in compliance with the Safe Drinking Water Act), GWA is discovering and disconnecting illegal storm water connections and enforcing grease trap requirements, enforcing subdivision laws and simply improving its overall performance. The turnaround, which has been extraordinarily difficult, has not escaped the notice of the USEPA nor the U.S. Department of Justice who recently recommended to this Court that the CCU take over the operations of Guam's solid waste division at the Guam Department of Public Works. Why? The answer is that GWA under the CCU and current management is improving the operations at GWA for the betterment of all.

Also, what really is the purpose behind the fines? What is the USEPA's rationale to require a submittal when the submittal is clearly moot – at least with Hågatña? Also, what is the purpose of imposing fines when the USEPA knows that GWA is going to improve its sludge handling capabilities which will undoubtedly bring Northern into compliance with its permits? What can possibly be gained from fining GWA when GWA has spent a great deal of time and effort in complying with the SO? How can the USEPA ignore the impact of the military buildup on GWA's operations – especially in light of the fact that even federal agencies are having difficulty dealing with the increased workload? In sum, it cannot and should not ignore the exigent realities that GWA is faced with and should instead, turn its eye to helping GWA come

into compliance and not simply penalizing GWA because it feels it can – although in this case it cannot and should not have imposed the fines until it formally responded to GWA's submittals telling GWA how its submittals were deficient.

In closing, based upon the reasons set forth above, GWA protests the fines set forth in the USEPA's Penalty Demand Letter and moves this Court to set aside the fines as they are inappropriate and contrary to the spirit, intent and letter of the Stipulated Order. Specifically, GWA does not believe that any fine is appropriate with respect to the operational report submittals for the Hågatña and Northern District Sewage Treatment Plants given the fact that GWA made timely submittals of its reports and the USEPA failed to comply with the approval / rejection provisions of Paragraphs 2, 39 and 42 of the Stipulated Order. In addition, GWA believes that the fines regarding the Hågatña Sewer Pump Station are inappropriate in light of the fact that GWA's approach to repairing the pump station are designed to limit unnecessarily high repair costs and provides the maximum health and safety benefit to the public and that the USEPA failed to respond to its submittal as required under Paragraph 2 of the Stipulated Order.

Finally, GWA believes that oral motions are imperative in this matter as the issues are technical and do not lend themselves well to presentation in a limited motion, it will provide the Court an opportunity to question the parties about their respective positions and there is simply too much background and other data to present in a 15 page memorandum. GWA is submitting a request for oral hearings but since Counsel was not able to secure approval for the

Respectfully submitted this 29th day of October, 2007.

By: _____
Samuel J. Taylor
Attorney for Guam Waterworks Authority

11

1  SUE ELLEN WOOLDRIDGE
2  Assistant Attorney General
   Environment & Natural Resources Division
3  United States Department of Justice
   ROBERT D. MULLANEY
4  Environmental Enforcement Section
   Environment & Natural Resources Division
5  301 Howard Street, Suite 1050
6  San Francisco, CA 94105
   Tel: (415) 744-6491
7  Fax: (415) 744-6476
8  LEONARDO M. RAPADAS
   United States Attorney
9  MIKEL W. SCHWAB
   Assistant U.S. Attorney
10 Suite 500, Sirena Plaza
11 108 Hernan Cortez
   Hagatna, Guam  96910
12 Tel:  (671) 472-7332
   Fax:  (671) 472-7215
13
14 Attorneys for the United States of America

# FILED
DISTRICT COURT OF GUAM

OCT 25 2006

MARY L.M. MORAN
CLERK OF COURT

15              UNITED STATES DISTRICT COURT
16                 TERRITORY OF GUAM

17 UNITED STATES OF AMERICA,          )    Civil Case No. 02-00035
18                                    )
                  Plaintiff,          )    ORDER
19          v.                        )    AMENDING STIPULATED
20 GUAM WATERWORKS AUTHORITY          )    ORDER FOR PRELIMINARY
   and the GOVERNMENT OF GUAM,        )    RELIEF
21                                    )
22              Defendants.           )
23 ─────────────────────────────────  )
24
25
26
27
28

GWA Legal Counsel
RECEIVED
DATE: 10/26/06 @
3:2[?]

Exhibit A

On October 19, 2006, the United States, the Guam Waterworks Authority, and the

Government of Guam submitted a Stipulation in which the parties agreed to make modifications,

add some additional requirements, and correct a typographical error in the Stipulated Order for

Preliminary Relief filed by this Court on June 5, 2003 ("Stipulated Order"). The parties also

submitted an amended Stipulated Order with substituted pages reflecting these changes.

IT IS SO ORDERED this 24th day of October, 2006, that the ~~amended Stipulated~~ Stipulation Amending Stipulated Order for Preliminary Relief ~~Order~~ with the substituted pages is hereby approved. KRW

Larry A. Burns
Designated United States District Judge

1  SUE ELLEN WOOLDRIDGE
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3  ROBERT D. MULLANEY
   Environmental Enforcement Section
4  Environment & Natural Resources Division
   301 Howard Street, Suite 1050
5  San Francisco, CA 94105
   Tel: (415) 744-6491
6  Fax: (415) 744-6476
   LEONARDO M. RAPADAS
7  United States Attorney
   MIKEL W. SCHWAB
8  Assistant U.S. Attorney
   Suite 500, Sirena Plaza
9  108 Hernan Cortez
   Hagatna, Guam 96910
10 Tel: (671) 472-7332
   Fax: (671) 472-7215
11

12 Attorneys for the United States of America

13                    UNITED STATES DISTRICT COURT
14                         TERRITORY OF GUAM
15

16 UNITED STATES OF AMERICA,          )    CIVIL NO. 02-00035
                                      )
17          Plaintiff,                )    STIPULATION AND ORDER
                                      )
18     v.                             )    AMENDING STIPULATED
                                      )
19 GUAM WATERWORKS AUTHORITY          )    ORDER FOR PRELIMINARY
   and the GOVERNMENT OF GUAM,        )    RELIEF
20                                    )
21          Defendants.               )
                                      )
22 ───────────────────────────────────)

23

24

25

26              US Attorney's Office
                Districts of Guam & NMI
27

28              OCT 1   2006
                9:50 am
                Receiving name
                Date keyed in Dbase
                Entered into Dbase by:

WHEREAS, the United States of America filed a civil action seeking injunctive relief and the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA");

WHEREAS, the Government of Guam is identified in the Complaint as a defendant as required by CWA Section 309(e), 33 U.S.C. § 1319(e);

WHEREAS, the parties agreed that entry of a Stipulated Order for Preliminary Relief ("Stipulated Order"), which was approved and filed by the Court on June 5, 2003, was the most appropriate way to require the immediate implementation of short-term projects and initial planning measures by GWA and the Government of Guam (jointly "Defendants") to begin to address issues of compliance at GWA's Publicly Owned Treatment Works and three public water systems;

WHEREAS, the Stipulated Order provides that: (1) there shall be no material modifications of the Stipulated Order without the written approval of the parties to the Stipulated Order and the approval of the Court; and (2) all non-material modifications, which may include extensions of the time frames and schedules for performance of the terms and conditions of the Stipulated Order, may be made by agreement of the parties and shall be effective upon filing by the United States of such modifications with the Court;

WHEREAS, GWA has requested certain modification to the provisions of the Stipulated Order and the parties have agreed to make those modifications, add some additional requirements, and correct a typographical error in the Stipulated Order;

NOW, THEREFORE, in light of the foregoing recitals, the parties, through their respective undersigned counsel, stipulate to the following changes in the Stipulated Order and jointly request the Court to enter the following Order:

- 2 -

## ORDER

1. The following changes shall be made to the Stipulated Order:

a. Substitute a new page 5 to add provisions to Paragraph 5 that: (1) specify the oversight role of the Chief Financial Officer; and (2) require the CCU to hire an Assistant Chief Financial Officer, a material change to the Stipulated Order;

b. Substitute new pages 6, 6A, and 6B to add requirements in Paragraph 8 that GWA obtain additional engineering support and hire a senior wastewater operator or a GIS/Land Information System Manager, a material change to the Stipulated Order;

c. Substitute a new page 11 to modify the due dates in Paragraph 10 for completion of a draft and final Master Plan, a non-material change to the Stipulated Order;

d. Substitute new pages 13 and 13A to add requirements to Paragraph 12 that GWA ensure that it has an adequate supply of chlorine and that it upgrade its chlorination system, a material change to the Stipulated Order;

e. Substitute a new page 14 to modify the due date in Paragraph 14 for the water meter program, a non-material change to the Stipulated Order;

f. Substitute a new page 15 to modify the due date in Paragraph 17 for standby generators, a non-material change to the Stipulated Order;

g. Substitute a new page 21 to modify the due date in Paragraph 30 for approval of a final financial plan, a non-material change to the Stipulated Order;

h. Substitute a new page 22 to specify the expense base used to calculate the amount of the reserve in Paragraph 32, a material change to the Stipulated Order;

i. Substitute a new page 23 to modify the due date in Paragraph 35 for construction of the Agana Ocean outfall, a non-material change to the Stipulated Order;

- 3 -

j.   Substitute a new page 24 to modify the due date in Paragraph 36 for construction of the Northern District Ocean outfall, a non-material change to the Stipulated Order;

k.   Substitute new pages 25, 26, and 26A to add requirements to Paragraph 38 that GWA complete construction of a new water transmission line and complete a condition assessment of its water reservoirs, a material change to the Stipulated Order;

l.   Substitute a new page 27 to provide a revised scope of work in Paragraph 39 for the corrective actions to restore operational capacity for a sewage treatment plant, a material change to the Stipulated Order;

m.   Substitute new pages 28 and 29 to modify the due date in Paragraph 41 for completion of construction, a non-material change to the Stipulated Order, and to provide a revised scope of work in Paragraph 42 for the corrective actions to restore operational capacity for a sewage treatment plant, a material change to the Stipulated Order;

n.   Substitute a new page 30 to modify the due date in Paragraph 44 for completion of construction, a non-material change to the Stipulated Order; and

o.   Substitute a new page 35 to correct a typographical error in Paragraph 53.

2. A complete copy of the Stipulated Order with the substituted pages is attached as Exhibit 1 to this Stipulation and Order.

**IT IS SO ORDERED** this _____ day of _____, 2006.


_____
United States District Judge


- 4 -

1    **IT IS SO STIPULATED.**

2    For the United States of America, Plaintiff:

3                                    SUE ELLEN WOOLDRIDGE
                                     Assistant Attorney General
4                                    Environment & Natural Resources Division
                                     ROBERT D. MULLANEY
5                                    Environmental Enforcement Section
                                     Environment & Natural Resources Division
6                                    United States Department of Justice

7                                    LEONARDO M. RAPADAS
                                     United States Attorney
8                                    Districts of Guam and NMI
                                     (671) 472-7332
9

10   Dated: _____      _____
                                     MIKEL W. SCHWAB
11                                   Assistant U.S. Attorney

12   OF COUNSEL:
     JULIA JACKSON, Assistant Regional Counsel
13   U.S. Environmental Protection Agency
     75 Hawthorne Street
14   San Francisco, CA 94105

15   IT IS SO STIPULATED.

16    For Guam Waterworks Authority and the Government of Guam, Defendants:

17

18   Dated: _____      _____
                                     Douglas B. Moylan
19                                   Attorney General of Guam
                                     Office of the Attorney General
20                                   Guam Judicial Center, Suite 2-200E
                                     120 West O'Brien Drive
21                                   Hagatna, Guam 96910
                                     (671) 475-3324
22

23   Dated: _10/12/2006_             _____
                                     SAMUEL J. TAYLOR
24                                   GWA Legal Counsel
                                     Guam Waterworks Authority
25                                   578 North Marine Corps Drive
                                     Tamuning, GU 96913
26                                   Phone: (671) 647-7681

27

28                                   - 5 -

## CERTIFICATION

I, FRANCES B. LEON GUERRERO, secretary working in the United States Attorney's Office, hereby certify that copies of the Stipulation and Order Amending the Stipulated Order for Preliminary Relief were served by personal service and facsimile to the attorneys of record at the following addresses:

Dated: October 12, 2006

_____

FRANCES B. LEON GUERRERO
Civil secretary

1  THOMAS L. SANSONETTI                    REVISED 10-3-06
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3  ROBERT D. MULLANEY
   Environmental Enforcement Section
4  Environment & Natural Resources Division
   301 Howard Street, Suite 1050
5  San Francisco, CA 94105
   Tel: (415) 744-6491
6  Fax: (415) 744-6476

7  FREDERICK A. BLACK
   United States Attorney
8  MIKEL W. SCHWAB
   Assistant U.S. Attorney
9  Suite 500, Sirena Plaza
   108 Hernan Cortez
10 Hagatna, Guam 96910
   Tel: (671) 472-7332
11 Fax: (671) 472-7215

12
   Attorneys for the United States of America
13

14                 UNITED STATES DISTRICT COURT

15                      TERRITORY OF GUAM

16 UNITED STATES OF AMERICA,          )    CIVIL CASE NO. 02-00035

17                                    )

18              Plaintiff,            )    **STIPULATED ORDER**

                                      )    **FOR PRELIMINARY RELIEF**
19        v.                          )

   GUAM WATERWORKS AUTHORITY          )
20 and the GOVERNMENT OF GUAM,        )

21                                    )

                Defendants.           )
22 ─────────────────────────────────  )

23

24

25             US Attorney's Office
                Districts of Guam & NMI
26

27             OCT 19 2006
               Time
28             Receiving name
               Date keyed in Dbase
               into Dbase by:

1    WHEREAS, the United States of America filed a civil action seeking injunctive relief and
2    the assessment of civil penalties against the Guam Waterworks Authority ("GWA") under the
3    Clean Water Act, 33 U.S.C. §§ 1251 - 1387 (the "CWA"), and the Safe Drinking Water Act, 42
4    U.S.C. §§ 300f - 300j-26 (the "SDWA");
5    WHEREAS, GWA is a public corporation that has the authority to produce, treat,
6    transmit, store, distribute, and sell water on Guam, as well as the authority to collect, treat, and
7    sell or dispose of wastewater on Guam;
8    WHEREAS, GWA owns and operates five sewage treatment plants on Guam that are
9    subject to the conditions and limitations contained in National Pollutant Discharge Elimination
10    System ("NPDES") Permit Nos. GU0020087, GU0020222, GU0020095, GU0020141, and
11    GU0020273 issued by the U.S. Environmental Protection Agency ("EPA") pursuant to the
12    CWA;
13    WHEREAS, GWA owns and operates wastewater collection and conveyance systems,
14    including approximately 75 sewage pump stations, that transport raw sewage to its sewage
15    treatment plants;
16    WHEREAS, the NPDES permits require GWA at all times to properly operate and
17    maintain all facilities and systems of treatment and control (and related appurtenances) that are
18    installed or used to achieve compliance with the conditions of the permits;
19    WHEREAS, the Government of Guam is identified as a defendant as required by CWA
20    Section 309(e), 33 U.S.C. § 1319(e);
21    WHEREAS, GWA owns and operates three public water systems that supply drinking
22    water for the majority of the population of Guam: the Northern, Central, and Southern Systems;
23    WHEREAS, GWA's public water systems are required to comply with the National
24    Primary Drinking Water Regulations under the SDWA, including the Maximum Contaminant
25    Levels for microbiological contaminants and the treatment technique for turbidity;
26    WHEREAS, the United States sought in its Complaint both a preliminary and permanent
27
28    REVISED 10-3-06                                          2

1 injunction as well as the appointment of a receiver to address issues of compliance in GWA's

2 Publicly Owned Treatment Works ("POTW") and three public water systems;

3        WHEREAS, the parties agree that entry of this Stipulated Order for Preliminary Relief is

4 the most appropriate way to require the immediate implementation of short-term projects and

5 initial planning measures by GWA and the Government of Guam (jointly "Defendants") to begin

6 to address issues of compliance at GWA's POTW and three public water systems;

7        WHEREAS, the Guam Public Utilities Commission issued an Order on April 10, 2003

8 (see Attachment A to this Stipulated Order), renewing its commitment to provide GWA in a

9 timely manner with adequate rate relief to enable GWA to comply with an EPA-approved

10 strategic plan in a prudent and reasonable manner;

11        WHEREAS, the parties contemplate entering into a further stipulation to address

12 additional compliance issues after Defendants' completion of the initial planning measures set

13 out in this Stipulated Order for Preliminary Relief;

14        THEREFORE, before taking testimony or adjudicating any issue of fact or law, and

15 without any finding or admission of liability against or by GWA or the Government of Guam;

16        **IT IS ORDERED, ADJUDGED, AND DECREED as follows:**

17 **I.**    **Submittals by Defendants**

18        1.   <u>Compliance Monitor</u>: Within ten days after the date of entry of this Stipulated

19 Order for Preliminary Relief by the Court (hereinafter the "Entry Date"), GWA shall appoint one

20 individual whose primary responsibility will be to coordinate and report on all compliance

21 activities and deliverables required by this Stipulated Order for Preliminary Relief. Within 20

22 days after the Entry Date, GWA shall provide notice to EPA listing the individual's name,

23 address, telephone and fax numbers, and e-mail address. If GWA appoints a new person as

24 compliance monitor, GWA shall provide contact information about the new compliance monitor

25 to EPA within 10 working days after the appointment.

26        2.   <u>EPA Approval of Plans and Other Submittals</u>: After review of any plan, program,

27

28 REVISED 10-3-06           3

1 report or other item required to be submitted for approval under this Stipulated Order for

2 Preliminary Relief, EPA shall submit to Defendants in writing either an approval or detailed

3 comments explaining why EPA does not approve the plan, program, report or other submittal.

4 Defendants shall have 30 days from receipt of EPA's comments to submit a revised plan,

5 program, report or other submittal that fully addresses and responds to EPA's comments unless a

6 longer time period is agreed upon by all parties. Defendants shall use their best efforts to

7 incorporate EPA's comments to the extent practicable. Representatives of the parties shall make

8 themselves available during the comment period to informally discuss questions and comments

9 on any documents. Defendants' failure to respond to EPA's comments shall constitute a

10 violation of this Stipulated Order for Preliminary Relief. The procedures of this Paragraph shall

11 also apply to any revised plan, program, report, or other submittal.

12 **II.** **Management and Organizational Structure of GWA**

13        3.     <u>General Manager</u>: Within ten days after the Entry Date, the Consolidated

14 Commission on Utilities ("CCU") shall advertise to hire a full-time General Manager at GWA.

15 At a minimum, the General Manager shall have the following qualifications: (1) a Masters

16 degree in Management, Engineering, Finance, or Public Administration, or, in the alternative, a

17 Bachelor's degree and registration as a Professional Engineer pursuant to the National Council of

18 Engineering Examiners standards in either the Civil, Mechanical, or Electrical Branch; (2) at

19 least ten years of combined senior management experience at drinking water and wastewater

20 utilities, with experience in both areas; (3) proven management and communication skills;

21 (4) demonstrated ability to lead, motivate, and develop staff; (5) experience with planning,

22 design, and construction of major wastewater or drinking water infrastructure projects; and

23 (6) knowledge and experience with: a) drinking water or wastewater engineering, b) user fee

24 system development, c) bond funding, d) staff training and development, and e) federal drinking

25 water and wastewater requirements. The CCU shall use its best efforts to hire a qualified

26 General Manager within 90 days after the Entry Date.

27

28 REVISED 10-3-06                 4

1   4. <u>Chief Engineer</u>: Within 40 days after the Entry Date, the CCU shall advertise to

2 hire a full-time Chief Engineer at GWA. At a minimum, the Chief Engineer shall have the

3 following qualifications: (1) registered professional civil, mechanical or electrical engineer;

4 (2) ten or more years of professional engineering experience; and (3) fully competent and

5 proficient in planning, design, construction, and operation of wastewater treatment facilities,

6 drinking water disinfection systems, wells, and drinking water distribution and transmission

7 systems. If possible, the applicant shall also have experience in wastewater collection systems

8 and surface water treatment systems. The CCU shall use its best efforts to hire a qualified Chief

9 Engineer within 120 days after the Entry Date.

10   5. <u>Financial Officers</u>:

11   A. <u>Chief Financial Officer</u>: Within 60 days after the Entry Date, the CCU shall advertise

12   to hire a full-time Chief Financial Officer at GWA that has the appropriate qualifications

13   (e.g., Certified Public Accountant or Certified Management Accountant) and experience.

14   The Chief Financial Officer shall oversee GWA's Finance, Treasury, Accounting, and

15   Purchasing programs, and shall oversee GWA's compliance with federal and local

16   requirements. The CCU shall use its best efforts to hire a qualified Chief Financial

17   Officer within 150 days after the Entry Date. The Chief Financial Officer may perform

18   duties for the Guam Power Authority pursuant to the Chief Financial Officer's

19   employment agreement with the CCU.

20   B. <u>Assistant Chief Financial Officer</u>: By November 30, 2006, the CCU shall hire an

21   Assistant Chief Financial Officer ("ACFO") for GWA. The ACFO must have a

22   Bachelor's degree in finance, economics, or accounting, and adequate senior

23   level/supervisory experience. By November 30, 2006, GWA shall submit a report to

24   EPA and Guam EPA with documentation on the professional qualifications and

25   experience of the person hired as ACFO.

26   6. <u>General Manager's Authority</u>: In order to allow GWA to operate as an

27

28 REVISED 10-3-06     5

1 | independent agency, the Chief Financial Officer shall be under the direct supervision of GWA's
2 | General Manager. Within 30 days after the Entry Date, Defendants shall provide a report to EPA
3 | on any legal and administrative barriers preventing GWA's General Manager from directly
4 | supervising GWA's Chief Financial Officer, and recommend a course of action, including
5 | proposed legislation or administrative measures, to deal with this issue. By November 9, 2003,
6 | Defendants shall respond to EPA's comments in accordance with Paragraph 2 and shall take
7 | action to address this issue, including submitting proposed legislation to the Guam Legislature
8 | and/or implementing required administrative measures. The CCU reserves the right to review all
9 | decisions made by the General Manager with respect to the Chief Financial Officer.

10 |      7.    Conflict of Interest Provision: GWA may enter into a service contract with a third
11 | party (such as an engineering or consulting firm or a contract employment firm) to permanently
12 | or temporarily fill GWA's staff vacancies. In order to avoid potential conflicts of interest that
13 | may arise in that situation, GWA shall not engage in any business other than staffing services
14 | with that third party (and any related corporate or business entities) for the duration of the service
15 | contract. After the Entry Date, all contracts used to fill new positions on a permanent or
16 | temporary basis at GWA shall be limited to either of the following: (1) a contract between GWA
17 | and the individual hired; or (2) a contract between GWA and a third party that agrees to provide
18 | no other service to GWA except for staffing services for the duration of the service contract.

19 |      8.    GWA Personnel
20 |     A. Certification of Operators in Direct Responsible Charge ("DRC Operators"): Within
21 | 180 days after the Entry Date, GWA shall ensure that DRC Operator positions are staffed
22 | by operators who have obtained certification at the level required for that position by the
23 | Guam Environmental Protection Agency's ("Guam EPA") "Water and Wastewater
24 | Systems Classification" memorandum dated October 17, 2002. If current DRC Operators
25 | at GWA are not certified at the required level, GWA shall, within ten working days after
26 | the Entry Date, notify those employees that they have 180 days after the Entry Date to

28 | REVISED 10-3-06           6

1    obtain the required certification. If an employee does not obtain the required certification

2    within 180 days after the Entry Date, GWA shall transfer the employee and fill the

3    position with a properly certified DRC Operator.

4    B. Engineering Support: By January 31, 2007, GWA shall either: (1) hire senior level

5    engineers for water and wastewater in accordance with this Paragraph, or (2) enter into an

6    engineering services contract to provide the equivalent engineering support. GWA shall

7    hire or enter into an engineering services contract for at least three full time senior

8    engineers with the following credentials: (1) a Bachelor of Science degree in civil,

9    mechanical or electrical engineering; (2) registration as a professional engineer (P.E.)

10   pursuant to the National Council of Engineering Examiners in any state with the ability to

11   obtain a P.E. in Guam within one year; (3) a minimum of four years of engineering

12   experience; and (4) a minimum of four years of experience in water or wastewater

13   facilities design, construction, and operation and maintenance. For the senior engineer

14   positions, an advanced engineering degree may be deemed as the equivalent of one year

15   of professional experience. Any engineering support services contract entered into by

16   GWA to fulfill this requirement shall include the same number of engineers with the

17   same engineering qualifications and professional experience as above. GWA shall

18   require the contract engineers to be located at GWA for the duration of the contract

19   services. GWA shall provide to EPA and Guam EPA a copy of each engineer's

20   professional qualifications and experience within ten (10) days of hiring. If GWA elects

21   to enter into an engineering support services contract, GWA shall provide a copy of the

22   contract, scope of work, and the engineers' professional qualifications and experience for

23   EPA's review prior to finalization of the contract. GWA shall provide a copy of the

24   documents concurrently to Guam EPA.

25   C. Senior Wastewater Operator or GIS/Land Information System Manager: GWA shall

26   increase wastewater operational and technical support through the hiring of either a

27

28   REVISED 10-3-06            6A

Senior Wastewater Operator or a GIS/Land Information System Manager by January 1, 2007. The Senior Wastewater Operator shall have, at a minimum, a Level IV Wastewater Treatment Operators certification with two years of Level IV direct responsible charge experience or a Level III Wastewater Treatment Operators certification with five years of Level III direct responsible charge experience. The GIS/Land Information System Manager shall have, at a minimum, two years of GIS/Land Information System management experience and a BS in Computer Science, GIS, Engineering, or a related field. GWA shall provide EPA and Guam EPA a copy of the Senior Wastewater Operator's or GIS/Land Information System Manager's qualifications and experience with ten (10) days of hiring.

9.    GWA Reorganization:  GWA shall complete a full reorganization according to the following schedule. Within 90 days after the Entry Date, GWA shall submit to EPA and Guam EPA a draft reorganization plan that proposes a new structure for GWA to ensure that GWA is most capable of completing its mission. For each work unit, the draft plan shall provide at a minimum: a description of work functions, the numbers of employees, and a summary of certifications and qualifications needed for each category of employee. Within 30 days after receipt of EPA's comments on the draft plan, GWA shall respond to EPA's comments in accordance with Paragraph 2 and provide a final reorganization plan to EPA and Guam EPA.

[Rest of page deliberately left blank.]

REVISED 10-3-06                          6B

Within 90 days after GWA has prepared a final reorganization plan, GWA shall submit to EPA and Guam EPA a draft report containing position descriptions and minimum job qualifications that meet industry standards and Guam laws for each position in the new organization. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide a final report to EPA and Guam EPA.

Within 90 days after GWA has provided a final reorganization plan, GWA shall also submit to EPA and Guam EPA a draft Staffing Plan Report that includes the following information: (1) an evaluation of current staff resources at GWA and a discussion of where new hires or retraining will be needed to staff the new organization; (2) a timetable for implementation of staffing measures; and (3) procedures for the transferring of staff and staff reductions (and recommended legislation to enable such changes) as necessary. The draft Staffing Plan Report shall require: (1) all positions in the reorganization of GWA shall be filled with an employee qualified at the minimum level required for that position within 180 days after the final Staffing Plan Report has been issued; and (2) when GWA hires a new employee to fill a position, that employee must be properly qualified for the position at the time of hire. EPA will review the draft Staffing Plan Report and may require changes, additions, deletions or modifications it deems necessary to ensure proper operation and maintenance of GWA's POTW and public water systems. Within 30 days after receipt of EPA's comments on the draft report, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Staffing Plan Report to EPA and Guam EPA. GWA shall implement the Staffing Plan Report's measures in accordance with the timetable in the final Staffing Plan Report. If current employees are not certified at the required level, GWA shall notify such employees within ten working days after the final Staffing Plan Report has been issued.

### III. Operations at GWA

10. <u>Water Resources Master Plan</u>: Within 30 days after the Entry Date, GWA shall

REVISED 10-3-06         7

1   prepare a draft scope of work and a draft Request for Proposals ("RFP") for the preparation of a

2   Water Resources Master Plan ("Master Plan") and submit them to EPA for approval. GWA shall

3   provide a copy of the documents concurrently to Guam EPA. EPA will review the draft scope of

4   work and RFP and may require any changes, additions, deletions or modifications it deems

5   necessary. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

6   comments in accordance with Paragraph 2 and shall submit a final scope of work and RFP to

7   EPA and Guam EPA. GWA shall advertise the RFP for the preparation of the Master Plan

8   nationally.

9       Within 90 days after submitting the final RFP to EPA and Guam EPA, GWA shall

10   provide a list of at least five qualified offerors, including the qualifications of each offeror, to

11   EPA and Guam EPA. EPA will provide written notice of the names of any offeror(s) that it

12   disapproves and an authorization to proceed with any of the other offerors. GWA may select any

13   offeror from that list that is not disapproved and may award the contract to that offeror. GWA

14   shall select and retain one of the qualified offerors within 105 days after obtaining EPA's

15   authorization to proceed, shall notify EPA and Guam EPA of the name of the contractor, and

16   shall begin to prepare the Master Plan (the "Commencement Date").

17       GWA shall develop a Master Plan that includes:

18     (1)    A comprehensive analysis, using as a guideline the "10 States Standards" as they

19             apply to wastewater, of wastewater treatment, collection, and conveyance systems,

20             improvement alternatives, and needs for the next twenty years. The Master Plan

21             shall include an infiltration and inflow assessment of GWA's wastewater

22             collection systems sufficient to identify and prioritize problem areas. The Master

23             Plan shall also include an assessment of the following: septic system hookup

24             needs and alternatives, decentralized treatment systems, consolidation with the

25             U.S. military's wastewater systems, biosolids management and re-use, and an

26             analysis of costs and other impacts.

27

28   REVISED 10-3-06             8

(2)     A comprehensive analysis, using as a guideline the Hawaii Water Standards of 2002, of public water system improvement alternatives and needs for the next twenty years that addresses disinfection, system pressure, surface water and groundwater resources, treatment needs (including any drinking water well needing treatment due to a determination that the well uses a groundwater source under the direct influence of surface water), transmission and distribution system improvements, potential consolidation with the U.S. military's systems, and water re-use.

(3)     A comprehensive analysis of the costs and benefits of water conservation on Guam.

(4)     An evaluation of necessary process control system improvements, including a Supervisory Control and Data Acquisition ("SCADA") system, information management systems, telemetry, and other applicable types of automation.

(5)     A financial plan that details how revenue will be generated. The financial plan shall include a user fee system, including fees for services such as sewer connection fees. The user fees shall be based on actual water usage, estimated wastewater generation, and actual costs of services provided. GWA shall coordinate with the Public Utilities Commission ("PUC") to ensure that: (1) GWA complies with the public notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

(6)     A detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and three public water systems, including: (a) an estimated annual budget for each of the next five years for all costs of operating, maintaining, and repairing the POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph

32 below; and (b) a detailed descriptive plan for raising sufficient revenue to meet the projected costs as outlined in the annual budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. Revenues shall be sufficient to cover all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and SDWA, costs related to the infrastructure improvements recommended in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all required Financial Reserves listed in Paragraph 32 below.

The following five tasks shall be completed as part of the Master Plan. Within the designated time for completing each task, GWA shall submit a written draft to EPA for review and approval. GWA shall provide a copy of each draft concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final written product to EPA and Guam EPA. The schedule for these tasks is the following:

(1) Within 180 days after the Commencement Date, GWA shall complete a leak detection study for all three public water systems.

(2) Within 240 days after the Commencement Date, GWA shall complete an estimated water budget that quantifies and describes how and where water is produced and utilized on Guam.

(3) Within 270 days after the Commencement Date, GWA shall locate, map, and develop Geographical Information System ("GIS") layers for all of the following: treatment facilities, wells, water lines greater than or equal to six inches in diameter, collection system, pump stations, and GWA's and Guam EPA's water quality monitoring stations.

REVISED 10-3-06                                    10

(4) Within one year after the Commencement Date, GWA shall perform a hydraulic analysis of the three public water systems and develop a hydraulic model of the systems.

(5) Within 540 days after the Commencement Date, GWA shall locate, map, and develop GIS layers for all of the following (not included in subparagraph (3) above): all other water lines, wastewater laterals, and all septic tanks over the Northern Guam Sole Source Aquifer.

The Master Plan shall be completed according to the following schedule:

(1) By October 31, 2006, GWA shall complete a draft Master Plan and shall provide a copy of it to EPA and Guam EPA. Upon completion, GWA shall issue a press release and publish notice in a local newspaper, indicating that the draft Master Plan is available for public review at convenient locations (such as public libraries on Guam and GWA's website) and announcing the date and location of any public meeting to discuss the Plan. The draft Master Plan shall be made available for public comment for at least 45 days. During the public comment period, GWA shall hold at least one public meeting. GWA shall issue the public notice at least 30 days before the date of the public meeting.

(2) By January 31, 2007, GWA shall complete a final Master Plan and shall address all significant comments raised during the public comment period in its final Master Plan. GWA shall provide the final Master Plan to EPA and Guam EPA and shall perform the required tasks in accordance with the schedule set out in the final Master Plan.

11. Interim Disinfection Program: GWA shall develop an interim disinfection program for its three public water systems to ensure that the water being provided to the public is adequately disinfected by chlorination. In order to ensure optimal chlorination and disinfection,

REVISED 10-3-06                                        11

the interim disinfection program shall require that: (1) the optimal levels of chlorine residual, as measured in parts per million ("ppm") or milligrams per liter, is met at all times at all chlorination points, taking into consideration the contact time (in minutes) of the chlorine with the water in the distribution system prior to reaching the first consumer ("CT value"); and (2) a minimum level of chlorine residual of at least 0.2 ppm is maintained at all points in the drinking water distribution system at all times.

The interim disinfection program shall include a detailed description of the existing chlorination practices including, but not limited to: (1) the locations of all existing chlorination points for each public water system, including chlorination points at the Ugum surface water treatment plant, chlorination points at the wellheads for the groundwater systems, and other distribution system chlorination points; (2) the locations of any proposed immediate additional wellhead and/or distribution system chlorination points; (3) the estimated contact time between the chlorine and water in the distribution system before the water reaches the first consumer (i.e., the closest connection in the distribution system) for each chlorination point; (4) actual chlorine dosing levels (in ppm) at each chlorination point; and (5) actual CT value for each chlorination point (where CT is defined as chlorine residual level in ppm multiplied by the contact time in minutes prior to the first consumer). Based on the information included in subparagraphs (1) through (5), the interim disinfection program shall include recommendations regarding the following: (6) the optimal possible chlorine dosing levels (in ppm) to apply at each individual chlorination point (taking into account the contact time available before the first consumer); and (7) the optimal CT value for all chlorination points. The interim disinfection program shall propose short-term changes to GWA's chlorination practices to improve disinfection that can be accomplished within one year after the Entry Date.

Within 90 days after the Entry Date, GWA shall submit the interim disinfection program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

REVISED 10-3-06                                    12

accordance with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall

implement the program. GWA shall update the interim disinfection program annually and as

needed to reflect the development of other compliance activities and deliverables required by this

Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and

approval, and shall provide a copy to Guam EPA.

12. Public Water Systems' Chlorine Program

A. Interim Chlorine Residual Level Monitoring Program: GWA shall develop an interim

chlorine residual level monitoring program for its three public water systems to ensure

that: (1) optimal chlorine levels are maintained at all chlorination points, taking into

account contact time prior to the first consumer after the chlorination points; and (2) a

minimum chlorine level is maintained throughout the distribution system. The

monitoring program shall contain a detailed description of the following: (1) the

locations and frequency of all chlorine residual monitoring necessary in order to ensure

that the optimal applied chlorine dose (as specified in subparagraph (6) of the interim

disinfection program in Paragraph 11) and optimal CT's (as specified in subparagraph (7)

of the interim disinfection program in Paragraph 11) are maintained at all chlorination

points at all times; and (2) the locations and frequency of chlorine residual monitoring

necessary to ensure that a minimum level of chlorine residual of at least 0.2 ppm is

maintained throughout the distribution system at all times. The proposed monitoring

shall consist of either continuous, online, automated chlorine residual monitoring or grab

samples to be collected and analyzed in the field. The proposed monitoring program shall

ensure that those wells that are at the highest risk of fecal bacteriological contamination

(i.e., those wells with a historical record of fecal coliform or *E. coli* bacteriological

contamination at the well) have the highest level of monitoring. Monitoring for such

wells shall consist of continuous, online chlorine residual monitoring with either

automatic flow shutoff or an alarm system. The automatic flow shutoff or alarm shall be

REVISED 10-3-06                                            13

triggered by detections of chlorine levels lower than the optimal applied chlorine dose (as specified in subparagraph (6) of the interim disinfection program in Paragraph 11). Within 90 days after the Entry Date, GWA shall submit the monitoring program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement the program. GWA shall update the interim chlorine residual level monitoring program annually and as needed to reflect the development of other compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

B. Chlorine Supply: By January 31, 2007, GWA shall ensure that an adequate supply of chlorine is available on island. To satisfy this requirement, a supply of at least 200 chlorine cylinders for backup reserve shall be located on island and available to GWA upon demand. GWA may satisfy this requirement through either contract agreement(s) and/or the acquisition of the chlorine cylinders. By January 31, 2007, GWA shall provide to EPA and Guam EPA a copy of the contract agreement(s) and/or documentation of the acquisition of chlorine cylinders.

C. Upgrade of Groundwater Chlorination System Project: By October 30, 2006, GWA shall submit a revised workplan and schedule for finalizing the design and construction work of the Upgrade of Groundwater Chlorination System Project. (U.S. EPA Grant XP-97931501-2.) The schedule shall include key milestones for reviews, contractor selection, design, bid phase, and construction phase. GWA shall complete the Upgrade of Groundwater Chlorination System Project by April 1, 2007. GWA shall submit the 90% design to EPA for review and comments. GWA shall provide a copy of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,

REVISED 10-3-06                                    13A

1   GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide

2   the final schedule and scope of work to EPA and Guam EPA, and shall perform the

3   required tasks in accordance with the schedule set out in the final scope of work.

4   13.   Leak Detection and Response Program: GWA shall develop a program for

5   identifying and responding to leaks in the three public water systems. Within 180 days after the

6   Entry Date, GWA shall submit the proposed program to EPA for approval. GWA shall provide a

7   copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's

8   comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

9   provide the final program to EPA and Guam EPA, and shall implement the program.

10   14.   Water Meter Improvement Program: GWA shall develop a water meter

11   improvement program to ensure that, by November 30, 2007, each connection to the three public

12   water systems has an accurate and accessible water meter that is read monthly and used for

13   billing. Within 90 days after the Entry Date, GWA shall submit the program to EPA for

14   approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

15   days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

16   with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement

17   the program.

18   15.   Parts Inventory for POTW and Public Water Systems: Within 180 days after the

19   Entry Date, GWA shall develop and maintain a 60-day operation and maintenance parts

20   inventory for its POTW and public water systems that includes any spare parts that may

21   reasonably be needed, and shall provide EPA and Guam EPA with a written list of the parts

22

23

24   [Rest of page deliberately left blank.]

25

26

27

28   REVISED 10-3-06                              14

inventory. The inventory need not include any parts for which GWA has a written guarantee of their availability within four days of a request. GWA shall provide a written report to EPA and Guam EPA within 180 days after the Entry Date on the adequacy of its parts inventory, including written guarantees of availability. On or before January 28 and July 28 of each year, GWA shall provide a semiannual written report to EPA and Guam EPA regarding the adequacy of its parts inventory.

16. <u>Routine Maintenance and Repairs for POTW and Public Water Systems</u>: Within 180 days after the Entry Date, GWA shall: (1) provide EPA and Guam EPA with a written report describing the minimum tools and equipment needed for each facility and maintenance area in its POTW or three public water systems to handle any routine maintenance or repair work; and (2) ensure that each facility and maintenance area in its POTW or three public water systems has the necessary tools and equipment. At a minimum, GWA shall ensure that the following systems are included in the report and have the necessary tools and equipment: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems.

17. <u>Standby Generators</u>: GWA shall ensure that working, appropriately sized, standby generators are available for all wastewater pump stations, treatment plants, and wells that are critical to the three public water systems. Within 90 days after the Entry Date, GWA shall submit a list to EPA for approval, indicating the size of the standby generator for each pump station, treatment plant or well and the schedule of compliance. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2 and shall provide the final list to EPA and Guam EPA. By November 30, 2006, GWA shall supply standby generators for all critical wells, wastewater pump stations, and treatment plants.

18. <u>Underground Storage Tanks</u>: GWA shall prepare an inventory of its underground

storage tanks, indicating which tanks are no longer in use. For any tank that is no longer in use, GWA shall perform the following temporary closure tasks: (1) empty all materials from the tank to within one inch of the tank bottom; (2) leave vent lines open; and (3) secure all lines, pumps, manways, and ancillary equipment with a lock. Within 90 days after the Entry Date, GWA shall provide the inventory to EPA for review and approval, stating the date that GWA has completed the temporary closure tasks for any tanks no longer in use. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final inventory to EPA and Guam EPA, and shall perform any additional required tasks in accordance with the schedule set out in the final inventory.

19. <u>Emergency Response Plan</u>: GWA shall develop an emergency response plan that provides operating procedures for all employees during and following any disasters, including, but not limited to, typhoons and earthquakes. Within 540 days after the Entry Date, GWA shall submit the plan to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final plan to EPA and Guam EPA, and shall implement the plan.

20. <u>Preventive Maintenance Program</u>: GWA shall develop a preventive maintenance program for the POTW and public water systems that details required maintenance, schedules, standard procedures, tracking, and reporting. At a minimum, GWA shall develop preventive maintenance programs for the following systems: sewage treatment plants, wastewater collection systems, wastewater conveyance systems (including the sewage pump stations), water treatment plant, water distribution systems, drinking water wells, and chlorination systems. Within one year after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2,

REVISED 10-3-06                                16

1 shall provide the final program to EPA and Guam EPA, and shall implement the program. GWA

2 shall update the program annually and as needed to reflect the development of other compliance

3 activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide

4 its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

5      21.  <u>Operations and Maintenance Manuals</u>: GWA shall develop a set of

6 comprehensive Operations and Maintenance Manuals for its POTW and public water systems.

7 At a minimum, GWA shall develop Operations and Maintenance Manuals for the following

8 systems: sewage treatment plants, wastewater collection systems, wastewater conveyance

9 systems (including the sewage pump stations), water treatment plant, water distribution systems,

10 drinking water wells, and chlorination systems. Within 180 days after the Entry Date, GWA

11 shall submit to EPA a schedule for completing the manuals and submitting them to EPA for

12 approval. GWA shall provide a copy of the document concurrently to Guam EPA. All manuals

13 shall be completed and submitted to EPA and Guam EPA within 2 years after the Entry Date.

14 The manuals shall include: (1) information on all relevant process design assumptions such as

15 design flows, pump capacities, detention times, surface loadings, oxygen transfer requirements,

16 disinfection requirements, water transmission requirements, simplified schematic diagrams of

17 pipelines and control systems, and detailed diagrams for more complicated components; (2) unit

18 process information, including control measures and monitoring procedures needed to achieve

19 maximum efficiency and reliability and a clear explanation of process functions of various

20 components with simplified language and references to appropriate technical manuals; (3) start-

21 up and shutdown procedures; (4) maintenance schedules; (5) laboratory test procedures,

22 including the necessary quality assurance and reporting requirements; (6) safety procedures;

23 (7) organizational structure, job descriptions, and duties; (8) administrative procedures for

24 purchase order preparation approvals and budget preparation; and (9) an operating plan for

25 emergencies. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

26 comments in accordance with Paragraph 2, shall provide a copy of the final manuals to EPA and

27

28 REVISED 10-3-06        17

1 Guam EPA, shall distribute the manuals to the appropriate employees, and shall require use of

2 the manuals as part of its standard operating procedures for its POTW and public water systems.

3 GWA shall update the manuals as needed to reflect the development of other compliance

4 activities and deliverables required by this Stipulated Order for Preliminary Relief, shall provide

5 its updates to EPA for its review and approval, and shall provide a copy to Guam EPA.

6       22.   GWA's Authority:  In order to function properly and efficiently as an independent

7 agency, GWA needs to have the ability to independently: administer financial accounts, make

8 personnel changes, and procure equipment and services (including both engineering services and

9 the direct procurement of services or supplies from off-island companies). Within 30 days after

10 the Entry Date, Defendants shall provide a report to EPA on any legal and administrative actions

11 necessary to allow GWA to operate independently, and shall recommend a course of action,

12 including proposed legislation or administrative measures, to deal with these issues. GWA shall

13 provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of

14 EPA's comments on the report, Defendants shall respond to EPA's comments in accordance with

15 Paragraph 2 and shall take action to address these issues, including submitting proposed

16 legislation to the Guam Legislature and/or implementing required administrative measures.

17       23.   Standard Operating Procedures:  GWA shall develop: (1) a set of standard

18 operating procedures for the following processes: architectural and engineering services

19 procurement, construction services procurement, and tools and equipment inventory and

20 controls; and (2) procedures for complying with federal and local laws and monitoring

21 compliance. The standard operating procedures shall require GWA to comply with applicable

22 Guam procurement statutes and other applicable local laws. Within 180 days after the Entry

23 Date, GWA shall submit the draft procedures to EPA for review and approval. GWA shall

24 provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of

25 EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

26 provide the final procedures to EPA and Guam EPA, and shall implement the procedures.

27

28 REVISED 10-3-06                 18

1    24.    Vulnerability Assessment: Within 180 days after the Entry Date, GWA shall

2    submit a completed vulnerability assessment along with a certification of its completion, as

3    required by Section 1433(a) of the SDWA, to the EPA Administrator in Washington, D.C.

4    GWA shall follow the mailing protocol described in EPA's "Instructions to Assist Community

5    Water Systems in complying with the Public Health Security and Bioterrorism Preparedness and

6    Response Act of 2002," which is located on the EPA website as follows:

7    http://www.epa.gov/safewater/security/util-inst.pdf.

8    The completed vulnerability assessment should not be sent to EPA Region 9 in San

9    Francisco.    Concurrently with the submission of the vulnerability assessment to the EPA

10   Administrator, GWA shall notify EPA pursuant to Paragraph 50 that the requirements of SDWA

11   Section 1433(a) have been met and that GWA is in compliance with Section 1433(a).    Within

12   180 days after the submission of the vulnerability assessment, GWA shall complete an

13   emergency response plan and certify to the EPA Administrator that it has completed the plan in

14   accordance with the requirements of SDWA Section 1433(b) and ©).    Within 10 working days

15   after completing the plan, GWA shall also notify EPA pursuant to Paragraph 50 that it has

16   completed the emergency response plan.

17   25.    Trade Organizations: Within 90 days after the Entry Date, GWA shall join the

18   American Waterworks Association and the Water Environment Federation.

19   **IV.    Financial Administration at GWA**

20   26.    Financial Standard Operating Procedures: GWA shall develop a set of standard

21   operating procedures for the following processes: fiscal management and controls, budgeting,

22   accounting, and financial planning.    Within one year after the Entry Date, GWA shall submit a

23   copy of the procedures to EPA for review and approval.    Within 30 days after receipt of EPA's

24   comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

25   provide the final procedures to EPA, and shall implement the procedures.

26   27.    Annual Budget: GWA shall submit each approved annual budget to EPA.    The

27

28   REVISED 10-3-06                              19

1    annual budget shall ensure adequate financing of the operation and maintenance of GWA's

2    POTW and three public water systems. The budget shall include, but not be limited to, the

3    following: (1) a budget detailing the total projected costs for the coming year of operating,

4    maintaining, and repairing the POTW and the three public water systems, including staffing,

5    energy, materials and supplies, repairs, replacements, maintaining Financial Reserves required in

6    Paragraph 32 below, and all other expenses; (2) a detailed schedule of user fees, taxes,

7    assessments or other sources of revenue sufficient to meet the projected costs as set forth in the

8    budget for the coming year, including increases or adjustments required to meet that budget; and

9    (3) a financial management plan insuring that all user fees, taxes, assessments or other sources of

10    revenue collected for the POTW and three public water systems are in fact applied to their

11    operation, maintenance, repair, and replacement.

12        28.    <u>Interim Financial Plan</u>: Within 120 days after the Entry Date, GWA shall develop

13    and submit to EPA and the PUC an interim financial plan that details how revenue will be

14    generated for the interim period before the final financial plan in the Master Plan is complete,

15    approved, and implemented. Revenues shall be sufficient to cover the cost of compliance

16    activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any

17    other anticipated expenses during the period before the final financial plan is approved, including

18    all existing debt and expected debt service, and the buildup of the Financial Reserves required in

19    Paragraph 32 below. The interim financial plan shall include a restructured user fee system.

20    GWA shall coordinate with the PUC to ensure that: (1) GWA complies with the public

21    notification requirements for proposed rate increases in 12 GCA §§ 12001.1, 12001.2; and

22    (2) GWA's filings for rate increases are made in accordance with applicable PUC regulations.

23        29.    <u>Approval of Interim Financial Plan</u>: Within 90 days after GWA submits an

24    interim financial plan, the PUC shall consider and approve an interim financial plan that

25    generates enough revenue to cover the cost of compliance activities and deliverables required by

26    this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses during the

27

28    REVISED 10-3-06           20

period before the final financial plan is approved, including all existing debt and expected debt service, and the buildup of the Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA the interim financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

30. <u>Approval of Final Financial Plan</u>: Within 120 days after GWA submits a final financial plan in the Master Plan, the PUC shall consider and approve a final financial plan that generates enough revenue to cover the cost of all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief, as well as any other anticipated expenses, including any measures necessary to ensure compliance with the CWA and the SDWA, costs related to the infrastructure improvements identified in the Master Plan, all related operations and maintenance costs, and corresponding utility expenses, including maintenance of all Financial Reserves required in Paragraph 32 below. GWA shall submit to EPA a copy of the final financial plan approved by the PUC within ten working days after approval, and shall implement the plan upon approval by the PUC.

31. <u>Five-Year Plan</u>: On an annual basis, GWA shall submit to EPA a detailed five-year plan for financing the continued operation, maintenance, and repair of the POTW and the three public water systems. Each five-year plan shall include: (1) estimated annual budgets for each of the next five years for all costs of operating, maintaining, and repairing GWA's POTW and three public water systems, including the establishment and maintenance of the Financial Reserves listed in Paragraph 32 below; and (2) a detailed descriptive plan for raising sufficient revenue to meet the projected cost as outlined in the budgets, including adjustments or increases in user fees, taxes, assessments or other sources of revenue. GWA shall submit its first five-year plan to EPA within 2 years after the Entry Date. EPA will review each five-year plan and may request additions, deletions, changes or modifications as it deems necessary to insure adequate funding of the operation, maintenance, and repair of GWA's POTW and three public water systems for the five-year period. Within 30 days after receipt of EPA's comments, GWA shall

REVISED 10-3-06                                      21

respond to EPA's comments in accordance with Paragraph 2 into a final five-year plan, shall

provide the final plan to EPA, and shall implement the measures of the plan.

32. <u>Financial Reserves</u>: Within 180 days after the Entry Date, GWA shall begin developing the following Financial Reserves:

(1) <u>Debt Service Reserve</u> - This reserve shall be established and maintained in accordance with bond covenants and debt service covenants. Within 30 days after issuing a bond or securing a loan, GWA shall submit to EPA information regarding the amount of this reserve.

(2) <u>Emergency Operations, Maintenance, Renovation, and Replacement Reserve</u> - This reserve shall be equal to three months of budgeted expenses for operations, maintenance, renovation, and replacement of GWA's POTW and three public water systems. Within 90 days after the Entry Date, GWA shall submit to EPA for approval the proposed amount of this reserve. GWA shall make monthly deposits to the reserve to ensure that the balance matches current needs based on the amounts budgeted for each succeeding fiscal year. The expense base used to calculate this reserve shall include operating and maintenance expenses, including the depreciation expense, plus any capital projects or purchases funded with GWA revenues. The reserve shall be used only to cover operations and maintenance expenses not in the original budget. This reserve can be replaced by the availability of an equivalent emergency line of credit.

The above reserves shall be fully developed within 2 years after the Entry Date and shall be used only for the stated purposes, and only in the event that no other revenue is available to meet the commitments. If GWA draws down on any reserve at any time, it shall rebuild that reserve to the required level within 180 days. On or before January 28 of each year, GWA shall submit an annual report to EPA regarding the development and maintenance of the Financial Reserves required by this Paragraph.

33. <u>Late Payments</u>: GWA shall develop a program that:

REVISED 10-3-06                                     22

1    (1) clearly defines how late payments will be addressed and when service will be

2    discontinued. GWA shall consider measures such as discontinuing service for any

3    customer that is more than 60 days behind in payments.

4    (2) provides for a procedure to collect delinquent rates or charges, and to enforce liens, if

5    any, for non-payment of rates or charges, in a practical and timely manner.

6 Within 90 days after the Entry Date, GWA shall submit the program to EPA for approval.

7 Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in

8 accordance with Paragraph 2, shall provide the final program to EPA, and shall implement the

9 program.

10    34.    Sewer Hook-up Revolving Fund: GWA shall develop a program instituting a

11 sewer hook-up revolving fund for residents currently required to connect to the wastewater

12 collection system. The program shall be designed to allow residents to spread hook-up costs

13 (including utility fees) over two or more years at low or no interest. GWA shall use, at a

14 minimum, funds provided by the Guam EPA Water Planning Committee. Within 540 days after

15 the Entry Date, GWA shall submit the program to EPA for approval. Within 30 days after

16 receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

17 Paragraph 2, shall provide the final program to EPA, and shall implement the program.

18 **V.    Construction and Rehabilitation Projects at GWA**

19    35.    Agana Ocean Outfall: GWA shall develop: (1) a schedule for submitting pre-

20 final (90 percent) and final (100 percent) ocean outfall extension designs and detailed

21 construction schedules for the Agana Sewage Treatment Plant ("STP"); and (2) a scope of work

22 and schedule for initiating and completing a baseline monitoring survey or surveys in the area of

23 the proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application

24 and to establish a basis for the Agana NPDES monitoring program. The schedule shall require

25 GWA to complete construction of the outfall by January 1, 2008. The baseline monitoring

26 survey or surveys shall: (1) include water quality data, quantitative information on the benthic

27

28 REVISED 10-3-06                      23

1  fauna, and sediment quality data in the area of the proposed discharge; and (2) be performed
2  similarly to the initial baseline monitoring survey for the proposed ocean outfall
3  extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and
4  approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy
5  of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,
6  GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final
7  scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in
8  accordance with the schedules set out in the final scope of work.

9      36.  <u>Northern District Ocean Outfall</u>:  GWA shall develop:  (1) a schedule for
10  submitting pre-final (90 percent) and final (100 percent) ocean outfall extension designs and
11  detailed construction schedules for the Northern District STP; and (2) a scope of work and
12  schedule for initiating and completing a baseline monitoring survey or surveys in the area of the
13  proposed ocean outfall extension to support GWA's revised CWA Section 301(h) application
14  and to establish a basis for the Northern District NPDES monitoring program. The schedule
15  shall require GWA to complete construction of the outfall by January 1, 2009. The baseline
16  monitoring survey or surveys shall:  (1) include water quality data, quantitative information on
17  the benthic fauna, and sediment quality data in the area of the proposed discharge; and (2) shall
18  be performed similarly to the initial baseline monitoring survey for the proposed ocean outfall
19  extension. Within 60 days after the Entry Date, GWA shall submit to EPA for review and
20  approval the scope of work and schedules required by this Paragraph. GWA shall provide a copy
21  of the documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments,
22  GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final
23  scope of work and schedules to EPA and Guam EPA, and shall perform the required tasks in
24  accordance with the schedules set out in the final scope of work.

25      37.  <u>Assessment of Chaot Wastewater Pump Station and Sewer Collection and</u>
26  <u>Conveyance System</u>:  GWA shall retain a qualified engineering firm to perform an engineering
27
28  REVISED 10-3-06                              24

1 assessment of the Chaot/Marine Drive sewer collection and conveyance system (the "Chaot

2 engineering assessment"). The scope of the Chaot engineering assessment shall include an area

3 sufficiently upstream of the old Chaot sewer pump station to fully assess the capacity and piping

4 of the system to prevent raw sewage overflows at the Chaot sewer pump station and downstream

5 along Routes 4 and 1 to the Agana Main sewer pump station. It shall also include an operational

6 re-evaluation of the new Chaot sewer pump station. The Chaot engineering assessment shall

7 identify any capacity, design, inflow/infiltration, and operational deficiencies, and include the

8 development of a corrective action plan and schedule for implementation. The corrective action

9 plan and schedule shall include, but not be limited to, prioritization of projects, as may be

10 necessary, and time frames for developing a scope of work, completing the design, and

11 commencing and completing construction of all deficiencies identified in the corrective action

12 plan. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval

13 the Chaot engineering assessment. GWA shall provide a copy of the document concurrently to

14 Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

15 comments in accordance with Paragraph 2, shall provide the final Chaot engineering assessment

16 (including the final corrective action plan) to EPA and Guam EPA, and shall perform the

17 required tasks in accordance with the schedule set out in the final corrective action plan. Within

18 180 days after the final engineering assessment is completed, GWA shall submit to EPA for

19 review and approval the Chaot engineering design. GWA shall provide a copy of the document

20 concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall

21 respond to EPA's comments in accordance with Paragraph 2 and shall provide the final Chaot

22 engineering design to EPA and Guam EPA. Construction shall be completed within 540 days

23 after the Chaot engineering design is approved by EPA.

24        38.    Water Transmission Lines and Reservoirs

25       A. Water Transmission Line Construction Plan: GWA shall develop a Water

26       Transmission Line Construction ("WTLC") Plan to ensure its ability to adequately treat

27

28 REVISED 10-3-06            25

its well sources (including disinfection). The WTLC Plan shall include an assessment of the existing well configuration, including a discussion of CT values currently required and currently achieved under the existing configuration in accordance with the requirements of Paragraph 11 (Interim Disinfection Program). Based on the assessment of the current well configuration, GWA shall make recommendations regarding the need for dedicated transmission lines in its three public water systems, as well as recommendations concerning future treatment, including chlorination/disinfection configurations, for the three public water systems. The WTLC Plan shall prioritize the construction of transmission lines and any necessary chlorination/disinfection configurations to ensure adequate treatment based on the following information about the different parts of the public water systems: (1) the current level of disinfection achieved (the CT values), and (2) the history of bacteriological contamination of the sources, such as the wellfield history. The WTLC Plan shall include a schedule for developing and finalizing a scope of work and design, and commencing and completing construction and upgrades to the water transmission lines and chlorination systems. Within 180 days after the Entry Date, GWA shall submit to EPA for review and approval the WTLC Plan. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final WTLC Plan to EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set out in the final WTLC Plan.

B. <u>Sinajana Water Transmission Line Project</u>: By September 30, 2006, GWA shall submit a revised workplan and schedule for finalizing the design and construction work of the Sinajana Water Transmission Line Project. (U.S. EPA Grant FS-97911902-2.) The schedule shall include key milestones for reviews, contractor selection, design, bid phase, and construction phase. GWA shall complete the Sinajana Water Transmission

REVISED 10-3-06                                          26

1   Line Project by June 30, 2008. GWA shall submit the 90% design per the described

2   project scope of work dated June 2, 2005 (Phases I, II and III) to EPA for review and

3   comments. GWA shall provide a copy of the documents concurrently to Guam EPA.

4   Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

5   comments in accordance with Paragraph 2, shall provide the final schedule and scope of

6   work to EPA and Guam EPA, and shall perform the required tasks in accordance with the

7   schedule set out in the final scope of work.

8   C.  <u>Water Reservoirs Condition Assessment</u>:  By October 31, 2006, GWA shall submit a

9   workplan and a schedule to complete a condition assessment to determine the structural

10  stability and soundness of all steel tank water reservoirs.  The condition assessment shall

11  include an internal and external structural inspection of each reservoir, and shall include

12  recommendations regarding the necessary course of action to monitor, rehabilitate, or

13  replace each reservoir.  The condition assessment shall be performed by a qualified

14  structural engineer in accordance with industry standards established by the American

15  Water Works Association and the Steel Tank Institute.  GWA shall provide to EPA and

16  Guam EPA a copy of the workplan and schedule for review and comments.  Within 30

17  days after receipt of EPA's comments, GWA shall respond to EPA's comments in

18  accordance with Paragraph 2.  After EPA approves a workplan and schedule, GWA shall

19  perform the required tasks in accordance with the schedule set out in the final workplan.

20

21

22

23  [Rest of page deliberately left blank]

24

25

26

27

28  REVISED 10-3-06                                    26A

39. <u>Northern District STP Renovation</u>: GWA shall implement corrective actions to restore primary treatment operational capacity to the Northern District STP. The corrective actions shall include, but not be limited to, the following: primary clarifiers, preaeration and aerated grit removal systems, and installation of primary sludge pumps and solids handling (as necessary). GWA shall complete the corrective actions to restore primary treatment operational capacity by March 2, 2007. After completion of the corrective actions to restore primary treatment, GWA shall conduct an operational performance evaluation by May 4, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. By May 4, 2007, GWA shall submit to EPA and Guam EPA for review and comments the operational performance evaluation with a determination of the need for advanced primary treatment. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2. If advanced primary treatment is needed, the submitted operational performance evaluation shall include a schedule for the design and installation of the advanced primary treatment system. GWA shall perform the required tasks in accordance with the schedule set out in the operational performance evaluation.

40. <u>Agana Main Sewage Pump Station</u>: GWA shall develop a schedule to stop overflows of raw sewage from the Agana Main Sewage Pump Station. The schedule shall include time frames for developing and completing a scope of work, design, and construction. The schedule shall require construction to be completed within 300 days after the Entry Date. Within 60 days after the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the required tasks in accordance with the final schedule.

41. <u>Ugum Surface Water Treatment Plant</u>: GWA shall develop a scope of work and schedule for the rehabilitation, renovation and/or design and construction of new (alternative)

REVISED 10-3-06                    27

1    treatment facilities of the Ugum Surface Water Treatment Plant to bring the plant into

2    compliance with SDWA requirements and performance standards. The scope of work shall

3    detail all rehabilitation, renovation, and/or recommended design and construction of new

4    (alternative) treatment work to be performed based on the findings of the CPE of the Ugum

5    Surface Water Treatment Plant prepared for GWA by Belanger and Associates and International

6    Studies & Training Institute, Inc., in May 2001. The scope of work may include other

7    documentation or studies needed to determine the extent of the rehabilitation and renovation

8    needs of the existing plant, and/or may include alternative water treatment feasibility or

9    preliminary engineering studies deemed by GWA to be necessary to determine if other

10   alternative treatment design and construction projects may be preferable and/or feasible to bring

11   the plant into full compliance with all SDWA requirements. The schedule shall include, but not

12   be limited to, time frames for developing and completing all activities contained in the scope of

13   work, any additional studies needed to determine the preferred course of action

14   (rehabilitation/renovation or alternative treatment design and construction), design, and

15   construction. The schedule shall require construction to be completed by January 5, 2008.

16   Within 90 days after the Entry Date, GWA shall submit to EPA for review and approval the

17   scope of work and schedule required by this Paragraph. GWA shall provide a copy of the

18   documents concurrently to Guam EPA. Within 30 days after receipt of EPA's comments, GWA

19   shall respond to EPA's comments in accordance with Paragraph 2, shall provide the final scope

20   of work and schedule to EPA and Guam EPA, and shall perform the required tasks in accordance

21   with the schedule set out in the final scope of work.

22       42.  Agana STP Renovation: GWA shall implement corrective actions to restore

23   primary treatment operational capacity to the Agana STP and shall renovate the grit

24   removal/screening system and wet well at the Agana Main Sewer Pump Station ("SPS"). GWA

25   shall complete the corrective actions to restore the primary treatment operational capacity of the

26   Agana STP by March 2, 2007, and shall complete renovations at the Agana Main SPS by June 1,

27

28   REVISED 10-3-06                              28

1  2007. After completion of the corrective actions to restore full primary treatment, GWA shall

2  conduct an operational performance evaluation by April 30, 2007, to determine whether

3  advanced primary treatment is needed to comply with NPDES permit effluent limitations. GWA

4  shall submit to EPA and Guam EPA for review and comments the operational performance

5  evaluation with a determination of the need for advanced primary treatment. Within 30 days

6  after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance with

7  Paragraph 2. If advanced primary treatment is needed, the submitted operational performance

8  evaluation shall include a schedule for the design and installation of the advanced primary

9  treatment system. GWA shall perform the required tasks in accordance with the schedule set out

10  in the operational performance evaluation.

11      43.    <u>Agat, Baza Gardens, and Umatac-Merizo STPs Renovations and/or Expansions</u>:

12  GWA shall develop a schedule for the performance of CPEs of the Agat, Baza Gardens, and

13  Umatac-Merizo STPs to identify performance-limiting factors and recommended improvements

14  needed to bring each of these STPs into compliance with their respective NPDES permit

15  requirements. The CPEs shall be performed by a qualified engineering firm experienced in

16  performing a CPE for wastewater treatment facilities. Each CPE shall be performed in

17  accordance with EPA guidelines for performing a CPE as described in the following

18  publications: *Handbook: Optimizing Water Treatment Plant Performance Using the Composite*

19  *Correction Program (CCP)* (EPA/625/6-91/027, August 1998); and *Handbook: Improving*

20  *POTW Performance Using the Composite Correction Program Approach* (EPA-625/6-84-008,

21  October 1984), or a later publication if available. The schedule shall include time frames for the

22  following: (1) developing and completing a scope of work, initiating and completing the CPEs,

23  and submitting draft CPEs for the three STPs within one year after the Entry Date; and

24  (2) completion of the final CPEs for the three STPs by September 5, 2004. Within 90 days after

25  the Entry Date, GWA shall submit to EPA for review and approval the schedule required by this

26  Paragraph. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

27

28  REVISED 10-3-06                                           29

1　days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

2　with Paragraph 2, shall provide the final schedule to EPA and Guam EPA, and shall perform the

3　required tasks in accordance with the final schedule.

4　　　　44.　Santa Rita Spring Booster Pump Station Rehabilitation:  GWA shall develop:

5　(1) a schedule for commencing and completing the design and construction work for the Santa

6　Rita Spring Booster Pump Station ("BPS") rehabilitation; and (2) a revised scope of work for the

7　Santa Rita Spring BPS rehabilitation.  The schedule shall require GWA to complete construction

8　by July 1, 2007.  The scope of work shall include the performance of a hydraulic analysis, by the

9　selected engineering design firm, of the Santa Rita Spring flow volume to ensure that all critical

10　components such as pumps, motors, piping, etc. are sized appropriately.  Within 210 days after

11　the Entry Date, GWA shall submit to EPA for review and approval the schedule and scope of

12　work required by this Paragraph.  GWA shall provide a copy of the documents concurrently to

13　Guam EPA.  Within 30 days after receipt of EPA's comments, GWA shall respond to EPA's

14　comments in accordance with Paragraph 2, shall provide the final schedule and scope of work to

15　EPA and Guam EPA, and shall perform the required tasks in accordance with the schedule set

16　out in the final scope of work.

17　　　　45.　Rehabilitation/Replacement of Drinking Water Wells:  GWA shall develop a

18　Drinking Water Wells Rehabilitation/Replacement ("DWWR") Plan for all of its drinking water

19　wells.  The DWWR Plan shall include: (1) a detailed assessment of all of GWA's wells to

20　determine which wells require either rehabilitation or replacement; (2) criteria for prioritizing the

21　rehabilitation or replacement of wells, which will identify the most critical wells, taking into

22　consideration factors such as well capacity, operating records, any historical record of

23　bacteriological contamination at a well, and the presence or imminent threat of bacteriological

24　contamination and other contamination; and (3) time frames for developing and finalizing a

25　scope of work and design, as well as for commencing and completing rehabilitation or

26　replacement of the wells.  GWA shall schedule all required work in two phases.  The first phase

27

28　REVISED 10-3-06　　　　　　　　30

1   of work shall focus on the most critical wells identified in the DWWR Plan and shall require

2   rehabilitation and/or replacement of those critical wells within 2 years after the Entry Date. The

3   second phase of work shall include all other wells identified in the DWWR Plan and shall require

4   rehabilitation and/or replacement of those wells within five years after the Entry Date. Within

5   120 days after the Entry Date, GWA shall submit the DWWR Plan to EPA for review and

6   approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

7   days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

8   with Paragraph 2, shall provide the final DWWR Plan to EPA and Guam EPA, and shall perform

9   the required tasks in accordance with the schedule set out in the final DWWR Plan.

10 **VI.   Training at GWA**

11      46.   Operator Training: GWA shall develop an operator training program that

12   provides all POTW and public water system operators with information about the proper

13   operation and maintenance of the treatment, disinfection, and conveyance systems. Within 180

14   days after the Entry Date, GWA shall submit the program to EPA for approval. GWA shall

15   provide a copy of the document concurrently to Guam EPA. Within 30 days after receipt of

16   EPA's comments, GWA shall respond to EPA's comments in accordance with Paragraph 2, shall

17   provide the final program to EPA and Guam EPA, and shall implement the operator training

18   program.

19      47.   Other Training: GWA shall develop an ongoing training program for appropriate

20   staff in at least the following areas: utility management, financial administration, and planning.

21   GWA shall also offer the CCU training on risk mitigation and other appropriate and available

22   Board Trainings. Within one year after the Entry Date, GWA shall submit the program to EPA

23   for approval. GWA shall provide a copy of the document concurrently to Guam EPA. Within 30

24   days after receipt of EPA's comments, GWA shall respond to EPA's comments in accordance

25   with Paragraph 2, shall provide the final program to EPA and Guam EPA, and shall implement

26   the training program.

27

28   REVISED 10-3-06         31

**VII.** **Reporting Requirements and Notice Provisions**

48.     Notice of Noncompliance or Delay: If GWA becomes aware that it will not meet, or it is not likely to meet, any completion date for any compliance activity or deliverable required by this Stipulated Order for Preliminary Relief, or that it is not in compliance with a requirement of this Stipulated Order for Preliminary Relief, GWA shall submit written notification to the United States and EPA within one week of when GWA's General Manager becomes aware of such expected delay or noncompliance. The notice shall contain the following information: a description of the noncompliance or the expected delay, the reason for the noncompliance or the expected delay, an estimate of how much additional time is needed to complete the affected compliance activity or deliverable or to come into compliance, and a statement describing all steps taken to minimize the noncompliance or delay.

49.     Compliance Progress Reports: GWA shall submit quarterly compliance progress reports to EPA and Guam EPA and make them available to the general public. The first quarterly progress report shall include a compliance schedule for all compliance activities and deliverables required by this Stipulated Order for Preliminary Relief. Quarterly compliance progress reports shall include, but not be limited to, the following: GWA's progress toward completing compliance activities and deliverables required by this Stipulated Order for Preliminary Relief; reporting of compliance and/or noncompliance with schedules established for specific compliance activities and deliverables; explanations of noncompliance and actions taken or to be taken to address noncompliance; and a brief discussion of the status of efforts toward meeting future compliance schedule activities and deliverables required by this Stipulated Order for Preliminary Relief. When the long-term financial plan is approved by the PUC, GWA shall include an updated compliance schedule in the next quarterly compliance progress report that includes all anticipated construction activities and related construction schedules. The quarterly compliance progress report shall be due on or before January 28, April 28, July 28, and October 28, and shall cover activities in the preceding calendar quarter. The first quarterly compliance

REVISED 10-3-06                    32

progress report shall be due on the 28th calendar day following the first full quarter after the Entry Date.

50.     Except as specified otherwise, when written notification to or communication with GWA, the Government of Guam, EPA, or the United States is required by the terms of this Stipulated Order for Preliminary Relief, it shall be sent via express mail or similar service with a return receipt requested, or, in the alternative, by both fax and e-mail, and addressed as follows:

GWA:
> General Manager
> Guam Waterworks Authority
> P.O. Box 3010
> Hagatna, Guam 96932
> Phone: (671) 647-2600
> Fax: (671) 646-2335
> e-mail: gmgwa@ite.net

Government of Guam:
> Attorney General of Guam
> Guam Judicial Center, Suite 2-200E
> 120 West O'Brien Drive
> Hagatna, Guam 96910
> Fax: (671) 472-2493
> e-mail: law@mail.justice.gov.gu

EPA:
> Manager, Pacific Islands Office (CMD-6)
> U.S. Environmental Protection Agency, Region 9
> 75 Hawthorne Street
> San Francisco, CA 94105
> Fax: (415) 947-3560
> e-mail: machol.ben@epa.gov

United States:
> United States Attorney
> District of Guam
> Sirena Plaza
> 108 Hernan Cortez Ave., Suite 500
> Hagatna, Guam 96910
> Fax: (671) 472-7215
> e-mail: mikel.schwab@usdoj.gov

> Section Chief
> Environmental Enforcement Section
> D.J. Ref 90-5-1-1-07942 (Mullaney)
> U.S. Department of Justice

REVISED 10-3-06                          33

301 Howard Street, Suite 1050
San Francisco, CA 94105
Fax: (415) 744-6476
e-mail: robert.mullaney@usdoj.gov

51.     All notices and submissions to EPA shall be signed and affirmed by a
responsible official of GWA or the Government of Guam using the following certification
statement:

> I certify under penalty of law that I have examined and am familiar with the information
> submitted in this document and all attachments and that this document and its
> attachments were prepared either by me personally or under my direction or supervision
> in a manner designed to ensure that qualified and knowledgeable personnel properly
> gathered and presented the information contained therein. I further certify, based on my
> personal knowledge or on my inquiry of those individuals immediately responsible for
> obtaining the information, that the information is true, accurate, and complete. I am
> aware that there are significant penalties for submitting false information, including the
> possibility of fines and imprisonment for knowing and willful submission of a materially
> false statement.

## VIII.  EPA Access

52.     Any authorized representative of EPA, upon presentation of proper identification,
shall have a right of entry to GWA's POTW and three public water systems at any reasonable
time for the purpose of monitoring compliance with the provisions of this Stipulated Order for
Preliminary Relief, including, but not limited to, inspecting equipment, inspecting and copying
all records maintained by GWA, and testing and observing all discharges and drinking water.
EPA's rights of inspection and entry under this Paragraph are in addition to, and in no way limit,
EPA's rights of inspection and entry under the CWA, SDWA, or any other law.

## IX.   Stipulated Penalties

53.     Stipulated Penalties:

REVISED 10-3-06                          34

a. Defendants shall pay stipulated penalties for failure to meet deadlines specified in this Stipulated Order for Preliminary Relief as specified below:

    i. For failure to meet the deadlines specified in Paragraphs 1, 13, 18, 19, 24, 25, 26, 33, 34, 42, 43, 44, 45, and 47:

    - $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

    ii. For failure to meet the deadlines specified in Paragraphs 3, 4, 5, 6, 7, 14, 16, 17, 22, 23, 32, 38, 39, 40, and 46:

    - $500 per day per violation for the first 30 days, $1,000 per day per violation for the following 30 days, and $2,000 per day per violation for each day thereafter.

    iii. For failure to meet the deadlines specified in Paragraphs 8, 9, 10, 11, 12, 15, 20, 21, 27, 28, 29, 30, 31, 35, 36, 37, and 41:

    - $1,000 per day per violation for the first 30 days, $2,000 per day per violation for the following 30 days, and $5,000 per day per violation for each day thereafter.

b. Defendants shall pay stipulated penalties for failure to meet any other requirements of this Stipulated Order for Preliminary Relief as follows:

    - $250 per day per violation for the first 30 days, $500 per day per violation for the following 30 days, and $1,000 per day per violation for each day thereafter.

54. Stipulated penalties shall begin to accrue on the day after performance is due and shall continue to accrue through the final date of completion even if no notice of the violation is sent to Defendants. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Stipulated Order for Preliminary Relief.

REVISED 10-3-06         35

55.     Any stipulated penalty accruing pursuant to this Stipulated Order for Preliminary Relief shall be payable upon demand and due not later than 30 days after Defendants' receipt of EPA's written demand.  Defendants shall pay the amount owed to the United States pursuant to this Stipulated Order for Preliminary Relief by certified or cashier's check in the amount due payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United States Attorney's Office file number 2002V00100, and delivered to the office of the United States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza, 108 Hernan Cortez, Hagatna, Guam  96910.

56.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Stipulated Order for Preliminary Relief.

57.     If Defendants fail to pay stipulated penalties owed pursuant to this Stipulated Order for Preliminary Relief within 30 days of receipt of EPA's written demand, Defendants shall pay interest on the late payment for each day  after the initial thirty day due date.  The rate of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.

58.     Stipulated penalties are not the Plaintiff's exclusive remedy for violations of this Stipulated Order for Preliminary Relief.  The United States expressly reserves the right to seek any other relief it deems appropriate, including, but not limited to, action for statutory penalties, contempt, or injunctive relief against Defendants.

## X.     Force Majeure

59.     Defendants shall perform all requirements of this Stipulated Order for Preliminary Relief in accordance with the time schedules set forth except to the extent, and for the period of time, that such performance is prevented or delayed by events which constitute a force majeure.

60.     For the purposes of this Stipulated Order for Preliminary Relief, a force majeure is defined as any event arising from causes beyond the control of Defendants and that cannot be overcome by diligent and timely efforts of Defendants, including their contractors.  Economic hardship, lack of a political consensus, normal inclement weather, and increased costs of

REVISED 10-3-06                          36

1 performance shall not be considered events beyond the reasonable control of Defendants for

2 purposes of determining whether an event is force majeure. The requirement that Defendants

3 exercise diligent and timely efforts to fulfill their obligations includes using best efforts to

4 anticipate any force majeure event and best efforts to address the effects of any potential force

5 majeure event (1) as it is occurring and (2) following the potential force majeure events, such that

6 delay is minimized to the greatest extent possible.

7        61.    In the event of a force majeure, the time of performance of the activity delayed by

8 the force majeure shall be extended by EPA for the time period of the delay attributable to the

9 force majeure. An extension of one compliance date based on a particular incident does not

10 necessarily result in an extension of a subsequent compliance date or dates. Defendants must

11 make an individual showing of proof regarding each delayed incremental step or other

12 requirement for which an extension is sought. Defendants shall adopt all reasonable measures to

13 avoid or minimize any delay caused by a force majeure.

14        62.    When an event occurs or has occurred that may delay or prevent the performance

15 of any obligation under this Stipulated Order for Preliminary Relief, Defendants shall notify by

16 telephone the Manager, Pacific Islands Office, Region 9, (415) 972-3774, or the Guam Program

17 Manager, Pacific Islands Office, Region 9, (415) 972-3770, within 72 hours of Defendants'

18 knowledge of such event. If Defendants are unable to contact EPA Region 9, Defendants shall

19 notify by telephone the U.S. Attorney's Office for the District of Guam at 472-7332, extension

20 119 or 121. Telephone notification shall be followed by written notification made within seven

21 days of Defendants' knowledge of the event. The written notification shall fully describe: the

22 event that may delay or prevent performance; reasons for the delay; the reason the delay is

23 beyond the reasonable control of Defendants if they believe the event constitutes a force majeure;

24 the anticipated duration of the delay; actions taken or to be taken to prevent or minimize the

25 delay; a schedule for implementation of any measures to be taken to mitigate the effect of the

26 delay; and the time needed to implement any dependent activities. For purposes of this Section,

27

28 REVISED 10-3-06                37

Defendants shall be deemed to have knowledge of anything they or their contractors knew or should have known.

63. Failure of Defendants to comply with the force majeure notice requirements provided in Paragraph 62 for any delay in performance will be deemed an automatic forfeiture of their right to assert that the delay was caused by a force majeure.

64. After receiving written notification from Defendants of a force majeure, EPA shall determine whether Defendants' request for delay is justified and EPA shall notify Defendants of its determination in writing. EPA's failure to respond within 30 days to a request for delay by Defendants shall be deemed a denial of that request. If Defendants disagree with EPA's determination, Defendants may initiate dispute resolution procedures pursuant to Section XI (Dispute Resolution).

65. Defendants shall bear the burden of proving that any delay or violation of any requirement of this Stipulated Order for Preliminary Relief was caused by circumstances beyond their control, or any entity under their control, including consultants and contractors, and that Defendants could not have reasonably foreseen and prevented such violation. Defendants shall also bear the burden of proving the duration and extent of any delay or violation attributable to such circumstances.

## XI. Dispute Resolution

66. The Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to the Stipulated Order for Preliminary Relief. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations by Defendants under this Stipulated Order for Preliminary Relief that have not been disputed in accordance with this Section.

67. If Defendants dispute any determination made by EPA under this Stipulated Order for Preliminary Relief, Defendants shall send a written notice to EPA and DOJ outlining the nature of the dispute, submitting all supporting information and document relating to the dispute,

REVISED 10-3-06                          38

1  describing its proposed resolution, and requesting informal negotiations to resolve the dispute.

2  Such period of informal negotiations shall not extend beyond 15 days from the date when notice

3  was received by EPA and DOJ unless the parties agree otherwise in writing.

4      68.    If the informal negotiations are unsuccessful, the disputed determination by EPA

5  shall control, unless Defendants file a motion with this Court for dispute resolution. Any such

6  motion must be filed within 30 days after termination of informal negotiations and must be

7  concurrently sent to EPA and DOJ. The United States shall then have 30 days to respond to

8  Defendants' motion. In any such dispute resolution proceeding, Defendants bear the burden of

9  proving that EPA was arbitrary and capricious.

10  **XII.   Applicability**

11      69.    The provisions of this Stipulated Order for Preliminary Relief shall apply to and

12  be binding upon GWA, its officers, agents, employees, trustees, successors, and assigns, the

13  Government of Guam, its elected officials, officers, agents, employees, trustees, successors, and

14  assigns, and the United States, on behalf of EPA.

15  **XIII.  General**

16      70.    This Stipulated Order for Preliminary Relief is enforceable in all of its terms by

17  the Court.

18      71.    This Stipulated Order for Preliminary Relief is not and shall not be construed as

19  either an NPDES permit or a modification of any existing NPDES permit. By entering into this

20  Stipulated Order for Preliminary Relief, the United States does not warrant in any manner that

21  Defendants' complete compliance with the terms of this Stipulated Order for Preliminary Relief

22  will result in compliance with the provisions of the CWA, the SDWA, and regulations

23  promulgated pursuant to those statutes. Defendants' complete compliance with the terms of this

24  Stipulated Order for Preliminary Relief does not affect or resolve the United States' claims for

25  civil penalties or permanent injunctive relief.

26      72.    This Stipulated Order for Preliminary Relief shall not affect GWA's obligation to

27

28  REVISED 10-3-06           39

comply with its NPDES permits and with all applicable federal laws, regulations, and permits.

73. This Stipulated Order for Preliminary Relief does not limit or affect the rights of the United States or Defendants against any third parties, nor does it limit the rights of third parties who are not parties to this Stipulated Order for Preliminary Relief. In addition, this Stipulated Order for Preliminary Relief is not to be construed as creating rights or obligations in third parties.

74. Each undersigned representative of Defendants and the Assistant United States Attorney certifies that he is fully authorized to enter into the terms and conditions of this Stipulated Order for Preliminary Relief, to execute the document, and to legally bind the party he represents to this document.

## XIV. Modification

75. There shall be no material modifications of this Stipulated Order for Preliminary Relief without the written approval of the parties to this Stipulated Order for Preliminary Relief and the approval of the Court. All non-material modifications, which may include extensions of the time frames and schedules for performance of the terms and conditions of this Stipulated Order for Preliminary Relief, may be made by agreement of the parties and shall be effective upon filing by the United States of such modifications with the Court.

### ORDER

**IT IS SO ORDERED** this _____ day of _____, 2003.


_____

United States District Judge

REVISED 10-3-06                            40

**For the United States of America, Plaintiff:**

> THOMAS L. SANSONETTI
> Assistant Attorney General
> Environment & Natural Resources Division
> ROBERT D. MULLANEY
> Environmental Enforcement Section
> Environment & Natural Resources Division
> United States Department of Justice
>
> FREDERICK A. BLACK
> United States Attorney
> Districts of Guam and NMI
> (671) 472-7332

Dated: _____     _____
　　　　　　　　　　　　　　　　 MIKEL W. SCHWAB
　　　　　　　　　　　　　　　　 Assistant U.S. Attorney


OF COUNSEL:

KAREN PETERSON
Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105


**For Guam Waterworks Authority and the Government of Guam, Defendants:**

Dated: _____     _____
　　　　　　　　　　　　　　　　 DOUGLAS B. MOYLAN
　　　　　　　　　　　　　　　　 Attorney General of Guam
　　　　　　　　　　　　　　　　 Guam Judicial Center, Suite 2-200E
　　　　　　　　　　　　　　　　 120 West O'Brien Drive
　　　　　　　　　　　　　　　　 Hagatna, Guam 96910
　　　　　　　　　　　　　　　　 (671) 475-3324

Dated: 10/12/2006     _____
　　　　　　　　　　　　　　　　 SAMUEL J. TAYLOR
　　　　　　　　　　　　　　　　 Legal Counsel
　　　　　　　　　　　　　　　　 Guam Waterworks Authority
　　　　　　　　　　　　　　　　 578 North Marine Corps Drive
　　　　　　　　　　　　　　　　 Tamuning, Guam 96913
　　　　　　　　　　　　　　　　 (671) 647-7681

REVISED 10-3-06　　　　　　　　　　　41



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION IX
75 Hawthorne Street
San Francisco, CA 94105-3901

<u>Via Email</u>

September 4, 2007

John M. Benavente
Interim General Manager
Guam Waterworks Authority
P.O. Box 3010
Hagatna, Guam 96932

Dear Mr. Benavente:

With this letter, EPA imposes a penalty of $40,000 pursuant to paragraphs 53 and 55 of the Stipulated Order for Preliminary Relief (Stipulated Order), entered by the Court on June 5, 2003, and as amended on October 19, 2006. The penalty is for violations of paragraphs 39 and 42 of the Stipulated Order.

Paragraph 39 of the Stipulated Order requires the Guam Waterworks Authority (GWA) to conduct an operational performance evaluation by May 4, 2007, to determine whether advanced primary treatment is needed at the Northern District Sewage Treatment Plant to comply with NPDES permit effluent limitations. On May 4, 2007, GWA submitted a Northern District Performance Evaluation Report with a schedule to complete the performance evaluation in July 2008. GWA has therefore been in violation of paragraph 39 of the Stipulated Order since May 4, 2007. Paragraph 53 of the Stipulated Order provides that penalties for violations of paragraph 39 shall accrue at $500 per day for the first 30 days of violation, $1,000 per day for the next 30 days, and $2,000 per day thereafter. As of August 30, 2007, penalties have accrued as follows:

30 days x $500/day = $15,000
30 days x $1,000/day = $30,000
58 days x $2,000/day = $116,000 (based on an August 30, 2007 calculation date)
for a total penalty of $161,000.

Paragraph 42 of the Stipulated Order requires GWA to conduct an operational performance evaluation by April 30, 2007, to determine whether advanced primary treatment is needed at the Agana (Hagatna) Sewage Treatment Plant to comply with NPDES permit effluent limitations. On May 4, 2007, GWA submitted an Agana Performance Evaluation Report with a schedule to complete the performance evaluation in February 2008.

In addition, paragraph 42 of the Stipulated Order requires GWA to complete renovations at the Agana Main Sewer Pump Station (SPS) by June 1, 2007. On May 30, 2007, GWA

1

**EXHIBIT A**

*Printed on Recycled Paper*

submitted a "Notice of expected non compliance or delay of work under paragraph 42, refurbishment of the Hagatna Main Lift Station." On July 24, 2007, GWA submitted an updated "Notice of expected non compliance or delay of work under paragraph 42, refurbishment of the Hagatna Main Lift Station" with a scheduled completion date in September 2008.

Paragraph 53 of the Stipulated Order provides that penalties for violations of paragraph 42 shall accrue at $250 per day for the first 30 days of violation, $500 per day for the next 30 days, and $1,000 per day thereafter. Since the April 30 and June 1, 2007 deadlines, penalties for the completion of the operational performance evaluation and pump station renovation have accrued as follows:

Agana Performance Evaluation:
30 days x $250/day = $7,500
30 days x $500/day = $15,000
62 days x $1,000/day = $62,000 (based on an August 30, 2007 calculation date)
for a total penalty of $84,500.

Agana Main SPS Renovation:
30 days x $250/day = $7,500
30 days x $500/day = $15,000
30 days x $1,000 = $30,000 (based on an August 30, 2007 calculation date)
for a total penalty of $52,500.

Paragraph 56 of the Stipulated Order provides the United States the discretion to reduce stipulated penalties. Consequently, at this time, EPA is imposing a penalty of $40,000 related to violations of paragraph 39 and 42 of the Stipulated Order. GWA needs to take whatever steps are necessary to ensure there are no further delays in completing performance evaluations and the pump station renovation. Stipulated penalties will continue to accrue until these Stipulated Order tasks are completed and submitted to EPA.

At this time, payment of the accrued penalty should be made in accordance with paragraph 55 of the Stipulated Order; the stipulated penalty amount of $40,000 is due not later than 30 days after GWA's receipt of this demand. GWA must pay $40,000 by certified or cashier's check to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United States Attorney's Office file number 2002V00100, and must deliver payment to the office of the United States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza, 108 Hernan Cortez, Hagatna, Guam 96910.

2

Should you have any questions about this letter, please call Michael Lee at (415) 972-3769.

Sincerely yours,

Alexis Strauss, Director  4 Sept. 2007
Water Division

cc:    Consolidated Commission on Utilities
       Alicia Limtiaco, Attorney General of Guam
       S. Taylor, CCU Attorney
       Don Antrobus, GWA
       L. Crisostomo, Guam EPA
       Rob Mullaney, U.S. Department of Justice
       Mikel Schwab, U.S. Attorney's Office

3



# GUAM WATERWORKS AUTHORITY
### Good Water Always
578 North Marine Corps Drive, Tamuning, Guam 96913
Phone: (671) 647-7681 Fax: (671) 646-2335

September 11, 2007

<u>DELIVERY VIA FAX AND COURIER</u>

Manager, Pacific Islands Office (CMD-6)
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Fax: (415) 947-3560

United States Attorney
District of Guam
Sirena Plaza
108 Hernan Cortez Ave., Suite 500
Hagatna, Guam 96910

Fax: (671) 472-7215

Section Chief
Environmental Enforcement Section
D.J. Ref 90-5-1-1-07942 (Mullaney)
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105

Fax: (415) 744-6476

On September 5, 2007, the Guam Waterworks Authority ("GWA") received a Penalty Demand Letter, dated September 4, 2007, from Alexis Strauss, the Director of the Region IX United States Environmental Protection Agency's Water Division, regarding <u>alleged</u> violations of Paragraphs 39 and 42 of the Stipulated Order for Preliminary Relief ("SO" or "Stipulated Order") dated June 5, 2003 (as amended). Exhibit A. In conformance with Paragraphs 66 through 68 of the Stipulated Order, the Guam Waterworks Authority does hereby formally notify the United States Environmental Protection Agency and the United States Department of Justice of its intent to dispute the fines that were levied in the aforementioned Penalty Demand Letter. The justifications for our dispute are set forth in detail below.

1

*Exhibit C*

1. **Paragraph 42. Hågåtña Sewage Treatment Plant ("HSTP") and Hågåtña Sewer Pump Station ("SPS").**

   **A. Hagatna Sewer Treatment Plant:**

In its Penalty Demand Letter, the USEPA fined GWA eighty-four thousand dollars ($84,000) for allegedly failing to "conduct an operational performance evaluation by April 30, 2007 to determine whether advanced primary treatment is needed at the Agana (Hagatna) Sewage Treatment Plant to comply with NPDES permit effluent limitations." Id.

Paragraph 42 of the Stipulated Order required that GWA complete the renovations to the Hågåtña Sewage Treatment Plant by March 2, 2007 and then complete an additional performance evaluation by April 30, 2007 in order to determine whether or not primary treatment was necessary. In the event that GWA could not meet the permit limits, GWA would have been required to implement advanced primary treatment. Advanced primary treatment would involve feeding additional chemicals at a significant annual additional cost to GWA and its ratepayers.

Ironically, **GWA completed the Hågåtña WWTP renovation ahead of the March 2, 2007 Stipulated Order deadline.** GWA did not meet NPDES permit limits at initial start-up of the plant in March and April of 2007 because the system in the plant was still being calibrated as is customary with newly refurbished plants. However, GWA's DMR Reports have shown that the Hågåtña Sewage Treatment Plant has been in compliance with existing NPDES permits since May of 2007. Exhibit B. In sum, the optimization efforts outlined by GWA in its report have been effective, and as a result USEPA statements that GWA needed to conduct repairs on the Hågåtña Sewer Pump Station in order to bring the Hågåtña Sewage Treatment Plant into compliance are simply not true. *See* USEPA Press Release at Exhibit C. Thus, GWA has been operating the HSTP within NPDES permit limits since May of 2007 and has avoided unnecessary additional O&M expenses related to advanced primary treatment.

Moreover, GWA did in fact submit a detailed Performance Evaluation on April 30th of 2007 to the USEPA outlining our approach to insure full compliance with NPDES permits. Exhibit D. The GWA Performance Evaluation Report, that was filed in a timely manner, clearly stated:

> "GWA must conduct a performance evaluation to determine whether or not advanced primary treatment is needed to comply with NPDES permit effluent limitations. This is to be completed by April 30, 2007 and a report submitted to EPA. This document and its attachments are submitted pursuant to this requirement."

Under Paragraph 42 of the SO, GWA was required to submit the report to the USEPA and Guam EPA for review and comments. Moreover, under Paragraph 2 of the Stipulated Order, the USEPA is **required** to submit in **writing** to GWA either an approval or detailed comments explaining why the USEPA did not approve the submittal. In this instance GWA neither received a formal approval nor detailed comments indicating disapproval. In fact, the USEPA failed to submit any comments at all despite the fact that Paragraph 42 clearly indicated the need for such comment. Instead all GWA received from USEPA were requests to monitor GWA's progress and minor queries – which GWA dutifully complied with.

2

Thus, since GWA clearly submitted its report to satisfy the requirement of Paragraph 42 of the Stipulated Order, and given the USEPA's failure to respond, a fine cannot be levied against GWA as GWA did in fact comply in good faith with the Stipulated Order requirements. However, the USEPA has not acted in good faith in that it failed to provide feedback to GWA on its Report in a manner contemplated by Paragraph 2 of the SO, and instead waited 4 months and then arbitrarily fined GWA without providing any notice that GWA's report was defective in any manner.

An important point to note is that the plan that was submitted by GWA in a timely fashion was designed to not only ensure SO compliance, it also included items that extend above and beyond any requirement set out in the SO. Id. For example, GWA is almost finished with establishing a laboratory at the plant to do operational testing and monitoring for all of its wastewater plants in addition to compliance monitoring. Id. Ironically, the effort to ensure compliance beyond the requirement of the SO was indicated by GWA to continue through February 2008, the date noted in the fine. Id. Thus, it seems that compliance with the SO (i.e., GWA submitting a report which indicates that advanced primary treatment isn't really necessary) isn't the issue that was fined, rather the fine was levied on a timeframe that GWA is supplying to the USEPA which relates to a plan by GWA to exceed SO requirements.

## B. Hågatña Sewer Pump Station:

This project was unilaterally defined and initiated by GWA and did not arise from any need identified by the USEPA. In fact, the need for the SPS rehabilitation resulted from a self-examination of the SPS by GWA personnel and the need for the project was communicated to USEPA by GWA during routine conference calls and other communications. The project did not need to be added to the SO when we amended the deadlines because the project simply does not impact plant compliance with NPDES permits and is really an efficiency upgrade and operator safety issue. However, GWA agreed to add it at USEPA insistence because there were other items which GWA desired to have modified which were contingent upon adding this particular project to the SO.

Granted, while GWA has not complied with the time frames established under the SO (which were only estimates based upon knowledge that existed at the time), there have been legitimate extenuating circumstances which have prevented GWA from complying with the SO deadline and USEPA representatives have been more than adequately informed of said circumstances. For example, the original intent of both parties was that GWA would complete the work to the SPS while the HSTP was being bypassed for the treatment plant renovations which would have allowed GWA to simultaneously bypass the pump station. Based upon reasons that were communicated to the USEPA, GWA was not able to complete these two elements simultaneously. Thus, GWA was faced with the tough decision to either continue the bypass of the newly renovated Hagatna STP, which would prevent us from complying with our NPDES permits, or develop a plan to bypass pump around the lift station. GWA chose NPDES permit compliance over the SO in order to enhance the health and safety of the populace of Guam by operating the plant as opposed to continuing to force raw untreated sewage into the Hågatña Bay. Exhibit E. Thus, we are utterly surprised at the USEPA's fine in this case as GWA's decision is more consistent with environmental protection than your fine which is based solely upon a blind obedience towards SO deadlines without regard to the health consequences to the public.

3

Even worse is that GWA submitted a formal request to USEPA which set out several optional approaches to complete the SPS repairs and provided timelines with varying degrees of risk of bypassing the treatment plant (note that bypassing the treatment plant is the fail-safe to avoid upstream sewage spills which are also subject to fines). Exhibit F. However, again the USEPA failed to respond to our submittal in a manner required under Paragraph 2 of the SO. Ironically, the longest timeline in GWA plan to repair the SPS is again the only one cited to in your fine. It appears that the USEPA is intentionally trying to make the situation look worse than what it really is. For example, if the USEPA had agreed to an approach with a higher risk of treatment plant bypass, i.e. the earlier completion option, then the work would be ongoing at this moment. However, again, the USEPA did not respond at all to GWA's formal request on this point – as such, this again constitutes an utter lack of good faith on the USEPA's part under Paragraph 2 with regard to the fine imposed for violating the SO on this point.

In its Penalty Demand Letter, the USEPA imposed a $52,500 fine for failing to complete the Hågatña Sewage Pump Station renovations, although it reduced the total fine for all violations to $40,000.00. Exhibit A. Ironically, the long lead bypass pumps cost about the same amount as the fine that has been imposed which means that the payment of the fine may result in GWA being forced to bypass the treatment plant in order to complete the lift station work thereby resulting in a greater health risk. Does the USEPA really want a greater health risk to the public? Again, GWA is completely perplexed by the intent behind the fines and questions not only the validity of the fines themselves, but the timing as well.

## 2. Paragraph 39. Northern District Sewage Treatment Plant ("NDSTP").

In its Penalty Demand Letter, the USEPA fined GWA $161,000 for failing to conduct an operational performance evaluation by May 4, 2007. Exhibit A. Paragraph 39 of the Stipulated Order required GWA to complete work required "to restore primary treatment capacity" to the NDSTP by March 2, 2007 and to complete a performance evaluation by May 4, 2007 which is essentially the same evaluation that GWA conducted on the Hågatña Sewage Treatment Plant.

GWA did in fact work diligently to restore primary treatment capacity to the plant by fixing both primary clarifiers, replacing two sludge pumps and one of the preaeration chambers – a fact which was disclosed to USEPA representatives. Exhibit G. Unfortunately, the aforementioned repairs did not initially get the plant into full compliance with the NPDES permits, although with some modifications to our operations, GWA has almost been able to bring the plant into compliance with our NPDES permits in July of this year (and August is looking even better). See the DMR Reports at Exhibit H. In addition, GWA has identified additional work that includes having GWA replace more sludge pumps and perform repairs on the second preaeration chamber to make the plant run even more efficiently and which is expected to bring the plant into continuous NPDES compliance. Exhibit I. GWA has just recently received the necessary approvals from the Guam Public Utilities Commission to use GWA bond funds to engage in this work and will complete these final repairs very soon.

Moreover, just like Hågatña, GWA dutifully prepared a detailed Performance Evaluation of the Northern District Sewage Treatment Plant and submitted the evaluation to the USEPA on May 4, 2007

4

Id. Again, GWA's report clearly and unequivocally stated that "[t]his document and its attachments are submitted pursuant to this requirement."

Paragraph 39 is identical to Paragraph 42 in its requirement that the USEPA is to provide comments. Again, under Paragraph 2 of the SO, the USEPA was **required** to provide GWA with either a formal written approval or written comments specifically why the submittal was insufficient. Again, USEPA failed to provide any feedback to GWA in a manner prescribed under Paragraph 2 of the SO, and instead chose to wait 4 months and arbitrarily fine GWA. The report provided by GWA clearly outlined our comprehensive approach to improve the facility and submitted the plan within the time frames established under the Stipulated Order. Id. What is most important to note is that GWA was not required under Paragraphs 39 and 42 to come into compliance with NPDES permits, rather GWA was to evaluate the plants and submit a plan on how to come into compliance with federal permits. GWA complied with the not only the letter of the SO on these points, it also exceeded them as the plans fior both Hågatña and Northern clearly identified repairs or projects which obviously **exceed** the stated requirements in the Stipulated Order itself. Id.

What is most important is that GWA's implementation of its plan has proven that the NDSTP could be brought into compliance with the NPDES permits without having to resort to advanced primary treatment which results in higher annual operational and maintenance costs which must ultimately be borne by GWA ratepayers. GWA has difficulty believing that the USEPA would want to impose additional financial burdens on GWA and its ratepayers relative to instituting advanced primary at the wastewater treatments plants – especially in light of current NPDES compliance at the HSTP since May of 2007 and where the July DMR Report shows that the NDSTP is in compliance on every point aside from a minor violation on the suspended solids (which are looking even better in the August report). Also, why levy fines when GWA has submitted the required reports on time?

In addition to the mechanical repairs that have been and/or will be undertaken, GWA has effectively taken the "bull by the horns" and implemented additional operational measures to improve the effluent quality that are not required under the SO. For example, private pump truck companies are now all fully permitted and must dump their waste at the Hågatña STP. Previously these trucks had dumped at a pump station in the Northern District Collection System. This unnecessarily added to the loading of the Northern District Sewage Treatment Plant and exacerbated permit compliance issues. Controlling this waste stream and taking it to Hågatña with more capacity for handling solids has clearly helped improve performance of the NDSTP. In sum, the Northern District Sewage Treatment Plant was in full compliance with all permit limits in July and the August results are pending.

### 3. Press Release Inaccuracies.

GWA firmly believes that the press release issued by the USEPA is both inaccurate and misleading. Specifically, the press release stated that GWA was being fined for its "failure to improve the wastewater facilities" and "to ensure compliance with federal permit limits from these two facilities." Exhibit C. GWA and its ratepayers have already spent a considerable sum to improve the wastewater treatment facilities referenced in the release and at the time the press release was issued GWA was in compliance with NPDES permit limits for both plants that are the subject of the fines.

5

In fact, what GWA has shown, and what the test results from these plants will prove, is that GWA was in fact in compliance with its NPDES permits with respect to the HSTP well in advance of the dates that the fines were levied, and GWA did in fact submit plans for compliance required under the SO in a which clearly has resulted in NPDES compliance for the HSTP since May of 2007 and has almost complete compliance for the NDSTP (and most likely complete compliance once GWA finishes the repairs set out in its report. In addition, the plans exceed the SO requirements by including elements that exceed the requirements of the Stipulated Order.

Moreover, your press release further incorrectly stated that "GWA needs to comply with the order to determine the proper level of wastewater treatment it needs to meet its federal permits." GWA has proven that both the Hågatña Sewage Treatment Plant and Northern District Sewage Treatment Plant are either currently operating or will be operating within its permit levels under the plans which GWA submitted as GWA indicated that they would. GWA has went beyond the SO to improve its operating characteristics of the plants and exceed the permit guidelines without having to resort to costly advanced primary treatment which only adds an unnecessary financial burden to the People of Guam. In sum, as stated in our April 4, 2007 and May 4, 2007 reports, GWA does not believe that additional testing is necessary to determine whether the treatment plants meet their federal permits when the testing data obviously shows that the plants are meeting permit requirements or will meet them.

In closing, based upon the reasons set forth above, GWA protests the fines set forth in the USEPA's Penalty Demand Letter. Specifically, GWA does not believe that any fine is appropriate with respect to the operational report submittals for the Hågatña and Northern District Sewage Treatment Plants given the fact that GWA made timely submittals of its reports and the USEPA failed to comply with the approval / rejection provisions of Paragraph 2 of the Stipulated Order. In addition, GWA believes that the fines regarding the Hågatña Sewer Pump Station are inappropriate in light of the fact that GWA's approach to repairing the pump station are designed to limit unnecessarily high repair costs and provides the maximum health and safety benefit to the public and that the USEPA failed to respond to its submittal as required under Paragraph 2 of the Stipulated Order. Accordingly, GWA would like to note that paragraph 56 of the Stipulated Order still provides the United States Environmental Protection Agency with the ability to reduce or eliminate entirely all of the aforementioned fined which can avoid having to settle this matter in court. In order to resolve this issue, GWA seeks to meet with USEPA representatives within the 15 day period specified in the Stipulated Order and resolve this matter.

Sincerely,

John Benavente, P.E.
GWA General Manager (interim)

Attachments

cc: Simon Sanchez, CCU Chairman
Sam Taylor, GWA Legal Counsel
Don Antrobus, GWA Chief Engineer
Paul Kemp, GWA Asst GM for Compliance and Safety

6



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION IX
75 Hawthorne Street
San Francisco, CA 94105-3901

<u>Via Email</u>

September 4, 2007

John M. Benavente
Interim General Manager
Guam Waterworks Authority
P.O. Box 3010
Hagatna, Guam 96932

Dear Mr. Benavente:

With this letter, EPA imposes a penalty of $40,000 pursuant to paragraphs 53 and 55 of the Stipulated Order for Preliminary Relief (Stipulated Order), entered by the Court on June 5, 2003, and as amended on October 19, 2006. The penalty is for violations of paragraphs 39 and 42 of the Stipulated Order.

Paragraph 39 of the Stipulated Order requires the Guam Waterworks Authority (GWA) to conduct an operational performance evaluation by May 4, 2007, to determine whether advanced primary treatment is needed at the Northern District Sewage Treatment Plant to comply with NPDES permit effluent limitations. On May 4, 2007, GWA submitted a Northern District Performance Evaluation Report with a schedule to complete the performance evaluation in July 2008. GWA has therefore been in violation of paragraph 39 of the Stipulated Order since May 4, 2007. Paragraph 53 of the Stipulated Order provides that penalties for violations of paragraph 39 shall accrue at $500 per day for the first 30 days of violation, $1,000 per day for the next 30 days, and $2,000 per day thereafter. As of August 30, 2007, penalties have accrued as follows:

30 days x $500/day = $15,000
30 days x $1,000/day = $30,000
58 days x $2,000/day = $116,000 (based on an August 30, 2007 calculation date)
for a total penalty of $161,000.

Paragraph 42 of the Stipulated Order requires GWA to conduct an operational performance evaluation by April 30, 2007, to determine whether advanced primary treatment is needed at the Agana (Hagatna) Sewage Treatment Plant to comply with NPDES permit effluent limitations. On May 4, 2007, GWA submitted an Agana Performance Evaluation Report with a schedule to complete the performance evaluation in February 2008.

In addition, paragraph 42 of the Stipulated Order requires GWA to complete renovations at the Agana Main Sewer Pump Station (SPS) by June 1, 2007. On May 30, 2007, GWA

1

*Printed on Recycled Paper*

# EXHIBIT A

submitted a "Notice of expected non compliance or delay of work under paragraph 42, refurbishment of the Hagatna Main Lift Station." On July 24, 2007, GWA submitted an updated "Notice of expected non compliance or delay of work under paragraph 42, refurbishment of the Hagatna Main Lift Station" with a scheduled completion date in September 2008.

Paragraph 53 of the Stipulated Order provides that penalties for violations of paragraph 42 shall accrue at $250 per day for the first 30 days of violation, $500 per day for the next 30 days, and $1,000 per day thereafter. Since the April 30 and June 1, 2007 deadlines, penalties for the completion of the operational performance evaluation and pump station renovation have accrued as follows:

Agana Performance Evaluation:
30 days x $250/day = $7,500
30 days x $500/day = $15,000
62 days x $1,000/day = $62,000 (based on an August 30, 2007 calculation date)
for a total penalty of $84,500.

Agana Main SPS Renovation:
30 days x $250/day = $7,500
30 days x $500/day = $15,000
30 days x $1,000 = $30,000 (based on an August 30, 2007 calculation date)
for a total penalty of $52,500.

Paragraph 56 of the Stipulated Order provides the United States the discretion to reduce stipulated penalties. Consequently, at this time, EPA is imposing a penalty of $40,000 related to violations of paragraph 39 and 42 of the Stipulated Order. GWA needs to take whatever steps are necessary to ensure there are no further delays in completing performance evaluations and the pump station renovation. Stipulated penalties will continue to accrue until these Stipulated Order tasks are completed and submitted to EPA.

At this time, payment of the accrued penalty should be made in accordance with paragraph 55 of the Stipulated Order; the stipulated penalty amount of $40,000 is due not later than 30 days after GWA's receipt of this demand. GWA must pay $40,000 by certified or cashier's check to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-07942 and United States Attorney's Office file number 2002V00100, and must deliver payment to the office of the United States Attorney, District of Guam, Attention: Financial Litigation Unit, Suite 500, Sirena Plaza, 108 Hernan Cortez, Hagatna, Guam 96910.

Should you have any questions about this letter, please call Michael Lee at (415) 972-3769.

Sincerely yours,

Alexis Strauss, Director 4 Sept. 2007
Water Division

cc: Consolidated Commission on Utilities
Alicia Limtiaco, Attorney General of Guam
S. Taylor, CCU Attorney
Don Antrobus, GWA
L. Crisostomo, Guam EPA
Rob Mullaney, U.S. Department of Justice
Mikel Schwab, U.S. Attorney's Office

3

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-85

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM: YEAR 2006  MO 10  DAY 1
TO: YEAR 2006  MO 10  DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS (86) | QUANTITY OR CONCENTRATION | | | UNITS (18) | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | MINIMUM | | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2201 | 4111 | | KG/ DAY (86) | | 91 | 141 | MG/L (19) | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MAX | | | | REPORT MO AVG | REPORT DAILY MAX | | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2781 | 437R | | KG/ DAY (86) | | 94 | 148 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MAX | | | | REPORT MO AVG | REPORT DAILY MAX | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE: AREA CODE 671  NUMBER 647-2403

DATE: YEAR  MO  DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.

# EXHIBIT B

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-85

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

**PERMITTEE NAME/ADDRESS (include facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087

DISCHARGE NUMBER: 001 A

**MONITORING PERIOD**

| | YEAR | MO | DAY | | | YEAR | MO | DAY |
|---|---|---|---|---|---|---|---|---|
| FROM | 2004 | 10 | 1 | TO | | 2004 | 10 | 31 |

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | | |
| BOD, 6-DAY [20 DEG. C] EFFLUENT GROSS VALUE 00310 1 0 0 | SAMPLE MEASUREMENT | 2201 | 4181 | KG/ DAY | | 91 | 141 | MG/L | | 4/31 | | COMPOSITE |
| | PERMIT REQUIREMENT | | | | | | | | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.73 | | 8.09 | SU | | 4/31 | | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2781 | 4378 | KG/ DAY | | 2781 | 4378 | MG/L | | 4/31 | | COMPOSITE |
| | PERMIT REQUIREMENT | | | | | | | | | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 4.1 | 4.5 | ML/L | | 4/31 | | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 6.42 | 6.42 | KG/ DAY | | 21.7 | 21.7 | MG/L | | 1/31 | | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | ONCE/MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.02 | 7.02 | MGD | | | | | | 31/31 | | HOURLY |
| | PERMIT REQUIREMENT | | | | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

TYPED OR PRINTED
DAVID R. CRADDICK
GENERAL MANAGER, GWA

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

| TELEPHONE | | | DATE | | |
|---|---|---|---|---|---|
| 671 | 647-7803 | | | | |
| AREA CODE | NUMBER | | YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See 0 S M Report)

NO TREATMENT OCCURRING AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.
FLOW READINGS ARE AN ESTIMATE PROVIDED BY PLANT DRC

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-86

PERMITTEE NAME/ADDRESS (include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087

DISCHARGE NUMBER: IMF A

MONITORING PERIOD
FROM: YEAR 2006 MO 11 DAY 1
TO: YEAR 2006 MO 11 DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | | (81) | MINIMUM | AVERAGE | MAXIMUM | (19) | (19) | | |
| BOD, 5-DAY [20 DEG C] 00310 G 0 0 RAW SEW INFLUENT | SAMPLE MEASUREMENT | 2086 | 3059 | | KG/ DAY | | 102 | 114 | MG/L | | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO/AVG | REPORT DAILY/MX | | | | REPORT MO/AVG | REPORT DAILY/MX | | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW INFLUENT | SAMPLE MEASUREMENT | 2247 | 5562 | | KG/ DAY | | 110 | 198 | MG/L | | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO/AVG | REPORT DAILY/MX | | | | REPORT MO/AVG | REPORT DAILY/MX | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | | TELEPHONE | | DATE | | |
|---|---|---|---|---|---|---|---|
| | | | AREA CODE | NUMBER | YEAR | MO | DAY |
| TYPED OR PRINTED | | | 671 | 647-2603 | | | |
| DAVID R. CRADDICK GENERAL MANAGER, GWA | | SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | | | | | |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.

Case 1:02-cv-00035    Document 43-4    Filed 10/29/2007    Page 16 of 28

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
# DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-86

**PERMITTEE NAME/ADDRESS (Include Facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: 001 A

MONITORING PERIOD

| | YEAR | MO | DAY | | YEAR | MO | DAY |
|---|---|---|---|---|---|---|---|
| FROM | 2004 | 11 | 1 | TO | 2004 | 11 | 30 |

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | MINIMUM | | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2986 | 3969 | | KG/ DAY (N1) | | 102 MO AVG | 134 DAILY MX | MGL (19) | | 5/30 WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | 3834 MO AVG | 7268 DAILY MX | | | | 80 MO AVG | 150 DAILY MX | | | | |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | 7.44 | | 7.44 MINIMUM | | 8.22 MAXIMUM | SU (12) | | 5/30 WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3242 | 5562 | | KG/ DAY (N1) | | 3242 MO AVG | 5562 DAILY MX | MGL (19) | | 5/30 WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | 2725 MO AVG | 5450 DAILY MX | | | | 60 MO AVG | DAILY MX | | | | |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | | 4.5 MO AVG | 9.0 DAILY MX | MLL (26) | | 5/30 WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| OIL AND GREASE 00582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 512 | 512 | | KG/ DAY (N1) | | 18.0 MO AVG | 18.0 DAILY MX | MGL | | 1/30 | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | REPORT MO AVG | REPORT DAILY MX | | | ONCE/ MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 00560 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.82 | 7.82 | | MGD (03) | | | | | | 30/30 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

**NAME/TITLE PRINCIPAL EXECUTIVE OFFICER**

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

**SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT**

| TELEPHONE | | | | DATE | | |
|---|---|---|---|---|---|---|
| 671 | 647-2603 | | | | | |
| AREA CODE | NUMBER | | | YEAR | MO | DAY |

**COMMENT AND EXPLANATION OF ANY VIOLATIONS (See 0 & M Report)**

VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.
FLOW READINGS ARE ESTIMATE PROVIDED BY PLANT.

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-2004
Approval expires 9-30-85

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER

DISCHARGE NUMBER: INF #

MONITORING PERIOD
FROM  YEAR 2006  MO 12  DAY 1   TO   YEAR 2006  MO 12  DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS (01) | MINIMUM | AVERAGE | MAXIMUM | UNITS (16) | | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 3642 | 3938 | KG/DAY | | 117 | 133 | MG/L | | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO/AVG | REPORT DAILY MAX | | | REPORT MO/AVG | REPORT DAILY MAX | | | | | |
| SOLIDS, TOTAL SUSPENDED D0530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 3313 | 4852 | KG/DAY | | 112 | 164 | MG/L | | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO/AVG | REPORT DAILY MAX | | | REPORT MO/AVG | REPORT DAILY MAX | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDOCK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671  NUMBER 647-2603

DATE
YEAR  MO  DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

PERMITTEE NAME/ADDRESS (Include Facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM: YEAR 2004 MO 12 DAY 1
TO: YEAR 2004 MO 12 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS (M1) | MINIMUM | AVERAGE | MAXIMUM | UNITS | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3442 | 3936 | KG/DAY | | 117 | 133 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | | | MO AVG | DAILY MX | (19) | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.73 | | 8.32 | SU | | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | MINIMUM | | MAXIMUM | (12) | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3313 | 4852 | KG/DAY | | 3313 | 4852 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | (01) | | MO AVG | DAILY MX | (19) | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 5.6 | 11.0 | ML/L | | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | MO AVG | DAILY MX | (26) | WEEKLY | DISCRETE |
| OIL AND GREASE 00582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 896 | 896 | KG/DAY | | 30.3 | 30.3 | MG/L | | 1/31 | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (01) | | REPORT MO AVG | REPORT DAILY MX | | ONCE/MONTH | DISCRETE |
| FLOW IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.82 | 7.82 | MGD | | | | | | 31/31 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (03) | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

TYPED OR PRINTED
DAVID R. CRADDICK
GENERAL MANAGER, GWA

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE 671 647-2603
AREA CODE | NUMBER

DATE
YEAR | MO | DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.
FLOW READINGS ARE ESTIMATE PROVIDED BY PLANT.

AGANA TREATMENT PLANT WASTEWATER RESULTS
FOR THE MONTH OF JANUARY 2007

**INFLUENT**

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW mgd |
|------|------|------|------|------|------|------|------|
| 1 | | | | | | | 7.82 |
| 2 | 7.86 | 12 | 109 | 8.0 | 355 | 3239 | 7.82 |
| 3 | | | | | | | 7.82 |
| 4 | | | | | | | 7.82 |
| 5 | | | | | | | 7.82 |
| 6 | | | | | | | 7.82 |
| 7 | | | | | | | 7.82 |
| 8 | | | | | | | 7.82 |
| 9 | | | | | | | 7.82 |
| 10 | 7.38 | 124 | 144 | 6.0 | 3668 | 4260 | 7.82 |
| 11 | | | | | | | 7.82 |
| 12 | | | | | | | 7.82 |
| 13 | | | | | | | 7.82 |
| 14 | | | | | | | 7.82 |
| 15 | | | | | | | 7.82 |
| 16 | | | | | | | 7.82 |
| 17 | 7.79 | 68 | 89 | 7.0 | 2012 | 2641 | 7.82 |
| 18 | | | | | | | 7.82 |
| 19 | | | | | | | 7.82 |
| 20 | | | | | | | 7.82 |
| 21 | | | | | | | 7.82 |
| 22 | | | | | | | 7.82 |
| 23 | | | | | | | 7.82 |
| 24 | 8.02 | | 106 | 5.0 | | 3124 | 7.82 |
| 25 | | | | | | | 7.82 |
| 26 | | | | | | | 7.82 |
| 27 | | | | | | | 7.82 |
| 28 | | | | | | | 7.82 |
| 29 | | | | | | | 7.82 |
| 30 | | | | | | | 7.82 |
| 31 | 7.78 | 156 | 53.4 | 6.5 | 4615 | 1580 | 7.82 |
| AVG | 7.77 | 90 | 100 | 6.50 | 2662 | 3316 | 7.82 |
| MIN | 7.12 | 12 | 53 | 5.00 | 355 | 1580 | 7.82 |
| MAX | 8.02 | 156 | 144 | 8.0 | 4615 | 4260 | 7.82 |

| | | PERMIT REQUIREMENTS | | | | | MAX 12 |

**EFFLUENT**

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|------|------|------|------|------|------|------|------|------|------|------|
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | 19.6 | 580 |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | | | | | | | | | | |
| 22 | | | | | | | | | | |
| 23 | | | | | | | | | | |
| 24 | | | | | | | | | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | | | | | | | | | | |
| 29 | | | | | | | | | | |
| 30 | | | | | | | | | | |
| 31 | | | | | | | | | | |
| AVG | | | | | | | | | 19.6 | 580 |
| MIN | | | | | | | | | 19.6 | 580 |
| MAX | | | | | | | | | 19.6 | 580 |

| | monthly avg | 7MIN | 60 | 80 | 1 | 2725 | 3834 | | | |
| | day max | 9MAX | 120 | 160 | 2 | 5450 | 7288 | | | |

**VIOLATIONS**

INFLUENT AND EFFLUENT COMPOSITE SAMPLES COMBINED AND ANALYZED AS A SINGLE SAMPLE.
NO TREATMENT DUE TO PLANT RENOVATION.
FLOW READING IS AN ESTIMATE PROVIDED BY PLANT DRC
SUSPENDED SOLIDS NOT AVAILABLE 01/24/07 DUE TO TECH ERROR

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

NOTE: Read instructions before completing this form.

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087

DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM YEAR 2007 MO 2 DAY 1 TO YEAR 2007 MO 2 DAY 28

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 3276 | 3718 | KG/ DAY | | 114 | 126 | MG/L | | 4/28 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (01) | | REPORT MO AVG | REPORT DAILY MX | (19) | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 3408 | 4497 | KG/ DAY | | 115 | 152 | MG/L | | 3/28 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (01) | | REPORT MO AVG | REPORT DAILY MX | (19) | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671   NUMBER 647-2403

DATE
YEAR   MO   DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See Q & M Report)
VIOLATIONS
NO TREATMENT AT PLANT DUE TO REMOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087

DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM  YEAR 2007  MO 2  DAY 1   TO   YEAR 2007  MO 2  DAY 28

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3270 | 3718 | KG/ DAY (91) | | | 114 | 126 | MG/L (19) | | 4/28 | COMPOSITE |
| | PERMIT REQUIREMENT | 30 DAY AVG | DAILY MX | | | | 30 DAY AVG | DAILY MX | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.82 | 7.92 | | | 7.52 | | 7.87 | SU (12) | | 4/28 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | MINIMUM | | MAXIMUM | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3408 | 4497 | KG/ DAY (91) | | | 115 | 152 | MG/L (19) | | 3/28 | COMPOSITE |
| | PERMIT REQUIREMENT | 30 DAY AVG | DAILY MX | | | | 30 DAY AVG | DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | | 5.5 | 7.0 | ML/L (26) | | 4/28 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | 30 DAY AVG | DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 00552 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 754 | 754 | KG/ DAY (91) | | | 25.5 | 25.5 | MG/L | | 1/28 | DISCRETE |
| | PERMIT REQUIREMENT | REPORT 30 DAY AVG | REPORT DAILY MX | | | | REPORT 30 DAY AVG | REPORT DAILY MX | | | ONCE MONTHLY | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.82 | 7.92 | MGD (03) | | | | | | | 2/28 | HOURLY |
| | PERMIT REQUIREMENT | REPORT 30 DAY AVG | REPORT DAILY MX | | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

TYPED OR PRINTED
DAVID R. CRADDICK
GENERAL MANAGER, GWA

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671   NUMBER 847-7803

DATE
YEAR   MO   DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
NO TREATMENT AT PLANT DUE TO RENOVATIONS. INFLUENT AND EFFLUENT SAMPLES COMBINED AND ANALYZED AS ONE SAMPLE.
FLOW READINGS ARE ESTIMATE PROVIDED BY PLANT.
SUSPENDED SOLIDS NOT AVAILABLE 02/21/07 DUE TO TECH ERROR

**NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)**
**DISCHARGE MONITORING REPORT (DMR)**

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME - Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Higatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: IN F A

MONITORING PERIOD

| | YEAR | MO | DAY |
|---|---|---|---|
| FROM | 2007 | 3 | 1 |
| TO | 2007 | 3 | 31 |

NOTE - Read instructions before completing this form.

| PARAMETER | | | QUANTITY OR LOADING | | | UNITS (01) | QUANTITY OR CONCENTRATION | | | UNITS (18) | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | MAXIMUM | MINIMUM | | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY [20 DEG. C] 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | | 3545 | 5502 | | KG/ DAY (01) | | 135 | 196 | MG/L (19) | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | | REPORT MO AVG | REPORT DAILY MX | | KG/ DAY (91) | | REPORT MO AVG | REPORT DAILY MX | MG/L | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | | 3826 | 3005 | | KG/ DAY (91) | | 129 | 132 | MG/L | | 3/31 | COMPOSITE |
| | PERMIT REQUIREMENT | | REPORT MO AVG | REPORT DAILY MX | | KG/ DAY | | REPORT MO AVG | REPORT DAILY MX | MG/L | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | TELEPHONE | | | DATE | | |
|---|---|---|---|---|---|---|---|
| DAVID R. CRADDICK GENERAL MANAGER, GWA | | | 671 | 647-2603 | | | |
| TYPED OR PRINTED | SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | | AREA CODE | NUMBER | YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See 8 M Report)

VIOLATIONS
SAMPLES FROM 03/07/07 WERE TAKEN BEFORE PLANT WENT BACK ONLINE. INFLUENT AND EFFLUENT SAMPLES COMBINED & ANALYZED AS SINGLE SAMPLE ON THIS DATE.
INFLUENT SUSPENDED SOLIDS RESULTS UNAVAILABLE 03/14/07 DUE TO TECH ERROR

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-86

NOTE: Read instructions before completing this form.

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Higatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

| | | | PERMIT NUMBER | | | DISCHARGE NUMBER | | |
|---|---|---|---|---|---|---|---|---|
| | | | GU0020087 | | | 001 A | | |

MONITORING PERIOD

| FROM | YEAR 2007 | MO 3 | DAY 1 | TO | YEAR 2007 | MO 3 | DAY 31 |
|---|---|---|---|---|---|---|---|

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2542 | 2603 | KG/ DAY | | 85 | 88 | MGL | 1 | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | (96) | | DAILY AVG | DAILY MX | (18) | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.39 | | 7.59 | SU | | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | MINIMUM | | MAXIMUM | (18) | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2524 | 3077 | KG/ DAY | | 85 | 104 | MGL | 1 | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | (96) | | MO AVG | DAILY MX | (18) | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 0.0 | 0.0 | 0.0 | ML/L | | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | MO AVG | MO AVG | DAILY MX | (24) | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 787 | 787 | KG/ DAY | | 26.6 | 26.6 | MGL | | ONCE/ MONTH | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (96) | | REPORT DLY AVG | REPORT DLY MX | | | | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50060 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 7.82 | 7.82 | MGD | | | | | | 31/31 | HOURLY |
| | PERMIT REQUIREMENT | REPORT | REPORT | (93) | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
671 | 647-2603
AREA CODE | NUMBER

DATE
MO | DAY | YEAR

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS
FLOW READINGS ARE ESTIMATE PROVIDED BY DRC IN CHARGE
SUSPENDED SOLIDS (mg/l) MONTHLY AVERAGE
BOD (mg/l) MONTHLY AVERAGE

**AGANA TREATMENT PLANT WASTEWATER RESULTS**
**FOR THE MONTH OF APRIL 2007**

## INFLUENT

| DATE | pH | SUSP SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP SOLIDS kg/day | BOD kg/day | FLOW mgd |
|------|------|------|------|------|------|------|------|
| 1 |  |  |  |  |  |  | 4.80 |
| 2 |  |  |  |  |  |  | 5.70 |
| 3 |  |  |  |  |  |  | 5.00 |
| 4 | 7.75 | 128 | 143 | 4.0 | 2857 | 3181 | 5.60 |
| 5 |  |  |  |  |  |  | 5.60 |
| 6 |  |  |  |  |  |  | 5.60 |
| 7 |  |  |  |  |  |  | 7.70 |
| 8 |  |  |  |  |  |  | 5.00 |
| 9 |  |  |  |  |  |  | 5.00 |
| 10 |  |  |  |  |  |  | 5.00 |
| 11 | 7.76 | 120 | 109 | 3.5 | 2270 | 2062 | 4.80 |
| 12 |  |  |  |  |  |  | 5.20 |
| 13 |  |  |  |  |  |  | 4.60 |
| 14 |  |  |  |  |  |  | 5.20 |
| 15 |  |  |  |  |  |  | 4.90 |
| 16 |  |  |  |  |  |  | 4.90 |
| 17 |  |  |  |  |  |  | 5.10 |
| 18 | 7.44 | 88 | 93 | 6.0 | 1631 | 1724 | 4.90 |
| 19 |  |  |  |  |  |  | 5.10 |
| 20 |  |  |  |  |  |  | 5.20 |
| 21 |  |  |  |  |  |  | 4.90 |
| 22 |  |  |  |  |  |  | 5.20 |
| 23 |  |  |  |  |  |  | 5.20 |
| 24 |  |  |  |  |  |  | 4.80 |
| 25 | 7.56 | 104 | 166 | 5.0 | 1888 | 2637 | 4.80 |
| 26 |  |  |  |  |  |  | 5.10 |
| 27 |  |  |  |  |  |  | 5.10 |
| 28 |  |  |  |  |  |  | 5.60 |
| 29 |  |  |  |  |  |  | 4.80 |
| 30 |  |  |  |  |  |  | 4.80 |
| AVG | 7.63 | 110 | 125 | 4.63 | 2162 | 2322 | 5.21 |
| MIN | 7.44 | 88 | 93 | 3.50 | 1631 | 1724 | 4.80 |
| MAX | 7.76 | 128 | 166 | 6.0 | 2857 | 3181 | 7.70 |

| MAX | 12 |
|-----|----|

**PERMIT REQUIRMENTS**

## EFFLUENT

| DATE | pH | SUSP SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP SOLIDS kg/day | BOD kg/day | SUSP SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|------|------|------|------|------|------|------|------|------|------|------|
| 1 |  |  |  |  |  |  |  |  |  |  |
| 2 |  |  |  |  |  |  |  |  |  |  |
| 3 |  |  |  |  |  |  |  |  |  |  |
| 4 | 7.55 | 76 | 96 | 0.1 | 1696 | 2132 | 41% | 33% |  |  |
| 5 |  |  |  |  |  |  |  |  |  |  |
| 6 |  |  |  |  |  |  |  |  |  |  |
| 7 |  |  |  |  |  |  |  |  |  |  |
| 8 |  |  |  |  |  |  |  |  |  |  |
| 9 |  |  |  |  |  |  |  |  |  |  |
| 10 |  |  |  |  |  |  |  |  |  |  |
| 11 | 7.55 | 52 | 71 | 0.1 | 984 | 1343 | 57% | 35% |  |  |
| 12 |  |  |  |  |  |  |  |  |  | 407 |
| 13 |  |  |  |  |  |  |  |  | 22.4 |  |
| 14 |  |  |  |  |  |  |  |  |  |  |
| 15 |  |  |  |  |  |  |  |  |  |  |
| 16 |  |  |  |  |  |  |  |  |  |  |
| 17 |  |  |  |  |  |  |  |  |  |  |
| 18 | 7.24 | 48 | 103 | 0.2 | 890 | 1914 | 45% | -11% |  |  |
| 19 |  |  |  |  |  |  |  |  |  |  |
| 20 |  |  |  |  |  |  |  |  |  |  |
| 21 |  |  |  |  |  |  |  |  |  |  |
| 22 |  |  |  |  |  |  |  |  |  |  |
| 23 |  |  |  |  |  |  |  |  |  |  |
| 24 |  |  |  |  |  |  |  |  |  |  |
| 25 | 7.47 | 52 | 76 | 0.0 | 944 | 1380 | 50% | 51% |  |  |
| 26 |  |  |  |  |  |  |  |  |  |  |
| 27 |  |  |  |  |  |  |  |  |  |  |
| 28 |  |  |  |  |  |  |  |  |  |  |
| 29 |  |  |  |  |  |  |  |  |  |  |
| 30 |  |  |  |  |  |  |  |  |  |  |
| AVG | 7.45 | 57 | 86 | 0.1 | 1128 | 1692 | 48% | 27% | 22.4 | 407 |
| MIN | 7.24 | 48 | 71 | 0.0 | 890 | 1343 | 41% | -11% | 22.4 | 407 |
| MAX | 7.55 | 76 | 103 | 0.2 | 1696 | 2132 | 57% | 51% | 22.4 | 407 |

| | | SUSP SOLIDS | BOD | SETTL SOLID |
|------|------|------|------|------|
| monthly avg | 7MIN | 60 | 80 | 1 |
| daily max | 9MAX | 120 | 160 | 2 |

**VIOLATIONS**
**BOD (mg/l) MONTHLY AVERAGE**

TO AGANA STP                                              Fax: 647-4010

**AGANA TREATMENT PLANT WASTEWATER RESULTS**
**FOR THE MONTH OF MAY 2007**

## INFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW mgd |
|------|------|------|------|------|------|------|------|
| 1 | | | | | | | 4.90 |
| 2 | 7.83 | 92 | 108 | 5.0 | 1601 | 1684 | 4.60 |
| 3 | | | | | | | 5.60 |
| 4 | 7.82 | 124 | 104 | 5.1 | 2158 | 1801 | 4.60 |
| 5 | | | | | | | 5.20 |
| 6 | | | | | | | 5.10 |
| 7 | | | | | | | 5.10 |
| 8 | | | | | | | 5.00 |
| 9 | 7.50 | 84 | 100 | 6.5 | 1621 | 1925 | 5.10 |
| 10 | | | | | | | 5.10 |
| 11 | 7.52 | 96 | 113 | 4.0 | 1961 | 2314 | 5.40 |
| 12 | | | | | | | 5.30 |
| 13 | | | | | | | 5.00 |
| 14 | | | | | | | 5.00 |
| 15 | | | | | | | 5.20 |
| 16 | 7.51 | 84 | 71 | 4.0 | 1684 | 1419 | 5.30 |
| 17 | | | | | | | 5.20 |
| 18 | 7.51 | 40 | 78 | 4.0 | 772 | 1512 | 5.10 |
| 19 | | | | | | | 5.00 |
| 20 | | | | | | | 5.10 |
| 21 | | | | | | | 5.00 |
| 22 | | | | | | | 5.00 |
| 23 | 7.47 | 60 | 72 | 8.5 | 1158 | 1389 | 5.10 |
| 24 | | | | | | | 5.10 |
| 25 | 7.72 | 72 | 74 | 3.5 | 1416 | 1463 | 5.20 |
| 26 | | | | | | | 5.50 |
| 27 | | | | | | | 5.60 |
| 28 | | | | | | | 5.20 |
| 29 | | | | | | | 4.40 |
| 30 | 8.14 | 88 | 105.25 | 11.0 | 1764 | 2110 | 5.30 |
| 31 | | | | | | | 5.10 |
| AVG | 7.67 | 82 | 92 | 5.73 | 1571 | 1749 | 5.11 |
| MIN | 7.47 | 40 | 71 | 3.50 | 772 | 1389 | 4.40 |
| MAX | 8.14 | 124 | 113 | 11.0 | 2158 | 2314 | 5.60 |

## EFFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|------|------|------|------|------|------|------|------|------|------|------|
| 1 | | | | | | | | | | |
| 2 | 7.96 | 28 | 97 | 0.0 | 487 | 1692 | 70% | 10% | 11.9 | 207 |
| 3 | | | | | | | | | | |
| 4 | 7.52 | 80 | 83 | 0.3 | 1392 | 1444 | 35% | 20% | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | 7.26 | 28 | 85 | 0.2 | 540 | 1636 | 67% | 15% | | |
| 10 | | | | | | | | | | |
| 11 | 7.34 | 64 | 77 | 0.1 | 1307 | 1568 | 33% | 32% | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | 7.36 | 32 | 100 | 0.2 | 642 | 2010 | 62% | -42% | | |
| 17 | | | | | | | | | | |
| 18 | 7.60 | 44 | 60 | 0.1 | 849 | 1152 | -10% | 24% | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | | | | | | | | | | |
| 22 | | | | | | | | | | |
| 23 | 7.39 | 44 | 67 | 0.4 | 849 | 1300 | 27% | 6% | | |
| 24 | | | | | | | | | | |
| 25 | 7.54 | 40 | 49 | 0.2 | 787 | 955 | 44% | 34% | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | | | | | | | | | | |
| 29 | | | | | | | | | | |
| 30 | 7.55 | 32 | 102 | 0.5 | 642 | 2045 | 64% | 3% | | |
| 31 | | | | | | | | | | |
| AVG | 7.50 | 44 | 80 | 0.2 | 833 | 1534 | | 11% | 11.9 | 207 |
| MIN | 7.26 | 28 | 49 | 0.0 | 487 | 955 | -10% | -42% | 11.9 | 207 |
| MAX | 7.96 | 80 | 102 | 0.5 | 1392 | 2045 | 70% | 34% | 11.9 | 207 |
| | | | | | 2725 | 3634 | | | | |
| | | | | | 5450 | 7288 | | | | |

**PERMIT REQUIREMENTS**

Influent:

| | FLOW |
|---|---|
| MAX | 12 |

Effluent:

| | pH | SUSP. SOLIDS | BOD |
|---|---|---|---|
| monthly avg | 7 MIN / 9 MAX | 60 | 80 |
| daily max | | 120 | 160 |

**VIOLATIONS**

## AGAMA TREATMENT PLANT WASTEWATER RESULTS
### FOR THE MONTH OF JUNE 2007

**INFLUENT**

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW mgd |
|---|---|---|---|---|---|---|---|
| 1 | 7.60 | 96 | 87 | 6.5 | 1852 | 1671 | 5.10 |
| 2 | | | | | | | 5.00 |
| 3 | | | | | | | 5.00 |
| 4 | | | | | | | 5.10 |
| 5 | | | | | | | 5.10 |
| 6 | 7.48 | 92 | 93 | 4.0 | 1810 | 1825 | 5.20 |
| 7 | 7.27 | 92 | 84 | 6.5 | 1740 | 1589 | 5.30 |
| 8 | | | | | | | 5.00 |
| 9 | | | | | | | 4.90 |
| 10 | | | | | | | 4.90 |
| 11 | | | | | | | 4.90 |
| 12 | | | | | | | 4.90 |
| 13 | 7.57 | 30 | 44 | 3.5 | 579 | 844 | 5.10 |
| 14 | | | | | | | 5.00 |
| 15 | 7.61 | 71.6 | 102 | 3.0 | 1361 | 1568 | 5.10 |
| 16 | | | | | | | 4.50 |
| 17 | | | | | | | 5.10 |
| 18 | | | | | | | 5.50 |
| 19 | | | | | | | 5.10 |
| 20 | 7.54 | 94 | 74 | 5.0 | 1814 | 1433 | 5.10 |
| 21 | | | | | | | 5.30 |
| 22 | 7.56 | 72 | 66 | 5.0 | 1352 | 1239 | 5.00 |
| 23 | | | | | | | 4.90 |
| 24 | | | | | | | 4.90 |
| 25 | | | | | | | 5.30 |
| 26 | | | | | | | 5.30 |
| 27 | 7.50 | 93.2 | 108 | 5.5 | 1763 | 2043 | 5.10 |
| 28 | 7.65 | 72 | 84 | 3.5 | 1352 | 1621 | 5.10 |
| 29 | | | | | | | 5.00 |
| 30 | | | | | | | 5.00 |
| AVG | 7.53 | 80 | 82 | 4.72 | 1536 | 1510 | 5.05 |
| MIN | 7.27 | 30 | 44 | 3.00 | 579 | 844 | 4.50 |
| MAX | 7.65 | 96 | 108 | 6.5 | 1852 | 2043 | 5.50 |

**PERMIT REQUIRMENTS:** FLOW MAX 12

**EFFLUENT**

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7.37 | 56 | 68 | 0.6 | 1080 | 1304 | 42% | 22% | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | 7.24 | 40 | 62 | 0.3 | 787 | 1229 | 57% | 33% | 14.4 | 289 |
| 7 | | | | | | | | | | |
| 8 | 7.09 | 56 | 65 | 0.5 | 1059 | 1224 | 39% | 23% | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | 7.37 | 60 | | 0.1 | 1165 | | -101% | | | |
| 14 | | | | | | | | | | |
| 15 | 7.41 | 57 | 63 | 0.0 | 1096 | 1210 | 21% | 39% | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | 7.35 | 27 | 49 | 0.1 | 525 | 952 | 71% | 34% | | |
| 21 | | | | | | | | | | |
| 22 | 7.17 | 47 | 51 | 0.2 | 885 | 967 | 35% | 22% | | |
| 23 | | | | | | | | | | |
| 24 | | | | | | | | | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | 7.18 | 40 | | 0.5 | 764 | | 57% | | | |
| 28 | | | | | | | | | | |
| 29 | 7.48 | | 69 | 0.1 | | 1331 | | 18% | | |
| 30 | | | | | | | | | | |
| AVG | 7.30 | 48 | 61 | 0.3 | 920 | 1174 | | | 14.4 | 289 |
| MIN | 7.09 | 27 | 49 | 0.0 | 525 | 952 | -101% | 18% | 14.4 | 289 |
| MAX | 7.48 | 60 | 69 | 0.6 | 1165 | 1331 | 71% | 39% | 14.4 | 289 |

Totals: SUSP. SOLIDS kg/day 2725 / 5450 — BOD kg/day 3634 / 7268

PERMIT REQUIREMENTS (effluent):
monthly avg: 7 MIN — SUSP. SOLIDS 60, BOD 80, SETTL 1
daily max: 9 MAX — SUSP. SOLIDS 120, BOD 160, SETTL 2

**VIOLATIONS:**
EFFLUENT BOD NOT AVAILABLE 06/13/07 DUE TO TECH ERROR
EFFLUENT BOD NOT AVAILABLE 06/27/07. DID NOT MEET QC DEPLETION CRITERIA.
SUSPENDED SOLIDS NOT AVAILABLE 06/29/07 DUE TO TECH ERROR

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 3-30-98

PERMITTEE NAME/ADDRESS (Include Facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3015
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 94932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: INF-A

MONITORING PERIOD
FROM  YEAR 2007  MO 9  DAY 1  TO  YEAR 2007  MO 9  DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEWI/INFLUENT | SAMPLE MEASUREMENT | 1277 | 2415 | KG/ DAY (M) | | 57 | 114 | MG/L (M) | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEWI/INFLUENT | SAMPLE MEASUREMENT | 2273 | 7937 | KG/ DAY (M) | | 117 | 399 | MG/L (M) | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | | TELEPHONE | | | DATE | | |
|---|---|---|---|---|---|---|---|---|
| DAVID R. CRADDICK GENERAL MANAGER, GWA | | | 671 | 647-2603 | | | | |
| | | | AREA CODE | NUMBER | | MO | YEAR | DAY |
| TYPED OR PRINTED | SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | | | | | | | |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES) DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-85

NOTE: Read instructions before completing this form.

**PERMITTEE NAME/ADDRESS** (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Agana, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020007
DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM YEAR 2007 MO 4 DAY 1 TO YEAR 2007 MO 4 DAY 30

| PARAMETER | | QUANTITY OR LOADING | | | UNITS | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | MINIMUM | (91) | MINIMUM | AVERAGE | MAXIMUM | (19) | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 100.3 | 1146 | | KG/ DAY | | 56 | 70 | MG/L | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | | | | MO AVG | DAILY MX | | | | |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 7.13 | | 7.80 | SU | | WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | | | | | MINIMUM | | MAXIMUM | | | | |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 961 | 1130 | | KG/ DAY | | 50 | 65 | MG/L | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | | | | MO AVG | DAILY MX | | | | |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | | 0.3 | 0.5 | ML/L | | WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | MO AVG | DAILY MX | | | | MO AVG | DAILY MX | | | | |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 201 | 201 | | KG/ DAY | | 10.2 | 10.2 | MG/L | | ONCE/ MONTH | DISCRETE |
| | PERMIT REQUIREMENT | MO AVG | REPORT DAILY MX | | | | REPORT MO AVG | REPORT DAILY MX | | | | |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 5.16 | 5.80 | | MGD | | | | | | 30/30 | CONTINUOUS |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | CONTINUOUS | HOURLY |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671  NUMBER 647-2603

DATE
YEAR | MO | DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See D & R Report)
VIOLATIONS

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 5-20-86

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020087
DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM YEAR 2007 MO 8 DAY 1  TO  YEAR 2007 MO 8 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | | (91) | MINIMUM | AVERAGE | MAXIMUM | | (19) | | |
| BOD, 5 DAY (20 DEG. C) 00310 0 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | | | | | | | | | | | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | KGI DAY | | REPORT MO AVG | REPORT DAILY MX | MGL | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00630 0 0 0 RAW SEW/ INFLUENT | SAMPLE MEASUREMENT | | | | | | | | | | | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | KG/ DAY | | REPORT MO AVG | REPORT DAILY MX | MGL | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671  NUMBER 647-7603

DATE
YEAR  MO  DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

**PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Agana Sewage Treatment Plant
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Agana Sewage Treatment Plant
LOCATION: Agana, Guam 96932

PERMIT NUMBER: GU0020547
DISCHARGE NUMBER: 001 A

**MONITORING PERIOD**

| | YEAR | MO | DAY |
|---|---|---|---|
| FROM | 2007 | 8 | 1 |
| TO | 2007 | 8 | 31 |

NOTE: Read Instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | | |
| BOD, 5 DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 0 | 0 | | | 60 | 75 | | | | | COMPOSITE |
| | PERMIT REQUIREMENT | 3654 MO AVG | 7726.5 DAILY MX | KG/DAY (01) | | 60 MO AVG | 80 DAILY MX | MGL (12) | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.03 | | 7.79 | | | | | DISCRETE |
| | PERMIT REQUIREMENT | | | | 6.0 MINIMUM | | 9.0 MAXIMUM | SU (12) | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00630 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 0 | 0 | | | 44 | 61 | | | | | COMPOSITE |
| | PERMIT REQUIREMENT | 2725 MO AVG | 5450 DAILY MX | KG/DAY (01) | | 80 MO AVG | 120 DAILY MX | MGL (12) | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 0.2 | 0.5 | | | | | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | KG/DAY (01) | | REPORT MO AVG | REPORT DAILY MX | MUL (24) | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | REPORT MO AVG | 0.00 | MINIMUM | | 81.9 | 81.9 | | | | | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | KG/DAY (03) | | REPORT MO AVG | REPORT DAILY MX | MGL | | 30/30 | HOURLY |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | | | | | | | CONTINUOUS |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | MGD (03) | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

**NAME/TITLE PRINCIPAL EXECUTIVE OFFICER**

DAVID R. CRADDICK
GENERAL MANAGER, GWA

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

| SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | TELEPHONE | | | DATE | | |
|---|---|---|---|---|---|---|
| | AREA CODE | NUMBER | | | | |
| | 671 | 647-2603 | | MO | YEAR | DAY |

**COMMENT AND EXPLANATION OF ANY VIOLATIONS (See D II Report)**

VIOLATIONS

United States
Environmental Protection
Agency

Regional Administrator
75 Hawthorne Street
San Francisco, CA 94105-3901

Region 9, Arizona, California
Hawaii, Nevada, Guam
American Samoa,
Northern Mariana Islands

 **Environmental News**

**For Immediate Release: September 4, 2007**
Contact: Dean Higuchi, 808-541-2711, higuchi.dean@epa.gov

### EPA fines Guam Waterworks Authority $40,000 for failure to meet federal court order to improve wastewater system

**HONOLULU** – The U.S. Environmental Protection Agency today fined the Guam Waterworks Authority $40,000 for failing to fully comply with a 2003 court order to repair and improve its wastewater system.

GWA failed to meet April and June 2007 deadlines for the Agana sewage treatment plant and a May 2007 deadline for the Northern District plant to ensure compliance with federal permit limits from these two facilities.

"GWA needs to comply with the order to determine the proper level of wastewater treatment it needs to meet its federal permits," said Alexis Strauss, the EPA's director for water programs in the Pacific Southwest region. "This step and renovating the pump stations will go a long way to ensuring properly treated wastewater for Guam."

In May, GWA informed the EPA the compliance determination for Agana would be completed in February 2008 and the Northern District in July 2008, over a year after the court ordered deadlines requiring GWA to demonstrate that these renovated facilities can comply with their federal permit limits. GWA recently completed a full renovation of its Agana STP and a partial renovation of its Northern District STP.

GWA also needed to complete renovations at the Agana Main Sewer Pump Station by June 2007, but informed the EPA that work was delayed and the scheduled completion date would be over a year past the deadline in September 2008.

The stipulated order requires penalties to be assessed for the missed deadlines and provides for additional penalties until the work is complete.

Guam's wastewater treatment system is being upgraded to ensure proper disposal of treated wastewater and to prevent any spills and overflows.

\#   \#   \#

# EXHIBIT C



# GUAM WATERWORKS AUTHORITY
### Good Water Always
578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605 Fax: (671) 646-2335

April 30, 2007

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

Pursuant to further compliance to the STIPULATED ORDER FOR PRELIMINARY RELIEF; CIVIL CASE No. 02-00035 as amended, The Guam Waterworks Authority herewith presents the reports required on or following this date as ordered, adjudged and decreed items numbered: 42 Hagåtña STP Renovation: Performance Evaluation Report.

## CERTIFICATION STATEMENT

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

_____

**PAUL J. KEMP, M. S.**
Assistant General Manager for Compliance and Safety

**April 30, 2007**
**Date**

# EXHIBIT D

CC:  Barry Pollock, Region 9, USEPA
      Lorilee T. Crisostomo, Guam EPA
      Manuel Minas, Guam EPA
      Angel Marquez, Guam EPA
      Benny Cruz, Guam EPA
      Consolidated Commission of Utilities
          Simon Sanchez
          Benigno M. Polomo
          Gloria Nelson
          Tom Ada
          Eloy Hara
          GMCUS
          Bernadette Lou Sablan
          Art Perez
          Heidi Ballendorf
          Yvonne M. Cruz
          Doris J. Young
      GWA GM
      GWA Chief Engineer
      GWA CFO
      GWA AGM A&C
      GWA AGM P&T
      GWA AGM C&D
      GWA AGM C&S
      GWA Legal Counsel
      Veolia Water PMC
          Rick Unpingco
          Cathy Manglona
      GPA GM
      Sylvia I. Ipanag
      Helen Kennedy for the Attorney General of Guam
      Office of the Public Auditor
      Public Utilities Commission
      File



# Performance Evaluation of the GWA
# Hagåtña Wastewater Treatment Facility

## Background

On October 19, 2006, U.S. DOJ in agreement with GWA and EPA filed a Stipulation Amended Stipulated Order for Preliminary Relief with the District Court of Guam, Civil No. 02-00035 (SO). Paragraph 42 of the SO requires GWA to complete all renovations of the Hagåtña Wastewater Treatment Plant (HWWTP) by March 2, 2007. This work was completed and EPA was duly notified. Paragraph 42 further requires that after completion of the corrective action, GWA must conduct a performance evaluation to determine whether or not advanced primary treatment is needed to comply with NPDES permit effluent limitations. This is to be completed by April 30, 2007 and a report submitted to EPA. This document and its attachments are submitted pursuant to this requirement.

## Summary

GWA does not believe that two months of operation are adequate to fully optimize and assess the treatment capabilities of the newly rehabilitated plant. GWA is providing a detailed plan and schedule for needed optimization and realistic assessment.

## Data Review

The Hagåtña WWTP exceeded only the monthly average for BOD5 and TSS for the two months that the plant has been on line. The data has shown an overall downward trend in the two months, and is very close to NPDES permit compliance.

BOD5 is within or in exceedence of the expected removal percentages for primary treatment, and based upon effluent values, maintaining that removal rate will allow the plant to continue to meet the removal efficiencies.1

TSS removal efficiencies are slightly below the expected removal percentages for primary treatment. Increasing removal efficiencies to industry standard will bring the effluent well below the permit requirements.

---

1 This refers to the expected treatment process removal efficiencies (Metcalf & Eddy, *Wastewater Engineering Treatment Disposal Reuse*, 3rd Edition), not to the BOD & TSS removal efficiencies of 30% required by the 301(h) waiver, which the plant currently meets.

**Probable Causes**

Potential causes of the minor exceedences include excessive loading of inorganic material (grit) and non-optimal plant operations. GWA has plans to address both issues quickly.

**Planned Actions**

*Optimize plant operations*

Prior to March 2007, the Hagåtña WWTP had not operated correctly for many years. The plant equipment has now been replaced and, in some cases, updated. During the first two months of operation, the mechanical equipment was tested and optimized. Mechanical issues that have developed during early operation of the new equipment are still undergoing final adjustment, which is normal for a project of this scope.

Now that the mechanical equipment is functioning to specifications, GWA has begun to implement monitoring based process controls in order to optimize plant operation. This includes a series of laboratory analyses at various points in the process and a review of other process information, such as clarifier weir overflow rates and sludge removal volumes.

A formal plan, including schedule and target dates, is attached (See Attachment A). The list of process control calculations is included in Attachment B. These calculations will be completed as the appropriate laboratory data identified in the schedule is collected.

*Install Grit Removal*

GWA is making the addition of grit removal facilities to the Hagåtña WWTP influent a priority, both in order to improve processing of wastewater and biosolids and to protect the new plant equipment. Final decisions regarding the type of equipment and the location of the installation are currently in review, along with an evaluation of costs, availability of funding, or alternative funding options. A preliminary timeline for the installation of a grit removal system is attached; this timeline may be subject to change based upon the type and location of the system to be installed.

**Follow-Up**

It is expected that the above actions will bring the Hagåtña WWTP into full compliance with all parameters of its NPDES permit. In the unlikely event that three months of DMR data after the completion of these actions shows

continuing noncompliance, GWA will commence chemical evaluation testing for optimization analysis and design of a possible system for chemically enhanced advanced primary treatment. In this case, GWA would also complete an economic cost benefit analysis to compare long term chemical and O&M costs vs. capital debt service and O&M costs of a secondary wastewater treatment plant.

GWA proposes to provide U.S. EPA with monthly updates on the schedule in Attachment A. This will allow EPA to regularly evaluate progress and preserve assurances that GWA is maintaining the schedule. Should EPA choose to propose an alternate schedule of reporting, GWA will be pleased to comply.

GWA strongly feels that any chemical evaluation testing completed prior to completion of the actions discussed above would not provide meaningful results, and that such results would be rendered obsolete once the operating optimization has been completed.

Once the plant has been adjusted to its best performance, GWA will continue process monitoring and to maintain the highest standard of operational efficiency.

Attachment A: Performance Improvement Plan and Schedule

The attached Gantt chart provides a schedule for the actions discussed in this report. These include increased sampling and analysis and operating adjustments based on them.

GWA plans to create a dedicated wastewater laboratory at the Hagåtña WWTP. This will allow for rapid process sampling and analysis in order to adjust and control plant operations. Until this laboratory is fully operational, some additional sampling will be conducted at the main Dededo laboratory. Sampling will be conducted in accordance with the schedule in Table 1. The Gantt chart provides a detailed schedule for this sampling and analysis.

The Gantt chart also has a preliminary schedule for addition of grit removal to the Hagåtña WWTP. Rather than merely replacing the airlift system at the Agana Main Pump Station, GWA is looking for a more effective, longer term solution.

In the unlikely event that after these efforts are implemented the plant still does not meet the permit requirements, GWA has also provided a schedule for chemical evaluation testing for chemically enhanced advanced primary treatment and a concurrent economic analysis to determine if the annual debt service on the capitalization of a secondary treatment facility would be more economical for the Island's ratepayers.

## Table 1: Process Control Sampling Hagåtña Plant

**Until Hagåtña lab is on-line & composite samplers have been obtained**

| Parameter | Type of sample | Test | Units | S1 | S2 |
|---|---|---|---|---|---|
| Location | | | | Influent (w/o Returns) | Effluent |
| Type of sample | | | | Composite - 24h | Composite - 24h |
| pH | Grab | 4500-H⁺; 150.1 Electrometric* | pH | 5/week on site + 1/week in Dededo lab | 5/week on site + 1/week in Dededo lab |
| DO | Grab | SM 4500-O G. 360.1* | mg/L | 5/week on site | 5/week on site |
| SS | Composite - 3x/24hr | SM 2540 | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| BOD5 | Composite - 3x/24hr | SM 5210 B.; 405.1 | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| COD Cr | Composite - 3x/24hr | Titrimetric 410.1-3 | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| Settleable solids | Composite - 3x/24hr | SM 2540 F. | mg/L | | 2/week in Dededo lab |

**Once Hagåtña lab is on-line**

| Parameter | Type of sample | Test | Units | S1 | S2 | S3 | S4 |
|---|---|---|---|---|---|---|---|
| Location | | | | Influent (w/o Returns) | Effluent | Centrate | Supernatant |
| Type of sample | | | | Composite - 24h | Composite - 24h | grab sample | |
| pH | Composite - 24h | 4500-H⁺; 150.1 Electrometric* | pH | 5/week on site + 1/week in Dededo lab | 5/week on site + 1/week in Dededo lab | 5/week on site (or online) + 1/week in lab | 5/week on site (or online) + 1/week in lab |
| DO | Composite - 24h | SM 4500-O G. 360.1* | mg/L | 5/week on site | 5/week on site | | |
| SS | Composite - 24h | SM 2540 D. | mg/L | 3/week in Central lab | 3/week in Central lab | 5/week in lab | 5/week in lab |
| BOD5 | Composite - 24h | SM 5210 B.; 405.1 | mg/L | 3/week in Central lab | 3/week in Central lab | 5/week in lab | 5/week in lab |
| COD Cr | Composite - 24h | Titrimetric 410.1-3 | mg/L | 3/week in Central lab | 3/week in Central lab | 5/week in lab | 5/week in lab |
| Settleable solids | Composite - 24h | SM 2540 F. | mg/L | 3/week in Central lab | 3/week in Central lab | | |

Note: Transition to Hagåtña Lab schedule will proceed as equipment comes on-line rather than all at once.
*In accordance with manufacturers instructions for probe use



SO 42 Performance Evaluation of the Hagåtña Wastewater Treatment Facility Page 8 of 9.

Attachment B: Hagåtña Treatment Plant Process Control Calculations

| Process Control Item | Units |
|---|---|
| Totalized Flow per day | MGD |
| Primary Clarifier Flow Velocity[1] | ft/min |
| Primary Clarifier Detention Time[1] | Hrs |
| Primary Sludge Pumping Time[1] | Min/hr |
| Aerobic Digestion Volatile Solids Reduction | Percentage |
| Biosolids Production | Dry tons/Day |
| Polymer Usage | Lbs/dry ton |
| BOD Removal Efficiency | Percentage |
| Suspended Solids Removal Efficiency | Percentage |
| Settlable Solids Removal Efficiency | Percentage |

[1]Computed for each unit in service

The above information will be tabulated in an Excel spreadsheet. In some cases (i.e. removal efficiencies) calculations will be performed as laboratory equipment, staff and procedures become available to obtain the information required. In other areas (e.g. detention times and polymer usage), data collection has already begun.

Data will be provided to GEPA and US EPA Region IX monthly or on a schedule determined by EPA.

# GUAM WATERWORKS AUTHORITY
*Aturidat Kinalamten Hanom Guahan*
## GOVERNMENT OF GUAM
Post Office Box 3010, Agana, Guam 96932
Phone: (671) 647-7887  Fax: (671) 647-2603

March 15, 2007

Michael Lee
U.S. Environmental Protection Agency
415 Hawthorne St.
San Francisco, CA  95105

Re:    Hagåtña Sewage Pump Station Refurbishment – Long Term Bypass Extension

Mr. Lee:

Guam Waterworks Authority hereby requests an extension of the long-term by-pass of the Hagåtña Wastewater Treatment Plant (WWTP), for emergency use only, in order to complete necessary repairs on the Hagåtña Main Sewage Pump Station (SPS), which acts as the headworks for the WWTP. This will allow GWA to complete the work on the SPS required by Paragraph 42 of the SO.

The proposed by-pass will be utilized only on an "as-required" basis during the construction period (April through October 2007) and will facilitate the complete refurbishment of the pumping facility.  Any actual WWTP by-pass due to the SPS work would not occur until after May 1, 2007.

We are planning to pump sewage around the SPS during construction, which should minimize or hopefully, eliminate the need for any WWTP by-pass. However, should these methods fail due to pump failure or the inability to keep up with inflows in a severe rainfall event, the bypass would be required to prevent overflow of sewage from the collection system. The wastewater would be allowed to back up into the collection system until such time as there was risk of overflow, at which time the WWTP would be bypassed. Such a bypass would be accomplished by opening the bypass sluice gate in the WWTP diverter box, and timing and duration of any bypass will be documented and notification of date, time and duration would be provided to you. The public will be notified immediately via radio and television media, and we would coordinate with Guam EPA to adjust their beach signs to note that the water is not safe.

The main reason to have the option of the by-pass is the health and safety of the general public and the pump station construction crews. Should the flow overflow from the collection system instead of flowing directly to the outfall, the resulting sewer overflows could potentially expose the public to illness and disease from contact with the sewage, sludge, and their vapors. The by-pass of the pump station is required because a portion of the work is to drain, inspect and repair the wetwell from which the pumps pump, which would expose the workers to unwarranted safety hazards including electrical shock, methane gas exposure and/or oxygen deficient conditions, and potentially explosive gases

# EXHIBIT E

(which is a big concern because of the welding involved). It would also potentially expose them to illness and disease from contact with the sewage, sludge, and their vapors. Trying to overcome these hazards with self contained respirators and special protective gear would only serve to increase cost and prolong the overall project because it would be difficult for crews to work efficiently under such conditions, and some repair work will be needed below the level of the sewage in the wetwell.

GWA will be issuing the attached public notice regarding the by-pass extension through multiple media sources including the Pacific Daily News and radio outlets. The Notice will be repeated approximately every 100 days throughout the construction period. A copy of the initial notice is attached for your information. We are exploring other communication plans to inform the public of the nature of the SPS project as well as other ongoing GWA efforts to improve our infrastructure.

If additional information is needed regarding this request, please don't hesitate to contact me at (671) 647-2607. Your prompt consideration of our request will be greatly appreciated.

Sincerely,

Don Antrobus
Chief Engineer

xc:     David Craddick, GWA General Manager
        Mark Miller, GWA P&T Manager
        Julie Shane, GWA Wastewater Engineering Supervisor
        Manuel Minas, GEPA



# GUAM WATERWORKS AUTHORITY
### Good Water Always
578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2603 Fax: (671) 646-2335

# NOTICE TO PUBLIC

The Guam Waterworks Authority announces that the Hagatna Sewage Treatment Plant renovation is completed and the facility is in full operation.

The Long Term By-pass of the treatment plant ended March 09, 2007.

The renovation of the Hagatña Main Pump Station will begin on April 10, 2007. The pump station provides all of the sewage to the Treatment Facility. The pump construction may require periodic by-pass of the treatment plant, although GWA will work assiduously to avoid such bypass.

The treatment plant facility will only be by-passed as needed on an emergency basis to prevent sewer back-ups through the collection system and into communities. The project will begin April, 2007 and last through October 2007. In the event of such an emergency bypass, the public would be notified immediately through radio and television sources, as well as via the Guam Environmental Protection Agency's beach status report.

In the event of a bypass during the project period the public will be advised not to fish or swim within the ocean from the

West of Paseo De Susana Park up to the West Hagatna Public Beach fronting the former Diamond Auto Parts in Anigua. In addition, it is advised that public activity not take place within a 875 feet radius of the ocean outfall located directly 1,500 feet seaward of the Hagatna Sewage Treatment Plant. GWA will monitor the shoreline and GEPA will post signs on the affected areas in the event of a bypass.

The Hagåtña Main Pump Station renovation project will be completed by October 31, 2007. This work is necessary in order to ensure that the pump station and plant provide a functional pumping and treatment system that meets all Guam and Federal EPA requirements.

Should you have any questions regarding this public notice, please contact the Guam Water works Authority at 647-2603. Si Yu'os Ma'ase,

/s/
DAVID R. CRADDICK
General Manager

# HAGATNA SEWAGE TREATMENT PLANT BY- PASS IMPACT AREAS





# GUAM WATERWORKS AUTHORITY
### Good Water Always
578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605 Fax: (671) 646-2335

July 24, 2007

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

Pursuant to further compliance to the STIPULATED ORDER FOR PRELIMINARY RELIEF; CIVIL CASE No. 02-00035 as amended, The Guam Waterworks Authority herewith presents the reports required on or following this date as ordered, adjudged and decreed items numbered: 48, Notice of expected non compliance or delay of work under Paragraph 42, refurbishment of the Hagåtña Main Lift Station.

## CERTIFICATION STATEMENT

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

PAUL J. KEMP, M. S.
Assistant General Manager for Compliance and Safety

July 24, 2007
Date

# EXHIBIT F

CC:  Barry Pollock, Region 9, USEPA
Ben Machol, Region 9, USEPA
Lorilee T. Crisostomo, Guam EPA
Manuel Minas, Guam EPA
Angel Marquez, Guam EPA
Benny Cruz, Guam EPA
Consolidated Commission of Utilities
      Simon Sanchez
      Benigno M. Polomo
      Gloria Nelson
      Eloy Hara
      Bernadette Lou Sablan
      Art Perez
      Heidi Ballendorf
      Yvonne M. Cruz
      Doris J. Young
GWA IGM
GWA Chief Engineer
GWA CFO
GWA AGM A&C
GWA AGM P&T
GWA AGM C&D
GWA AGM C&S
GWA Legal Counsel
Veolia Water PMC
Helen Kennedy for the Attorney General of Guam
Office of the Public Auditor
Public Utilities Commission
File

Attachments:    Narrative Letter (Pages 3 – 4.)
                Proposed Schedules
                      Page 5 – Initial plan schedule
                      Page 6 – GWA preferred project plan schedule
                      Page 7 – Alternative quicker/higher-risk plan
                            schedule.



# GUAM WATERWORKS AUTHORITY

**Good Water Always**

578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605  Fax: (671) 646-2335

May 30, 2007

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

Pursuant to the discussions with GWA Engineering section previously submitted, I am here quoting Julie Shane's current narrative:

Paragraph 42 [of the amended Stipulated Order] requires GWA to provide a schedule for completing the repairs to the Agana Main Sewage Pump Station [See also Paragraph 40]. As we have discussed, the originally provided schedule has been delayed because of the difficulty in bypassing the station while continuing to treat the influent at the Agana Wastewater Treatment Plant.

Attached are two optional schedules for obtaining the materials and performing the work needed to complete the bypass. The first option includes obtaining the bypass pump and in the second scenario we would proceed without it. The risk with proceeding [without the bypass pump] is that any pump failure would result in a wastewater plant bypass, and there is also a potential for [wastewater plant] bypass during major wet weather events.

The materials for the surge tank are required in the event of a catastrophic pump failure so that the line can gravity flow directly to the outfall (bypassing the plant). However, the goal is to provide adequate capacity to minimize or eliminate bypassing of the treatment plant. In order to maintain the option of both pumping and emergency bypass, a valve is required and this element is the long lead item. We are going to do our best to locate a valve on-island and minimize this time frame.

Please be advised that should we choose the third option of bypassing the wastewater plant for the duration of the project, the option to pump would not be required so the timeframe for the bypass as discussed above would be greatly shortened (we would not need the valve in this case). However, there will be some time involved in removing the existing plugs in the line, as they are inserted quite far up the pipe (they were meant to be permanent) and safety will be paramount.

Once any option up and running, the work will commence. The timeline is the same as that which was previously provided (copy attached), however, the schedule will be pushed back. The start date will be the same as the date the bypass is completed.

Pending your approval, we are proceeding with the task items listed in the bypass schedule. Should you have any questions or require further information please contact Supervising Wastewater Engineer Julie Shane at 671-647-2612.

**End Quote - - - -**

As we have previously reported, the June 01, 2007 compliance date for the completion of the refurbishment of the Hagåtña Main wastewater lift station has not been met. Per the discussions you have had with GWA engineering, we are now asking for your recommendation of which project option we should pursue. The project completion time will then be set by that decision.

Because of the special considerations in making our best efforts to avoid any bypass of the Hagåtña treatment plant, GWA requests that the delay be considered as non-material.

Sincerely,

*Paul J. Kemp*

PAUL J. KEMP, M. S.                                          July 24, 2007
Assistant General Manager for Compliance and Safety          Date

PJK/jrs



# GUAM WATERWORKS AUTHORITY

**Good Water Always**

578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605 Fax: (671) 646-2335

**March 2, 2007**

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

Pursuant to further compliance to the **STIPULATED ORDER FOR PRELIMINARY RELIEF; CIVIL CASE No. 02-00035** as amended, The Guam Waterworks Authority herewith presents the reports required on or following this date as ordered, adjudged and decreed items numbered: **39. Northern District STP Renovation and 42. Hagåtña (Agana) STP Renovation.**

## CERTIFICATION STATEMENT

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

_____

**PAUL J. KEMP, M. S.**
Assistant General Manager for Compliance and Safety

**March 2, 2007**
**Date**

# EXHIBIT G

CC:   Barry Pollock, Region 9, USEPA
       Ben Machol, Region 9, USEPA
       John Jocson, Guam EPA
       Randel L. Sablan, Guam EPA
       Manuel Minas, Guam EPA
       Angel Marquez, Guam EPA
       Benny Cruz, Guam EPA
       Consolidated Commission of Utilities
           Simon Sanchez
           Benigno M. Polomo
           Gloria Nelson
           Tom Ada
           Eloy Hara
           GMCUS
           Bernadette Lou Sablan
           Art Perez
           Heidi Ballendorf
           Yvonne M. Cruz
           Doris J. Young
      GWA GM
      GWA Chief Engineer
      GWA CFO
      GWA AGM A&C
      GWA AGM P&T
      GWA AGM C&D
      GWA AGM C&S
      GWA Legal Counsel
      Veolia Water PMC
           Rick Unpingco
           Cathy Manglona
      GPA GM
      Sylvia I. Ipanag
      Helen Kennedy for the Attorney General of Guam
      Office of the Public Auditor
      Public Utilities Commission
      File



# GUAM WATERWORKS AUTHORITY
### Good Water Always
578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605 Fax: (671) 646-2335
March 2, 2007

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

GWA herewith reports that the work called for in Paragraph 39, the Northern District Wastewater Treatment Facility Renovation has been successfully completed. Both clarifiers were put into service in August 2006. There was only one blower operable at that time. The redundant blower was put into service in November 2006.

GWA is now monitoring the performance of the restored facility and will evaluate it to determine if any process adjustments may be needed in order to meet the NPDES permit. GWA is on schedule to complete this evaluation by the May 4, 2007 compliance date.

Further, GWA herewith reports that the work called for in Paragraph 42, the Hagåtña (Agana) Wastewater Treatment Facility Renovation has been completed and successfully tested. The renovated facility will be officially put into service at the Hagåtña Wastewater Treatment Facility dedication ceremonies on March 09, 2007.

GWA will continue with the work on the Hagåtña Main Sewer Pump Station which will be inaugurated in the same ceremony that dedicates the treatment facility and is expected to be completed on schedule. We will also proceed with the operational performance evaluation of the treatment process performance to determine if any process adjustments may be needed in order to meet the NPDES permit. GWA will perform additional monitoring (at two week intervals) on the treatment facility in order to collect sufficient information to properly evaluate they system by the April 30, 2007 evaluation report compliance date.

GWA therefore submits that the work specified completion by this date has been done. Respectfully submitted,

_Paul J. Kemp_

_____                    March 2, 2007
PAUL J. KEMP, M. S.                                 Date
Assistant General Manager for Compliance and Safety

PJK/pjk

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 1010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141

DISCHARGE NUMBER: INF A

MONITORING PERIOD

| FROM | YEAR 2006 | MO 10 | DAY 1 | TO | YEAR 2006 | MO 10 | DAY 31 |

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2958 | 4780 | KG/ DAY (01) | | REPORT MO AVG | REPORT DAILY MX | MG/L (19) | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2650 | 3670 | KG/ DAY (01) | | 73 | 100 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | TELEPHONE | | | DATE | |
|---|---|---|---|---|---|---|
| DAVID R. CRADDICK GENERAL MANAGER, GWA | | AREA CODE 671 | NUMBER 647-2603 | | | |
| TYPED OR PRINTED | SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | | | YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS

Northern District 9/10/2007

# EXHIBIT H

Form Approved
OMB No. 2040-0004
Approval expires 9-30-85

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

PERMITTEE NAME/ADDRESS (include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141

DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM: YEAR 2006 MO 10 DAY 1
TO: YEAR 2006 MO 10 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2999 | 3573 | KG/DAY (01) | | 83 | 97 | MG/L (19) | 1 | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | 3930 MO AVG | 3800 DAILY MX | | | 85 MO AVG | 170 DAILY MX | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.32 | | 7.59 | SU (12) | | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2044 | 3229 | KG/DAY (01) | | 56 | 88 | MG/L (19) | 4 | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | 1136 MO AVG | 2272 DAILY MX | | | 50 MO AVG | 100 DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 1.6 | 5.0 | ML/L (28) | 2 | 4/31 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | 1 MO AVG | 2 DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 626 | 626 | KG/DAY (01) | | | | | | 1/31 | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | ONCE/MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50060 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 9.59 | 10.50 | MGD (03) | | | | | | 31/31 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671
NUMBER 647-2603

DATE
YEAR
MO
DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
SUSPENDED SOLIDS (mg/l) MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) 2/4 AND MONTHLY AVERAGE
BOD (kg/day) MONTHLY AVERAGE
SETTLEABLE SOLIDS DAILY MAX (1/4) AND MONTHLY AVERAGE

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141

DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM: YEAR 2004  MO 11  DAY 1  TO  YEAR 2004  MO 11  DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS (01) | MINIMUM | AVERAGE | MAXIMUM | UNITS (19) | (19) | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEWI INFLUENT | SAMPLE MEASUREMENT | 4620 | 5759 | KGI DAY | | 105 | 149 | MGI L | | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEWI INFLUENT | SAMPLE MEASUREMENT | 4029 | 7118 | KGI DAY | | 98 | 168 | MGI L | | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

TYPED OR PRINTED

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

| TELEPHONE | | | | DATE | | |
|---|---|---|---|---|---|---|
| 671 | 647-7803 | | | | | |
| AREA CODE | NUMBER | | | YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

Northern District 01/10/2007

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 5-30-85

**PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141

DISCHARGE NUMBER: 001 A

**MONITORING PERIOD**

FROM: YEAR 2004 / MO 11 / DAY 1  TO  YEAR 2004 / MO 11 / DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3480 | .4466 | KG/DAY (01) | | 85 | 102 | MG/L (19) | 2 | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1930 MO AVG | 3860 DAILY MX | | | 85 MO AVG | 170 DAILY MX | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.29 | | 7.91 | SU (12) | | 5/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | 6.0 MINIMUM | | 9.0 MAXIMUM | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3271 | 4857 | KG/DAY (01) | | 76 | 120 | MG/L (19) | 8 | 5/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1136 MO AVG | 2272 DAILY MX | | | 50 MO AVG | 100 DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 0.3 | 0.5 | ML/L (26) | | 5/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | 0.1 MO AVG | 0.2 DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1692 | 1602 | KG/DAY (01) | | | | | | 1/30 | DISCRETE |
| | PERMIT REQUIREMENT | 1692 MO AVG | REPORT DAILY MX | | | | | | | ONCE/MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 10.44 | 11.70 | MGD (03) | | | | | | 30/30 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671  NUMBER 847-2601

DATE
YEAR | MO | DAY

**COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)**

VIOLATIONS
SUSPENDED SOLIDS (mg/l and kg/day) DAILY MAX (3/5) AND MONTHLY AVERAGE
BOD (kg/day) DAILY MAX (1/5) AND MONTHLY AVERAGE

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

**PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Higatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM YEAR 2006 MO 12 DAY 1  TO  YEAR 2006 MO 12 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS (01) | MINIMUM | AVERAGE | MAXIMUM | UNITS (19) | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 4167 | 7238 | KGI DAY | | 135 | 197 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | (01) | | REPORT MO AVG | REPORT DAILY MX | (19) | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 3097 | 2061 | KGI DAY | | 86 | 108 | MG/L | | 4/31 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | | SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | TELEPHONE | | | | DATE | | |
|---|---|---|---|---|---|---|---|---|---|
| DAVID R. CRADDICK GENERAL MANAGER, GWA | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | | 671 AREA CODE | 647-2603 NUMBER | | YEAR | MO | DAY |

TYPED OR PRINTED

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-85

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER

| FROM | | | TO | | |
|---|---|---|---|---|---|
| YEAR | MO | DAY | YEAR | MO | DAY |
| 2006 | 12 | 1 | 2006 | 12 | 31 |

DISCHARGE NUMBER

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 3366 | 3622 | KG/ DAY (01) | | 94 | 100 | MGL (19) | 2 | 4/31 | COMPOSITE | |
| | PERMIT REQUIREMENT | 1930 MO AVG | 3360 DAILY MX | | | 85 MO AVG | 170 DAILY MX | | | WEEKLY | COMPOSITE | |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | (01) | 7.65 | | 7.78 | SU (12) | | 4/31 | DISCRETE | |
| | PERMIT REQUIREMENT | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | | | WEEKLY | DISCRETE | |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2860 | 8502 | KG/ DAY (01) | | 84 | 140 | MGL (19) | 7 | 4/31 | COMPOSITE | |
| | PERMIT REQUIREMENT | 1136 MO AVG | 2272 DAILY MX | | | 30 MO AVG | 100 DAILY MX | | | WEEKLY | COMPOSITE | |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 0.2 | 0.3 | MLA (28) | | 4/31 | DISCRETE | |
| | PERMIT REQUIREMENT | | | | | MO AVG | DAILY MX | | | WEEKLY | DISCRETE | |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1529 | 1529 | KG/ DAY (01) | | | | | | 1/31 | DISCRETE | |
| | PERMIT REQUIREMENT | MO AVG | REPORT DAILY MX | | | | | | | ONCE/ MONTH | DISCRETE | |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 10.05 | 11.50 | MGD (03) | | | | | | 31/31 | HOURLY | |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | CONTINUOUS | CONTINUOUS | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
671 647-2603

| AREA CODE | NUMBER |

DATE

| YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
SUSPENDED SOLIDS (mg/l) DAILY MAX (2/4) AND MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (3/4) AND MONTHLY AVERAGE
BOD (mg/l and kg/day) MONTHLY AVERAGE

# NORTHERN DISTRICT TREATMENT PLANT WASTEWATER RESULTS
## FOR THE MONTH OF JANUARY 2007

## INFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW mgd |
|------|-----|------|------|------|------|------|------|
| 1 | | | | | | | 9.60 |
| 2 | | | | | | | 9.60 |
| 3 | 7.31 | 56 | 118 | 5.0 | 2097 | 4419 | 9.90 |
| 4 | | | | | | | 9.70 |
| 5 | | | | | | | 9.90 |
| 6 | | | | | | | 9.70 |
| 7 | | | | | | | 9.70 |
| 8 | | | | | | | 9.60 |
| 9 | | | | | | | 9.50 |
| 10 | 8.06 | 32 | 131 | 1.8 | 1211 | 4946 | 10.00 |
| 11 | | | | | | | 10.30 |
| 12 | | | | | | | 10.10 |
| 13 | | | | | | | 9.90 |
| 14 | | | | | | | 9.70 |
| 15 | | | | | | | 10.00 |
| 16 | | | | | | | 9.80 |
| 17 | 7.82 | 144 | 170 | 4.5 | 5502 | 6486 | 10.10 |
| 18 | | | | | | | 10.10 |
| 19 | | | | | | | 10.00 |
| 20 | | | | | | | 9.00 |
| 21 | | | | | | | 10.00 |
| 22 | | | | | | | 9.70 |
| 23 | | | | | | | 9.90 |
| 24 | 7.81 | | 134 | 2.0 | | 4622 | 9.10 |
| 25 | | | | | | | 9.80 |
| 26 | | | | | | | 10.10 |
| 27 | | | | | | | 10.20 |
| 28 | | | | | | | 9.70 |
| 29 | | | | | | | 10.10 |
| 30 | | | | | | | 9.80 |
| 31 | 7.91 | 156 | 144 | 2.0 | 5783 | 5329 | |
| AVG | 7.78 | 97 | 139 | 3.06 | 3648 | 5118 | 9.86 |
| MIN | 7.31 | 32 | 118 | 1.80 | 1211 | 4419 | 9.10 |
| MAX | 8.06 | 156 | 170 | 5.0 | 5783 | 6486 | 10.30 |

## EFFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|------|-----|------|------|------|------|------|------|------|------|------|
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | 7.18 | 100 | 58 | | 3745 | 2182 | -79% | 51% | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | 14.2 | 553 |
| 10 | 7.97 | 96 | 88 | 2.0 | 3632 | 3320 | -200% | 33% | | |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | 7.69 | 96 | 100 | 0.8 | 3668 | 3812 | 33% | 41% | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | | | | | | | | | | |
| 22 | | | | | | | | | | |
| 23 | | | | | | | | | | |
| 24 | 7.62 | | 90 | 1.2 | | 3091 | | 33% | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | | | | | | | | | | |
| 29 | | | | | | | | | | |
| 30 | | | | | | | | | | |
| 31 | 7.76 | 48 | 80 | 1.0 | 1780 | 2958 | 69% | 44% | | |
| AVG | 7.64 | 85 | 83 | 1.5 | 3206 | 3073 | -40% | 40% | 14.2 | 553 |
| MIN | 7.18 | 48 | 58 | 0.8 | 1780 | 2182 | -200% | 33% | 14.2 | 553 |
| MAX | 7.97 | 100 | 100 | 2.0 | 3745 | 3812 | 69% | 51% | 14.2 | 553 |

| | | |
|------|------|------|
| monthly avg | 7 MIN | 85 | 85 | 1 | 1136 | 1930 |
| daily max | 9 MAX | 170 | 170 | 2 | 2272 | 3860 |

PERMIT REQUIREMENTS

| | MAX |
|------|------|
| | 6 |

| | | |
|------|------|------|
| monthly avg | 50 | 85 | | | |
| daily max | 100 | 170 | | | |

VIOLATIONS
SUSPENDED SOLIDS (mg/l) MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (3/4) AND MONTHLY AVERAGE
BOD (kg/day) MONTHLY AVERAGE
SETTLEABLE SOLIDS DAILY MAX (1/5) AND MONTHLY AVERAGE
SUSPENDED SOLIDS NOT AVAILABLE 01/24/07 DUE TO TECH ERROR

NORTHERN DISTRICT TREATMENT PLANT WASTEWATER RESULTS
FOR THE MONTH OF FEBRUARY 2007

**INFLUENT**

| DATE | pH | SUSP SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP SOLIDS kg/day | BOD kg/day | FLOW mgd |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 9.70 |
| 2 | | | | | | | 9.80 |
| 3 | | | | | | | 10.40 |
| 4 | | | | | | | 9.90 |
| 5 | | | | | | | 10.10 |
| 6 | | | | | | | 10.00 |
| 7 | 8.16 | 168 | 219 | 2.0 | 6419 | 8349 | 10.10 |
| 8 | | | | | | | 10.30 |
| 9 | | | | | | | 10.30 |
| 10 | | | | | | | 10.30 |
| 11 | | | | | | | 10.00 |
| 12 | | | | | | | 9.60 |
| 13 | | | | | | | 10.00 |
| 14 | 7.65 | 52 | 73 | 15.0 | 1967 | 2771 | 10.00 |
| 15 | | | | | | | 9.20 |
| 16 | | | | | | | 10.10 |
| 17 | | | | | | | 10.10 |
| 18 | | | | | | | 10.00 |
| 19 | | | | | | | 9.40 |
| 20 | | | | | | | 9.50 |
| 21 | 7.59 | | 90 | 1.5 | | 3243 | 9.50 |
| 22 | | | | | | | 9.80 |
| 23 | | | | | | | 10.00 |
| 24 | | | | | | | 10.10 |
| 25 | | | | | | | 9.80 |
| 26 | | | | | | | 9.40 |
| 27 | | | | | | | 9.60 |
| 28 | 7.72 | 46.4 | 135 | 5.0 | 1632 | 4741 | 9.30 |
| AVG | 7.78 | 89 | 129 | 5.88 | 3340 | 4788 | 9.87 |
| MIN | 7.59 | 46 | 73 | 1.50 | 1632 | 2771 | 9.20 |
| MAX | 8.16 | 168 | 219 | 15.0 | 6419 | 8349 | 10.40 |

PERMIT REQUIRMENTS    MAX 6

**EFFLUENT**

| DATE | pH | SUSP SOLIDS mg/l | BOD mg/l | SETTL SOLID ml/l | SUSP SOLIDS kg/day | BOD kg/day | SUSP SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | 8.03 | 60 | 89 | 0.2 | 2293 | 3412 | 64% | 59% | 22.8 | 888 |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | 7.46 | 44 | 82 | 1.2 | 1665 | 3116 | 15% | -12% | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | 7.41 | | 85 | 0.5 | | 3055 | | 6% | | |
| 22 | | | | | | | | | | |
| 23 | | | | | | | | | | |
| 24 | | | | | | | | | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | 7.44 | 63 | 95 | 0.5 | 2209 | 3326 | -35% | 30% | | |
| AVG | 7.59 | 56 | 68/85 | 0.6 | 2055 | 3227 | 16% | 21% | 22.8 | 888 |
| MIN | 7.41 | 44 | 82 | 0.2 | 1665 | 3055 | -35% | -12% | 22.8 | 888 |
| MAX | 8.03 | 63 | 95 | 1.2 | 2293 | 3412 | 64% | 59% | 22.8 | 888 |

| | monthly avg | daily max |
|---|---|---|
| | 7MIN | 9MAX |
| SUSP SOLIDS | 50 | 100 |
| BOD | 85 | 170 |
| SETTL | 1 | 2 |
| SUSP kg/day | 1136 | 2272 |
| BOD kg/day | 1930 | 3860 |

**VIOLATIONS**

SUSPENDED SOLIDS (mg/l) MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (1/3) AND MONTHLY AVERAGE
BOD (mg/l) MONTHLY AVERAGE
BOD (kg/day) MONTHLY AVERAGE
SUSPENDED SOLIDS NOT AVAILABLE 02/21/07 DUE TO TECH ERROR

TO: AGANA STP　　　　Fax: 647-4010

NORTHERN DISTRICT TREATMENT PLANT WASTEWATER RESULTS
FOR THE MONTH OF MARCH 2007

## INFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW m3/l |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 9.40 |
| 2 | | | | | | | 9.60 |
| 3 | | | | | | | 9.90 |
| 4 | | | | | | | 9.90 |
| 5 | | | | | | | 10.00 |
| 6 | | | | | | | 10.00 |
| 7 | 7.62 | 56 | 140 | 0.1 | 2097 | 5234 | 9.60 |
| 8 | | | | | | | 9.50 |
| 9 | | | | | | | 9.90 |
| 10 | | | | | | | 10.20 |
| 11 | | | | | | | 10.00 |
| 12 | | | | | | | 9.70 |
| 13 | | | | | | | 10.00 |
| 14 | 8.03 | 100 | 191 | 3.5 | 3632 | 6918 | 9.60 |
| 15 | | | | | | | 9.60 |
| 16 | | | | | | | 9.80 |
| 17 | | | | | | | 10.20 |
| 18 | | | | | | | 9.80 |
| 19 | | | | | | | 10.20 |
| 20 | | | | | | | 10.20 |
| 21 | 6.39 | 1332 | 222 | 32.0 | 48878 | 8146 | 9.70 |
| 22 | | | | | | | 9.70 |
| 23 | | | | | | | 9.70 |
| 24 | | | | | | | 9.20 |
| 25 | | | | | | | 9.50 |
| 26 | | | | | | | 10.00 |
| 27 | | | | | | | 10.10 |
| 28 | 7.68 | 224 | 226 | 14.0 | 8050 | 8113 | 9.50 |
| 29 | | | | | | | 9.80 |
| 30 | | | | | | | 10.00 |
| 31 | | | | | | | 9.40 |
| AVG | 7.43 | 428 | 195 | 12.40 | 15664 | 6766 | 9.81 |
| MIN | 6.39 | 56 | 140 | 0.10 | 2097 | 5234 | 9.20 |
| MAX | 8.03 | 1332 | 226 | 32.0 | 48878 | 8146 | 10.20 |

PERMIT REQUIRMENTS

| | MAX |
|---|---|
| | 6 |

## EFFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | -64% | 39% | 26.1 | 938 |
| 7 | 7.40 | 92 | 86 | 1.9 | 3446 | 3207 | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | 7.86 | 92 | 82 | 0.5 | 3341 | 2933 | 8% | 57% | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | 7.31 | 368.44 | 86 | 1.5 | 3097.11 | 3141 | 37% | 61% | | |
| 22 | | | | | | | | | | |
| 23 | | | | | | | | | | |
| 24 | | | | | | | | | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | 8.02 | 76 | 74 | 1.5 | 2731 | 2650 | 66% | 67% | | |
| 29 | | | | | | | | | | |
| 30 | | | | | | | | | | |
| 31 | | | | | | | | | | |
| AVG | 7.65 | 276.34 | 82 | 1.45 | 10122 | 2998 | 12% | 56% | 26.1 | 938 |
| MIN | 7.31 | 76 | 74 | 0.5 | 2731 | 2650 | -64% | 39% | 26.1 | 938 |
| MAX | 8.02 | 344.45 | 86 | 1.9 | 3097.11 | 3207 | 66% | 67% | 26.1 | 938 |

PERMIT REQUIRMENTS

| | monthly avg | daily max | 7MIN | 9MAX |
|---|---|---|---|---|
| pH | | | 7MIN | 9MAX |
| SUSP SOLIDS | 50 | 100 | | |
| BOD | 85 | 170 | | |
| SETTL SOLID | 1 | 2 | | |
| SUSP SOLIDS kg/day | 1135 | 2272 | | |
| BOD kg/day | 1930 | 3860 | | |

VIOLATIONS
SUSPENDED SOLIDS (mg/l) DAILY MAX (1/4) AND MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (4/4) AND MONTHLY AVERAGE
SETTLEABLE SOLIDS MONTHLY AVERAGE

Northern District 9/10/2007

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

Form Approved
OMB No. 2040-0004
Approval expires 5-30-85

PERMITTEE NAME/ADDRESS (include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: 001A

MONITORING PERIOD
FROM: YEAR 2007 MO 4 DAY 1
TO: YEAR 2007 MO 4 DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 2970 | 3551 | KG/DAY (01) | | 83 | 90 | MG/L (19) | | 4/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1930 MO AVG | 3860 DAILY MX | | | 85 MO AVG | 170 DAILY MX | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.32 | | 7.68 | SU (12) | | 4/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1154 | 2055 | KG/DAY (01) | | 33 | 55 | (19) | | 4/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1136 MO AVG | 2272 DAILY MX | | | 50 MO AVG | 100 DAILY MX | MG/L | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00546 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | (01) | | 0.8 | 1.5 | ML/L (26) | | 4/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | MO AVG | DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1482 | 1482 | KG/DAY (01) | | | | | | | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | ONCE/MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 9.48 | 10.10 | MGD (03) | | | | | | 30/30 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE 671 647-2603
AREA CODE  NUMBER

DATE
YEAR  MO  DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
SUSPENDED SOLIDS (kg/day) MONTHLY AVERAGE
BOD (kg/day) MONTHLY AVERAGE

**NORTHERN DISTRICT TREATMENT PLANT WASTEWATER RESULTS**
**FOR THE MONTH OF MAY 2007**

## INFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | FLOW mgd |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 9.50 |
| 2 | 7.72 | 184 | 274 | 35.0 | 6543 | 9726 | 9.40 |
| 3 | | | | | | | 9.50 |
| 4 | 7.41 | 96 | 104 | 35.0 | 3523 | 3816 | 9.76 |
| 5 | | | | | | | 10.00 |
| 6 | | | | | | | 9.76 |
| 7 | | | | | | | 9.50 |
| 8 | | | | | | | 9.60 |
| 9 | 7.60 | 40 | 95 | 2.0 | 1483 | 3531 | 9.90 |
| 10 | | | | | | | 9.60 |
| 11 | 7.88 | 88 | 121 | 2.0 | 3229 | 4422 | 9.70 |
| 12 | | | | | | | 9.60 |
| 13 | | | | | | | 9.70 |
| 14 | | | | | | | 9.50 |
| 15 | 7.52 | 88 | 101 | 0.2 | 3196 | 3650 | 9.60 |
| 16 | | | | | | | 9.40 |
| 17 | 8.02 | 60 | 79 | 6.0 | 2224 | 2929 | 9.80 |
| 18 | | | | | | | 9.70 |
| 19 | | | | | | | 9.30 |
| 20 | | | | | | | 9.60 |
| 21 | | | | | | | 9.70 |
| 22 | 7.76 | 32 | 73 | 4.0 | 1174 | 2660 | 9.60 |
| 23 | | | | | | | 9.60 |
| 24 | 7.94 | 244 | 48 | 10.0 | 9138 | 1807 | 9.90 |
| 25 | | | | | | | 9.30 |
| 26 | | | | | | | 9.20 |
| 27 | | | | | | | 9.40 |
| 28 | | | | | | | 9.60 |
| 29 | | | | | | | 9.60 |
| 30 | 7.44 | 72 | 107 | 0.8 | 2288 | 3400 | 8.40 |
| 31 | | | | | | | 9.00 |
| AVG | 7.70 | 100 | 111 | 10.53 | 3644 | 4391 | 9.54 |
| MIN | 7.41 | 32 | 48 | 0.20 | 1174 | 1807 | 8.40 |
| MAX | 8.02 | 244 | 274 | 35.0 | 9138 | 9726 | 10.00 |

## EFFLUENT

| DATE | pH | SUSP. SOLIDS mg/l | BOD mg/l | SETTL. SOLID ml/l | SUSP. SOLIDS kg/day | BOD kg/day | SUSP. SOLIDS %removal | BOD %removal | OIL & GREASE mg/l | OIL & GREASE kg/day |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | |
| 2 | 7.45 | 56 | 68 | 1.0 | 1991 | 2428 | 70% | 75% | 14.0 | 498 |
| 3 | | | | | | | 33% | 60% | | |
| 4 | 7.53 | 64 | 41.43 | 20.0 | 2349 | 1520 | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | 7.30 | 72 | 66 | ??8.0?? | 2669 | 2446 | -80% | 31% | | |
| 10 | | | | | | | | | | |
| 11 | 7.83 | 48 | 43 | 0.7 | 1761 | 1563 | 45% | 65% | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | 7.39 | 36 | 62 | 0.1 | 1307 | 2267 | 59% | 36% | | |
| 17 | | | | | | | | | | |
| 18 | 7.81 | 32 | 37 | 0.4 | 1186 | 1385 | 47% | 53% | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| 21 | | | | | | | | | | |
| 22 | | | | | | | | | | |
| 23 | 7.34 | 80 | 82 | ??4.0?? | 2936 | 3019 | -150% | -13% | | |
| 24 | | | | | | | | | | |
| 25 | 7.78 | 120 | 39 | 0.3 | 4494 | 1453 | 51% | 20% | | |
| 26 | | | | | | | | | | |
| 27 | | | | | | | | | | |
| 28 | | | | | | | | | | |
| 29 | | | | | | | | | | |
| 30 | 7.66 | 48 | 66 | 0.7 | 1525 | 2107 | 33% | 36% | | |
| 31 | | | | | | | | | | |
| AVG | 7.57 | 62 | 56 | 4.0 | 2247 | 2021 | 12% | 41% | 14.0 | 498 |
| MIN | 7.30 | 32 | 37 | 0.1 | 1186 | 1385 | -150% | -13% | 14.0 | 498 |
| MAX | 7.83 | 120 | 82 | 20.0 | 4494 | 3019 | 70% | 75% | 14.0 | 498 |

monthly avg 7MIN
daily max 9MAX

PERMIT REQUIREMENTS     MAX 6

| | monthly | daily |
|---|---|---|
| SUSPENDED SOLIDS (mg/l) | 50 | 100 |
| BOD | 85 | 170 |
| SETTL | 1 | 2 |
| SUSP (kg/day) | 1135 | 2272 |
| BOD (kg/day) | 1930 | 3860 |

**VIOLATIONS**
SUSPENDED SOLIDS (mg/l) DAILY MAX (1/9) AND MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (4/9) AND MONTHLY AVERAGE
BOD (kg/day) MONTHLY AVERAGE
SETTLEABLE SOLIDS DAILY MAX (3/9) AND MONTHLY AVERAGE

Northern District 9/10/2007

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

PERMITTEE NAME/ADDRESS (Include Facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM: YEAR 2007 MO 9 DAY 1
TO: YEAR 2007 MO 9 DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | | |
| BOD, 5-DAY [20 DEG. C] 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2924 | 4328 | KG/ DAY [01] | | 65 | 112 | MG/L (19) | | | 8/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00630 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2450 | 5605 | KG/ DAY [01] | | 66 | 151 | MG/L (19) | | | 8/30 | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671   NUMBER 647-2603

DATE
YEAR   MO   DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

Northern District 9/30/2007

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, Guam 96932

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: 001 B

MONITORING PERIOD
FROM YEAR 2007 MO 6 DAY 1 TO YEAR 2007 MO 6 DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS (01) | QUANTITY OR CONCENTRATION | | | UNITS (19) | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | | | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1731 | 2413 | | KGI DAY | | 46 | 57 | MGL | | 9/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1903 MO AVG | 3860 DAILY MX | | | | 185 MO AVG | 1704 DAILY MX | | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | 7.17 | | 8.27 | SU | | 9/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1857 | 3206 | | KGI DAY | | 51 | 88 | MGL | 4 | 8/30 | COMPOSITE |
| | PERMIT REQUIREMENT | 1136 MO AVG | 2272 DAILY MX | | | | 50 MO AVG | 100 DAILY MX | | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | | | 1.7 | 6.0 | MLL | 3 | 9/30 | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | MO AVG | DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 00552 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 760 | 760 | | KGI DAY | | | | | | 1/30 | DISCRETE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | ONCE/ MONTH | DISCRETE |
| FLOW IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 0.76 | 10.20 | | MGD | | | | | | 30/30 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA
TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
671 647-2603
AREA CODE — NUMBER

DATE
YEAR — MO — DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS
SUSPENDED SOLIDS (mg/l) MONTHLY AVERAGE
SUSPENDED SOLIDS (kg/day) DAILY MAX (2/8) AND MONTHLY AVERAGE
SETTLEABLE SOLIDS (29) AND MONTHLY AVERAGE

Northern District 9/10/2007

Northern District 9/10/2007

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 3-30-85

**PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)**

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141

DISCHARGE NUMBER: INF A

MONITORING PERIOD

| | YEAR | MO | DAY | | YEAR | MO | DAY |
|---|---|---|---|---|---|---|---|
| FROM | 2007 | 6 | 1 | TO | 2007 | 6 | 30 |

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS (01) | MINIMUM | AVERAGE | MAXIMUM | UNITS (19) | | |
| BOD, 5-DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2194 | 3747 | KG/ DAY | | 76 | 104 | MG/L | | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 2524 | 4591 | KG/ DAY | | 77 | 124 | MG/L | | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE

| AREA CODE | NUMBER |
|---|---|
| 671 | 647-2603 |

| DATE | | |
|---|---|---|
| YEAR | MO | DAY |

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)

VIOLATIONS

Northern District 8/10/2007

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2000-0004
Approval expires 9-30-85

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM: YEAR 2007 MO 6 DAY 1
TO: YEAR 2007 MO 6 DAY 30

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | UNITS | QUANTITY OR CONCENTRATION | | | UNITS | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | | | MINIMUM | AVERAGE | MAXIMUM | | | | |
| BOD, 5-DAY (20 DEG. C) 00310 1 0 0 | SAMPLE MEASUREMENT | 1917 | 2687 | | | | 59 | 73 | MG/L | | | COMPOSITE |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | 1930 MO AVG | 3860 DAILY MX | KG/ DAY (01) | | | 85 MO AVG | 170 DAILY MX | (19) | | WEEKLY | COMPOSITE |
| pH 00400 1 0 0 | SAMPLE MEASUREMENT | | | | | 7.49 | | 8.32 | (12) | | | DISCRETE |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | SU (19) | | WEEKLY | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00530 1 0 0 | SAMPLE MEASUREMENT | 1792 | 2661 | | | | 54 | 76 | MG/L | | | COMPOSITE |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | 1138 MO AVG | 2272 DAILY MX | KG/ DAY (01) | | | 30 MO AVG | 100 DAILY MX | (26) | | WEEKLY | COMPOSITE |
| SOLIDS, SETTLEABLE 00545 1 0 0 | SAMPLE MEASUREMENT | | | | | | 1.5 | 4.5 | ML/L | | | DISCRETE |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | | | | | | MO AVG | DAILY MX | | | WEEKLY | DISCRETE |
| OIL AND GREASE 03582 1 0 0 | SAMPLE MEASUREMENT | 577 | 577 | KG/ DAY (01) | | | | | | | | DISCRETE |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | ONCE/ MONTH | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50050 1 0 0 | SAMPLE MEASUREMENT | 9.77 | 11.10 | MGD (05) | | | | | | | 30/30 | HOURLY |
| EFFLUENT GROSS VALUE | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

DAVID R. CRADDICK
GENERAL MANAGER, GWA

TYPED OR PRINTED

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE: 671 647-2603
AREA CODE / NUMBER

DATE: YEAR / MO / DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

Northern District 9/10/2007

# NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
## DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 8-30-86

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: INF A

MONITORING PERIOD
FROM: YEAR 2007 MO 8 DAY 1
TO: YEAR 2007 MO 8 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | NO. EX | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS (19) | | |
| BOD, 5 DAY (20 DEG. C) 00310 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | 0 | 0 | KG/ DAY (01) | | 57 | 120 | MG/L (19) | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | REPORT MO AVG | REPORT DAILY MX | | | REPORT MO AVG | REPORT DAILY MX | | WEEKLY | COMPOSITE |
| SOLIDS, TOTAL SUSPENDED 00530 G 0 0 RAW SEW/INFLUENT | SAMPLE MEASUREMENT | REPORT MO AVG | REPORT DAILY MX | KG/ DAY (01) | | 101 | 269 | MG/L | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | | | | | REPORT MO AVG | REPORT DAILY MX | | WEEKLY | COMPOSITE |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | |

| NAME/TITLE PRINCIPAL EXECUTIVE OFFICER | I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations. | | TELEPHONE | | DATE | |
|---|---|---|---|---|---|---|
| DAVID R. CRADDICK GENERAL MANAGER, GWA | | | 671 | 647-2603 | | |
| SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | | | AREA CODE | NUMBER | MO | YEAR DAY |

TYPED OR PRINTED

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS

NATIONAL POLLUTION DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

Form Approved.
OMB No. 2040-0004
Approval expires 9-30-86

PERMITTEE NAME/ADDRESS (Include facility Name/Location if Different)

NAME: Guam Waterworks Authority
ADDRESS: Northern District STP
P.O. Box 3010
Hagatna, GU 96932
FACILITY: Northern District STP
LOCATION: Dededo, GU 96912

PERMIT NUMBER: GU0020141
DISCHARGE NUMBER: 001 A

MONITORING PERIOD
FROM: YEAR 2007 MO 8 DAY 1
TO: YEAR 2007 MO 8 DAY 31

NOTE: Read instructions before completing this form.

| PARAMETER | | QUANTITY OR LOADING | | | QUANTITY OR CONCENTRATION | | | | | FREQUENCY OF ANALYSIS | SAMPLE TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | NO. EX | | |
| BOD, 6-DAY (20 DEG. C) 00310 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | (4)930 MO.AVG | 3860 DAILY MX | KG/DAY (01) | | 66 MO.AVG | 98 DAILY MX | MG/L (19) | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| pH 00400 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | | | | 7.26 MINIMUM | | 7.89 | SU (12) | | WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | | | | 7.0 MINIMUM | | 9.0 MAXIMUM | | | | DISCRETE |
| SOLIDS, TOTAL SUSPENDED 00630 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 1136 MO.AVG | 2272 DAILY MX | KG/DAY | | 59 MO.AVG | 103 DAILY MX | MG/L (19) | | WEEKLY | COMPOSITE |
| | PERMIT REQUIREMENT | | | | | | | | | | DISCRETE |
| SOLIDS, SETTLEABLE 00545 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | 0 MO.AVG | 0 DAILY MX | | | 0.4 MO.AVG | 1.0 DAILY MX | ML/L (26) | | WEEKLY | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | DISCRETE |
| OIL AND GREASE 03582 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | REPORT MO.AVG | REPORT DAILY MX | KG/DAY (03) | | | | | | ONCE/MONTH | DISCRETE |
| | PERMIT REQUIREMENT | | | | | | | | | | DISCRETE |
| FLOW, IN CONDUIT OR THRU TREATMENT PLANT 50060 1 0 0 EFFLUENT GROSS VALUE | SAMPLE MEASUREMENT | REPORT MO.AVG | 0.00 DAILY MX | MGD | | | | | | 30/30 | HOURLY |
| | PERMIT REQUIREMENT | REPORT MO.AVG | REPORT DAILY MX | | | | | | | CONTINUOUS | CONTINUOUS |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |
| | SAMPLE MEASUREMENT | | | | | | | | | | |
| | PERMIT REQUIREMENT | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

TYPED OR PRINTED
DAVID R. CRADDICK
GENERAL MANAGER, GWA

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE
AREA CODE 671
NUMBER 647-7603

DATE
YEAR | MO | DAY

COMMENT AND EXPLANATION OF ANY VIOLATIONS (See O & M Report)
VIOLATIONS



# GUAM WATERWORKS AUTHORITY

### Good Water Always

578 N. Marine Corps Drive, Tamuning, GU 96913-4111
Phone: (671) 647-2605 Fax: (671) 646-2335

May 04, 2007

Michael J. Lee
Manager, Pacific Islands Office (CMD-6)
U. S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dear Mike,

Pursuant to further compliance to the STIPULATED ORDER FOR PRELIMINARY RELIEF; CIVIL CASE No. 02-00035 as amended, The Guam Waterworks Authority herewith presents the reports required on or following this date as ordered, adjudged and decreed items numbered: 39 Northern District STP Renovation: Performance Evaluation Report.

## CERTIFICATION STATEMENT

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

_____
PAUL J. KEMP, M. S.
Assistant General Manager for Compliance and Safety

<u>May 04, 2007</u>
Date

# EXHIBIT I

CC:  Barry Pollock, Region 9, USEPA
     Lorilee T. Crisostomo, Guam EPA
     Manuel Minas, Guam EPA
     Angel Marquez, Guam EPA
     Benny Cruz, Guam EPA
     Consolidated Commission of Utilities
          Simon Sanchez
          Benigno M. Polomo
          Gloria Nelson
          Eloy Hara
          GMCUS
          Bernadette Lou Sablan
          Art Perez
          Heidi Ballendorf
          Yvonne M. Cruz
          Doris J. Young
     GWA GM
     GWA Chief Engineer
     GWA CFO
     GWA AGM A&C
     GWA AGM P&T
     GWA AGM C&D
     GWA AGM C&S
     GWA Legal Counsel
     Veolia Water PMC
          Rick Unpingco
          Cathy Manglona
     GPA GM
     Sylvia I. Ipanag
     Helen Kennedy for the Attorney General of Guam
     Office of the Public Auditor
     Public Utilities Commission
     File



## Performance Evaluation of the GWA
## Northern District
## Wastewater Treatment Plant

### Background

On October 19, 2006, U.S. DOJ in agreement with GWA and EPA filed a Stipulation Amended Stipulated Order for Preliminary Relief with the District Court of Guam, Civil No. 02-00035 (SO). Paragraph 39 of the SO requires GWA to complete all renovations of the Northern District Wastewater Treatment Plant (ND WWTP) by March 2, 2007. This work was completed with the exception of five of the six sludge pumps and half of the aerated grit removal system (See "Planned Actions" below). EPA was duly notified of all repair work that was completed. Paragraph 39 further requires that after completion of the corrective action GWA conduct a performance evaluation to determine whether or not advance primary treatment is needed to comply with NPDES permit effluent limitations. This is to be completed by May 4, 2007 and a report submitted to EPA. This document and its attachments are submitted pursuant to this requirement.

### Summary

Since GWA is still working to complete mechanical repairs, GWA does not believe that the requirements for additional treatment can be properly assessed until additional sludge pumps have been procured and plant operations have been fully optimized and assessed. GWA is providing a detailed plan and schedule for needed pump replacement, optimization and assessment.

### Data Review

For the last year, the Northern District WWTP exceeded the BOD and TSS loading and concentration limits. The plant has shown an increased ability to improve removal efficiencies, and this trend is expected to continue.

### Probable Causes

Potential causes of the exceedances include inaccurate estimates of flow for developing loading values, dysfunctional mechanical equipment and a lack of process controls. GWA plans to address all of these issues in the very near term. It is also possible that digester supernatant returns high in soluble BOD are impacting BOD removal efficiencies, and assessment of this issue is also included in the plan.

## Planned Actions

*Replace Sludge Pumps*

During 2006, the Northern District WWTP went through numerous repairs, including the clarifiers and one of the preaerators. This improved the plant's solids removal efficiencies beyond the ability of the decrepit sludge pumps to extract it. Some of the funding originally earmarked to replace the sludge pumps was diverted to ensure that GWA is maintaining adequate reserve funds in order to comply with the Stipulated Order and bond covenant requirements. Funding has since been located, and as soon as Public Utilities Commission approval has been granted, the sludge pumps will be replaced in accordance with the attached schedule.

Additionally, GWA will be repairing the second aerated grit removal system although the lack of this system is not expected to greatly impact effluent results. It will, however, provide system redundancy.

*Provide Process Controls*

GWA has begun implementing process controls in order to optimize plant operation. This will include a series of regular analyses at various points in the process and a review of other process information, such as clarifier weir overflow rates, inlet chamber detention times and sludge removal volumes. Feedback from this information is expected to significantly improve plant operation and treatment efficiencies.

A formal plan, including schedule and target dates, is attached.

*Install Flow Monitoring*

GWA has not had reliable flow monitoring at the Northern District Plant, and feels that the loading data may therefore be inaccurate. Manual measurements at the Parshall flume are not continuous and are likely rendered inaccurate by the turbulence in the channel. GWA installed a temporary flow monitoring device in a less turbulent portion of the channel on May 1, 2007 and is planning for improved long term flow monitoring. The temporary device is a Teledyne ISCO 2150 Area Velocity Flow Module and sensor, which will continuously collect data for download.

*Improved Laboratory Sampling and Analysis*

Along with the process control analysis and implementation, GWA also plans to review the sampling and analysis program at the ND WWTP to verify that data is as accurate as possible. A new laboratory at the Agana WWTP will verify data results and provide additional data (see Hagåtña report submitted April 30, 2007). This service will be used until the laboratory at ND WWTP can be refurbished to handle the operating tests.

*Solids handling*

The biosolids are currently trucked to the Hagåtña WWTP and processed via the aerated digesters and the centrifuges. Once the sludge pumps are efficiently removing sludge the biosolids will have compliant treatment. Although GWA does have long term plans to repair the anaerobic digesters at the ND WWTP, other funding priorities are more critical. As long as Hagåtña has capacity to handle the ND sludge, this will remain a suitable method of solids handling.

Should process control sampling and analysis show that supernatant from the currently dysfunctional digesters is impacting the ability of the ND WWTP to meet its permit limits (e.g. $BOD_5$), this item will be reassessed and reprioritized.

**Follow-Up**

It is expected that the above actions will bring the Northern District WWTP into full compliance with all parameters of its NPDES permit. In the unlikely event that three months of DMR data after the completion of these reconstructive actions shows continuing noncompliance, GWA will immediately commence chemical evaluation testing for process improvement and proceed to the design of a system for advanced primary treatment. In this case, GWA would also complete an economic and cost benefit analysis to compare long term chemical and O&M costs vs. capital debt service and O&M costs of a secondary wastewater treatment plant.

GWA strongly feels that any alternative process evaluation testing completed prior to completion of the actions discussed above would not provide accurate results, and that the results would be rendered inaccurate, obsolete and inappropriate once the planned actions have been completed.

When the plant has been optimized, GWA will continue to perform process monitoring and to maintain the highest standard of operational efficiency.

Attachment A: Performance Improvement Plan and Schedule

The attached Gantt chart provides a schedule for the actions discussed in this report. These include increased sampling and analysis. One item to bring to your attention in the schedule is the characterization of the digester supernatant BOD (return from the anaerobic digesters). Determination of the amount and solubility of the BOD in the return flow will dramatically assist GWA in making determinations regarding future repair priorities and treatment options.

GWA is createing a process control laboratory at the Hagåtña WWTP. Having this dedicated wastewater laboratory will allow GWA to complete more process sampling and get analytical data more rapidly in order to optimize plant operations. Until this laboratory is fully operational, some additional sampling will be analyzed at the Dededo laboratory. Sampling will be conducted in accordance with the schedule in Table 1. The Gantt chart includes a detailed schedule for the sampling and analysis.

The Gantt chart also includes a schedule for procurement and installation of new sludge transfer pumps at the Northern District WWTP. Because bond funding will be utilized and there is not currently a bond project identified for ND, review by the Public Utility Commission will need to be obtained for the project. The PUC meets on Mary 17-18, and no difficulties are anticipated for obtaining the approval.

Further the Gantt chart has a schedule for repair of the grit removal to the Northern District WWTP. This work will be initiated as O&M and any repairs that are needed will be completed as a performance improvement project.

In the unlikely event that after these efforts are implemented the plant still does not meet the permit requirements, GWA has also provided a schedule for chemical evaluation testing for advanced primary treatment and a concurrent economic analysis to determine if the annual debt service on the capitalization of a secondary treatment facility would be more economical for the Island's ratepayers.

## Table 1: Process Control Sampling Northern Plant

### Until Hagåtña lab is on-line & composite samplers have been obtained

| Parameter | Type of sample | Test | Units | S1 Influent | S2 Effluent |
|---|---|---|---|---|---|
| Location | | | | | |
| pH | Grab | SM 4500-H+ B.* | pH | 5/week on site + 1/week in Dededo lab | 5/week on site + 1/week in Dededo lab |
| DO | Grab | SM 4500-O G.* | mg/L | 5/week on site | 5/week on site |
| TSS | Composite - 3x/24hr | SM 2540 D. | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| BOD₅ | Composite - 3x/24hr | SM 5210 B. | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| COD Cr | Composite - 3x/24hr | SM 5220 | mg/L | 2/week in Dededo lab | 2/week in Dededo lab |
| Settleable solids | Composite - 3x/24hr | SM 2540 F. | mg/L | | 2/week on site |

### Once Hagåtña lab is on-line

| Parameter | Type of sample | Test | Units | S1 Influent | S2 Effluent |
|---|---|---|---|---|---|
| Location | | | | | |
| pH | Composite - 24h | SM 4500-H+ B.* | pH | 5/week on site + 1/week in Dededo lab | 5/week on site + 1/week in Dededo lab |
| DO | Composite - 24h | SM 4500-O G.* | mg/L | 5/week on site | 5/week on site |
| TSS | Composite - 24h | SM 2540 D. | mg/L | 3/week in Hagatna lab | 3/week in Hagatna lab |
| BOD5 | Composite - 24h | SM 5210 B. | mg/L | 3/week in Hagatna lab | 3/week in Hagatna lab |
| COD Cr | Composite - 24h | SM 5220 | mg/L | 3/week in Hagatna lab | 3/week in Hagatna lab |
| Settleable solids | Composite - 24h | SM 2540 F. | mg/L | 3/week in Hagatna lab | 5/week in Hagatna lab |

Note: Transition to Hagåtña Lab schedule will proceed as equipment comes on-line rather than all at once.

*In accordance with manufacturers instructions for probe use

ATTACHMENT A - WWTP Performance Improvement Schedule

Attachment B: <u>Northern District Wastewater Treatment Plant Process Control
Calculations</u>

| Process Control Item | Units |
|---|---|
| Totalized flow per day | MGD |
| Pre-aeration tank Detention Time[1] | Minutes |
| Grit chamber Detention Time[1] | Minutes |
| Grit Channel Velocity[1] | ft/sec |
| Grit Removal Quantity | ft³/MGD |
| Primary Clarifier Surface Loading[1] | gpd/ft² |
| Primary Clarifier Weir Overflow Rate[1] | gpd/ft |
| Primary Clarifier Detention Time[1] | Hrs |
| Primary Sludge Pumping Time[1] | Min/hr |
| BOD Removal Efficiency | Percentage |
| Suspended Solids Removal Efficiency | Percentage |
| Settleable Solids Removal Efficiency | Percentage |

[1]Computed for each unit in service

The above information will be tabulated in an Excel spreadsheet. In some cases
(i.e. removal efficiencies) calculations will be performed as laboratory equipment,
staff and procedures become available to obtain the information required. In
other areas (e.g. detention times and polymer usage), data collection has already
begun. Additional data on BOD solubility will also be provided as shown in the
schedule in Attachment A.

Data will be provided to EPA Region IX monthly or on a schedule determined by
EPA.



**U.S. Department of Justice**

Environment and Natural Resources Division

90-5-1-1-07942

*Environmental Enforcement Section*
*301 Howard Street*
*Suite 1050*
*San Francisco, CA 94105*

*Telephone (415) 744-6483*
*Facsimile (415) 744-6476*

September 26, 2007

Via fax and e-mail

Sam Taylor, Esq.
Guam Waterworks Authority
578 North Marine Corps Drive
Tamuning, Guam 96913

> Re: United States v. Guam Waterworks Authority and the Government of Guam
> Civil Case No. 02-00035 (D. Guam)

Dear Mr. Taylor:

On September 4, 2007, EPA demanded a stipulated penalty of $40,000 from Guam Waterworks Authority ("GWA") for violations of Paragraphs 39 and 42 of the Stipulated Order for Preliminary Relief ("Stipulated Order") entered by the Court on June 5, 2003, and as amended on October 19, 2006. In accordance with Paragraph 67 of the Stipulated Order, GWA disputed EPA's determination in a letter dated September 11, 2007, and requested informal negotiations. Representatives of the United States and GWA conferred in a conference call on September 24 (Pacific Daylight Time). This letter responds to the issues raised in GWA's September 11 letter and concludes the period of informal negotiations.

I.    Background

The parties agreed that entry of the Stipulated Order was the most appropriate way to require the immediate implementation of short-term projects and initial planning measures by GWA to address issues of GWA's compliance with the Clean Water Act and Safe Drinking Water Act. Stipulated Order at 3. The Guam Public Utilities Commission ("PUC") issued an Order on April 10, 2003, renewing its commitment to provide GWA with adequate rate relief to enable GWA to comply with an EPA-approved strategic plan to restore the utility and to bring it into compliance with federal law. Stipulated Order, Attachment A.

Accordingly, Paragraph 39 of the Stipulated Order required GWA to develop an interim corrective action plan and schedule to restore minimum primary treatment operational capacity to the Northern District Sewage Treatment Plant ("STP"). The interim corrective action plan was required to include a schedule for completion of the improvements in the plan by November 26, 2004, which was 540 days after entry date. In addition, GWA was required to complete a design by November 26, 2004, to fully renovate the Northern District STP to bring it into compliance with its NPDES permit requirements.

Similarly, Paragraph 42 of the Stipulated Order required GWA to develop an interim corrective action plan and schedule to restore minimum primary treatment operational capacity to the Agana STP. The interim corrective action plan was required to include a schedule for completion of the improvements in the plan by June 5, 2005, two years after the entry date. In

addition, GWA was required to complete a design by June 5, 2005, to fully renovate the Agana STP to bring it into compliance with its NPDES permit requirements.

GWA did not meet the original compliance deadlines in Paragraphs 39 and 42 for the renovation of the Northern District and Agana STPs. EPA did not impose stipulated penalties for these violations of the Stipulated Order. Instead, the United States and GWA agreed to a modification of the Stipulated Order, which was approved by the Court on October 25, 2006. The modification required GWA to hire additional accounting and engineering support and allowed for the extension of certain compliance deadlines. In particular, Paragraph 39 now included a revised scope of work for corrective actions to restore operational capacity for the Northern District STP by the deadline of March 2, 2007, and required GWA to conduct an operational performance evaluation by May 4, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. Paragraph 42 was amended to require a revised scope of work for corrective actions to restore operational capacity for the Agana STP by the deadline of March 2, 2007, and required GWA to conduct an operational performance evaluation by April 30, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. GWA was also required to complete renovations at the Agana main sewer pump station by June 1, 2007.

II.     Violations of the Stipulated Order

        A.     Paragraph 39 violations

On March 2, 2007, GWA submitted a certification letter to EPA regarding its work. GWA stated that it had successfully completed its renovation work under Paragraph 39. GWA specifically stated:

> GWA is now monitoring the performance of the restored facility and will evaluate it to determine if any process adjustments may be needed in order to meet the NPDES permit. GWA is on schedule to complete this work by the May 4, 2007 compliance date.

On May 4, 2007, GWA submitted a second certification letter to EPA regarding its Paragraph 39 obligations. GWA's May 4 letter called into question whether it had successfully completed its renovation work, which was supposed to be completed by March 2, 2007, by stating that this work had been completed "with the exception of five of the six sludge pumps and half of the aerated grit removal system." These sludge pumps were now listed as a "planned action." Moreover, GWA acknowledged that funding originally earmarked to install sludge pumps -- as specifically contemplated in Paragraph 39 -- "was diverted to ensure that GWA is maintaining adequate reserve funds in order to comply with the Stipulated Order and bond covenant requirements." May 4 letter at 4.

Instead of conducting the operational performance evaluation required by Paragraph 39, GWA stated:

> Since GWA is still working to complete mechanical repairs, GWA does not believe that the requirements for additional treatment can be properly assessed until additional sludge pumps have been procured and plant operations have been fully optimized and assessed.

GWA has still not conducted the operational performance evaluation required by Paragraph 39.

In sum, GWA states that it has not completed the renovation of the Northern District STP, apparently due to its failure to procure funds necessary for the renovation. Moreover, GWA has determined not to conduct an operational performance evaluation until it can complete these renovations.

### B. Paragraph 42 violations

On March 2, 2007, GWA submitted a certification letter to EPA regarding its work. GWA stated that the renovation work required by Paragraph 42 had been completed, and that it was proceeding with the operational performance evaluation of the STP performance. GWA noted that it would perform additional monitoring to collect sufficient information to properly evaluate the system by the April 30 compliance date. In addition, GWA expected the Agana main sewer pump station ("SPS") to be completed on schedule.

In a second certification letter submitted on April 30, 2007, however, GWA did not submit an operational performance evaluation. Instead, GWA stated that it did "not believe that two months of operation are adequate to fully optimize and assess the treatment capabilities of the newly rehabilitated treatment plant." GWA has still not conducted the operational performance evaluation required by Paragraph 42.

Regarding the Agana SPS, GWA submitted a letter to EPA on July 24, 2007, stating that it had not met the compliance date of June 1 for completion of the SPS. Evidently, GWA had planned to use certain bypass pumps to allow the SPS work to proceed but the pumps were not adequate to handle the incoming flow. GWA indicated that it was having difficulty obtaining to procure the necessary pumps.

In sum, GWA stated that it lacked the funds to purchase pumps that would have allowed required renovation work on the SPS to proceed. GWA has never conducted the operational performance evaluation required by Paragraph 42.

### III. Stipulated Penalties under the Stipulated Order

As indicated by EPA's letter dated September 4, 2007, stipulated penalties of $298,000 had accrued for GWA's violations of Paragraphs 39 and 42 as of August 30, 2007. Stipulated penalties of $4,000 per day will continue to accrue until the final date of completion of these requirements. Pursuant to Paragraph 56 of the Stipulated Order, EPA agreed to reduce the amount of stipulated penalties owed to it and imposed a penalty of $40,000 for these violations as of August 30, 2007.

GWA has alleged that a demand for stipulated penalties is not appropriate because EPA did not approve or disapprove GWA's submittals under Paragraphs 39 and 42. However, Paragraph 54 of the Stipulated Order states unequivocally that: "Stipulated penalties shall begin to accrue on the date after performance is due and shall continue to accrue through the final date of completion even if no notice of the violation is sent to Defendants." GWA is responsible for submitting an operational performance evaluation under Paragraphs 39 and 42 and cannot ignore the Stipulated Order and unilaterally determine that it "does not believe that additional testing is necessary to determine whether the treatment plants meet their federal permits." September 11, 2007 letter at 6. Moreover, due to its purported inability to finance the work, GWA has failed to complete renovation work within the compliance deadlines established by Paragraphs 39 and 42.

Sam Taylor, Esq.
Guam Waterworks Authority
Page 4

We have carefully reviewed GWA's September 11, 2007 letter and have concluded that the stipulated penalty of $40,000 is justified. GWA failed to comply with deadlines in Paragraphs 39 and 42 that had been extended at GWA's request in the October 2006 modification of the Stipulated Order. Accordingly, this letter terminates the period of informal negotiations. EPA's determination that GWA owes $40,000 in stipulated penalties shall stand unless Defendants file a motion with the Court for dispute resolution pursuant to Paragraph 68 within 30 days of today. Pursuant to Paragraph 55 of the Stipulated Order, GWA's payment of the stipulated penalty of $40,000 to the United States is due by October 4, 2007.

Please call me at (415) 744-6483 if you have any questions.

Sincerely,

Robert D. Mullaney
Trial Attorney

cc:    John Benavente, P.E. (GWA)
       Mikel Schwab, Assistant U.S. Attorney
       Julia Jackson, Esq. (EPA)

GUAM WATERWORKS AUTHORITY   P.O. Box 3010 Hagatña, Guam 96932

INVOICE DATE   INVOICE NUMBER

— PLEASE DETACH BEFORE DEPOSITING —

GUAM WATERWORKS AUTHORITY
P.O. BOX 3010 HAGATNA, GUAM 96932
TEL: (671) 647-7601 / 7874

**GENERAL FUND ACCOUNT**

HAGATNA BRANCH
BANK OF GUAM
HAGATNA, GUAM

101-511
1214

Check No.

PAY

FORTY THOUSAND AND 00/100 **********************************

TO THE ORDER OF

U.S. DEPARTMENT OF JUSTICE
U.S. ATTORNEY - DISTRICT OF GUAM
ATTN: FINANCIAL LITIGATION UNIT
108 HERNAN CORTEZ, STE 500, SIRENA PLAZA
HAGATNA, GU 96910

AMOUNT

NON-NEGOTIABLE

TWO SIGNATURES REQUIRED OVER $10,000

DO NOT SEND CASH. MAKE CHECK OR MONEY ORDER PAYABLE TO: U.S. DEPARTMENT OF JUSTICE.
To pay your debt by credit card or on-line, go to www.pay.gov, click "Search Public Forms, and click "DOJ DAOG."
INCLUDE USAO NUMBER ON CHECK OR MONEY ORDER

Exhibit E