

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
ROBERT D. MULLANEY
Environmental Enforcement Section
Environment & Natural Resources Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6491
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

NOV 28 2007

JEANNE G. QUINATA
Clerk of Court

UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 02-00035 |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR DISPUTE RESOLUTION |
| v. | |
| GUAM WATERWORKS AUTHORITY and the GOVERNMENT OF GUAM, | |
| Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   The Complaint and the 2003 Stipulated Order for Preliminary Relief . . . . . . . . . 1

     B.   GWA's History of Violations of the 2003 Stipulated Order . . . . . . . . . . . . . . . . 4

     C.   The Modification of the 2003 Stipulated Order . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     D.   GWA's Violations of Paragraphs 39 and 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          1.   Paragraph 39 violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          2.   Paragraph 42 violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          3.   EPA's penalty demand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.   The 2006 Stipulated Order Establishes the Framework for Assessing Defendants'
          Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.   GWA's Motion Should Be Rejected as Untimely. . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.   GWA's Motion Should be Dismissed as Moot. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.   The United States Properly Determined that GWA Should Pay Stipulated
          Penalties for its Violations of the 2006 Stipulated Order. . . . . . . . . . . . . . . . . . . 11

          1.   GWA failed to comply with the compliance schedule set out in
               Paragraphs 39 and 42 for corrective action, renovation, and
               operational performance evaluations at the Northern District STP
               and the Agana STP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.   GWA may not unilaterally decide to ignore its obligations under
               the 2006 Stipulated Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          3.   GWA's payment of stipulated penalties furthers the purpose of
               the 2006 Stipulated Order and ensures progress in GWA's efforts
               to comply with the Clean Water Act. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

-i-

# **TABLE OF AUTHORITIES**

<u>FEDERAL CASES</u>

<u>Comfort Lake Ass'n Inc. v. Dresel Contracting Inc.</u>, 138 F.3d 351 (8th Cir. 1998) . . . . . . . . . . . 9

<u>Harris v. City of Philadelphia</u>, 47 F.3d 1311 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Herman v. Tidewater Pacific, Inc.</u>, 160 F.3d 1239 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Smith v. Sumner</u>, 994 F.2d 1401 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Stewart v. M.M. & P. Pension Plan</u>, 608 F.2d 776 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Thompson v. Enomoto</u>, 915 F.2d 1383 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>U.S. v. Accra Pac, Inc.</u>, 173 F.3d 630 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

<u>U.S. v. ITT Continental Baking Co.</u>, 420 U.S. 223 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>United States v. Armour & Co.</u>, 402 U.S. 673 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

<u>United States v. Rueth Development Co.</u>, 335 F.3d 598 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . 19

ii

FEDERAL STATUTES

33 U.S.C. § 1319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19

33 U.S.C. § 1364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

33 U.S.C. §§ 1251 - 1387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. §§ 300f - 300j-26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 300g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 300i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FEDERAL REGULATIONS

40 C.F.R. § 19.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

40 C.F.R. § 19.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iii

# I. INTRODUCTION

On May 4, 2007, the U.S. Environmental Protection Agency ("EPA") demanded that the Guam Waterworks Authority ("GWA") pay stipulated penalties of $40,000 for violations of Paragraphs 39 and 42 of the Stipulated Order for Preliminary Relief ("Stipulated Order") in this case. GWA's Motion for Dispute Resolution ("GWA DR Mtn."), Exh. B. After the parties engaged in informal dispute resolution pursuant to the Stipulated Order, the United States informed GWA that EPA's determination of the amount of stipulated penalties was justified. Id., Exh. D. GWA paid the $40,000 penalty. Id., Exh. E. Despite this payment, GWA filed its motion with the Court for dispute resolution under the Stipulated Order. As explained in detail below in Section III, GWA's motion should be denied because it: (1) was not timely filed or served; (2) raises a moot issue that was resolved by GWA's penalty payment; (3) is not supported by the undisputed facts; and (4) is inconsistent with the purpose of the Stipulated Order, which is intended to require GWA to immediately implement short-term projects to address issues of GWA's compliance with the Clean Water Act ("CWA"). Stipulated Order at 3. Accordingly, the United States requests the Court to deny GWA's motion and to affirm EPA's determination on the stipulated penalties.

# II. BACKGROUND

A. The Complaint and the Stipulated Order for Preliminary Relief

GWA operates a Publicly Owned Treatment Works ("POTW") to collect and treat sewage, including five sewage treatment plants ("STP") subject to National Pollutant Discharge Elimination System ("NPDES") permits under the CWA. Complaint, ¶49. It also operates three public water systems that provide drinking water for the majority of the population of Guam. Complaint, ¶¶65, 67,70, 71. Between November 1999 and December 2002, GWA discharged or spilled more than 500 million gallons of raw sewage from its POTW, causing violations of Guam's Water Quality Standards for fecal bacteria in receiving waters and weekly health advisories at Guam's public beaches, and resulting in fecal contamination in GWA's drinking

-1-

1  water wells. Complaint, ¶¶92, 105, 108 - 111, Att. B, C. In addition, GWA repeatedly violated

2  the Maximum Contaminant Level ("MCL") for total coliforms and the treatment technique for

3  turbidity in drinking water. Complaint, ¶¶119, 124, Att. E, F. The MCL violations led to the

4  issuance of "boil water" notices for extended periods. Id. at ¶148. GWA's dilapidated public

5  water systems experienced frequent breakdowns of essential equipment such as well pumps and

6  chlorinators. Id. at ¶141, 145. Due to these breakdowns, the system frequently provided either

7  low or no water pressure, and often provided water without adequate disinfection. Id. at ¶142,

8  145. In sum, both GWA's raw sewage discharges and its inadequately treated drinking water

9  posed a serious threat to human health on Guam. Id. at ¶¶115, 132, 137, 143, 147.

10        The United States filed a complaint in this action on December 20, 2002, seeking

11  injunctive relief and the assessment of civil penalties against GWA under the CWA, 33 U.S.C.

12  §§ 1251 - 1387, and the Safe Drinking Water Act, 42 U.S.C. §§ 300f - 300j-26 (the "SDWA").

13  The complaint included allegations against GWA pursuant to the emergency provisions of both

14  the CWA and SDWA -- section 504 of the CWA, 33 U.S.C. § 1364, and section 1431(a) of the

15  SDWA, 42 U.S.C. § 300i(a) -- to address the imminent and substantial endangerment to the

16  health and welfare of persons presented by: (1) the numerous and repeated discharges of

17  untreated and inadequately treated wastewater from GWA's POTW, resulting in elevated levels

18  of fecal coliform bacteria in both surface waters and drinking water wells on Guam; and

19  (2) serious deficiencies in GWA's public water systems, causing contaminated water to be served

20  to the public. Id., Fifth and Eighth Claims for Relief. The United States also sought both civil

21  penalties and injunctive relief under CWA section 309(b) and (d), 33 U.S.C. § 1319(b) and (d),

22  for violations of the CWA and the terms and conditions of applicable NPDES permits, and under

23  SDWA section 1414(b), 42 U.S.C. § 300g-3(b), for violations of the SDWA and the National

24  Primary Drinking Water Regulations. Id. at 28, Prayer for Relief. The United States joined the

25  Government of Guam as a statutory defendant in this action pursuant to CWA section 309(e), 33

26  U.S.C. § 1319(e). Id. at ¶¶99, 100.

27

28                                              -2-

1    After months of negotiations, the parties were able to reach an agreement on the terms of

2    the Stipulated Order, which the United States lodged with the Court on May 21, 2003.  The

3    parties agreed that entry of the Stipulated Order was the most appropriate way to require

4    immediate implementation of short-term projects and initial planning measures by GWA to

5    address issues of GWA's compliance with both the CWA and the SDWA.  Stipulated Order at 3.

6    In addition, the Guam Public Utilities Commission ("PUC") had issued an Order on April 10,

7    2003, renewing its commitment to provide GWA with adequate rate relief to enable GWA to

8    comply with an EPA-approved strategic plan to restore the utility and to bring it into compliance

9    with federal law.  Stipulated Order, Attachment A.

10    Accordingly, the 41-page Stipulated Order contained a comprehensive set of interim

11    measures, requiring GWA to implement short-term construction and rehabilitation projects as

12    well as initial planning measures to improve GWA's management and organizational structures,

13    operations and maintenance, and financial administration.  For example, GWA is required to

14    undertake the following construction projects to immediately address its POTW's raw sewage

15    discharges:  (1) construct two new ocean outfalls for the Agana and Northern District STPs

16    (Stipulated Order, ¶¶35, 36); (2) design and construct improvements to the Chaot main pump

17    station to stop daily sewage discharges into drinking water wells (id. at ¶37); and (3) renovate the

18    Northern District and Agana STPs to restore primary treatment of sewage (id. at ¶¶39, 42).

19    Regarding GWA's public water systems that provide drinking water, GWA is required to

20    rehabilitate one surface water treatment plant (id. at ¶41), and rehabilitate or replace drinking

21    water wells that have been frequently contaminated with raw sewage (id. at ¶45).  Pursuant to the

22    Stipulated Order, GWA also undertook critical planning measures such as the development of a

23    General Plan to identify and prioritize future needs (id. at ¶10), the preparation of a financial plan

24    to pay for the improvements (id. at ¶¶26-31), the development of a disinfection program for its

25    drinking water systems (id. at ¶11), and the preparation of a parts inventory, operation and

26    maintenance manuals, and a preventative maintenance program for its physical plants (id. at

27

28                                                        -3-

¶¶15, 16, 20, 21).  The Stipulated Order included stipulated penalties designed to ensure GWA's compliance with specified deadlines established for the compliance measures.  Id. at ¶53.  After GWA completes the initial planning measures set out in this Stipulated Order, the parties stated their intention to negotiate a further settlement to address additional compliance issues at GWA.  Stipulated Order at 3.  This Court signed and entered the Stipulated Order on June 5, 2003.

B.  GWA's History of Violations of the Stipulated Order

In order to keep GWA's compliance efforts on track, EPA has repeatedly demanded stipulated penalties for GWA's violations of the Stipulated Order.  GWA has paid a total of $224,750 in stipulated penalties for these violations, including the following instances:

| Date | EPA's Demand | Stipulated Order Paragraph(s) |
|------|--------------|-------------------------------|
| January 22, 2004 | $6,000 | ¶37 (Chaot pump station) |
| March 8, 2004 | $11,000 | ¶11 (disinfection program) |
| May 18, 2005 | $17,750 | ¶10 (master plan); ¶45 (drinking water well rehabilitation) |
| August 4, 2005 | $4,000 | ¶11 (disinfection program); ¶37 (Chaot pump station) |
| August 31, 2005 | $2,000 | ¶17 (standby generators) |
| September 27, 2005 | $22,000 | ¶12 (chlorine monitoring) |
| December 6, 2005 | $32,000 | ¶10 (master plan); ¶15 (spare parts inventory); ¶21 (O&M manuals) |
| March 16, 2006 | $35,000 | ¶10 (master plan) |
| July 11, 2006 | $55,000 | ¶10 (master plan) |
| September 4, 2007 | $40,000 | ¶39 (Northern District STP); ¶42 (Agana STP) |

Declaration of Michael J. Lee in support of United States' Response to Defendants' Motion for Dispute Resolution ("Lee Decl."), ¶2.

C.  The Modification of the Stipulated Order

Paragraph 39 of the 2003 Stipulated Order required GWA to develop an interim corrective action plan and schedule to restore minimum primary treatment operational capacity to

-4-

the Northern District STP. Stipulated Order (entered June 5, 2003), ¶39. The interim corrective action plan was required to include a schedule for completion of the improvements in the plan by November 26, 2004, which was 540 days after entry date. Id. In addition, by November 26, 2004, GWA was required to complete a design to fully renovate the Northern District STP to bring it into compliance with its NPDES permit requirements. Id.

Similarly, Paragraph 42 of the 2003 Stipulated Order required GWA to develop an interim corrective action plan and schedule to restore minimum primary treatment operational capacity to the Agana STP. Id. at ¶42. The interim corrective action plan was required to include a schedule for completion of the improvements in the plan by June 5, 2005, two years after the entry date. Id. In addition, by June 5, 2005, GWA was required to complete a design to fully renovate the Agana STP to bring it into compliance with its NPDES permit requirements. Id.

GWA did not meet the original compliance deadlines in Paragraphs 39 and 42 of the 2003 Stipulated Order for the renovation of the Northern District and Agana STPs. Lee Decl., ¶3. However, EPA did not impose stipulated penalties for these violations of the Stipulated Order. Id. Instead, the United States and GWA agreed to a modification of the Stipulated Order, which was approved by the Court on October 25, 2006 ("2006 Stipulated Order"). The modification required GWA to hire additional accounting and engineering support, and allowed GWA more time for the completion of certain compliance tasks, including the renovation of the Northern District and Agana STPs. See Stipulation Amending Stipulated Order for Preliminary Relief (filed October 19, 2006) at 4 (¶1.l., ¶1.m.).

In the modified Stipulated Order entered on October 25, 2006, the parties agreed to new scopes of work and compliance schedules for the Northern District and Agana STPs. In particular, Paragraph 39 now included a revised scope of work for corrective actions to restore operational capacity for the Northern District STP by the deadline of March 2, 2007, and required GWA to conduct and submit to EPA an operational performance evaluation by May 4, 2007, to

-5-

determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. 2006 Stipulated Order, ¶39. Similarly, Paragraph 42 mandated a revised scope of work for corrective actions to restore operational capacity for the Agana STP by the deadline of March 2, 2007, and required GWA to conduct and submit to EPA an operational performance evaluation by April 30, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit effluent limitations. Id. at ¶42. GWA was also required by Paragraph 42 to complete renovations at the Agana main sewer pump station ("Agana SPS") by June 1, 2007. Id.

> D. GWA's Violations of Paragraphs 39 and 42

> 1. Paragraph 39 violations

On March 2, 2007, GWA submitted a certification letter to EPA regarding its work on the Northern District STP renovation pursuant to Paragraph 39 of the Stipulated Order. Lee Decl., Exh. 1. According to the letter, GWA had successfully completed its renovation work under Paragraph 39:

> GWA is now monitoring the performance of the restored facility and will evaluate it to determine if any process adjustments may be needed in order to meet the NPDES permit. GWA is on schedule to complete this work by the May 4, 2007 compliance date.

Id. at 3.

On May 4, 2007, GWA submitted a second certification letter to EPA regarding its Paragraph 39 obligations. Id., Exh. 3. Instead of conducting and submitting the operational performance evaluation required by Paragraph 39, GWA stated: "Since GWA is still working to complete mechanical repairs, GWA does not believe that the requirements for additional treatment can be properly assessed until additional sludge pumps have been procured and plant operations have been fully optimized and assessed." Id. at 3. GWA has still not conducted the operational performance evaluation required by Paragraph 39. Lee Decl., ¶9.

> 2. Paragraph 42 violations

On March 2, 2007, GWA submitted a certification letter to EPA regarding its work on the

-6-

Agana STP renovation pursuant to Paragraph 42 of the Stipulated Order. Id., Exh. 1. GWA stated that the renovation work required by Paragraph 42 had been completed, and that it was proceeding with the operational performance evaluation of the STP performance. Id. at 3.

In a second letter submitted on April 30, 2007, however, GWA did not certify that it had conducted and submitted an operational performance evaluation. Id. at ¶6 and Exh. 2. Instead, GWA stated that it did "not believe that two months of operation are adequate to fully optimize and assess the treatment capabilities of the newly rehabilitated treatment plant." Id., Exh. 2 at 3. GWA has still not conducted the operational performance evaluation required by Paragraph 42. Lee Decl., ¶7. In addition, regarding the Agana SPS, GWA submitted a letter to EPA on July 24, 2007, stating that it had not met the compliance date of June 1, 2007, for completion of the SPS renovation. Id., Exh. 4 at 4. GWA has not yet completed the renovation of the Agana SPS. Lee Decl., ¶12.

3.     EPA's penalty demand

On September 4, 2007, EPA demanded a stipulated penalty of $40,000 from Guam Waterworks Authority ("GWA") for violations of Paragraphs 39 and 42 of the Stipulated Order. GWA DR Mtn., Exh. B. In accordance with Paragraph 67 of the Stipulated Order, GWA disputed EPA's determination in a letter dated September 11, 2007, and requested informal negotiations. Id., Exh. C. Representatives of the United States and GWA conferred in a conference call on September 24 (Pacific Daylight Time). Lee Decl., ¶13. On September 26, 2007, the United States responded in writing to the issues raised in GWA's September 11 letter, concluding the period of informal negotiations. GWA DR Mtn., Exh. D. In accordance with Paragraph 68 of the Stipulated Order, the United States stated: "EPA's determination that GWA owes $40,000 in stipulated penalties shall stand unless Defendants file a motion with the Court for dispute resolution pursuant to Paragraph 68 within 30 days of today." Id. GWA paid the stipulated penalty of $40,000 by a check dated October 1, 2007. Id., Exh. E. GWA then filed its motion with the Court for dispute resolution on October 29, 2007. A copy of GWA's motion

-7-

1  was not provided to EPA until October 30, 2007. Lee Decl., ¶14. According to this Court's
2  Order, the United States should file its response to GWA's motion by November 29, 2007.
3  Court Docket #50.

## III.   ARGUMENT

### A.   The Stipulated Order Establishes the Framework for Assessing Defendants' Claims.

7  Similar to a Consent Decree, the Stipulated Order in this case has attributes of both a
8  contract and a judicial act. Smith v. Sumner, 994 F.2d 1401, 1406 (9th Cir. 1993). For
9  enforcement purposes, the Stipulated Order in this case must be construed as a contract. See
10  U.S. v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975); Thompson v. Enomoto, 915 F.2d
11  1383, 1388 (9th Cir. 1990). As the Supreme Court observed, "[c]onsent decrees are entered into
12  by parties to a case after careful negotiation has produced agreement on their precise terms."
13  United States v. Armour & Co., 402 U.S. 673, 681 (1971). Therefore, as in a contract, "the
14  scope of a consent decree must be discerned within its four corners, and not by reference to what
15  might satisfy the purposes of one of the parties to it. . . . [T]he instrument must be construed as it
16  is written." Id. at 682. Accordingly, the Court's determination in this case should be based on
17  the framework established by the Stipulated Order.

### B.   GWA's Motion Should Be Rejected as Untimely.

19  Section XI (Dispute Resolution) of the Stipulated Order provides:

20      The Dispute Resolution procedures of this Section shall be the **exclusive mechanism** to
        resolve disputes arising under or with respect to this Stipulated Order for Preliminary
21      Relief.

22  Stipulated Order, ¶66 (emphasis added). In response to EPA's September 4, 2007 demand for
23  stipulated penalties of $40,000 for GWA's violations of Paragraphs 39 and 42, GWA invoked
24  dispute resolution in its September 11 letter. GWA DR Mtn., Exh. C. Pursuant to Paragraphs 66
25  through 68 of the Stipulated Order, GWA stated its intent "to dispute the fines that were levied"
26  in EPA's letter. Id. at 1. GWA sought to meet with EPA representatives within the 15-day

28                                         -8-

1    informal negotiation period to resolve the matter. Id. at 6.

2    The parties held a conference call to discuss the disputed issue of the stipulated penalties

3    on September 24, 2007 (Pacific Daylight Time). Lee Decl., ¶13. In a letter dated September 26,

4    2007, the United States then notified GWA that it was terminating the period of informal

5    negotiations, stating: "EPA's determination that GWA owes $40,000 in stipulated penalties shall

6    stand unless Defendants file a motion with the Court for dispute resolution pursuant to Paragraph

7    68 within 30 days of today." GWA DR Mtn., Exh. D at 4.

8    Paragraph 68 of the Stipulated Order sets out the procedure for dispute resolution:

9    If the informal negotiations are unsuccessful, the disputed determination by EPA shall
     control, unless Defendants file a motion with this Court for dispute resolution. **Any such**
10   **motion must be filed within 30 days after termination of informal negotiations and**
     **must be concurrently sent to EPA and DOJ.**

11

12   Stipulated Order, ¶68 (emphasis added). GWA's motion, which should have been filed by

13   October 26, 2007, 30 days after termination of informal negotiations, was not filed until October

14   29, 2007. Moreover, GWA did not send a copy of its motion to EPA until October 30, 2007.

15   Lee Decl., ¶14. Therefore, GWA failed to comply with the procedures for filing and serving a

16   motion for dispute resolution under Paragraph 68. Based on GWA's failure to timely file and

17   serve its motion, the Court should conclude that "the disputed determination by EPA shall

18   control" (Stipulated Order, ¶68), and uphold the $40,000 penalty that GWA has already paid to

19   the United States.

20       C.     GWA's Motion Should be Dismissed as Moot.

21   Pursuant to Article III, Section 1, of the United States Constitution, "the judicial power of

22   Federal courts is limited to 'cases' and 'controversies.'" Stewart v. M.M. & P. Pension Plan, 608

23   F.2d 776, 782 (9th Cir. 1979). The doctrine that federal courts may not decide moot cases

24   derives from Article III's requirement. Comfort Lake Ass'n Inc. v. Dresel Contracting Inc., 138

25   F.3d 351, 354 (8th Cir. 1998). "'Simply stated, a case is moot when the issues presented are no

26   longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Herman v.

27

28                                                 -9-

*Tidewater Pacific, Inc.*, 160 F.3d 1239, 1246 (9th Cir. 1998). Moreover, "it is not enough that a
2  dispute was very much alive when suit was filed. . . . . [t]he parties must continue to have a
3  'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472,
4  477-78 (1990). In sum, "[a] case or controversy must be present at every moment of the
5  litigation. That's the point of the mootness doctrine, which is as applicable to consent decrees as
6  to other judgments." *U.S. v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999).

7  　　　　In this case, Paragraph 67 of the Stipulated Order required GWA to provide a written
8  notice to the United States, "outlining the nature of the dispute, submitting all supporting
9  information and document relating to the dispute, describing its proposed resolution, and
10  requesting informal negotiations to resolve the dispute." Stipulated Order, ¶67. In its September
11  11, 2007 letter, GWA identified that it intended "to dispute the fines that were levied in" EPA's
12  penalty demand letter of September 4, 2007. GWA DR Mtn., Exh. C at 1. GWA proposed that
13  no fine was appropriate and that EPA should resolve the dispute by agreeing to reduce or
14  eliminate the fine. *Id.* at 6.

15  　　　　The United States and GWA discussed the dispute in a telephone conference on
16  September 24 (Pacific Daylight Time). Lee Decl., ¶13. During the call, the United States
17  explained the basis for its determination that the stipulated penalties were justified. *Id.* On
18  September 26, 2007, the United States provided written notification of its conclusion to GWA,
19  terminated the period of informal negotiations, and stated that GWA's payment of the penalty
20  was due by October 4, 2007. GWA DR Mtn., Exh. D.

21  　　　　GWA paid the $40,000 penalty demand without any reservation by a check dated October
22  1, 2007. *Id.*, Exh. E. By that payment, GWA ended the dispute between the parties. Simply put,
23  EPA demanded payment of $40,000, the parties engaged in informal dispute resolution about the
24  demand, the United States confirmed that GWA owed $40,000, and GWA paid the penalty
25  without any reservation. There is no current dispute between the parties regarding a stipulated
26  penalty. Although this Court has continuing jurisdiction to enforce the Stipulated Order pursuant

28  -10-

to Paragraph 70 (Stipulated Order, ¶70), the Court's "continuing jurisdiction must be limited to enforcement of the decree when the parties are at loggerheads about some concrete subject, lest it condone a violation of Article III." Accra Pac, Inc., 173 F.3d at 633. Because GWA's payment resolved the dispute between the parties, the United States requests the Court to dismiss GWA's motion on the grounds of mootness.

D.     The United States Properly Determined that GWA Should Pay Stipulated Penalties for its Violations of the Stipulated Order.

In its motion for dispute resolution, GWA raised three arguments: (1) GWA complied with Paragraphs 39 and 42 by its submittals on April 30 and May 4, 2007; (2) EPA was required to provide a written response to GWA's submittals; and (3) the $40,000 penalty is inconsistent with the purpose of the Stipulated Order. As demonstrated below, GWA's unsupported arguments conflict with the purpose and language of the Stipulated Order and should be rejected.

1.     GWA failed to comply with the compliance schedule set out in Paragraphs 39 and 42 for corrective action, renovation, and operational performance evaluations at the Northern District STP and the Agana STP.

As a starting point, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. . . . [T]he instrument must be construed as it is written." Armour & Co., 402 U.S. at 682. As GWA acknowledged, "[t]he Northern District Treatment Plant has never been in compliance with its NPDES permits and [the Agana STP] has been out of compliance with its permits for over a decade." GWA DR Mtn. at 5, n.2. In order to remedy these long-standing violations, Paragraphs 39 and 42 of the Stipulated Order required GWA to "implement corrective actions to restore primary treatment operational capacity," "to conduct an operational performance evaluation," and to submit to EPA and Guam EPA the "operational performance evaluation with a determination of the need for advanced primary treatment" at the Northern District and Agana STPs. Stipulated Order, ¶¶39, 42.

After GWA had failed to meet the original compliance dates for the corrective actions for

-11-

the Northern District and Agana STPs set out in the June 2003 Stipulated Order, the parties negotiated the current compliance schedule in Paragraphs 39 and 42. Lee Decl., ¶4. The current deadlines represent a significant extension of time for GWA to complete the renovation work at the Northern District and Agana STPs. Id. For example, the deadline for renovation of the Northern District STP, originally scheduled to be completed by November 26, 2004, was extended by more than 27 months to March 2, 2007. Id. Similarly, renovation of the Agana STP, originally required to be completed by June 5, 2005, was now scheduled for completion 21 months later, on March 2, 2007. Id. Thus, pursuant to the modifications to the Stipulated Order agreed to by GWA and entered by this Court on October 25, 2006, Paragraphs 39 and 42 set out a compliance schedule for the following seven tasks:

(1)     Complete corrective actions to restore primary treatment operational capacity at the Northern District STP by March 2, 2007 (¶39);

(2)     Complete corrective actions to restore primary treatment operational capacity at the Agana STP by March 2, 2007 (¶42);

(3)     After completion of the corrective actions to restore primary treatment, conduct an operational performance evaluation at the Northern District STP by May 4, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit limitations (¶39);

(4)     After completion of the corrective actions to restore primary treatment, conduct an operational performance evaluation at the Agana STP by April 30, 2007, to determine whether advanced primary treatment is needed to comply with NPDES permit limitations (¶42);

(5)     Submit to EPA and Guam EPA the operational performance evaluation for the Northern District STP with a determination of the need for advanced primary treatment by May 4, 2007 (¶39);

(6)     Submit to EPA and Guam EPA the operational performance evaluation for the Agana STP with a determination of the need for advanced primary treatment by April 30, 2007 (¶42); and

-12-

1    (7)      Complete the renovation work on the Agana SPS by June 1, 2007. Stipulated Order, ¶42.

2              GWA's submittals under the 2006 Stipulated Order demonstrate that GWA fully

3    understood the obligations imposed by Paragraphs 39 and 42. On March 2, 2007, GWA certified

4    that it had completed the corrective action required to restore primary treatment operational

5    capacity to both the Northern District STP and the Agana STP. Lee Decl., Exh. 1 at 3.

6    Moreover, GWA expressly stated its intent to: (1) monitor the performance of the Northern

7    District STP "to determine if any process adjustments may be needed in order to meet the

8    NPDES permit;" and (2) "proceed with the operational performance evaluation of the [Agana

9    STP's] treatment process performance to determine if any process adjustments may be needed in

10   order to meet the NPDES permit." Id. In fact, GWA stated that it intended to "perform

11   additional monitoring (at two week intervals) on the [Agana] treatment facility in order to collect

12   sufficient information to properly evaluate the system." Id. GWA specifically stated: (1) it was

13   "on schedule to complete the [Northern District] evaluation by the May 4, 2007 compliance

14   date;" (2) it would "collect sufficient information to properly evaluate the [Agana STP] by the

15   April 30, 2007 evaluation report compliance date;" and (3) work on the Agana SPS "is expected

16   to be completed on schedule." Id.

17           Contrary to its stated intentions, however, GWA did not meet the deadlines of Paragraphs

18   39 and 42. In fact, GWA's submittal on May 4, 2007, raised serious doubts about the veracity of

19   its March 2 certification regarding the Northern District STP. Although GWA certified on

20   March 2 that it had successfully completed its renovation work at the Northern District STP by

21   March 2, 2007, GWA stated in its certification on May 4, 2007, that this work had been

22   completed "with the exception of five of the six sludge pumps and half of the aerated grit

23   removal system." Lee Decl., Exh. 3 at 3. These sludge pumps were now listed as a "planned

24   action." Id. at 4. Moreover, GWA acknowledged that funding originally earmarked to install

25   sludge pumps -- as specifically contemplated in Paragraph 39 -- "was diverted to ensure that

26   GWA is maintaining adequate reserve funds in order to comply with the Stipulated Order and

27

28                                                  -13-

bond covenant requirements." Id. GWA stated that it had located funding and the sludge pumps "will be replaced" as soon as PUC approval could be obtained. Id. Instead of conducting the operational performance evaluation on the Northern District STP and submitting the evaluation to EPA by May 4, 2007, as required by Paragraph 39, GWA submitted the following: "[s]ince GWA is still working to complete mechanical repairs, GWA does not believe that the requirements for additional treatment can be properly assessed until additional sludge pumps have been procured and plant operations have been fully optimized and assessed." Id. at 3. GWA has still not conducted the operational performance evaluation required by Paragraph 39, and has failed to submit the evaluation to EPA. Lee Decl., ¶9.

Similarly, in a letter submitted on April 30, 2007, GWA did not submit an operational performance evaluation for the Agana STP. Lee Decl., ¶6 and Exh. 2. Instead, GWA stated that it did "not believe that two months of operation are adequate to fully optimize and assess the treatment capabilities of the newly rehabilitated treatment plant." Id., Exh. 2 at 3. GWA has still not conducted the operational performance evaluation required by Paragraph 42 and has not submitted the evaluation to EPA. Lee Decl., ¶7.

Finally, regarding the Agana SPS, GWA submitted a letter to EPA on July 24, 2007, stating that it had not met the compliance date of June 1 for completion of the SPS renovation. Lee Decl., Exh. 4. Evidently, GWA had planned to use certain bypass pumps to allow the Agana SPS work to proceed but the pumps were not adequate to handle the incoming flow. Id., Exh. 5. GWA indicated that it was also having difficulty obtaining funding to implement the contract to renovate the Agana SPS. Id., Exh. 6, 7. GWA has not yet completed the renovation of the Agana SPS. Lee Decl., ¶12.

In sum, Paragraphs 39 and 42 of the 2006 Stipulated Order required GWA to complete seven tasks by specified compliance deadlines. Apparently, GWA has managed to complete only one of those tasks -- the completion of the renovation of the Agana STP. GWA stated that it lacked the funds to purchase pumps that would have allowed required renovation work on the

-14-

1 Agana SPS to proceed, and that it lacked the funds to replace sludge pumps at the Northern

2 District STP. GWA has never conducted the operational performance evaluations of the

3 Northern District and Agana STPs required by Paragraphs 39 and 42 and has not submitted the

4 operational performance evaluations to EPA.

5 As EPA's September 4, 2007 demand letter made clear, stipulated penalties of $298,000

6 had accrued for GWA's violations of Paragraphs 39 and 42 as of August 30, 2007. GWA's DR

7 Mtn., Exh. B. Based on GWA's failure to complete six of the seven tasks required by Paragraphs

8 39 and 42, EPA would have been fully justified in demanding the full amount of the stipulated

9 penalties set out in the Stipulated Order. However, pursuant to Paragraph 56 of the Stipulated

10 Order, the United States may, in the unreviewable exercise of its discretion, reduce or waive

11 stipulated penalties otherwise due it. Stipulated Order, ¶56. The United States exercised its

12 discretion to reduce the stipulated penalties to $40,000. GWA's DR Mtn., Exh. B. GWA paid

13 that penalty by its check dated October 1, 2007. Exh. E. Under these circumstances, the United

14 States requests the Court to deny GWA's motion and affirm EPA's determination regarding the

15 stipulated penalties.

16          2.       GWA may not unilaterally decide to ignore its obligations under the
                     Stipulated Order.

17

18 The 2006 Stipulated Order set out a specific compliance schedule that required GWA to

19 implement corrective actions to restore primary operational capacity to the Northern District and

20 Agana STPs, to conduct an operational performance evaluation at both treatment plants, to

21 submit the operational performance evaluation to EPA, and to renovate the Agana SPS. 2006

22 Stipulated Order ¶¶39, 42. As explained in Section III.D.1. above, GWA completed the

23 corrective actions at the Agana STP but did not comply with the remaining requirements of

24 Paragraphs 39 and 42.

25 In its motion, GWA now argues that it should not be required to conduct and submit the

26 operational performance evaluations required by Paragraphs 39 and 42: "GWA does not believe

27

28                                                    -15-

1    that additional testing is necessary or prudent at this juncture in order to determine whether the

2    treatment plants meet their federal permits when the testing data obviously shows that the plants

3    are meeting permit requirements or will meet them after GWA follows its plans to conduct

4    repairs." GWA DR Mtn. at 9. The Court should reject GWA's argument. First, "[a] party may

5    not rely on its unilateral interpretation of the requirements for compliance in complex

6    institutional reform litigation as an excuse for noncompliance." Harris v. City of Philadelphia,

7    47 F.3d 1311, 1325 (3d Cir. 1995). Second, GWA's argument is unsupported by evidence and

8    completely speculative. Pursuant to LR 7.1 (Motion Practice), the moving party is required to

9    submit the "evidence upon which the moving party relies" and "any affidavits permitted by the

10   Federal Rules of Civil Procedure." The Court need not consider GWA's motion because it does

11   not comply with this Local Rule. See L.R. 7.1(l). Finally, GWA's position is directly

12   contradicted by compliance data in the Discharge Monitoring Reports ("DMRs") that it has

13   submitted to EPA pursuant to its NPDES permits for the Northern District and Agana STPs.

14   GWA was required to submit its operational performance evaluation for the Agana STP on April

15   30, 2007. 2006 Stipulated Order, ¶42. GWA's DMRs show that the Agana STP exceeded its

16   NPDES permit's monthly average limit for Biochemical Oxygen Demand ("BOD") in April

17   2007. Lee Decl., ¶15. Similarly, GWA's operational performance evaluation for the Northen

18   District STP was due on May 4, 2007. 2006 Stipulated Order, ¶39. GWA's DMRs show that the

19   Northern District STP exceeded its NPDES permit monthly average limit for BOD and its

20   monthly average and daily maximum limits for Total Suspended Solids in April 2007. Lee

21   Decl., ¶15. Furthermore, the Northern District STP has violated its permit limits in every month

22   from April through September 2007. Id.

23          GWA also argues that its failure to submit an operational performance evaluation as

24   required by Paragraphs 39 and 42 should be excused because EPA did not provide comments on

25   the material that GWA submitted on April 30 and May 4, 2007. This Court should reject GWA's

26   futile attempt to excuse its failure to conduct and submit an operational performance evaluation

27

28                                               -16-

for the Northern District and Agana STPs. First, contrary to the requirements of Paragraphs 39 and 42, GWA never even *conducted* an operational performance evaluation on either plant. Second, GWA never *submitted* to EPA "an operational performance evaluation with a determination of the need for advanced primary treatment" for either plant as required by Paragraphs 39 and 42. Instead, GWA submitted an excuse why it had *not* conducted an operational performance evaluation at either plant. The Consent Decree does not impose an obligation on EPA to review a nonsubmittal.

GWA's failure to either conduct or submit an operational performance evaluation at each plant triggered stipulated penalties under the Stipulated Order. Pursuant to Paragraph 54 of the Stipulated Order, "stipulated penalties shall begin to accrue on the day after performance is due . . . even if no notice of the violation is sent to the Defendants." This Court should affirm EPA's well-founded determination regarding the appropriate stipulated penalties for GWA's violations.

3.   GWA's payment of stipulated penalties furthers the purpose of the Stipulated Order and ensures progress in GWA's efforts to comply with the Clean Water Act.

The parties agreed that entry of the Stipulated Order was 'the most appropriate way to require the immediate implementation of short-term projects . . . by GWA . . . to begin to address issues of compliance at GWA's POTW and three public water systems." Stipulated Order at 3. According to GWA, the Northern District STP "has never been in compliance with its NPDES permits" and the Agana STP "has been out of compliance with its permits for over a decade." GWA DR Mtn. at 5 n.2. Consistent with GWA's history of discharge violations and the purpose of the Stipulated Order, Paragraphs 39 and 42 required GWA to implement corrective actions to restore primary treatment operational capacity at both the Northern District STP and the Agana STP, and, after completing that restoration work, to conduct an operational performance evaluation, and to submit to EPA and Guam EPA the evaluation with a determination of the need for advanced primary treatment. Stipulated Order, ¶¶39, 42.

GWA argues that the stipulated penalties in this case are unjustified because one of its

-17-

1 plants, the Agana STP, has come into compliance with its permit limits. GWA DR Mtn. at 7. It
2 also argues, without any evidentiary support, that renovation of the Agana SPS is not relevant to
3 NPDES compliance. Id. These arguments have no merit. First, GWA failed to comply with the
4 requirements of Paragraphs 39 and 42, which were intended to restore primary treatment
5 operational capacity in accordance with a compliance schedule. Based on GWA's recent DMR
6 data, GWA may conceivably be able to show in an operational performance evaluation that the
7 Agana STP is now able to consistently comply with its NPDES permit limits. Lee Decl., ¶16.
8 However, GWA has still not conducted an operational performance evaluation to make that
9 showing. Id. Moreover, Paragraph 42 required that task to be done by April 30, 2007. 2006
10 Stipulated Order, ¶42. For the Northern District STP, GWA's DMRs show that the plant
11 violated its permit limits in every month from April through September 2007. Lee Decl., ¶15.
12 GWA has still not conducted an operational performance evaluation for the Northern District
13 STP. Id. at ¶9. Finally, contrary to GWA's unsupported claim, the renovation of the Agana SPS
14 is directly related to GWA's ability to maintain continuous compliance with its NPDES permit
15 limits. Id. at ¶17. The operational failure of the sewer pump station could result in raw,
16 untreated sewage discharging directly to waters of the United States in violation of GWA's
17 NPDES permit conditions and the CWA. Id.

18    In this case, the United States and GWA negotiated the terms of the Stipulated Order,
19 including the stipulated penalties provision, and entered into the Stipulated Order in June 2003.
20 Furthermore, the United States and GWA agreed to modify the Stipulated Order in October 2006
21 to allow GWA more time to complete certain compliance tasks and to include the current
22 deadlines in Paragraphs 39 and 42. See Stipulation Amending Stipulated Order for Preliminary
23 Relief (filed October 19, 2006) at 4 (¶1.l., ¶1.m.); Order Amending Stipulated Order for
24 Preliminary Relief (filed October 25, 2006) at 4 (¶1.l., ¶1.m.). GWA did not move to modify the
25 current deadlines imposed by the October 2006 Stipulated Order. EPA's stipulated penalty
26 demand of $40,000 served to penalize GWA's failure to timely complete the restoration and

27

28                                              -18-

renovation work necessary at the Northern District and Agana STPs to enable GWA to either achieve or maintain continuous compliance with its NPDES permits and the CWA. In addition, these stipulated penalties represent only a small fraction of the authorized CWA penalties of $32,500 per day per violation for GWA's continuing violations of the NPDES permit limits for the Northern District STP. See 33 U.S.C. § 1319(d); 40 C.F.R. §§ 19.2, 19.4. Therefore, we request the Court to hold that GWA is bound to pay the stipulated penalties pursuant to EPA's demand under the Stipulated Order. See, e.g., United States v. Rueth Development Co., 335 F.3d 598, 607 (7th Cir. 2003) (in affirming judgment for stipulated penalties of $4,018,500, court noted that defendant negotiated and freely entered into the settlement and is therefore bound by its terms, including those setting forth penalties).

## IV.    CONCLUSION

The stipulated penalty of $40,000 in this case is consistent with the Stipulated Order because it is intended to ensure GWA's timely implementation of short-term restoration and renovation projects at the Northern District and Agana STPs to address GWA's compliance with the Clean Water Act. GWA has already paid the penalty. For the reasons stated herein, the United States requests the Court to deny GWA's motion and affirm EPA's imposition of the penalty.

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI
(671) 472-7332

Dated: 11/28/07

MIKEL W. SCHWAB
Assistant U.S. Attorney

OF COUNSEL:

JULIA JACKSON, Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

-19-